UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 21-552 DLF |
| KENNETH THOMAS, : | |
| : | |
| Defendant. : | |

**MOTION *IN LIMINE* REGARDING AUTHENTICATION
OF CERTAIN VIDEO, PHOTO, AND SOCIAL MEDIA EVIDENCE**

At trial during its case-in-chief, the government expects to offer several video clips, photographs, and social media posts depicting or discussing defendant Kenneth Joseph Thomas on January 6, 2021. These materials were obtained by the FBI from publicly available sources such as YouTube, Twitter, Telegram, and Rumble, publicly available archives, such as Internet Archive, and from clips taken by cameras and cellphones carried by journalists and rioters. As set forth below, the FBI case agent's testimony will satisfy the low bar required for this Court, as the gatekeeper of admissible evidence, to make an initial ruling of authenticity to admit the evidence, to then allow the jury, as the fact finder, to make a final determination whether the admitted evidence is authentic and how much weight to give it.

**BACKGROUND**

Much of the riot at, and attack on, the United States Capitol Building was recorded on video: on surveillance footage captured by mounted U.S. Capitol Police ("USCP") cameras; by body-worn cameras affixed to Metropolitan Police Department ("MPD") officers; and by cameras and cellphones carried by journalists and rioters. The government's case-in-chief at trial will rely in part on USCP and MPD camera footage to prove the defendant's specific conduct and the larger

context in which it took place. Should the defense not stipulate to the authenticity of these two types of footage, the government will call appropriate USCP and MPD witnesses at trial. But the government also intends to introduce footage from videos taken by other rioters or by journalists, which FBI agents obtained via either open sources or searches of other defendants' devices. For this type of video evidence, the government seeks a pretrial ruling on authenticity.

## ARGUMENT

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement, including comparisons to authenticated specimen, and examining the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." FRE 901(b)(3), (4).

Establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, … and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted).

Rule 901 "requires only a prima facie showing of genuineness" for the evidence to be admissible. *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is

enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017). After clearing that low hurdle, the evidence should *first* be admitted, to *subsequently* allow the fact finder to make the ultimate decisions regarding authenticity and probative value. *See Vidacak*, 553 F.3d at 349 ("The district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic."); *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a *prima facie* showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).[1] Establishing authenticity of photographic evidence does not require testimony from a witness who was physically present and observing the scene at the time it was captured by the camera. *United States v. Rembert*, 863 F.2d 1023, 1027 (D.C. Cir. 1988). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Nor is government required to establish that the proffered evidence has not been altered or staged. *United States v. Broomfield*, 591 F. App'x 847, 852 (11th Cir. 2014) (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").[2]

---

[1] In deciding preliminary questions about the admissibility of these photos and videos, "[t]he court is not bound by evidence rules, except those on privilege," (FRE 104(a)), and may rely upon hearsay or otherwise inadmissible evidence in establishing the authenticity. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997).

[2] As a side note, the Eleventh Circuit also held that the factors articulated in *United States v. Biggins*, 551

Indeed, questions concerning possible alterations go to the weight the fact finder should give the evidence, not to its authenticity. *United States v. Safavian*, 435 F. Supp. 2d 36, 41 (D.D.C. 2006) (arguments that earlier emails included in an email chain may have been altered before being forwarded are "more appropriately directed to the weight the jury should give the evidence, not to its authenticity"). The government must only "'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see also, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that while "[a]nyone *could have* used the defendants' Facebook accounts, just as the pictures *could have* depicted the men smoking tobacco cigars, and 'getting high' *could have* been a reference to skydiving," there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts [which were] about using marijuana" (emphasis added)).

In deciding preliminary questions about the admissibility of photos and videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the photo and video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable fact-finder could reach the same conclusion regarding authenticity. *See, e.g.*, *United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District

---

F.2d 64, 66 (5th Cir. 1977), are inapplicable in criminal cases where the government finds a video on YouTube, holding that if the *Biggins* factors applied, "the prosecution could seldom, if ever, authenticate a video that it did not create." *Broomfield*, 591 F. App'x at 852.

Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 Fed. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

### **FRE 901(b)(3) – Comparison with A Known Specimen**

"Authentication by comparison is routine." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021). For example, photos and videos of a scene can be authenticated by comparison with previously admitted exhibits that show the same scene from other angles. *See United States v. Hoyt*, 946 F.2d 127 (D.C. Cir. 1991) ("[W]e will assume without deciding that the photograph was sufficiently authenticated by comparison with previously admitted Government Exhibit 11, which showed the door from another angle."); *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record—namely, other video and photographic evidence of the incident that Green provides."); *State v. Haight-Gyuro*, 186 P.3d 33, 38 (Ariz. Ct. App. 2008) (finding video sufficiently authenticated by comparison with separately authenticated photographs); 5 Weinstein's Federal Evidence § 901.03 ("When authentication of an item of evidence is accomplished by comparison with a specimen, the specimen itself must be proved to be authentic […] Nor does it matter what

5

type of evidence the specimen consists of; the requirements for authenticating all types of specimens … are the same: prima facie proof that they are what their proponent claims them to be.").

In other January 6 trials in this district, the court found similar "open-source" evidence to be authentic by comparison under Rule 901(b)(3). *United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022); *United States v. Seefried, et al.*, 1:21-cr-287-TNM, Dkt. 56 (D.D.C. May 20, 2022). In both *Rodean* and *Seefried*, the court compared screenshots of video from a known source (USCP CCTV), which showed the Senate Wing Doors from the inside facing out, with screenshots of video footage taken by an unspecified rioter showing the Senate Wing Doors from the outside looking in. *See, e.g.*, *Rodean*, Dkt. 50 at 2. The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden beam sticking through a shattered window. *Id.* The court found these similarities sufficient and granted the government's pretrial motion to find the video taken by the unspecified rioter to be authentic. *Id.* at 6.

Here, the government anticipates offering video clips from USCP mounted cameras and MPD body worn cameras, as well as from sources other than the USCP. Some of these other sources include reporters who were present in the Capitol on January 6, 2021, defendant Thomas, himself, defendant's fellow rioters, or other members of the crowd. Many of the videos were obtained through open-source means and are publicly available; others were obtained by agents from searches of other January 6 defendants' devices. For any such videos, the government will establish authenticity by asking the jury to compare them with other authenticated exhibits, in particular, to USCP and MPD camera footage. Fed. R. Evid. 901(3). This footage will confirm that such videos are what they purport to be: recordings of the same events, captured from slightly

different perspectives, and in some cases depicting events and sounds that were not captured by the USCP or MPD cameras.

The government expects that the case agent will testify as follows: she has been investigating January 6 Capitol riot-related cases since shortly after January 6, 2021; she has reviewed hours of video footage recorded by USCP CCTV cameras, MPD body worn cameras, journalists, and rioters; and she is personally familiar with the locations depicted in those videos from being physically present at the Capitol January 6, 2021. She will assist the Court and the jury in identifying similarities between USCP and MPD videos and the other non-government and/or open-source videos offered by the government.

For example, she and/or MPD officer(s) will testify about body worn camera footage of officers on the Capitol's West Terrace, which show the defendant taunting, assaulting, and physically resisting law enforcement officers' efforts to remove the unauthorized crowd from the restricted Capitol grounds between approximately 3:30 and 4:30 PM on January 6, 2021. A few screenshots from those body worn cameras are below. The defendant is the person wearing the camouflage baseball hat, glasses, a tan jacket, and a gray hoodie sweatshirt.

For example, the case agent and/or MPD officer(s) will testify that in the screenshots below, around 3:30 PM, defendant Thomas is shown on body worn camera starting at the bottom and running up a short set of stairs towards a line of MPD officers on the West Terrace; after the officers force him back down those steps once, he runs back up the stairs a second time and assaults the line of officers.







The case agent and/or MPD officer(s) will further testify that video obtained from open sources, such as YouTube, shows the same incident and time period, but from a different, more distant vantage point. A screenshot from that open-source YouTube video is below.



Similarly, the case agent and/or MPD officer(s) will testify that in the screenshots below, around approximately 4:22 through 4:30 PM, defendant Thomas is shown on body worn camera assaulting a different line of officers on the West Terrace while videoing his interactions with law enforcement.

*Remainder of Page Intentionally Left Blank*

\*   \*   \*





The case agent and/or MPD officer(s) will further testify that video obtained from the defendant's own YouTube channel shows a number of the same incidents and time periods, but from defendant's perspective. A few screenshots from that open-source YouTube video are below.





The case agent or MPD officer can identify regarding common architectural and grounds features to establish that both videos depict certain areas on restricted Capitol grounds, common clothing items to establish that both videos show the same people, particularly the defendant, and common gestures and movements to establish that both videos show the same moment when rioters, including the defendant, physically assaulted and resisted the officers' efforts to clear the restricted Capitol grounds.

The Government will use a similar approach to introduce and authenticate other non-government-produced photographs and videos, if not stipulated to by the parties. For example, the case agent will testify that video in the screenshot below was obtained from defendant's own YouTube channel, which shows an interview he provided to a local news channel; in the video, defendant is referred to as "Pi Annon" and he discusses being the "organizer" of the "Maga Caravan" going to D.C. The agent will identify common clothing items to establish that both the open source video and BWC videos show the defendant.





In each instance, as exemplified above, the case agent will be able to point out similarities sufficient to satisfy the low *prima facie* showing required for this Court to admit the offered photos and videos into evidence and allow the jury to make the final factual determinations about their authenticity. *See Vidacak*, 553 F.3d at 349; *Belfast*, 611 F.3d at 819. As with all admitted evidence, it will then be up to the jury, as the finder of fact, to determine how much weight to give this evidence.[3]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court find the open source photo, video, and social media evidence offered by the government to be authentic and admissible.

Respectfully submitted,

MATTHEW M. GRAVES

---

[3] Alternatively, the Court may find the agent's testimony establishes the authenticity of the proffered photos and videos due to their "appearance, contents, substance, internal patterns, or other distinctive characteristics … taken together with all the circumstances." FRE 901(b)(4). In addition, the government anticipates calling witnesses at trial who are familiar with the defendant's voice, and who can identify the speaker in many of the videos taken on January 6, 2021 as the defendant. FRE 901(b)(5).

                United States Attorney
                D.C. Bar No. 481052

By:   */s/ Samantha R. Miller*
       SAMANTHA R. MILLER
       Assistant United States Attorney
       New York Bar No. 5342175
       United States Attorney's Office
       For the District of Columbia
       601 D Street, NW 20530
       Samantha.Miller@usdoj.gov

       */s/ Sean P. McCauley*
       SEAN P. MCCAULEY
       Assistant United States Attorney
       NY Bar No. 5600523
       United States Attorney's Office
       601 D Street NW
       Washington, DC 20530
       Sean.McCauley@usdoj.gov