UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-CR-00552 (DLF) |
| v. : | |
| : | |
| KENNETH JOSEPH OWEN THOMAS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE USE OF CERTAIN LANGUAGE**

Defendant Kenneth Joseph Owen Thomas, who is charged in connection with events at the U.S. Capitol on January 6, 2021, requests that the Court preclude the government's use of the words "rioters," "breach, "confrontation," "antigovernment extremism," "insurrectionists," and "mob." ECF No. 41 at 1. The defendant further "seeks to limit the government from referencing Mr. Thomas as an '[a]nti-government extremist' or utilizing captions on photos, videos, or exhibits referencing the same." *Id*. The defendant seeks to exclude these words and phrases on two grounds: (1) that these words and others like them are hearsay and opinion testimony, and (2) that these words and phrases are prejudicial under Fed. R. Evid. 403. In reality, the defendant's motion *in limine* asks that the Court prevent the government from using language and evidence that accurately establishes and describes the defendant's crimes. Accordingly, the Court should deny his motion.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol

building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

The defendant played a unique leadership role both prior to the riot and as the riot grew increasingly violent. Operating under the alias of "Pi Anon," the defendant personally organized and led a "MAGA caravan" of vehicles, which the defendant referred to as the "Midnight Riders." The caravan drove from Alabama to Washington, D.C. to attend the "Stop the Steal" rally on January 6, 2021. After attending that rally at the Ellipse, the defendant proceeded with his wife and child to march down Pennsylvania Avenue in the direction of the Capitol Building. As the crowd outside the Capitol, including defendant, grew increasingly violent towards the United States Capitol Police (hereinafter, "USCP") and Washington, D.C., Metropolitan Police Department (hereinafter, "MPD"), the defendant's wife and child decided to leave the scene. But the defendant forged on.

After the rioters breached the police line on the West Front of the Capitol at approximately 2:28pm, the defendant continued to advance towards the Capitol, ultimately coming face to face with police officers attempting to regain control of the Capitol building, which had been breached by a mob of violent rioters. Rather than heed officers' warnings to leave the scene, the defendant, from approximately 3:30pm to 4:30pm, proceeded to lead a barrage of assaults on no less than five different police officers. Indeed, at approximately 3:30pm, the defendant assaulted multiple MPD officers on the Senate side of the West Front of the Capitol by, twice, running up a short flight of stairs and throwing his body and hands into the officers. Even after these assaults, the defendant can be seen on those officers' body worn camera continuing to stand near the bottom of those stairs; at the same time, he can heard be yelling:

- "Police stand down!"
- "We want freedom! We want peace!"
- "Police stand down!"
- "This is our house!"

Approximately one hour later, around 4:30pm, the defendant continued assaulting additional officers, this time from the Prince George's County Police Department ("PG County PD"). PG County PD had been summoned from across the Potomac to assist with the on-going crisis at the Capitol after MPD and USCP were being overwhelmed by the violent and unrelenting conduct of the rioters, including that of the defendant. Not only did the defendant participate in the violence, but he acted as a ringleader:  always appearing at the front of the line against police, the defendant consistently called out to his fellow rioters to hold the line, gave them instructions to turn their backs to the line of officers as they attempted to advance against the police line, and ordered the rioters when and where to assault the police. Ultimately, the defendant did not enter the Capitol and was forced from the restricted area around the Capitol by MPD, USCP, the reinforcing police departments from other jurisdictions, and the D.C. National Guard.

Based on his actions on January 6, 2021, the defendant was charged on December 13, 2022, in a Second Superseding Indictment, with Obstruction of Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. §§ 231(a)(3) (Count 1); and Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 2); five felony counts related to Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. §§ 111(a)(1) (Counts 3, 4, 5, 6, and 7); three counts relating to disorderly conduct and violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), (2), and (4) (Counts 8, 9, and 10); and two misdemeanor counts relating to disorderly conduct and violence in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) and (F). ECF No. 49.

## ARGUMENT

I.   **The Words that the Defendant Seeks to Exclude are Not Unduly Prejudicial and Fairly Describe Defendant's Conduct at the Capitol on January 6, 2021.**

   A.   <u>The government need not dilute its language or rely on euphemisms to describe the riot at the Capitol or the defendant's individual violent conduct.</u>

The defendant has failed to present any persuasive arguments as to how words and phrases that accurately describe his relevant conduct during the events of January 6 would prejudice him. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), which is a "liberal" standard, *United States v. Moore*, 18-CR-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports the defendant's requested relief.

First, the defendant argues that the Court should bar terms like "'[r]ioters,' '[b]reach,' '[c]onfrontation,' '[a]nti-government [e]xtermism,' 'insurrectionists,' and 'mob[.]'" ECF No. 41 at 1. The defendant does not state at any point in his motion how these words would unduly prejudice the jury against the defendant or be otherwise impermissible under Fed. R. Evid. 403. Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper

5

about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around the defendant's crimes. Contrary to the defendant's insinuations, what took place on January 6, 2021 was, in fact, a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. Indeed, after carefully considering the facts of other January 6 cases, many other members of this Court have recognized the riot as just such an attack. *See, e.g.*, *United States v. Rubenacker*, 21-CR-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Mostofsky*, 21-CR-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United*

6

*States v. Languerand*, 21-CR-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language—and not euphemisms—to describe the nature and gravity of the defendant's conduct.

To that end, the government's evidence will demonstrate how the mob's concerted efforts disrupted Congress. Like the defendant, none of the rioters were authorized to enter the restricted area around the Capitol or the Capitol itself. Law enforcement officer witnesses will explain that, in expelling rioters from both the Capitol and the surrounding area, they could not distinguish between those rioters who were overtly violent, such as the defendant, and those who were not: everyone had to leave. That is because law enforcement could not predict who would act violently; any member of the crowd might have been ready to assault individual officers or to violently resist the officers' efforts to secure the Capitol, just as the defendant did five separate times. But for the defendant's actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, 21-CR-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge the defendant based on his own actions, the context of the defendant's actions will necessarily be placed before them—that context was a violent riot. Ultimately, the defendant provides no legal authority in support of his broad claim that witnesses and government prosecutors must only describe these

7

events using euphemistic or diluted words and with willful ignorance to all relevant contextual information.

> B. Any evidence presented regarding the defendant's "anti-government" views will fall squarely within the bounds of the Federal Rules of Evidence.
>
> 1. *The government does not intend to have any witness testify that the defendant is an "anti-government extremist" or to label him as such during argument.*

The defendant spends a substantial portion of his motion seeking to preclude the government from using the term "anti-government extremist." *See* ECF No. 41 at 2-4. The government does not intend to use the phrase "anti-government extremist" in reference to the defendant during the presentation of its case. But, considering the defendant's conduct on January 6, 2021, the government is well within the permissible boundaries of Rules 401 and 403 to introduce evidence about the defendant's anti-government views and the actions he took in furtherance of those views on January 6. To be sure, any such aspects of the government's case would need to be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and require "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016). The defendant does not, and cannot, substantiate his contention that the government could not present such information appropriately. Similarly, the government will not present evidence that places the defendant's character at issue or places him on trial for his entire life. Fed. R. Evid 404.

> 2. *Neither Fed. R. Evid. 404 nor any other rule of evidence prohibits evidence related to the defendant's anti-government views because they prove his intent.*

The government should not be precluded from using the defendant's own words—including those that the defendant said, recorded, and uploaded to the Internet both before and after January 6—to prove his intent that day. "The Federal Rules of Evidence generally favor the inclusion rather than the exclusion of evidence." *United States v. Thomas,* 987 F.3d 697, 706 (11th

8

Cir. 1993). At trial, to prove a violation of 18 U.S.C. § 1512(c)(2), the government will be required to prove beyond a reasonable doubt that the defendant "obstruct[ed], influence[d], or impede[d]," an official proceeding, or attempted to do so, and that he did so "corruptly." 18 U.S.C. § 1512(c)(2). To prove a defendant acted "corruptly" for purposes of Section 1512(c)(2), the government must prove the defendant: acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully. *See United States v. Reffitt,* 21-CR-32 (DLF), Final Jury Instructions, ECF No. 119, 25-26; s*ee also United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice").

To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of 18 U.S.C. § 1512(c)(2), the government must therefore adduce evidence establishing beyond a reasonable doubt that a defendant acted intentionally and with "consciousness of wrongdoing." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005). To prove a violation of Section 1512(c)(2), the government must also satisfy a "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019) (internal quotation marks omitted). "'[T]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea*

9

requirement of "corruptly" obstructing or endeavoring to obstruct'—that is, the first element of proving a § 1512(c)(2) charge." *Id.* at 385 n.12 (quoting *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)).

As noted above, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]here is no such thing as 'highly relevant' evidence or ... 'marginally relevant' evidence. Evidence is either relevant or it is not." *Foster,* 986 F.2d at 545. Intent may be inferred from defendant's own statements. *Kawakita v. United States,* 343 U.S. 717, 742 (1952). Therefore, insofar as the defendant's substantial digital footprint contains evidence of the defendant's anti-government views, including the defendant's own statements, Rule 401 permits the government to introduce those statements to prove the nexus between the defendant's *mens rea* in going to the Capitol and *actus reus* in joining the assaultive mob. *Young*, 916 F.3d at 386. That such evidence is powerful and makes it more likely that the defendant will be found guilty does not make it unfairly prejudicial, and is an insufficient basis to withhold it from the jury. Fed. R Evid. 403; *see also United States v. Cassell,* 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair.")

**II.    The Defendant's Other Arguments are Unavailing.**

　　A. <u>Defendant's hearsay and opinion testimony arguments are borrowed nearly verbatim from the *Reffit* case and are both inapposite and premature.</u>

Defendant's hearsay and opinion testimony arguments appear to be extracted nearly verbatim from a defense motion this Court denied as moot in *United States v. Reffitt*, 21-CR-0032 (DLF). *See* ECF Nos. 63 (Reffit Motion) at 1-2, 90 (Minute Order denying motion). The defense

10

in *Reffitt* filed that particular motion *in limine* to object to the government's proposed file names for various pieces of digital video evidence. The parties resolved the conflict regarding those words and file names by simply changing the file names to reflect the date and time of the video rather than describing the evidence. *See Reffitt*, ECF No. 72.

In contrast to *Reffit,* here, the defendant is objecting to some hypothetical government witness hypothetically using these terms in his or her hypothetical testimony (or, potentially, in a hypothetical government electronic file name). Instead, to avoid the issue encountered by the parties in *Reffit* and to further avoid any waste of additional court resources, the government will endeavor to name its exhibits in a manner similar to those that passed muster in *Reffitt*, and if the defense has issues with our exhibit names, it can object after receiving our list. For these reasons, the defendant's arguments fail and the court should not consider them further.

B. <u>Defendant's hearsay and opinion testimony arguments also fail on the merits.</u>

However, if the Court proceeds to analyze defendant's arguments further, they fail on the merits. Initially, Defendant argues that the government's use of the words "rioters," "breach, "confrontation," "antigovernment extremism," "insurrectionists," and "mob," "if included on a video, photo, or other evidence, are testimonial and therefore cause a Confrontation Clause problem." ECF No. at 2. Defendant is mistaken. These words and phrases, whether used extemporaneously and captured in open-source and police video from the day of January 6, or whether used by the government in its presentation of evidence at trial, are *not* testimonial and *do not* create Confrontation Clause issues: they were not used during police interrogation of the defendant "to establish or prove past events potentially relevant to later criminal prosecution." *See, e.g., Davis v. Washington*, 547 U.S. 813, 822 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the

primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").

Furthermore, these words and phrases, when captured in videos, photos, or other evidence, are also not hearsay. If the words and phrases were used by the defendant himself and are offered for their truth, they constitute an opposing party's statement that the government may offer freely as evidence against the defendant. *See* Fed. R. Evid. 801(d)(2)(A), (B). If offered for their truth and used by any of defendant's compatriots in the mob or police or other law enforcement on the day of January 6, these words and phrases constitute present sense impressions, excited utterances, and/or descriptions of then-existing mental, emotional, and physical conditions. *See* Fed. R. Evid. 803(1)-(3). If used by the government in its presentation of evidence at trial, be it in opening or closing statements, by a summary witness, or in a January 6 montage video, for example, these words and phrases constitute legal argument or are otherwise useful and reliable, given they "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)*; see also United States v. Colon-Maldonado,* 953 F.3d 1, 11 (1st Cir. 2020) (collecting cases where courts have "dubbed" other out-of-court statement evidence reliable, including evidence of statements in 911 calls, evidence of surveillance video that "corroborated the victim's account of the incident (as related to [the testifying police officer])," and evidence of informants' statements that "were detailed, mutually corroborative on key points, and compatible with the events surrounding [the defendant's] arrest"). Therefore, their use is permissible.

Finally, defendant's argument—that these words, as used, constitute "unhelpful" opinion testimony—has been rejected by other courts in this District. *See, e.g., U.S. v. Rahm,* 21-cr-150 (TJH), ECF No. 45 (Minute Entry Order). As noted above, what took place at the Capitol on January 6, 2021 may be properly described as extreme, or as a riot, breach, confrontation, assault, insurrection, or mob. Thousands of people forced their way into the Capitol building during the constitutionally mandated process of certifying the Electoral College votes, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred law enforcement officers, and caused more than two million dollars in damage and loss. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Sentencing Tr. at 46:18-20 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).

At trial, the government intends to present witnesses who will testify based on their experiences and perceptions, which the jury may consider in judging the defendant's actions in context. In this case, the context was a riot. Moreover, defendant's reliance on *United States v. Garcia-Zarate*, 419 F. Supp. 3d 1176 (N.D. Cal. 2020) is inapposite. The court there permitted witnesses to "narrate and describe events in a video based on their own perceptions," but precluded the use of "superimposed photos, labels, or comments." *Id.* at 1178-79. Here, the government does not intend to use "labels" or "comments" to describe events, but witnesses and evidence that will speak for themselves. For these additional reasons, defendant's motion should be denied.

13

## CONCLUSION

For the reasons stated above, the defendant's motion should be denied.

                                          Respectfully submitted,

                                          MATTHEW M. GRAVES
                                          United States Attorney
                                          D.C. Bar No. 481052

By:         */s/ Sean P. McCauley*
                SEAN P. McCAULEY
                Assistant United States Attorney
                New York Bar No. 5600523
                United States Attorney's Office
                For the District of Columbia
                601 D Street, NW 20530
                Sean.McCauley@usdoj.gov

                */s/ Samantha R. Miller*
                SAMANTHA R. MILLER
                Assistant United States Attorney
                New York Bar No. 5342175
                United States Attorney's Office
                For the District of Columbia
                601 D Street, NW 20530
                Samantha.Miller@usdoj.gov