UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Case No. |
| : | |
| KENNETH JOSEPH OWEN THOMAS, : | 1:21-cr-00552 (CRC) |
| : | |
| Defendant : | |
| : | |

**DEFENDANT KENNETH THOMAS' MOTION IN LIMINE AND MEMORANDUM OF LAW TO EXCLUDE FALSEHOODS ABOUT POLICE OFFICERS**

Defendant KENNETH JOSEPH OWEN THOMAS ("Thomas"), through the undersigned counsel, John L. Pierce, Esq. presents this Motion and Memorandum of Law for an order in limine to exclude from presentation or mention at trial of arguments, evidence, or claims by Government witnesses that are unduly prejudicial about non-existent deaths of police officers supposedly caused by demonstrations on January 6, 2021.

Defendant Thomas hereby places the prosecution on notice that he may call the D.C. Chief Medical Examiner Diaz as a witness – and as a designated expert witness – at trial if the prosecution raises or mentions this persistent lie at trial.  Diaz will be called as a witness on the substance of his autopsy report and any associated reports or analyses of the death of Officer Brian Sicknick.  The Government is hereby placed on notice of Diaz as an expert witness to rebut any false claims made about Sicknick by the DOJ.  The conclusions addressed in this Motion are the substance and the bases of the expert testimony sought from Diaz.

In support of his motion Thomas states as follows:

## I. INTRODUCTION AND OVERVIEW

Normally a motion of this type would be unnecessary.  We would assume care and truthfulness from prosecutors.  However, the ultimate boss of the prosecutors in this case, Attorney General Merrick Garland, as recently as the week of January 6, 2023, once again claimed that five (5) police officers died during the events at the U.S. Capitol on January 6, 2021, or *directly* resulting.  The Attorney General and the President of the United States and others have repeated this disinformation countless times over the last two years.  Rather than delve into the difficult problems of suicide, the ultimate bosses of the prosecutors caught in the middle here in this Court are cynically exploiting the tragedies of unrelated suicides.

The Attorney General is the head of the U.S. Department of Justice.  The prosecutors are employed by the U.S. Attorney for the District of Columbia, Matthew Graves.  The U.S. Attorney is chosen and works for the Attorney General.  The U.S. Attorney's Office is part of the U.S. Department of Justice.

Judges in related cases have commented that they cannot order the U.S. Department of Justice or Congress to not do things.  But the Court can order within this case and this courtroom measures to remedy influences upon this case from outside the courtroom.  The Court must strive to provide the Defendant with a fair trial in spite of all circumstances internal to and external to the courtroom, consistent with the due process requirements of the U.S. Constitution.

The demonstrations by an estimated 10,000 mostly peaceful protestors around the Capitol is frequently called "deadly." [1]  But that is a lie.  Only demonstrators were killed, at the hands of the city police force (distinct from the U.S. Capitol Police), such as Ashli Babbitt, Roseanne

---

[1]   The prosecution refuses to consider the diversity of actions and conduct spread across the spectrum among 10,000 individuals.  Naturally, this blurring of reality serves their goals of convictions, yet prosecutors do have special burdens with regard to the limits of advocacy.

Boyland and others. Victoria White was beaten to the point that blood can be seen on video recordings pouring out into her White-colored "hoodie" on her head. This occurred when the crush of the crowd behind her and Roseanne Boyland were dozens of people deep, so that they had no way of complying with police and no place to go. That is, one may not imagine that police aggression served any purpose, when those they were beating could not retreat.

Unless the AUSA is prepared to prove that any police officers died **_as a result of_** events on January 6, 2021, they should not refer to such a claim.

The Court is asked to notice the nuanced and balanced nature of this motion. Defendant is not seeking to play the kinds of games employed against January 6 Defendants. If the prosecution can proffer a factual basis for outlandish, inflammatory, and prejudicial claims, then the Court can address it on those terms.[2] But without laying a foundation, the prosecution should not continue in this transparent mendacity.

The greatest danger is in opening argument when it would be a little disruptive and often impolite for defense counsel to interrupt the prosecution's opening statement with an objection. The opening statement is also likely to have an inordinate impact on the jury's understanding of the case at the outset of the case and with no immediate contradiction of the assertion.

It can be observed that somehow all prosecutors in all jurisdictions seem to have somehow picked up the same tactics of loudly and sternly proclaiming "what happened" as if they were eyewitnesses. By contrast, defense counsel are admonished to follow the pattern of "I believe the evidence will show …"

---

[2] One should consider if these tactics had been used during Rev. Martin Luther King's mass demonstration centered around the Lincoln Memorial. What if opponents had falsely claimed that 5 police officers had died _as a result of_ Martin Luther King's speech from the steps of the Lincoln Memorial? Our nation's history might have turned out differently.

Opening statements are extremely important for alerting the jury to what questions they must decide and what to be on the lookout for.

But they also present risks. Most especially opening statements are prone to references to things that have not been proven (yet) by any evidence. The assertions in opening statements may be many days removed in time from the actual evidence. It is considered rude and most jurors would consider it disruptive to interrupt the other party's opening statement.

The Court must act when possible (i.e., not surprised) to keep opening statements to facts for which there is a good faith basis in the coming evidence. A Court can't do that unless alerted in advance. That is the purpose of this Motion now.

However, if the prosecution does not have any proof it can present that any police officer died because of or as a *direct* result of events at or near the U.S. Capitol, it should not mislead, confuse, and inflame the jury.

With regard to the suicides many months later, the political class has tried to suggest – suggest, with no evidence whatsoever of course – that the trauma of their heroism being celebrated and shouted from every housetop and them being praised for their efforts on January 6 caused them to commit suicide because they had to confront fellow citizens.

But all law enforcement with the exception of immigration border patrols spend their entire careers confronting fellow citizens. Police officers investigate crimes committed by fellow citizens. They arrest fellow citizens. They testify at trial against fellow citizens.

Why would police officers – who would likely need to be called as witnesses – feel that while being widely praised and appreciated by the highest officials in the land and throughout the news media – that they could not bear this any more? Why would they deprive the nation of their testimony?

Of course, to the best of counsel's knowledge there are no facts of any kind whatsoever as to why these officers months later committed suicide.  In addition to all other problems, the topic is sheer speculation and conjecture.  When it comes to facts, the cupboard is bare.

The post logic philosophy of "A happened, then B happened" has infected the U.S. Department of Justice ("DoJ") as it has poisoned much of modern U.S. society.  The claim that "A *caused* B" is not supported in anyway by an observation that "A happened, then B happened."  George H.W. Bush was elected President.  Then Mt. Pinatubo erupted.  But electing a Bush as President does not) cause volcanos to erupt, even though one volcano actually did, in fact, erupt after a Bush was elected President.  It is not evidence to suggest as conjecture that a police officer responded to unruly demonstrations.

Even worse, and more unacceptable, this leads to descriptions of the events of January 6, 2021, as "deadly" evading the need for confirmed details.  Such a reference hides the complete lack of evidence to support the sweeping statement in broad brush strokes.

Thus, even in broad brush strokes, the prosecution should not refer to this topic.

By contrast, the Defendant, by counsel, does believe that the prosecution is showing the reaction of the crowds to police aggression, by cutting out the events prior to the videos shown.  Defendant may have to show that Defendants like Thomas acted in defense of themselves or others when attacked by under-staffed police who had not been given proper support by their leadership.  However, Defendant's counsel would not and will not refer to or make any such argument without a solid, strong foundation of facts to support it.  Just as the prosecution referring to "deadly" protests and then being proven wrong might back-fire, juries would only consider the topic of a mutual, back-and-forth melee from compelling evidence.

**II.  GOVERNING LAW**

> **Federal Rules of Evidence Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> **https://www.law.cornell.edu/rules/fre/rule_403**
>
> Notes of Advisory Committee on Proposed Rules
>
> The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1, 12–15 (1956); Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Van. L. Rev. 385, 392 (1952); McCormick §152, pp. 319–321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated. Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.
>
> \* \* \*

## III. ARGUMENT

On April 19, 2021, the U.S. Capitol Police issued a press release:

**https://www.uscp.gov/media-center/press-releases/medical-examiner-finds-uscp-officer-brian-sicknick-died-natural-causes**

> **Medical Examiner Finds USCP Officer Brian Sicknick Died of Natural Causes**
>
> April 19, 2021  Press Release
>
> The USCP accepts the findings from the District of Columbia's Office of the Chief Medical Examiner that Officer Brian Sicknick died of natural causes. This does not change the fact Officer Sicknick died in the line of duty, courageously defending Congress and the Capitol.
>
> The Department continues to mourn the loss of our beloved colleague. The attack on our officers, including Brian, was an attack on our democracy.
>
> Working with the U.S. Attorney's Office for the District of Columbia, the F.B.I.'s Washington Field Office and the Metropolitan Police Department, the USCP will continue to ensure those responsible for the assault against officers are held accountable.

\* \* \*

Not only did the D.C. Coroner rule that Officer Sicknick died of natural causes, but the autopsy also found no physical injuries, no irritation by any chemical substance, nothing.

> [Chief Medical Examiner Francisco Diaz]  told **The Washington Post** that the autopsy ***found no evidence that Sicknick experienced an***

7

> *allergic reaction to chemical irritants. He also said there was no*
> *evidence of either external or internal injuries.*[3]

Pete Williams, "Capitol Police Officer Brian Sicknick died of natural causes after riot, medical examiner says," NBC News, April 19, 2021, **https://www.nbcnews.com/politics/politics-news/capitol-police-officer-brian-sicknick-died-natural-causes-after-riot-n1264562** *(emphasis added)*.

> Diaz's ruling means the chemical irritant assault – which two men, Julian Kahter and George Tanios, have been charged for – is not attributable for Sicknick's death, and may effectively prevent the Justice Department from bringing homicide charges in the case.[4]

Jordan Fischer, Eric Flack, "Officer Brian Sicknick died of natural causes, medical examiner says:  The D.C. Office of the Chief Medical Examiner says chemical irritant exposure did not play a role in Sicknick's death, WUSA9 TV, April 19, 2021, **https://www.wusa9.com/article/news/national/capitol-riots/officer-brian-sicknick-suffered-two-strokes-and-died-of-natural-cases-medical-examiner-says-capitol-riot-julian-khater-george-tanios/65-059aa393-621d-47a1-b4bc-3b01b204f3db**

Any suggestion that Officer Sicknick's natural-causes stroke resulted from events of January 6, 2021, is a myth.  The autopsy explicitly excludes the possibility that there was any physical injury found internally or externally on Officer Sicknick nor was there any evidence of any chemical irritant affecting Officer Sicknick.

> Sicknick's manner of death was reported as natural. The cause was listed as "acute brainstem and cerebellar infarcts due to acute basilar artery thrombosis."

---

[3]     Officer Sicknick died of a stroke the day after January 6, 2021, and therefore the state of observable physical injuries would be static as of January 7, 2021.  No healing of his body would obscure the state of the facts as of January 6, 2021.

[4]     Understanding legally that the chemical attack is alleged, the lack of any detectable effects upon Officer Sicknick could also suggest that Officer Sicknick was not in fact exposed to any chemical irritants, even if video evidence indicates an attempt.  Defendant Khateer is accused of spraying bear spray *in the direction of* Sicknick, but the Coroner Diaz's examination conclusively establishes that no chemical irritant made contact with Sicknick's body, nor was it breathed in to produce any internal irritation.

> The office, which released the report Monday, classifies a death as natural when "a disease alone causes death. *__If death is hastened by an injury, the manner of death is not considered natural.__*"

Jordan Pascale, "D.C. Medical Examiner Rules Capitol Police Officer Brian Sicknick Had Two Strokes, Died Of Natural Causes," DCIST *[program of WAMU 88.5 of American University Radio]*, April 19, 2021, **https://dcist.com/story/21/04/19/d-c-medical-examiner-rules-capitol-police-officer-brian-sicknick-had-two-strokes-died-of-natural-causes/** *(Emphasis added).*

The D.C. Medical Examiner received the body shortly after January 7, 2021.  Sicknick died the day after January 6, 2021.  Therefore, no healing occurred in his Sicknick's body that would have obscured any physical or chemical injuries or irritation.

The fact that D.C. Chief Medical Examiner Diaz found no signs of chemical irritation *externally or internally* – that is, no chemical irritation to Officer Sicknick's mouth, esophagus, throat, or lungs nor to his eyes or skin – means that Officer Sicknick was not, in fact, sprayed with any chemical on January 6, 2021.  Defendant Khateer may be aimed a spray of gas or chemical in Sicknick's direction (of which Defendant expresses no opinion, just *arguendo*, hypothetically) but if Khateer did actually do so, ***he missed.***  Officer Sicknick experienced no chemical irritation, according to the  D.C. Chief Medical Examiner, and was not in fact gassed or sprayed with any chemical.

The D.C. Medical Examiner took 90 days, to complete this autopsy and report, and presumably reached a painstaking and careful conclusion, in conflict with the strong winds of political assumptions and beliefs.  While false narratives raged and took hold in the public's mind, Diaz was slow and no doubt meticulous and careful.

Yet the Attorney General Merrick Garland once again claimed on January 4, 2023, in a press release that five police officers died on or as a *direct* result of events on January 6, 2021.

The Attorney General of course is not a random political appointee speaking politically.

9

The Attorney General is the official ultimately responsible for all prosecutions at the federal level.  The Attorney General is in the chain of command, the top of the chain of command, of this case now before the Court.  The Attorney General should not be making any statements at all of any nature while hundreds of "cases" – really one giant case subdivided – on the same topic are still pending and awaiting trial.  Like Presidents, an Attorney General should be saying absolutely nothing about pending criminal cases.

Furthermore, these comments were not in a political speech.  The same U.S. Department of Justice for whom the U.S. Attorney and the AUSA prosecutor are employed issued a press release:

https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-second-anniversary-january-6-attack-capitol  *(Emphasis added).*

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE
Wednesday, January 4, 2023

### Attorney General Merrick B. Garland Statement on the Second Anniversary of the January 6 Attack on the Capitol

Friday, Jan. 6, 2023, will mark 24 months since the attack on the U.S. Capitol that disrupted a joint session of the U.S.

10

Congress in the process of affirming the presidential election results.

Under the continued leadership of the Justice Department, the U.S. Attorney's Office for the District of Columbia and the FBI's Washington Field Office, the investigation and prosecution of those responsible for the attack continues to move forward at an unprecedented speed and scale.

Attorney General Merrick B. Garland made the following statement:

"Two years ago, the United States Capitol was attacked as lawmakers met to affirm the results of a presidential election. Perpetrators attacked police officers, targeted and assaulted members of the media, and interfered with a fundamental element of our democracy: the peaceful transfer of power from one administration to the next.

"Since then, countless agents, investigators, prosecutors, analysts, and others across the Justice Department have participated in one of the largest, most complex, and most resource-intensive investigations in our history. I am extremely grateful for the dedication, professionalism, and integrity with which they have done this work. This investigation has resulted in the arrest of more than 950 Defendant for their alleged roles in the attack. We have

> secured convictions for a wide range of criminal conduct on January 6 as well as in the days and weeks leading up to the attack. Our work is far from over.
>
> "We will never forget the sacrifice of the law enforcement officers who defended the members of Congress and others inside the Capitol that day. ***And we will never forget the five officers who responded selflessly on January 6 and who have since lost their lives: Officer Brian Sicknick, Officer Howard Liebengood, Officer Jeffrey Smith, Officer Gunther Hashida, and Officer Kyle DeFreytag.***
>
> "The Justice Department remains committed to honoring them. We remain committed to ensuring accountability for those criminally responsible for the January 6 assault on our democracy. And we remain committed to doing everything in our power to prevent this from ever happening again."
>
> ***

Long before the facts were known, the U.S. Department began this false narrative, apparently for purely political purposes, including in a January 8, 2021, press release: "**Statement of Acting Attorney General Jeffrey A. Rosen on the Death of U.S. Capitol Police Officer Brian D. Sicknick**," https://www.justice.gov/opa/pr/statement-acting-attorney-general-jeffrey-rosen-death-us-capitol-police-officer-brian-d

One day after Officer Sicknick died on January 7, 2021, the U.S. Department of Justice on the following day January 8, 2021 – 88 days *before* the D.C. Chief Medical Examiner determined Sicknick's cause of death – had already leaped to an unfounded conclusion.

> **Department of Justice**
>
> Office of Public Affairs
>
> ---
>
> FOR IMMEDIATE RELEASE
>
> Friday, January 8, 2021
>
> ### Statement of Acting Attorney General Jeffrey A. Rosen on the Death of U.S. Capitol Police Officer Brian D. Sicknick
>
> Acting Attorney General Jeffrey A. Rosen issued the following statement:
>
> "Our thoughts and prayers are with the family and fellow officers of U.S. Capitol Police Officer Brian D. Sicknick, who succumbed last night to the injuries he suffered defending the U.S. Capitol, against the violent mob who stormed it on January 6th. The FBI and Metropolitan Police Department will jointly investigate the case and the Department of Justice will spare no resources in investigating and holding accountable those responsible."

This false narrative polluted the jury pool and has deprived January 6 Defendants of a fair trial for the following two years. Thus, there is far more than risk-averse concern that this

persistent but knowingly-false narrative may affect the trial in this case without the Court acting to ensure a fair trial. The risk that this trial will be affected by this falsehood is real.

Meanwhile, there were four suicides of law enforcement officers after January 6, 2021 -- Officer Howard Liebengood, Officer Jeffrey Smith, Officer Gunther Hashida, and Officer Kyle DeFreytag.

However, there is no evidence of any connection between these suicides and any event on or related to January 6, 2021. This is a recognized logical fallacy called **"Post hoc, ergo propter hoc"** or "After this, therefore because of this." This is also referred to as a **Post hoc logical fallacy**.

Specifically, "assuming that since A happened before B, A must have caused B."

The fact that January 6 2021, occurred and then the suicides occurred does not support any causal relationship between one and the other.

Nor is there the slightest common sense or rationality to the suggestion. During the months following January 6, 2021, while the police were celebrated and honored nationwide, the only possible scenario one can imagine for any connection is a dark motivation we would not be able to say in polite company. We can only think it.

Officer Fanone and Officer Dunn have become minor celebrities, with books being published. They will never have to buy a beer with their own money again, at least not among the company of Leftists. And yet we are invited to leap off a cliff assuming some reason why four law enforcement officers would commit suicide *because of* January 6, 2021, rather than *because of* something else in their lives. Cliff-diving has now replaced the role of evidence, facts, and logic.

The political world, the U.S. Department of Justice, and Attorney General are engaging

in conjecture.  Some think that when law enforcement officers have to enforce the law against their fellow U.S. citizens they are traumatized.  In fact, however, all law enforcement officers all the time or almost all the time are enforcing the law against fellow citizens.  The conjecture has no basis in common sense.  Since all law enforcement involves officers engaging with U.S. citizens, the imaginative explanations offered – without any evidence – are inadequate.

Sadly, suicides happen far too often.  Trying to understand why one has made that decision is often one of many very difficult issues when it happens.  Suicide is often an act which no one else is able to comprehend.  Looking from the outside at least it is a fundamentally irrational act.  Yet completely inventing imaginative reasons in order to try to convict someone not responsible is no better.

**CONCLUSION**

The Court should enter the requested order in limine.


Dated: February 19, 2023                              Respectfully Submitted,
                                                     */s/ John M. Pierce, esq.*
                                                     John M. Pierce, esq.
                                                     21550 Oxnard Street
                                                     3rd Floor, PMB #172
                                                     Woodland Hills, CA 91367
                                                     Tel: (213) 400-0725
                                                     Email: Jpierce@johnpiercelaw.com
                                                     Attorney for Defendant

`` 
CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, February 19, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.