# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-00552-DLF** |
| **KENNETH JOSEPH OWEN THOMAS,** | : | |
| | : | |
| **Defendant** | : | |

DEFENDANT KENNETH JOSEPH OWEN THOMAS'S MOTION TO DISMISS ON GROUNDS OF MULTIPLICITY AND INSUFFIENCY OF FACTUAL BASIS FOR ASSAULT CHARGES

COMES NOW Defendant Kenneth Joseph Owen Thomas ("Defendant" or "Thomas") with this motion to dismiss the assault charges in this case on two grounds. First: (1) multiplicity. In that the five assault allegations appear to stem from a common set of actions and intent; and second (2) that the 'assaulting officer' counts do not allege conduct that rises to the level contemplated by 18 U.S.C. §111(a)(1).

## BACKGROUND

Like untold thousands of protestors and demonstrators that have gone before, defendant Thomas participated in a demonstration that turned violent in some respects. Heavily-armored riot police with shields used force to advance against protestors. Unlike such demonstrators in the past, however, Thomas finds himself charged with numerous *felony* assault charges for allegedly merely brushing or rubbing against riot police or pushing against police shields during hectic moments of crowd chaos.

1

(As a side note, the government's provided discovery consists of bodycam and cell phone videos purportedly depicting Thomas on Jan. 6 outside the Capitol in the late afternoon.  Thomas' alleged physical contacts with law enforcement shields and armor are obvious impulsive displays, devoid of any intention of harming officers.)

In this motion, Thomas cites extensive case law indicating that 1) separate counts of aggravated assault are not warranted for each officer touched in a crowd-control skirmish line unless a defendant purposely reflected separately on each alleged "assault"; and  2) mere harmless elbowing or pushing resistance, or mere brushing against a police shield during demonstration does not constitute aggravated felony assault on law enforcement, as contemplated by 18 U.S.C. §111.  Moreover:

1. Riot officers are specially equipped and trained officers.  They don special crowd control gear in preparation, expectation and anticipation of making forceful contact with protestors in chaotic situations.
2. Riot officers wearing "hard gear" then position themselves in <u>aggressive advancement formations</u> in order to push out crowds of demonstrators.  They intend and expect to make physical contact.
3. Under these circumstances it is unfair and a violation of the 6th amendment to subject protestors making contact with officers to prosecution for felony assault under 18 U.S.C. Section 111.
4. After all, the very reason that mere simple assaults on law enforcements are treated as aggravated assaults is that officers need protection in a wide variety of situations so that officers may enforce the law and collect evidence.  But in circumstances where officers are equipping and using themselves as forceful crowd control tools, the basis for special protections evaporates.

Moreover,

5. Demonstrators who brush or push against multiple officers during protest chaos should not be subjected to felony assault prosecutions at all—and certainly not separate prosecutions for every police shield rubbed against.

**Thomas' indictment chills 1st amendment protections.**

Thomas should not face more than 100 years in prison for participating in a protest rally that got out of hand. Such overcharging of January 6 rally attendees chills first amendment rights of future Americans who will fear speaking out against government in public protests.

In *Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court discussed the concept of force and violence in context of federal gun laws. "As we have discussed, however, the term "physical force" itself normally connotes force strong enough to constitute "power." Id. "A crime that can be committed through mere recklessness does not have as an element the "use of physical force" because that phrase "has a well-understood meaning applying only to intentional acts designed to cause harm."

As the great Judge Posner wrote in *United States v. Watts* 798 F.3d 650 (7th Cir. 2015) regarding an adjacent assault statute (18 U.S.C. § 113(a)(3), "This is a badly drafted statute." "Neither 'assault' nor 'simple assault' is defined," wrote Posner. "Although the word 'assault' is sometimes used loosely to include a battery, and the whole expression 'assault and battery' to mean battery, it is more accurate to distinguish between the two separate crimes, assault and battery, on the basis of the existence or non-existence of physical injury or offensive touching." *Id.*, citing Wayne R. LaFave, 2 *Substantive Criminal Law* § 16.1 (2d ed., Westlaw database updated Sept. 2014) (footnotes omitted).

Courts in a wide variety of other situations have likewise discussed the varying dimensions of federal "assault" statutes. A general consensus is that "assault" as used in the federal criminal code does not include mere touching, bumping, or brushing against another person. See *United States v. Vallery*, 437 F.3d 626, 631–32 (7th Cir.2006) (assault requires an intent to injure).

Many model jury instructions, including the Seventh Circuit Pattern Criminal Jury Instruction defining assault state that "assault" means "to intentionally attempt or threaten to inflict bodily injury

upon another person with the apparent and present ability to cause such injury that creates in the victim a reasonable fear or apprehension of bodily harm.

Plainly, Mr. Thomas' alleged conduct on January 6, of merely rubbing, pushing or brushing with parts of his body against police shields does not constitute "assault" as contemplated in 18 U.S.C. Section 111(a). In the words of the *Vallery* Court:

> There is no dispute that "simple assault" is a crime "committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." Chestaro, 197 F.3d at 605 (quoting United States v. Johnson, 637 F.2d 1224, 1242 n. 26 (9th Cir.1980)); accord United States v. Ramirez, 233 F.3d 318, 321–22 (5th Cir.2000), overruling on other grounds recognized by United States v. Longoria, 298 F.3d 367, 372 n. 6 (5th Cir.2002).

437 F.3d 626, at 631.

**Thomas' struggle with the five officers at the Capitol on Jan. 6 was a single altercation which constituted a single assault offense instead of five.**

"'Multiplicity' is the charging of a single offense in several counts." 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE, § 142, at 469 (1982). "The vice of multiplicity is that it may lead to multiple sentences for the same offense * * *." Id. at 475. Multiplicitous charges violate the 5th amendment double jeopardy clause.

It appears that the totality of allegations in Thomas' case involve two 30-second scrums amid crowd chaos on January 6 wherein Thomas brushed against or pushed officer shields while videoing the scene with his right hand. Theses facts of Thomas' case are in accord with *Ladner v. United States*, 358 U.S. 169 (1958). In *Ladner*, two federal officers were injured by a single discharge of the defendant's shotgun. The defendant was convicted and sentenced on two counts of assaulting an officer with a deadly weapon, in violation of 18 U.S.C. (1940 ed.) § 254 (now 18 U.S.C. § 111). The

4

Supreme Court reversed Ladner's convictions, stating "we cannot find that Congress intended that a single act of assault [i.e., the single discharge of a shotgun] affecting two officers constitutes two offenses under the statute." *Id.* at 176, 79 S.Ct. at 213.

In *United States v. Theriault*, 531 F.2d 281 (5th Cir.), cert. denied, 429 U.S. 898 (1976) a defendant was sentenced to two consecutive three-year terms for assaulting two federal officers. The assaults in that instance arose out of a single act of the defendant hurling himself over the front seat of a vehicle into the steering wheel. On appeal, the court held it was error to sentence the defendant for two separate offenses under the statute. The court stated that in determining whether a defendant can be convicted for more than one assault under 18 U.S.C. § 111, "[t]he test is whether there is more than one act resulting in the assaults, not whether more than one federal officer is injured by the same act." *Id.* at 285 (citation omitted).

In *United States v. Kazenbach*, 824 F.2d 649 (8th Cir. 1987), a defendant argued that his prison struggle with three guards was a single altercation which constituted a single assault offense instead of three.  The Court rejected the argument because "the evidence sufficiently proved that Kazenbach first struck at Officer Burton while still in his cell, and later bit Officer Siemiatkowski and scratched Officer Small during the officers' attempt to restrain Kazenbach to the bed in the lock-down room."

Thus, courts generally hold that actions may constitute separate "assaults" where a defendant acts in different ways vis-à-vis different officers.  See, e.g., *United States v. Hodges*, 436 F.2d 676 (10th Cir.), cert. denied, 403 U.S. 908, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971), where Hodges gave each one of the five corrections officers individual attention, and in succession did forcibly assault and resist each of the five, all of which constitutes five violations of 18 U.S.C. § 111, not one. When a defendant has time to reconsider his actions, "each assault separated by time" constitutes a separate

5

offense. *State v. Harris*, 243 S.W.3d 508, 511 (Mo.App.2008). Factors such as "time, place of commission, and ... the defendant's intent, as evidenced by his conduct and utterances" determine whether separate offenses should result from a single incident. *State v. Childs*, 684 S.W.2d 508, 511 (Mo.App.1984).

Defendant Thomas, however, is accused of merely contacting multiple officers (or shields) with one arm while holding his selfie phone with his other hand as Thomas buzzed across protest lines. Under the analysis of numerous courts, Thomas' alleged conduct should be charged as one count only. See *State v. Robinson*, 872 S.E.2d 28, 37-38 (N.C. 2022) (vacating an entire guilty plea because "the State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." (citations omitted).

Defendant Thomas plainly did not form a separate intent for each of the alleged contacts with police riot shields. Because there is no indication that Thomas reconsidered his actions between contacts with law enforcement shields, the attack must be recognized as one assault offense allegation.

CONCLUSION

For all the above reasons, the assault charges need to be dismissed in this case.

Dated: February 23, 2023                    Respectfully Submitted,
                                             */s/ John M. Pierce*

                                            John M. Pierce
                                            John Pierce Law P.C.
                                            21550 Oxnard Street
                                            3rd Floor PMB #172
                                            Woodland Hills, CA 91367
                                            P: (213) 349-0054
                                            jpierce@johnpiercelaw.com

CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, February 23, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

_/s/ John M._
_Pierce_

John M. Pierce