**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No.** |
| | **:** | |
| **KENNETH JOSEPH OWEN THOMAS,** | **:** | **1:21-cr-00552-DLF** |
| | **:** | |
| **Defendant** | **:** | |
| | **:** | |

_____

**MOTION TO DISMISS CERTAIN COUNTS FOR MULTIPLICITY AND**
**MEMORANDUM OF LAW IN SUPPORT OF KENNETH JOSEPH OWEN THOMAS'S**
**MOTION TO DISMISS MULTIPLICIOUS COUNTS**

Defendant KENNETH JOSEPH OWEN THOMAS ("Thomas"), through the undersigned

counsel, John L. Pierce, Esq. hereby moves this Court to Dismiss multiplicitous coutns of this

Second Superseding Indictment ("SSI").  In support of this motion, he sets forth the facts and

argument and presents this Memorandum of Law in support of his motion:

I. **INTRODUCTION AND OVERVIEW**

A.  Counts 3, 4, 5, 6, and 7, 18 U.S.C. 111(a)(1)  **– Assaulting, Resisting, or Impeding**

**Certain Officers  --** are the same identical counts.  Not only are they the same

criminal charges, but they involve the same actions alleged to have been done by

Thomas at the same time, in one continuous motion.

B.  Under these facts and circumstances, Count One, 18 U.S.C. 1512(c)(2) is

multiplicious with Count 9, 18 U.S.C. § 1752(a)(2) and Count 11, 40 U.S.C. §

5104(e)(2)(D) **.**

C.  18 U.S.C. § 231(a)(3) -- **Obstructing, impeding, or interfering with any law**

**enforcement officer lawfully engaged in the lawful performance of his official**

**duties incident to and during the commission of a civil disorder** – is the same criminal charge and the same facts as Counts 3, 4, 5, 6, and 7, 18 U.S.C. 111(a)(1) **-- Assaulting, Resisting, or Impeding Certain Officers.** Indeed Count One is vastly harder for the Government to prove under the circumstances.

D. Under these facts and circumstances, Count II, 18 U.S.C. 1512(c)(2) **-- Obstruction of an Official Proceeding and Aiding and Abetting --** is the same crime charged and the same facts as

> i. Count 9, 18 U.S.C. § 1752(a)(2) – **Disorderly and Disruptive Conduct in a Restricted Building,** and
>
> ii. Count 11, 40 U.S.C. § 5104(e)(2)(D) – **Disorderly Conduct in a Capitol Building**, and
>
> iii. Count Ten, 18 U.S.C. § 1752(a)(4) – **Engaging in Physical Violence in a Restricted Building or Grounds**, and
>
> iv. Count 12, 40 U.S.C. § 5104(e)(2)(F) – **Act of Physical Violence in the Capitol Grounds or Buildings,** and

E. Under these facts and circumstances, Count 9, 18 U.S.C. § 1752(a)(2) – **Disorderly and Disruptive Conduct in a Restricted Building** -- is the same crime charged and the same facts as Count 11, 40 U.S.C. § 5104(e)(2)(D) – **Disorderly Conduct in a Capitol Building**.

F. Under these facts and circumstances, Count 10, **18 U.S.C. § 1752(a)(4) – Engaging in Physical Violence in a Restricted Building or Grounds** – is the same crime charged and the same facts as Count 12, 40 U.S.C. § 5104(e)(2)(F) – **Act of Physical Violence in the Capitol Grounds or Buildings.**

Except for Count II, the Court should order the prosecution to pick the charge that it

believes best fits its prosecution, as the closest scenario to what should have happened originally. With regard to Count II, 18 U.S.C. 1512(c)(2) is very general statute of dubious relevance to these facts, possibly prohibited by proper statutory interpretation as a matter of law (that is on appeal) but at the least improbable compared to the precise terms of the statutes cited in Counts 9, 10, 11, and 12.  The Congress' intent to precisely legislate with regard to these facts and alleged actions and circumstances must control over a broad-brush stroke statute of dubious relevance and application.

## II.  OVERVIEW AND FACTS PERTINENT TO THE MOTION

The operative Second Superseding Indictment  ("SSI") in this case, filed on December 14, 2022, at Dkt. No. 49, contains no allegations of fact whatsoever.  We must look if at all to the Statement of Facts filed at Dkt. # 1-1.

Factually, Defendant KENNETH JOSEPH OWEN THOMAS ("Thomas") is accused of

a. Posting social media videos as "Pi Annon" whom the Government believes to be "*Joseph* Thomas" on the way to Washington, D.C., whom the Government alleges without any personal knowledge to be the same person as Kenneth Thomas, including at a large gas station / truck stop in Ashland, Virginia where 60 vehicles headed to *The Capital* – not the *Capitol*  -- were convening.[1]  The Statement of Facts alleges

---

[1]      Note that commonly people do not understand the difference between "the Capitol" and "the Capital," and the DoJ frequently confuses plans and progress of Defendants travelling to the city of Washington, D.C., which is inherently harmless, compared with plans to travel to the U.S. Capitol building, the building where Congress meets.  The attempt to confuse these two is foundational to the Government's prosecution of all January 6, 2021, related criminal cases.  Where there are two interpretations or explanations, one innocent and one establishing guilt, there is necessarily reasonable doubt and an order of acquittal is mandatory.  The economy of Washington, D.C. depends upon millions of visitors to *The Capital City* which they do because the Federal Government with its history and monuments are here.  If merely visiting D.C. were stigmatized, Washington, D.C. would go bankrupt.  Traveling to *the Capitol* is entirely different.

that "in Video 1, Pi Annon addressed the caravan participants, stating "we all are meeting at the Ellipse to listen to Mike Lindell and President Trump speak. After that, we're all going to march together down to the [U.S.] Capitol to listen to Michael Flynn and the events going on down there….See you in D.C."  Thus, the Government alleges, admits, and confesses that the purpose of the caravan of vehicles was to listen to speakers at the Ellipse and at the six (6) demonstrations on the U.S. Capitol Grounds for which the U.S. Capitol Police had issued permits for that day.[2]  Even if the Statement of Facts should not cure the fact-free indictment, it is still an admission by the Government.

    b.  Arriving at the West Terrace of the U.S. Capitol building at approximately 3:00 PM on or about January 6, 2021, and appearing on body cam videos at 3:09 PM, outside on the Capitol Grounds.

    c.  Demonstrating outside the U.S. Capitol on the Capitol Grounds and on the terrace and later after 4:22 PM on the stairs outside of the U.S. Capitol.

    d.  Thomas is not alleged to have ever entered the U.S. Capitol at any time, nor attempted to do so, nor came near the entrances.

    e.  Thomas is not alleged to have caused any property damage.

    f.  Thomas is not alleged to have possessed or wielded or brandished any weapon.  In

---

[2]    The Government alleges that the caravan was assembling in Ashland, Virginia, "On or around midnight on January 6, 2021 (the late evening of January 5, 2021 into the early morning hours of January 6, 2021)…."  Thus, the caravan could easily have reached Washington, D.C. by 3 or 4 AM in light traffic, as in the middle of the night.  **https://www.google.com/maps/dir/Ash-land,+Virginia+23005/Ellipse+Grounds+South,+Washington,+DC+20502/@38.2751345,-77.8214504,7.22z/data=!4m14!4m13!1m5!1m1!1s0x89b1395dbe1e1ef1:0x6b35f29d271a5ce5!2m2!1d-77.4799837!2d37.7590318!1m5!1m1!1s0x89b7a3037ef13f:0x355ff1c5a61cb070!2m2!1d-77.0366435!2d38.8940007!3e0**  Despite difficulties parking during a large demonstration, if the participants had planned to disrupt the 1:00 PM Joint Session of Congress counting Electoral College votes, they would have had no problem reaching the U.S. Capitol well before Noon or certainly 1:00 PM.  Yet they did not.  Joseph Thomas is alleged to have been first sighted at the Capitol at 3:09 PM.  Thus, the evidence is inconsistent with any plan to obstruct the Joint Session of Congress.

fact the charges that commonly allege an enhancement for a dangerous weapon are noticeably absent in this case.

g.  However, allegedly standing between a line of the city of Washington, D.C.'s police force, the Metropolitan Police Department ("MPD") and demonstrators.

h.  In the course of being part of a separation between the two sides, Thomas allegedly bumped along MPD officer's line of riot shields, effectively lining up riot shields into a smooth line with a separation between the crowds and the MPD, or punched a riot shield

i.  Thomas is not alleged to have ever come into contact with the bodies of any law enforcement officer, only their riot shields.

j.  Thomas is not alleged to have harmed any law enforcement in any physical way.

k.  Allegedly urging the crowds not to move backwards when pushed by the line of MPD officers attempting to advance and push back the crowds.

l.  Allegedly resisting the line of MPD officers attempting to advance and push the crowds back, although the Government does not explain if it would have been possible in the crush of the crowds for Thomas to have retreated or if he would have been crushed in the crowd.  The Government is unclear if Thomas was physically unable to move back as the line of MPD officers advanced.

m.  Allegedly yelling and urging the crowd not to move backwards while pushed, although again the Government is not clear if these shouts were to prevent the crowds from being crushed because they had nowhere to go as the line of MPD officers advanced.  This pattern repeated frequently that afternoon all around the Capitol, with law enforcement beating demonstrators and pushing them with no regard for the lack

of any exit path way for the crowds to depart when ordered or beaten or pushed.

n. Departing the U.S. Capitol Grounds  at approximately 4:40 PM on January 6, 2021, when the last (in time) video including Thomas ended (by the clock).[3]

o. Approaching the West Terrace of the U.S. Capitol buildings in a random, uncoordinated, pathway unrelated to anyone else in response to the cries and signs of injured people in distress, displaying no plans to move in formation toward any objective.

p. "Between approximately 3:09 PM and approximately 3:20 PM, THOMAS appeared on the bodycam footages of four separate Metropolitan Police Department ("MPD") officers."  Of course, the Joint Session of Congress was scheduled to meet at 1:00 PM, so clearly Thomas had no serious intent to take any action with regard to the Joint Session of Congress.  He was two hours late if he planned to obstruct an official proceeding, as compared with expressing his political opinions as free speech or petition the government for redress of grievances, both protected Constitutional rights under the First Amendment.

q. Departing the U.S. Capitol building in a conspicuously uncoordinated, random pathway disconnected from anyone else, that is exhibiting no plan.

From these factual allegations, Thomas is accused and being prosecuted, *inter alia*, under

a. Count One, 18 U.S.C. § 231(a)(3) -- Obstructing, impeding, or interfering with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission

---

[3]    The Statement of Facts recites that the 50 minute video had no time stamps but that at about 36 minutes in begins to show the same scenes as shown in other video at around 4:26 PM. Thus, doing the math, this would calculate a 4:40 PM ending to the video, with no other evidence mentioned of Thomas being sighted later than 4:40 PM.

of a civil disorder

b. Count Two, 18 U.S.C. § 1512(c)(2) -- Obstruction of an Official Proceeding and Aiding and Abetting

c. Count Three,  18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding Certain Officers,,

d. Count Four,  18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding Certain Officers,

e. Count Five,  18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding Certain Officers,

f. Count Six,  18 US.C. 111(a)(1)) Assaulting, Resisting, or Impeding Certain Officers,

g. Count Seven,  18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding Certain Officers,

h. Count Eight, 18 U.S.C. § 1752(a)(1)) -- Entering or Remaining in a Restricted Building or Grounds

i. Count Nine, 18 U.S.C. § 1752(a)(2) – Disorderly and Disruptive Conduct in a Restricted Building

j. Count Ten, 18 U.S.C. § 1752(a)(4) – Engaging in Physical Violence in a Restricted Building or Grounds

k. Count Eleven, 40 U.S.C. § 5104(e)(2)(D)  – Disorderly Conduct in a Capitol Building

l. Count Twelve, 40 U.S.C. § 5104(e)(2)(F) – Act of Physical Violence in the Capitol Grounds or Buildings

Assuming, *arguendo*, that the Government may offer the Statement of Facts in lieu of a factually deficient indictment, that a "JOSEPH THOMAS" (alleged to be Kenneth Thomas) known to the Government only by comparing one video against another, not from any personal knowledge, is noticed in the evidence at the earliest at 3:09 PM and is observed, the document claims, on body-worn ("bodycam") videos until 3:20 PM, when he left an area of the "risers" as the document describes.

However, the recess of the Joint Session of Congress on January 6, 2021, **began at 2:13 PM** when Speaker Nancy Pelosi's security detail whisked her away from the Speaker's dais and she "tossed" (figuratively speaking) the presiding officer status to Rep. Jim McGovern (D. - Mass.)  During the prosecution case in chief of *USA v. Stewart Rhodes*, in this District Court, Case No. 1:22-cr-00015, on October 19, 2022, the (then) U.S. House of Representatives Parliamentarian Thomas Wickham testified that Speaker of the House Nancy Pelosi was whisked away from the podium by security at 2:13 on January 6, 2021.

According to the Congressional Record, Rep. McGovern then took over and recessed the House at 2:18 PM. [4]  This would be consistent with McGovern needing about 5 minutes to unexpectedly take over, talk to the USCP and the Parliamentarian about what to do, and to then invoke Rule I, Clause 12.  The records reflect that the Congress reconvened a few minutes later, and finally recessed on or before 2:29 PM.

That is, the decision to recess the official proceeding known as the Joint Session of Congress was reached as early as 2:13 PM, based on causes that existed as early as 1:00 PM.

However, Defendant Thomas was not at the Capitol at 2:13 PM.

Thus, Count II of the crimes charged against Defendant Thomas under 18 U.S.C. 1512(c)(2) is scientifically and chronologically impossible.  Like the majority of Defendants charged relating to the events centered around the events of January 6, 2021 at the U.S. Capitol, it would be a violation of the laws of time and the laws of the universe for Defendant Thomas to

---

[4]      The court may take judicial notice that the House was recessed by the presiding officer at 2:18 PM, pursuant to standing Rule I, Clause 12(b) (allowing for immediate recess without a vote upon notice of a threat).  **Congressional Record House Articles | Congress.gov | Library of Congress,** Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1; Congressional Record Vol. 167, No. 4 (House of Representatives - January 06, 2021)
**https://www.congress.gov/congressional-record/2021/01/06/house-section/article/H76-4**

have caused an effect at the U.S. Capitol before he arrived.

## III.  GOVERNING LAW

### A.  PROHIBITION AGAINST MULTIPLICITY

Rule 12 of the Federal Rules of Criminal Procedure authorizes

> * * *
>
> (3) *Motions That Must Be Made Before Trial.* The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>
> > * * *
> >
> > (B) a defect in the indictment or information; including
> >
> > > * * *
> > >
> > > (ii) charging the same offense in more than one count (multiplicity);
> > >
> > > > * * *

An indictment is multiplicitous if it charges a single offense in separate counts. *See, e.g. United States v. Wilkinson*, 124 F.3d 971, 975 (8th Cir. 1997).   Multiplicity arises when "an indictment charges the same offense in more than one count." *United States v. Mahdi*, 598 F.3d 883, 887 (D.C. Cir. 2010), quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999). *See United States v. Ogba,* 526 F.3d 214, 232–33 (5th Cir.2008) ("A challenge to multiplicity invokes the Double Jeopardy Clause, which protects against multiple punishments for the same offense, where Congress has not authorized cumulative punishment for one offense.") (internal quotation marks and citation omitted).

> "There are at least two species of multiplicity challenges....  The first type arises when a defendant is charged with violating two different statutes, one of which is arguably the lesser included offense of the other. This is the species of multiplicity challenge addressed in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and its progeny. Unless each offense requires proof of an element that the other does not, a defendant may not be charged with both. The second type of multiplicity challenge

arises when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct. In that circumstance, the court inquires 'whether separate and distinct prohibited acts, made punishable by law, have been committed.'"

*United States v. Woerner*, 709 F.3d 527, 539 (5ᵗʰ Cir. 2013) (citing *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007)).  *See also United States v. Rentz*, 777 F.3d 1105, 1119 (10th Cir. 2015); 1A C. Wright, Federal Practice & Procedure sec. 143 at 9-10 (2020).

## B. CONGRESSIONAL INTENT

In many ways, "[t]he more precise and useful inquiry is whether the legislature intended multiple punishments for the conduct contained in an indictment." *United States v. Clarridge*, 811 F.Supp. 697, 702 (D.D.C. 1992).  Moreover, "[i]n trying to determine congressional intent, the Supreme Court has noted in a similar context that a court should 'resolve any ambiguity in favor of lenity when required to determine the intent of Congress in punishing multiple aspects of the same criminal act.' " *Id*., *citing*, *Helfin v. United States,* 358 U.S. 415, 419 (1959).

In other cases, the Government has argued that:

> A defendant may be convicted of and sentenced under different statutory provisions for multiple offenses arising out of the same single act or course of conduct so long as Congress authorized the imposition of such multiple punishments. *See United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) ("If the legislature intends to impose multiple punishment, imposition of such sentences does not violate Double Jeopardy."). "To determine multiplicity vel non, courts generally apply the *Blockburger* test: '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not,' i.e., whether either is a lesser included offense of the other." *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999), and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). If the two offenses each require proof of a fact the other does not, then the charges are not multiplicitous. *Mahdi*, 598 F.3d at 890.

> The *Blockburger* "test focuses on the statutory elements of the offense, not on the proof offered in a given case." *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998). Thus, it is irrelevant whether there is significant overlap in

the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances," as long as each count's elements require proof of a fact that the others do not. *United States v. Manafort*, 313 F. Supp. 3d 311, 314 (D.D.C. 2018); *see id.* ("[T]he test for multiplicity is not whether two 3 counts are based on the same set of facts; rather, it is whether the statutory elements of the two offenses are the same.").

But the Government is in error in confusing elements that are *required* simply with facts that the Government may intend to prove, whether required or not.  The Government notes that the test is the elements of the statute, not the proof the Government intends to offer.  Yet, the Government then falls into that very mistake.

The language of the statutes have the same required elements, especially if the Government were correct that "corruptly" merely means only "unlawfully."  We of course look to the meaning of the words, even if the words are not verbatim the same.

### C.  JURY CONFUSION AND PREJUDICE.

Also, courts have recognized that charging the same offense in multiple counts can "unfairly increas[e] a defendant's exposure to criminal sanctions" because a jury may conclude that given the number of charges, the defendant must be guilty of something. *United States v. Clarke,* 24 F.3d 257, 261 (D.C. Cir. 1994), quoting *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992), abrogated on other grounds, *United States v. Stewart*, 246 F.3d 728 (D.C. Cir. 2001); see also *United States v. Morrow*, 102 F. Supp. 3d 232, 246 (D.D.C. 2015) (multiplicitous charges may suggest to a jury "that a defendant has committed not one but several crimes"), quoting *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981); *United States v. Phillips*, 962 F. Supp. 200, 202 (D.D.C. 1997).

### D.  LENITY

In many ways, "[t]he more precise and useful inquiry is whether the legislature intended

multiple punishments for the conduct contained in an indictment." *United States v. Clarridge*, 811 F.Supp. 697, 702 (D.D.C. 1992). Moreover, "[i]n trying to determine congressional intent, the Supreme Court has noted in a similar context that a court should 'resolve any ambiguity in favor of lenity when required to determine the intent of Congress in punishing multiple aspects of the same criminal act.' " *Id.*, *citing*, *Helfin v. United States,* 358 U.S. 415, 419 (1959).

### E.  DOUBLE JEOPARDY

Convictions for all these counts would violate the Double Jeopardy Clause of the U.S. Constitution.   The Double Jeopardy Clause of the Constitution protects against "multiple punishments for the same offense." *Weathers*, 186 F.3d at 951, *cert. denied*, 529 U.S. 1005 (2000); U.S. Const. amend. V, cl. 2.

The counts of Thomas' indictment expose him to double jeopardy for the same alleged act. The Double Jeopardy Clause protects criminal defendants against both successive punishments and prosecutions for the same criminal offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)); see also *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008); *United States v Mancuso*, 718 F.3d 780, 791 (9th Cir. 2013). When two different criminal statutes are violated, "the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other." *Rutledge v. United States*, 517 U.S. 292, 297 (1996)).

Another way to analyze this is to ask if the government could later charge Thomas with "disorderly conduct" which impedes official government business if he were first acquitted at a trial for "disorderly conduct" with the intent to impede Congress.

## IV. FURTHER ARGUMENT

### A. COUNTS 3, 4, 5, 6, and 7 ALL UNDER 18 U.S.C. 111(a)(1) ARE THE SAME CRIME ON THE SAME FACTS

Counts 3, 4, 5, 6, and 7 are the same crime charged 5 times.  They are charged under exactly the same statute.  While the DoJ has tried to be too cute by half in not providing any information about the crimes charged, here they are hoisted on their own petard.  No factual components of Counts 3, 4, 5, 6, and 7 have been alleged to distinguish these Counts from each other, except the initials of five (5) different law enforcement officers allegedly interfered with.  While normally a Defendant would file for a Bill of Particulars, under the unique set of "January 6 Jurisprudence" judges in this District have abandoned the well-established practice.

As charged, the indictment alleges five (5) different counts concerning 5 allegedly injured officers.  However, this arises from the same incident.  Again,

> "The second type of multiplicity challenge arises when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct.  In that circumstance, the court inquires "whether separate and distinct prohibited acts, made punishable by law, have been committed."

*United States v. Woerner,* 709 F.3d 527, 539 (2016).

Furthermore, standard statutory interpretation requires that the Court find the intent of Congress.  Did Congress intend the same incident to be punished multiple times?   Again, the Government has undermined itself by playing too cute by half with minimal information.  But Defendant asserts that the statute does not suggest that Congress intended to punish him five (5) times for the same alleged event.

One's mind wanders to how the indictment might have been structured differently.  But as presented, the only factual details given are of the police officers complained about.  Thus, there is nothing to save the factually threadbare indictment as it is written as referring to five (5)

different incidents.  The Court is not charged with rewriting the indictment.  That is particularly true when the problem obviously arises from the Government's own tactics of being vague.

With regard to Counts 3, 4, 5, 6, and 7, the Government might have alleged factual details that are different in each Count.  But are those _required_ elements of proving the one single crime?  A subjective choice by the prosecution to add _unrequired_ elements does not create more than one crime.

Here, the Government has followed its abuses  of withholding specific facts supporting the charges.  And the Government has hurt itself in doing so.  The Government has not alleged factual differences between these Counts, because it made the choice to be vague.

### B.  DIFFERENCES THAT ARE NOT REQUIRED ELEMENTS OF PROOF

The Government errs in considering differences that are _not required_ elements of the crimes charged.  For example, if the Government has proven that a defendant has engaged in disorderly conduct in a Capitol building under Count Eleven, 40 U.S.C. § 5104(e)(2)(D)  – Disorderly Conduct in a Capitol Building does it add anything to prove that the Capitol building was restricted as in 18 U.S.C. § 1752(a)(2) – Disorderly and Disruptive Conduct in a Restricted Building?  Not at all.  Disorderly conduct proven in a Capitol building is sufficient.  If a crime is established by the same facts, no additional facts are required.

But the Government is mistaken in thinking that _unnecessary_ differences that it intends to show can create separate crimes.  Thus, if a person carried at the same time two dangerous weapons consisting of (1) a cross bow and (2) a Bowie knife into the U.S. Capitol, this is one crime not two.  Again, the Government lectures us that it is the elements of the statute, not the proof, that count.

If the Government wants to add another count that the accused sported hair died purple

this might allow for proof of different elements, but not _required_ elements necessary to the charge.  Elements that the prosecution _could_ add but doesn't have to don't count.

### C.  18 U.S.C. 1512(c)(2) IS THE SAME CRIME OR A LESSER INCLUDED OFFENSE OF U.S.C. § 1752(a)(2).

18 U.S.C. § 1752(a)(2) prohibits:

**(a)**Whoever—

\* \* \*

(2)  knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

\* \* \*

40 U.S.C. § 5104(e)(2)(D) prohibits:

\* \* \*

(2)VIOLENT ENTRY AND DISORDERLY CONDUCT.—An individual or group of individuals may not willfully and knowingly—

\* \* \*

(D)  utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;

\* \* \*

18 U.S. Code § 1512 – **"Tampering with a witness, victim, or an informant"** [5]

requires that:

\* \* \*

**(c)**Whoever corruptly—

---

[5]   https://www.law.cornell.edu/uscode/text/18/1512

(1) alters, destroys, mutilates, or conceals a record, document, or
other object, or attempts to do so, with the intent to impair the
object's integrity or availability for use in an official proceeding;
or
(2) otherwise obstructs, influences, or impedes any official
proceeding, or attempts to do so,
shall be fined under this title or imprisoned not more than 20 years, or
both.

* * *

Thus, the only differences between 18 U.S. Code § 1512(c)(2) on the one hand and 40

U.S.C. § 5104(e)(2)(D) and 18 U.S.C. § 1752(a)(2) on the other is the qualifier "corruptly."  In

the first statute, the prosecution must prove that an accused acted "corruptly" whereas in the

other two statutes, acting corruptly is not required.

(However, the Government is attempting to peddle the notion that "corruptly" is no more

than "unlawfully."  The Government cannot prove "corruptly" so it wants to convert it into just

wrongfully or unlawfully.  If that interpretation prevails, then there is no difference between the

statutes.)

But, on the other hand, 18 U.S. Code § 1512(c)(2) is clearly not intended to apply to the

physical disruption of an official proceeding, but to tampering with witnesses and destruction of

documents.  This is on appeal now.  18 U.S. Code § 1512(c)(2) is in broad brush strokes and

inapplicable, whereas 40 U.S.C. § 5104(e)(2)(D) and 18 U.S.C. § 1752(a)(2) are specifically on

point.  Nevertheless, as charged by the indictment, they are the same crime, on these facts.[6]

But at most 40 U.S.C. § 5104(e)(2)(D) and 18 U.S.C. § 1752(a)(2) are lesser included

offenses because 18 U.S. Code § 1512(c)(2) requires proof of acting "corruptly" but they do not.

Again, this assumes that the Government is wrong that "corruptly" merely means "unlawfully."

---

[6]      Neither can be proven, and must be struck before submission to the jury, because the
crimes were complete at no later than 2:13 PM and Thomas did not arrive until around 3:00 PM.

### D. 40 U.S.C. § 5104(E)(2)(D) IS THE SAME CRIME OR A LESSER-INCLUDED OFFENSE OF 18 U.S.C. § 1752(A)(2).

18 U.S.C. § 1752(a)(2) prohibits:

> **(a)** Whoever—
>
>> * * *
>>
>> (2)  knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
>> * * *

40 U.S.C. § 5104(e)(2)(D) prohibits:

> * * *
>
>> **(2)** VIOLENT ENTRY AND DISORDERLY CONDUCT.—An individual or group of individuals may not willfully and knowingly—
>>
>>> * * *
>>>
>>> (D)  utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;
>>> * * *

These two statutes – when in the context of the U.S. Capitol building and its grounds – are the same crime.  The fact that they are worded slightly differently does not mean that there is a *required* element of one that is not required of the other.  The Government could allege as to one that the Defendant acted while carrying a brown backpack, but not allege that with regard to the other.  But is that a *required* element of the crime charged?

Is there any indication of the intent of Congress that these are two crimes to be punished individually and twice?

At a minimum, 40 U.S.C. § 5104(e)(2)(D) is a lesser-included offense of 18 U.S.C. § 1752(a)(2).

However, the slight differences do not create separate crimes, when the "restricted buildings or grounds" (18 U.S.C. § 1752(a)(2))  are also "any of the Capitol buildings" (40 U.S.C. § 5104(e)(2)(D)).  Both are activated upon:

    i)       disorderly or disruptive conduct

    ii)      with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress

18 U.S.C. § 1752(a)(2) differs only in that it is activated

    i)       "when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions"

    ii)      "in, or within such proximity to, any restricted building or grounds" as to impede or disrupt the orderly conduct of Government business or official functions."

At most this makes 40 U.S.C. § 5104(e)(2)(D) a lesser-included offense of 18 U.S.C. § 1752(a)(2), because 18 U.S.C. § 1752(a)(2) requires that such conduct "in fact" impedes or disrupts "the orderly conduct" of Government business and 18 U.S.C. § 1752(a)(2) does not require proof that the conduct was actually inside the building but could be near it.


### E.  COUNT 10, 18 U.S.C. § 1752(A)(4)  IS THE SAME CRIME

**CHARGED AND THE SAME FACTS AS 40 U.S.C.
§ 5104(E)(2)(F)**

Similarly, under the same analysis as under ARGUMENT Section D, *supra,* Count 10, 18

U.S.C. § 1752(a)(4) – Engaging in Physical Violence in a Restricted Building or Grounds  –  is

the same crime charged and the same facts as Count 12, 40 U.S.C. § 5104(e)(2)(F) – Act of

Physical Violence in the Capitol Grounds or Buildings.

18 U.S.C. § 1752(a)(4) prohibits:

> **(a)**Whoever—
>
> > * * *
> > (4) knowingly engages in any act of physical violence
> > against any person or property in any restricted building or
> > grounds;
> > * * *

40 U.S.C. § 5104(e)(2)(F) prohibits:

> (2)VIOLENT ENTRY AND DISORDERLY CONDUCT.—An individual or group
> of individuals may not willfully and knowingly—
> > * * *
>
> > (F) engage in an act of physical violence in the
> > Grounds or any of the Capitol Buildings; or
>
> > > * * *

These are the same crime, with no meaningful difference between the elements *<u>required</u>*

to be proven, but as applied to the Capitol.  Again, additional elements that a prosecutor wishes

to prove do not count for this analysis of multiplicity.

Is there any indication of the intent of Congress that these are two crimes to be punished

individually and twice?

At a minimum, 18 U.S.C. § 1752(a)(4) is a lesser-included offense of 40 U.S.C. §

5104(e)(2)(F).

## V.  CONCLUSION

The Court should order that Counts ??? of the Second Superseding Indictment be stricken from the case.

Dated:  February 23, 2023          Respectfully Submitted,

*/s/ John M. Pierce*
John M. Pierce
John Pierce Law
P.C. 21550 Oxnard
Street 3rd Floor
PMB #172
Woodland Hills, CA
91367 P: (213) 349-0054
jpierce@johnpiercelaw.com

-

## **CERTIFICATE OF SERVICE**

     I hereby certify that on February 23, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

              */s/ John M. Pierce*
              John M. Pierce