## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 1:21-cr-00552 (DLF)** |
| **v.** | : | |
| | : | |
| **KENNETH JOSEPH OWEN  THOMAS,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION

The United States of America respectfully opposes Defendant Kenneth Joseph Owen Thomas's Motion to Dismiss for Vindictive and Selective Prosecution. ECF No. 62.

### INTRODUCTION

Thomas alleges that government selectively targeted him for prosecution due to his political beliefs and charged additional offenses as retribution for his refusal to enter into a plea agreement. His motion is factually and legally baseless and should be denied.

Other judges of this Court have rejected similar selective-prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6, 2021. *See, e.g.*, *United States v. Alberts¸* No. 1:21-cr-26, ECF No. 77, (CRC); *United States v. Brock*, No. 1:21-cr-140, ECF No. 57 (JDB.); *United States v. Rhodes*, No. 1:22-cr-15, ECF No., 238 (APM); *United States v. Judd*, No. 1:21-cr-40, ECF No. 203 (TNM)); *United States v. Miller*, No. 1:21-cr-119, ECF No. 67 (CJN.). The same outcome is warranted here.

In support of his selective prosecution assertion, defendant Thomas claims that the government filed a superseding indictment against him when he "indicated that he was firing his attorney and rejecting the plea offer presented by the government." ECF No. 62 at 3. This assertion

is factually flawed:  shortly after Assistant U.S. Attorney Samantha Miller became the assigned prosecutor on this case, she informed defendant's then-attorney, Mr. Joseph Conte, of its intent to file a second superseding indictment based on additional evidence discovered while reviewing the voluminous evidence this case.  The government then elected to allow the defendant additional time to re-consider a prior plea offer, an offer the defendant again rejected.  Defendant's selective prosecution claim is also legally flawed: the Supreme Court has explained that a prosecutor's decision to add charges after a defendant rejects a plea agreement does not violate the Due Process Clause. *Bordenkircher v. Hayes*, 434 U.S. 357 (1978); *United States v. Goodwin*, 457 U.S. 368 (1982).  Defendant further argues that he is being prosecuted for his political beliefs; to support that assertion, defendant cites certain cases where the government did not prosecute protestors, including the 1932 Bonus Marches and the 2020 protests surrounding the federal courthouse in Portland, Oregon. ECF No. 62 at 6-13.  But, in citing to those cases, among many others, Thomas fails to note a vast array of distinguishing facts and procedural considerations that makes all those cases improper comparators to this one.

For these reasons, the defendant's motion should be denied.

## RESPONSE

### RELEVANT FACTUAL BACKGROUND

The government has set forth thorough statements of the facts that gave rise to this case numerous times. *See* ECF 1; *see also* ECF 57 - ECF 59. The government again relies on those detailed statements of fact. However, the brief facts of this case are that, on January 5, 2021, the defendant led a "MAGA Caravan" to Washington, D.C., from Alabama. On January 6, 2021, he attended the "Stop the Steal" rally at the Ellipse before marching to the Capitol. The defendant breached the secure perimeter around the Capitol mounted the stairs and scaffolding on the West

Front before confronting officers on the Upper West Terrace. At approximately 3:30pm, the defendant assaulted numerous police officers as they attempted to hold the line against rioters who were advancing towards the entrances to the Capitol. At approximately 4:30pm, the defendant again assaulted multiple police officers on the Upper West Terrace as they were attempting to clear rioters from the Terrace and Capitol Grounds.

In connection with his actions on January 6, 2021, the defendant was arrested on May 25, 2021, and charged with six charges via a criminal complaint. *See* ECF No 1. On September 1, 2021, the defendant was indicted by a federal grand jury on ten charges: Obstruction of Law Enforcement During a Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) (Count 1); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 2); three counts related to Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. §§ 111(a)(1) (Counts 3, 4, and 5); three felony counts relating to disorderly conduct and violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), (2), and (4) (Counts 6, 7, and 8); and, two counts relating to disorderly conduct and violence in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) and (F). *See* ECF No. 20.

On January 26, 2022, the defendant was indicted on a superseding indictment on precisely the same charges, but the government modified language in certain of the counts to conform to other January 6 cases. ECF No. 29. Finally, on December 13, 2022, in a Second Superseding Indictment (SSI), the defendant was again indicted by the grand jury on the same charges as the prior two indictments and two additional violations of the assault on a federal law enforcement officer statute,18 U.S.C. §§ 111(a)(1). ECF No. 49.

**ARGUMENT**

I.  **Thomas's Claim of Vindictive Prosecution Is Factually and Legally Flawed.**

The defendant's contention that the charges in the SSI were brought as punishment for his refusal to enter a guilty plea is both factually and legally flawed. The government notified the defendant that it intended to supersede *before* defendant ultimately rejected the government's plea offer. But, even if this were not the case, Supreme Court precedent confirms that the government is well within its discretion bring additional charges after a defendant rejects a plea offer, even if those charges are more serious.

*A.  Legal Principles Regarding Vindictive Prosecution.*

"[T]he doctrine [of prosecutorial vindictiveness] precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (citation omitted). "A defendant may prove prosecutorial vindictiveness by submitting either (i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a realistic likelihood of vindictiveness, thereby raising a presumption the Government must rebut with objective evidence justifying its action." *Id.*

The fact that the governments adds more charges after failed plea negotiations does not itself give rise to a vindictiveness presumption. The Supreme Court has held that a defendant's indictment on additional or more serious charges after failed plea negotiations does not violate due process. In *Bordenkircher*, the Court held that the Due Process Clause does not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against a defendant who refused to plead guilty to the offense with which he was originally charged. 434 U.S. 357. The Court reasoned that prosecutors enjoy wide discretion in bringing

4

charges against a defendant, and that in the "give and take" of plea bargaining, there is no element of punishment or retaliation as long as the defendant is free to accept or reject the prosecutor's offer. *Id.* at 363. Similarly, in *Goodwin*, the Court held that a prosecutor's pretrial decision to bring a felony charge against a defendant who had rejected a guilty plea to a misdemeanor did not violate due process. 457 U.S. 368

These decisions stem from the bedrock principle that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher*, 434 U.S. at 364; *see also Goodwin*, 457 U.S. at 382-383 ("*Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."); *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987) ("[P]roof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context.").

Even where a presumption of vindictiveness applies, the government can defeat it by producing "objective evidence" that its motivation in charging the defendant was lawful. *Safavian*, 649 F.3d at 694. That burden is "admittedly minimal—any objective evidence justifying the prosecutor's actions will suffice." *Id.* A proffer showing that after the initial charging decision, the government uncovered new evidence documenting the defendant's conduct—*e.g.*, additional criminal offenses or aggravating features of the offense previously charged—suffices. *See, e.g.*, *United States v. Meadows*, 867 F.3d 1305, 1315 (D.C. Cir. 2017) (observing that "the government's evidence regarding the severity of Meadows' fraudulent conduct—which continued for approximately a year, involved two separate false filing schemes, and resulted in approximately

49 false claims—was sufficient to satisfy this court's admittedly minimal requirement of any objective evidence") (internal citations omitted).

### B. The United States did not bring additional charges in response to Thomas's rejection of a plea agreement.

The defendant has not and cannot establish actual vindictiveness or a likelihood of vindictiveness. Defendant's argument is premised upon an apparent misunderstanding of the discussions that took place between the government and defense counsel beginning in the fall of 2022. Those discussion are summarized below.

On September 19, 2022, Assistant U.S. Attorney (AUSA) Jennifer Rozzoni, who was counsel on the case at the time, extended a plea to the defendant. That plea was set to expire on October 31, 2022. On November 4, 2022, the government contacted defense counsel, noting that the deadline to accept had passed and that the government was acting under the assumption that the lack of response indicated that the defendant was rejecting the plea. *See* Exhibit 1. In that same e-mail, AUSA Rozzoni introduced AUSA Miller, noting she would be taking over the case going forward. *Id.* Three days later, defendant's counsel informed the government that the defendant had rejected the plea and that the parties would need to set a trial date. *Id.*

Prior to and during these plea negotiations, the government was continuing to investigate and review evidence; shortly after AUSA Miller joined the case and began reviewing this evidence, the government determined that certain additional body-worn camera footage showed defendant assaulting additional police officers. Therefore, on November 9, 2022, the same day AUSA Miller filed her notice of appearance in the case, she reached out by e-mail to defense counsel as follows:

The Court's minute order regarding the plea offer states as follows: "If the defendant does not accept the governments plea offer at the November 21, 2022 hearing, the parties shall be prepared to set dates for the filing of pretrial motions and a trial. To that end, the parties shall contact the Courtroom Deputy one week before the November 21, 2022 hearing to provide the Court with plea paperwork or to propose three mutually available dates for trial."

Do you have a few moments this afternoon or tomorrow to discuss the status of the case, the Government's potential superseding indictment, and possible trial dates?

On a telephone call with defense counsel shortly after sending that e-mail, the government discussed the additional assaults that had been discovered, whether the defendant might wish to reconsider his decision to reject the prior plea offer, and potential trial dates. Later that day, AUSA Miller sent another e-mail to defense counsel that included citation, by name, camera number, and timestamp, to the specific body worn camera footage depicting the newly-discovered assaults. *Id.* In connection with these discussions, defense counsel requested, and the government granted, an extension on the deadline to consider the previously offered and already-expired plea offer. *Id.* The defendant again rejected the plea. *Id.* Prior to the scheduled status conference, the parties informed the Court that the defendant had rejected the government's plea offer.  During that status conference, when discussing trial dates, the government informed the Court the government intended to take the defendant to trial on a forthcoming second superseding indictment, which would include at least one additional assault charge. After inquiring about the date on which the new indictment would be returned, the Court then set the case for trial in March 2023. *See* Minute Order, 11/21/2022. On December 13, 2022, the grand jury returned the SSI. *See* ECF 49. On December 15, 2022, the defendant's current attorney, John M. Pierce, entered his appearance on this case, *see* ECF 47, and Mr. Conte withdrew the following day, *see* ECF 48.

Thus, the communications between the parties make clear that the defendant was made aware of the second superseding indictment *before* he finally rejected the government's plea offer:

defendant was provided with the evidence the government intended to use to supersede and given time additional time to review that evidence, but then chose to reject the plea offer. These facts make clear that the prospect of second suspending indictment was not premised upon the defendant's rejection of the previously extended plea offer. Instead, the government's actions were made entirely in good faith and based upon a neutral analysis of the facts that had been uncovered during its investigation of the defendant's actions on January 6.

### C. Supreme Court precedent forecloses Thomas's due process claims.

The case law is well-settled that a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption of vindictiveness in the pretrial context. *See Meyer*, 810 F.2d at 1246. Indeed, the Supreme Court has explained that a defendant's indictment on more serious charges after failed plea negotiations does not violate due process. *Bordenkircher,* 434 U.S. at 363. Vindictiveness is *not* presumed by the simple fact of seeking a superseding indictment after the rejection of a plea offer, even where the prosecution has knowledge of the facts essential to the more serious charge at the time of indictment. *See Goodwin*, 457 U.S. at 370. The Supreme Court has explained as follows:

> An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded. *Id.* at 379.

To show vindictiveness in a pretrial posture, a defendant "must point to something more than routine invocations of procedural rights, such as declining a plea offer." *United States v. Michel*, No. 1:19-cr-148 (CKK), 2022 WL 4182342, at *8 (D.D.C. Sept. 13, 2022) (quoting *Meyer*, 810 F.2d at 1247). The cases cited by Thomas, which largely relate to increased charges after a defendant successfully challenged his conviction, are inapposite. Thus, Thomas cannot establish a

due process violation even if the government had added new charges in response to his decision to reject a plea offer.

Instead, the government may lawfully supersede the indictment—and reserves the right to do so—if it determines that the evidence obtained in its investigation establishes probable cause for additional charges. *See United States v. Reffitt*, No. 1:21-cr-32 (DLF), 2022 WL 1404247, at *3-*4 (D.D.C. May 4, 2022) (finding sufficient evidence to support conviction under § 1512(c)(2) and 2 for an individual on January 6, 2021 who ascended the Northwest Steps and appeared to lead the crowd that assaulted and then overcame officers). A prosecutor "remain[s] free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Goodwin*, 457 U.S. at 382. Accordingly, the Court should reject the defendant's claim of vindictive prosecution.

## II.  **Thomas's Claim of Selective Prosecution is Meritless.**

In a filing that is noticeably devoid of facts but riddled with speculation and insinuation, Thomas alleges the government selectively targeted him for prosecution based on his political beliefs. In support of this argument, Thomas cites to a number of protests and civil disorders, ranging from those that occurred as distantly as the Hoover Administration to those stemming from the 2020 protests around the federal courthouse in Portland. These allegation fails to establish selective prosecution and, accordingly, defendant's motion should be denied.

### A. *Legal Principles Regarding Selective Prosecution.*

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This

presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted). The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive function." *Armstrong*, 517 U.S. at 465.

A claim of selective prosecution seeks to rebut this presumption by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id.* at 463, "such as race, religion, or other arbitrary classification," *id.* at 464 (citation omitted). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463. "[T]he D.C. Circuit has called for a two-pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossoti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); see also United States v. Irish People, Inc., 684 F.2d 928, 946 (D.C. Cir. 1982).

### B.  Thomas fails to proffer evidence on either selective-prosecution prong.

Thomas has failed to make the threshold showing on either of the two selective prosecution

elements. He has not presented and cannot present any evidence suggesting "that (1) [he] was singled out for prosecution from among other similar situated and (2) that [his] prosecution was improperly motivated." *Branch*, 211 F.3d at 144 (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir 1983)). "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463.

> 1. Thomas has not made a colorable showing that the government singled him out for prosecution.

Thomas must first adduce evidence that "other similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Irish People, Inc.*, 684 F.2d at 946 (citation omitted). As a judge of this Court explained, an individual may be similarly situated if he "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than against the defendant." *Stone*, 394 F. Supp. 3d1 (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced. […] A multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another. These may include, inter alia, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant.") (internal citations omitted). Thomas fails to make this showing: a selective-prosecution claim requires the defendant to identify "similarly situated" individuals who "have not been prosecuted," *Irish People, Inc.*, 684 F.2d at 946 (internal citations omitted), and Thomas has pointed to no such individual or group of individuals. To

support his argument, Thomas relies on a mis-telling of a series of wholly unrelated historical events and makes an inapt comparison to protestors in Portland in the summer of 2020.

      *i.  Thomas inaccurately represents historical events in his effort conjure support for his baseless claims.*

Thomas first argues that a series of historical events provide evidence of similarly situated individuals being treated differently than he is.  Among these events are the 1932 Bonus Marches in Washington, D.C., the 2015 Code Pink protests at the Senate Armed Services Committee, the 2018 protests during the confirmation hearings of Supreme Court Justice Brett Kavanaugh, the 1936 occupation of the New Jersey State Capitol by demonstrators, the 1967 occupation of the California state Capitol by the Black Panthers, and the 2011[1] Act 10 protests at the Wisconsin State Capitol. Thomas makes a series of factual errors about these events, all of which undermine his reliance on them as evidence of similarly situated individuals.

Thomas states that during the 1932 Bonus March, "tens of thousands of veterans occupied and encamped on the Capitol grounds for weeks, demanding a bonus." *See* ECF No. 62 at 6. The Bonus Marches took place largely across the Anacostia River in the Anacostia Flats, in what is now Anacostia Park, some three miles from the Capitol Building, before being forcibly cleared by the United States Army with a bayonet charge and tanks.[2] The 2011 Act 10 protest, although disruptive and extremely contentious, never rose to the level of the violent, riotous acts of January 6.[3] Of note, one lawmaker, who was a state representative in Wisconsin during the 2011 protests,

---

[1] Thomas repeatedly states that his event happened in 2014. The Act 10 protests at the Wisconsin Capitol occurred in 2011. The very source he cites makes that plainly apparent. *See* Marc Thiessen, *Democrats were for occupying capitols before they were against it.* WASH. POST (January 14, 2021), *available at* https://www.washingtonpost.com/opinions/2021/01/14/democrats-were-occupying-capitols-before-they-were-against-it/.

[2] *See* Bonus Expeditionary Forces March on Washington, U.S. National Park Service, *available at* https://www.nps.gov/articles/bonus-expeditionary-forces-march-on-washington.htm.

[3] *See* Mary Spicuzza, *Some are comparing the U.S. Capitol riot to Wisconsin's Act 10 protests in 2011. Here are the key differences.* MILWAUKEE JOURNAL SENTINEL (January 8, 2021), *available*

was later elected to the House of Representatives and was present for the events of January 6, 2021; she drew the following distinction regarding two events: "Obviously there were some of the more outright violent people [at the Capitol]. […] It never reached that pitch (during Act 10)."[4]  The referenced 2015 and 2018 protests in the Capitol were purely verbal protests wherein the protestors damaged no property, injured no law enforcement officers, and made no threats of violence against elected officials.[5] Finally, the 1936, 1967, and 2014 protests at the New Jersey, California, and Wisconsin state Capitol buildings, respectively, were matters handled by state law enforcement and state prosecuting authorities, and were thus outside of the charging and prosecuting discretion of the Department of Justice. But, most importantly, while these protests did seek to use disruption to bring attention to a political cause, not one of them used violence to disrupt the peaceful transition of power between presidential administrations.  Thus, the defendant has failed to show that any of the protestors at these events were "committed roughly the same crime under roughly the same circumstances" as defendant Thomas, "but against whom the law has not been enforced." *See Lewis*, 517 F.3d at 27-28.

> ii.  *The federal prosecutions related to the 2020 Portland protests are improper comparators to the case against Thomas.*

The defendant next argues that he is being treated more severely from those who were arrested in connection with the 2020 protests outside of the federal courthouse in Portland, Oregon. ECF No. 62 at 11. He contends that many of those involved with the Portland protests engaged in

---

*at* https://www.jsonline.com/story/news/2021/01/08/wisconsin-act-10-protests-vs-capitol-riot-breach-4-key-differences-violence-arrests-deaths-damage/6584619002/.

[4] *Id.*

[5] *See* Jeremy Hebb, *McCain Calls Capitol Hill protestors 'low-life scum.'* Politico (January 29, 2015), *available at* https://www.politico.com/story/2015/01/john-mccain-code-pink-lowlife-scum-114724; *see also* Sophie Tatum, *More than 300 protestors arrested as Kavanaugh demonstrations pack Capitol Hill.* CNN (October 5, 2018), *available at* https://www.cnn.com/2018/10/04/politics/kavanaugh-protests-us-capitol/index.html.

conduct "generally far more severe." *Id*. But, the defendant fails to make any specific factual comparisons to any Oregon defendants and does not even attempt to examine those cases, their facts, or the government's charging decisions in them. Instead, defendant simply incorporates by reference a motion to dismiss in a separate January 6 case. *United States v. Miller*, No. 1:21-cr-119, ECF No. 67 (CJN.).  In that unsuccessful motion, Miller relied on 247 pages of attachments, comprising of 31 cherry-picked complaint packages from the District of Oregon to assert that those 31 criminal defendants' actions in Oregon mirrored his own on January 6, 2021. *Id.,* ECF No. 32.

Judge Nichols denied Miller's motion, the very motion that defendant Thomas has now adopted as his own.  Nichols found "there are obvious differences between those […] who stormed the Capitol on January 6, 2021, and those who rioted in the streets of Portland in the summer of 2020. The Portland rioters' conduct, while obviously serious, did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power. Nor did the Portland rioters, unlike those who assailed America's Capitol in 2021, make it past the building's outer defense." *Miller*, No. 1:21-cr-119, ECF No. 67 at 3. Judge Nichols found that the Portland riots were so different in both kind and degree from the uprising at the Capitol that the Portland cases were not appropriate comparators to Miller's. *See id.*

The same reasoning applies to defendant Thomas's case. First and foremost, the government charged nearly all defendants in the listed Oregon cases with civil disorder or assault offenses. Thomas is also charged with civil disorder and assault offenses. He has accordingly shown no disparate treatment in the government's charging approaches. Instead, he focuses on the manner in which the government has proceeded with and ultimately resolved the Oregon cases and contrasts it the "years in federal penitentiaries" faced by January 6 defendants "for merely brushing or pressing against cops or tossing a traffic cone or a water bottle." ECF 62 at 11. This

presentation—which compares the charges that have been brought against Thomas to the final resolution in forty-five handpicked Oregon cases—"falls woefully short of demonstrating a consistent pattern of unequal administration of the law." *United States v. Bernal-Rojas*, 933 F.2d 97, 99 (1st Cir. 1991). At the same time, the defendant has greatly minimized his individual conduct on January 6 to make it seem comparable to that of the protestors in Portland. The defendant did not "merely [brush] or [press] against cops or [toss] a traffic cone or a water bottle" during a protest. ECF 62 at 11. This framing misrepresents the defendant's actions on January 6.

An accurate recounting of the defendant's actions on January 6 makes it clear that the cases from Portland are improper comparators because those defendants and Thomas are not similarly situated. *Stone*, 394 F. Supp. 3d at 31. On January 6, 2021, the defendant pushed his way to the front of the line of protestors on the West Front before climbing the stairs and through scaffolding to confront officers on the West Terrace, where he remained for more than two hours, despite repeated instructions by law enforcement to leave.  During that time, the defendant assaulted five officers while trying to advance the line of rioters towards the police line, which had formed in an attempt to clear rioters from the Upper West Terrace. The defendant engaged in the assaults against law enforcement officers while elected lawmakers and the Vice President of the United States were present inside the Capitol building and were attempting to certify the results of the 2020 Presidential Election, as was their duty under Article II of the Constitution. These assaults were captured on both body worn camera footage and in social media videos that he, himself, took and posted to social media. In all these actions, defendant's desire to prevent the certification of the 2020 Presidential Election was the precise reason he traveled to Washington, D.C., made his way to the Capitol, mounted scaffolding in order to make it to the Upper West Terrace, and assaulted law enforcement officers while attempting to advance the throng of rioters closer to the Capitol

and the elected representatives therein.

By contrast, the Oregon defendants to which defendant Thomas claims he was similarly situated, despite committing serious offenses, never entered the federal courthouse structure, never impeded a congressional proceeding, and never targeted a specific federal official. Additionally, the government's evidence in those cases often relied on officer recollections (*e.g.*, identifying a particular offender on a darkened plaza in throngs of people) that could be challenged at trial, whereas here, the government has evidence of defendant's crimes and incriminating statements, evidence that is well-documented and often self-published. These situational and evidentiary differences represent "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in defendant's case. *Branch Ministries*, 211 F.2d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997); *see also Price v. U.S. Dep't. of Justice*, 865 F.3d 676, 681 (D.C. Cir. 2017) (observing that a prosecutor may legitimately consider "concerns such as rehabilitation, allocation of criminal justice resources, the strength and evidence against the defendant, and the extent of the defendant's cooperation" in plea negotiations) (brackets and citations omitted).

Because defendant Thomas has failed to show that his case is similar to those he cherry-picked from the Portland prosecutions, he cannot show that the government singled him out for prosecution. Therefore, his motion to dismiss for selective prosecution fails the first prong of the inquiry, and no further consideration is needed.

2.  <u>Thomas has not made a colorable showing that the government harbored an improper motive in prosecuting him.</u>

Nonetheless, even if the Court continues to the second prong of the selective prosecution inquiry, the defendant also has failed to adduce any evidence that improper motives undergird this prosecution. The defendant relies purely on insinuation and inference to support this claim. He

does not even attempt to state what particular characteristic, political or otherwise, would even form the basis of the government's purportedly improper actions against him. *See* ECF 62 at 11. Moreover, the defendant presents no evidence linking any Oregon defendant to a particular political viewpoint, which, again, makes those cases inappropriate as comparators. Instead, the defendant's motion rests on rank conjecture in suggesting that political favoritism has guided the government's charging and plea decisions. To succeed on a claim of selective prosecution, "[s]peculation is not enough" to find that the government has acted based on an improper motive. *Miller*, No. 1:21-cr-119 (CJN) at 3. "[A] defendant must provide something more than mere speculation or 'personal conclusions'" of selective prosecution. *Stone*, 394 F. Supp. 3d  at 31 (quoting *Armstrong*, 517 U.S. at 470). Plainly, the defendant has not done so here.

Different from the defendant's contrived hypotheses surrounding the government's prosecutorial decisions, the reality is that the government determined that the defendant's conduct on January 6 warranted a prosecutorial course of action more significant than the cases he has cited in his motion. This decision reflects an appropriate exercise of the government's prosecutorial discretion in balancing the seriousness of defendant Thomas's conduct, the strength of the evidence against him, the need for his rehabilitation, the need to deter him and others from future criminal activity targeting the electoral process, and the allocation of the government's resources. All these factors constitute permissible prosecutorial considerations. *See Price*, 865 F.3d at 681.

The defendant has adduced no evidence that the government initiated these charges in response to his political views. The U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that such a consideration plays no role in his office's charging policies—be it in this investigation or elsewhere. It was the defendant's conduct, not his views, that prompted this prosecution.

**<u>CONCLUSION</u>**

Because the defendant has failed to establish either selective or vindictive prosecution,

the Court should deny his motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

SEAN P. MCCAULEY
Assistant United States Attorney
NY Bar No. 5600523
United States Attorney's Office
601 D Street NW
Washington, DC 20530
Sean.McCauley@usdoj.gov