UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:21-cr-00552 (DLF) |
| v. : | |
| : | |
| KENNETH JOSEPH OWEN THOMAS, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF MATERIALS PURSUANT TO *BRADY V. MARYLAND*

The United States, by and through undersigned counsel, respectfully opposes Defendant Kenneth Joseph Owen Thomas' Motion to Compel Production of Materials Pursuant to Brady v. Maryland, 373 U.S. (1963). Specifically, Defendant Thomas moves to compel the disclosure of (1) any records related to threat assessments by law enforcement for January 6, (2) any U.S. Capitol Police records advising Congress to recess and evacuate, (3) any records reflecting the exact location of barricades at the time of the Defendant's criminal conduct, (4) the materials created by the U.S. House of Representatives Select Committee on the January 6, 2021 Attack on the U.S. Capitol, (5) evidence relating to "agent provocateurs," (6) witnesses whom the Defendant aided and abetted, (7) evidence about "crowd behavior" on January 6, 2021, and (8) information about the type of crowd control gas used and (7) evidence about the use of "amplified public address systems." These requests are either underdeveloped, immaterial, or concern information that has already been provided. The Court should therefore deny the motion.

All the materials identified in the Defendant's motion to compel are either immaterial, outside of the possession, custody, or control of the prosecution team, is duplicative of already provided discovery, or falls outside the scope of Rule 16.

1

**RESPONSE**

**RELEVANT FACTUAL BACKGROUND**

The government has set forth thorough statements of the facts that gave rise to this case numerous times. *See* ECF 1; *see also* ECF 57 - ECF 59. The government again relies on those detailed statements of fact. However, the brief facts of this case are that, on January 5, 2021, the defendant led a "MAGA Caravan" to Washington, D.C., from Alabama. On January 6, 2021, he attended the "Stop the Steal" rally at the Ellipse before marching to the Capitol. The defendant breached the secure perimeter around the Capitol mounted the stairs and scaffolding on the West Front before confronting officers on the Upper West Terrace. At approximately 3:30pm, the defendant assaulted numerous police officers as they attempted to hold the line against rioters who were advancing towards the entrances to the Capitol. At approximately 4:30pm, the defendant again assaulted multiple police officers on the Upper West Terrace as they were attempting to clear rioters from Capitol Grounds.

In connection with his actions on January 6, 2021, the defendant was arrested on May 25, 2021, and charged with six charges via a criminal complaint. *See* ECF No 1. The defendant was released on his own recognizance on June 3, 2021, and arraigned on a first indictment on September 30, 2021. *See* ECF 12; see also Minute Order, 9/30/2021. On December 13, 2022, in a Second Superseding Indictment (SSI)the defendant was indicted by a federal grand jury on ten charges: Obstruction of Law Enforcement During a Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) (Count 1); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 2); five counts related to Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. §§ 111(a)(1) (Counts 3, 4, 5, 6, and 7); three felony counts relating to disorderly conduct and violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), (2), and (4) (Counts 8, 9, and 10); and, two counts relating to disorderly conduct and violence in a Capitol building or grounds, in violation of 40 U.S.C.

# Case 1:21-cr-00552-DLF Document 73 Filed 03/09/23 Page 3 of 14


§ 5104(e)(2)(D) and (F). ECF No. 49.

The United States has provided voluminous discovery in this case. As of March 6, 2023, over 4.91 million files (7.36 terabytes of information) have been provided to the defense Relativity workspace. These files include (but are not limited to) the results of searches of 759 digital devices and 412 Stored Communications Act accounts; 5,254 FBI FD-302s and related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps); 395 digital recordings of subject interviews; and 149,130 (redacted or anonymous) tips. Over 30,000 files that include body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies have been shared to the defense evidence.com video repositories. *All* of this information is accessible to the defense, as well as camera maps and additional tools that assist any defense counsel with conducting their own searches for information that they might believe is relevant. The government has also provided defense counsel with case-specific discovery, including clips of body-worn-camera footage, cell phone videos, and open-source materials depicting the defendant's illegal conduct outside of the U.S. Capitol on January 6, 2021, the Federal Bureau of Investigation's ("FBI") investigative case file about the Defendant, and copies of arrest and search warrants with accompanying affidavits and returns.

The government is committed to ensuring that all arguably exculpatory materials are produced in a comprehensive, accessible, and useable format to Defendant Thomas.

## LEGAL PRINCIPLES REGARDING RULE 16 AND BRADY

Defendant seeks to compel evidence under Rule 16 of the Federal Rules of Criminal Procedure and *Brady*. "The government's *Brady* obligations are separate and distinct from its obligations under Rule 16 of the Federal Rules of Criminal Procedure." *United States v. Flynn*, 411 F. Supp. 3d 15, 28 (D.D.C. 2019).

The government has "an affirmative duty to disclose exculpatory evidence to the defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Badley*, 473 U.S. 667, 676 (1985).

Federal Rule of Criminal Procedure 16, on the other hand, mandates the disclosure of any evidence that is material to the preparation of a defense. *Flynn*, 411 F. Supp. 3d at 28. Under Rule 16, the government must produce documents and objects, including "photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," so long as two requirements are met. Fed. R. Crim. P. 16(a)(1)(E).

First, documents and objects enumerated in the rule must be "within the government's possession, custody, or control." *Id.* To be within the government's "possession, custody, or control," the materials must be within the prosecutor's direct control or "maintained by other components of the government which are 'closely aligned with the prosecution.'" *United States v. Libby*, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). This limitation ensures that courts do not adopt a "monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (applying a narrow view of government control of materials in the *Brady* context) (internal quotation and citation omitted). Tangential investigation of a matter by another arm of the federal government does not automatically place records from that investigation into the control of the prosecution team. *See, e.g., United States v. Chalmers*, 410 F. Supp. 2d 278, 289–90 (S.D.N.Y.

4

2006) (declining to incorporate several agencies outside of the Department of Justice into the prosecution team for Rule 16 purposes).

Second, documents enumerated in the rule must be: (1) material to preparing the defense, (2) intended to be used in the government's case-in-chief at trial, or (3) obtained from or belonging to the defendant. Fed. R. Crim. P. 16(a)(1)(E). To prove materiality under the first factor, defendant must make a preliminary showing that the information sought is in fact material by demonstrating that the document or object would "enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996). The defense must also show that the discovery sought would refute the government's case in chief. *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000). The document or object must bear more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d at 7.

Courts impose such limits on defendants because the rule does not require a "broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." *Jencks v. United States*, 353 U.S. 657, 667 (1957) (quoting *Gordon v. United States*, 344 U.S. 414, 419 (1953)). Moreover, Rule 16 does not convey an entitlement to discovery that is duplicative of documents and objects already provided. *See e.g.*, *United States v. Sutton*, No. CR 21-0598-1 (PLF), 2022 WL 3134449, at *6 (D.D.C. Aug. 5, 2022); *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 346121, at *5 (D. Conn. Feb. 4, 2008).

## ARGUMENT

**I.  Defendant Thomas' request for records related to threats and security arrangements is undeveloped and the requested records are immaterial.**

The Defendant's requests are extraordinarily underdeveloped. His request for information about threat management and security arrangements at the Capitol is cursory and conclusory: he

enumerates a list of items related to security arrangements at the Capitol and then states that he needs them to prepare for trial. ECF 64 at 19. That is insufficiently developed to warrant consideration. *Cf. Barot v. Embassy of Zambia*, 773 F. App'x 6, 6 (D.C. Cir. 2019) ("The court declines to consider the other cursory arguments raised by appellant regarding this claim."); *SEC v. Banner Fund Int'l*, 211 F.3d 602, 613, (D.C. Cir. 2000) (noting that the court may disregard "asserted but unanalyzed" arguments); *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments." (internal quotation marks and citations omitted)).

In any event, the information that the Defendant seeks is immaterial and irrelevant. The government would not use the records in its case-in-chief, nor would they be obtained from or belong to the Defendant. As a result, the defense must show that these communications are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). But Defendant Thomas does not advance any arguments that such records would be material to his defense. Nor is it apparent how such records could be relevant, let alone material, to any issue at trial.[1]

In *United States v. Apodaca*, Chief Judge Howell extensively outlined the application of the materiality prong when reviewing a defendant's motion to compel. In *Apodaca*, the government obtained a significant number of wiretap intercepts between the defendant and numerous other co-conspirators. 287 F. Supp. 3d 21, 36–37 (D.D.C. 2017). Although the government already provided the intercepts involving the defendant, the defendant also sought all intercepts between only the co-conspirators based on a "vague need for potentially exculpatory evidence" in those messages. *Id.* at 40. Specifically, the defendant argued that his lack of participation in those messages would show he did not participate in the conspiracy. *Id.* Defendant

---

[1] As described above, the United States has already provided voluminous discovery in this case in two searchable databases. Among these items are several documents that generally fit within the defendant's broad request.

6

moved to compel the production of those communications. In denying the motion to compel, Chief Judge Howell noted that defendant's request constituted a "burdensome fishing expedition," and held that the defendant's "absence from certain pertinent intercepts of co-conspirators does little to rebut the inculpatory evidence contained in the . . . intercepts the government seeks to use at trial." *Id.* at 39–40. The interpretation of Rule 16 in *Apodaca* appropriately tailored the government's discovery obligations to only materials that address the government's case at trial.

**II.    Discovery related to other potential causes of the certification delay on January 6 is immaterial because it does not tend to exculpate the Defendant.**

Defendant Thomas' motion seeks to compel disclosure of "what threat exactly" led to Congress' recess on January 6, 2021. ECF 64 at 19 (speculating about the importance of alleged pipe bombs). The Defendant argues that the government has the burden to prove that "Thomas, *as an individual*, must have **caused** the Joint Session of Congress to be recessed." ECF 64 at 21 (emphasis in original). Thus, the Defendant argues, evidence that other causes, beyond his actions, which may have also disrupted the congressional proceeding, is exculpatory, relevant, and material. Defendant Thomas is wrong, and he fails to establish that the requested information is relevant—let alone favorable and material—in this case.

Even if evidence existed tending to show that other events caused a disruption to congressional business, that evidence is not necessarily material. Under 18 U.S.C. § 1512(c)(2)), the government must prove that a defendant corruptly "otherwise obstruct[ed], influenc[ed], or imped[ed] any official proceeding" or attempted to do the same. Although proof of but-for causation is sometimes required of the government, duplicative causation applies when, as here, multiple independently sufficient causes exist. *See Burrage v. United States*, 571 U.S. 204, 214–15 (2014); CAUSATION, Black's Law Dictionary (11th ed. 2019). Duplicative causation is the relevant standard for § 1512 because of the nature of riots generally and the facts specific to the

7

Capitol riots on January 6, 2021.

In *United States v. Rivera*, No. 21-cr-060 (CKK), 2022 WL 2187851 (D.D.C. June 17, 2022), the defendant challenged the application of 18 U.S.C. §1752 to the facts of his case. The defendant there argued that he did not "in fact" cause the certification delay "because both Houses of Congress had recessed by the time he had entered the Capitol itself." *Id.* at *6. Judge Kollar-Kotelly rejected this argument because the evidence at trial showed that "even the presence of one unauthorized person in the Capitol is reason to suspend Congressional proceedings." *Id.* She concluded that the government was not required to prove that the defendant was the but-for cause of the delay, because doing so would require "read[ing] terms into statutory provisions that are not there." *Id.* Section 1752(a)(2), she found, was "aimed at protests involving several people who collectively disrupt proceedings but where no individual person's presence or actions would *alone* disrupt proceedings." *Id.* at *6 n.15. In finding Rivera guilty, Judge Kollar-Kotelly reasoned, "Just as heavy rains cause a flood in a field, each individual raindrop contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption." *Id.* at 9. As with the § 1752 charge in *Rivera*, the non-restrictive language of Section 1512(c)(2) contemplates that an official proceeding may be "obstruct[ed], influenc[ed], or imped[ed]" by more than one cause. Requiring proof of but-for causation would, as in *Rivera*, necessitate "read[ing] terms into statutory provisions that are not there." *Id.*

Applying the duplicative causation standard here, Rule 16 applies only to discovery related to the delay caused by Defendant Thomas' conduct. The government has produced that evidence. This case presents the question of whether the Defendant intended to obstruct the certification of the 2020 Presidential Election when he entered the restricted area around the Capitol on January 6

and assaulted five officers in just over an hour. Defendant Thomas, as one of thousands outside the Capitol and one of hundreds assaulting law enforcement, was an independent and sufficient cause to delay the proceedings and thus satisfy his objective: obstruction of the certification of the 2020 election. Congress could not reconvene while rioters were at the Capitol, and Defendant Thomas' violent acts outside the Capitol impeded the official proceeding, regardless of his location at the exact moment that Congress initially recessed. *Id.* at 8-10. Even if Defendant Thomas could identify through discovery or otherwise any number of additional causes to the delay, the discovery would do nothing to rebut the inculpatory evidence already provided to the defense. Therefore, the discovery sought is not material because it does not refute the government's case. Moreover, it is not *Brady* material, because it is not favorable to defendant.

### III.    The government has already produced evidence of barriers around the Capitol grounds on January 6.

Defendant Thomas seeks to compel the production of "locations of barricades and 'restricted area' signs at the exact time of Thomas's arrival." ECF 64 at 25. Specifically, he seeks to compel the production of evidence related to the status of barriers around the Capitol grounds, as well as evidence relating to certain security decisions that were made on or around January 6. For example, defendant seeks "any and all photographs, video recordings, witnesses, discussions in police radio recordings, etc., of exactly where any signs were visible to the crowds ***at the time that*** Defendant Thomas arrived at the vicinity of the U.S. Capitol building." ECF 64 at 26 (emphasis in original).

The requested records are duplicative of surveillance footage from the Capitol grounds, which has already been produced in both the defendant's specific discovery and in global discovery. To the extent that the defendant seeks additional or specific information relating to "the state of the signs" and other barriers around the Capitol at particular times throughout the day, that

evidence can be gleaned from review of the video footage that the government has already produced.[2] And to the extent the defendant seeks work product regarding the government's interpretation of when bike racks were torn down by rioters, for example, they are not entitled to that information. *See Flynn*, 411 F. Supp. 3d at 29 ("Under Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case.") (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). As such, the additional discovery sought would be duplicative of evidence that the government has already provided.

## IV.     The materials created by the House Select Committee to Investigate January 6 are not in the government's custody.

The Defendant next baselessly demands that the entire record of the Select Committee to Investigate January 6 be provided to him, including "investigation depositions, closed hearing transcripts, informal interviews, and interviews notes for anyone the committee stated it has taken testimony from under oath." ECF 64 at 28. Such a demand is without merit because these materials are not in the possession of the United States Attorney's Office.

Any materials that were created by Congress in relation to its independent investigation into the events of January 6, 2021, are not in the possession of the United States Attorney's Office and are thus not subject to disclosure. Only evidence that is "within in the government's possession, custody or control" must be disclosed to the defendant. Fed. R. Crim. P. 16(a)(1)(E). These materials must be within the prosecutor's direct control or "maintained by other components of the government which are 'closely aligned with the prosecution.'" *Libby*, 429 F. Supp. 2d at 6 (quoting *Brooks*, 966

---

[2] Couched within the Defendant's arguments about his need to know the exact location of fencing and "restricted area" signs on January 6 is a lengthy diatribe about what the defendant describes as "Massive Web of Unindicted Operators" who were "shown in videos removing barricades, moving bike racks, and rolling up wire mesh fencing." ECF 64 at 26-27. The government is not aware of any person who was acting on behalf of any government agency as an "agent provocateur" – that is, as a person who committed or acted with the intent to entice another person to commit an illegal or rash act – with respect to January 6, 2021.

F.2d at 1503) *see also United States v. Liddy*, 542 F.2d 76, 83 (D.C. Cir. 1976) (declining to reach the question whether the Jencks Act or *Brady* principles reach "materials in the possession of Congressional Committees").

This limitation ensures that courts do not adopt a "monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *Avellino*, 136 F.3d at 255. Investigation of a matter by another arm of the federal government does not automatically place records from that investigation into the control of the prosecution team. *See, e.g.*, *Chalmers*, 410 F. Supp. 2d at 289–90 (declining to incorporate several agencies outside of the Department of Justice into the prosecution team for Rule 16 purposes); *United States v. Meija*, 488 F.3d 436, 444-45 (D.C. Cir. 2006) (rejecting defense argument that government's discovery obligations extended to securing potentially relevant material held by a foreign government)); *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (observing that "the government cannot be required to disclose evidence that it neither possesses nor controls"); *United States v. Weisz*, 718 F.2d 413, 436 (D.C. Cir. 1983) (noting that the "duty of disclosure attaches in some form once the [g]overnment has first gathered and taken possession of the evidence in question" (quoting *United States v. Brant*, 439 F.2d 642, 644 (D.C. Cir. 1971). The investigative materials used and created by Congress in connection with the events of January 6 are not in the possession of the United States Attorney's Office for the District of Columbia and are thus not subject to disclosure.

Moreover, these materials are irrelevant to the case against the Defendant. Congress, a separate branch of government from the U.S. Attorney's Office, conducted an investigation into the totality of the events of that day. It did not conduct an investigation into the role of Kenneth Joseph Owen Thomas on January 6, 2021. These documents or items would bear no more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d at 7. The items are thus not material

11

because they would not refute some aspect of the government's case in chief. *Armstrong*, 517 U.S. at 463; *Rashed*, 234 F.3d at 1285.

V. **The Defendant's request for witnesses that Thomas aided and abetted in his actions is both speculative and duplicative of material that has already been provided in discovery.**

Defendant Thomas seeks to compel the production of the identities of persons whom Defendant Thomas aided and abetted and would "very likely present or lead to exculpatory evidence." ECF 64 at 31. This showing is insufficient to support discovery compulsion because it is purely speculative. *United States v. Anthony Williams*, No. 1:21-cr-377 (BAH), ECF 108 at 5-6. The Defendant seeks this information so that he may find some hypothetical person who will potentially say that his actions had no connection to the Defendant's that day. Everything that the defendant says about this hypothetical person is conjecture that seems designed to do little more to distract from his own actions on that day.

But, in any event, the requested records are duplicative of the thousands of pages of FBI records that have already been produced in both global and specific discovery in this case. To the extent that the defendant seeks additional information relating to witnesses whom he aided and abetted in their disruption and obstruction of Congress on January 6, that information is and has been available to him in FBI records for months. As such, the additional discovery sought would be duplicative of evidence that the government has already provided.

VI. **The Defendant requests a number of materials that are not material to his case.**
In what amounts to little more than a fishing expedition for fodder for conspiracy theories, the Defendant seeks the disclosure of information related to government "provocateurs" in the crowd that attacked the Capitol, *see* ECF 64 at 28-31, information about the use of chemical crowd control devices by the Metropolitan Police Department and USCP, *id.* at 33-36, and the "failure" until after dark to use an "amplified public address system" to order the crowd dispersed, *id.* at 36-37. These

requests are brimming with insinuation and conjecture that bear no connection to Defendant Thomas' actions on January 6, 2021. As the Defendant astutely observes, "[t]his is *United States v. Kenneth Joseph Owen Thomas*—only." ECF 64 at 21. He is seeking to litigate issues that are at best tangential to his case and his conduct that day so that he may combat what he characterizes as an "allergy" to conspiracy theories. *Id.* at 26. To be subject to the strictures of Brady, the evidence sought must be material to the case against the defendant, *Graham*, 83 F.3d at 1474, meaning that they must refute some aspect of the government's case against the defendant. *Armstrong*, 517 U.S. at 463.

These materials that the defendant now seeks are not subject to discovery because they are not material to the case against Kenneth Joseph Owen Thomas. *United States v. Marshall*, 132 F.2d 63, 69 (D.C. Cir 1998) ("To give rise to a disclosure obligation, the evidence's material must, of course, be evident to a reasonable prosecutor); *United States v. Slough*, 22 F. Supp 3d 1, 5 (D.D.C. 2014) (requested evidence must bear "more than some abstract logistical relationship to the issues in the case."); United States v. Williamson, 2014 WL 12695538, at *2 (D.D.C. Oct. 23, 2014) (Rule 16 cannot be used to engage in a fishing expedition"); cf. United States v. George, 786 F. Supp. 11, 15 (D.D.C. 1991) ("At least one of the rationales behind the materiality requirement (and limiting discovery by criminal defendants generally) is to insure that the government not expend excessive time and effort securing documents for the defendant."). Absent a showing of materiality, the Defendant's motion for these materials must be denied.

## **CONCLUSION**

For the aforementioned, the Defendant's motion to compel discovery under *Brady v. Maryland* should be denied in full.

                        Respectfully submitted,

                        MATTHEW M. GRAVES
                        United States Attorney
                        DC Bar No. 481052

By:

                        */s/ Samantha R. Miller*
                        SAMANTHA R. MILLER
                        Assistant United States Attorney
                        New York Bar No. 5342175
                        United States Attorney's Office
                        For the District of Columbia
                        601 D Street, NW 20530
                        Samantha.Miller@usdoj.gov

                        SEAN P. MCCAULEY
                        Assistant United States Attorney
                        New York Bar No. 5600523
                        United States Attorney's Office
                        601 D Street NW
                        Washington, DC 20530
                        Sean.McCauley@usdoj.gov