UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:21-cr-00552 (DLF) |
| v. : | |
| : | |
| KENNETH JOSEPH OWEN THOMAS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS ON MULTIPLICITY GROUNDS RE ASSAULT CHARGES**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Kenneth Joseph Owen Thomas's Motion to Dismiss on Grounds of Multiplicity and Insufficiency of Factual Basis for Assault Charges. ECF No. 63.

**INTRODUCTION**

Defendant raises two claims: that the government's indictment is multiplicitious and that there is insufficient factual basis to support the five assault counts in the Second Superseding Indictment (SSI). ECF No. 63. These counts are not multiplicitious, as the five assaults are separate in location, time, victim, and impulse. *See United States v. Duran*, 96 F.3d 1495, 1498 (D.C. Cir. 1996). Moreover, multiplicity does not provide grounds for dismissing counts in the indictment; instead, any potential double jeopardy issues may be remedied at sentencing where the Court can address these concerns based on the full factual record. Additionally, the defendant's factual concerns related to the assault charges, which the government construes as a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(b), are unfounded. "'The operative question is whether the allegations, if proven, would be sufficient to permit a jury to' conclude that the defendant committed the criminal offense as charged." *United States v.*

1

*Mostofsky*, 579 F.Supp. 3d 9, 14 (D.D.C. 2021) (quoting *United States v. Sanford, Ltd.*, 859 F.Supp. 2d 102, 107 (D.D.C. 2012)).   Here, the defendant is alleged to have punched, shoved, leaned against, grabbed a baton, and pushed a riot shield while yelling encouragement to the mob around him during five separate encounters with law enforcement protecting the Capitol on January 6, 2021.  These allegations are sufficient to show that the defendant assaulted, resistant, opposed, impeded, intimidated, or interfered with a federal officer engaged in the performance of his or her duties.  *See* 18 U.S.C. § 111.  Therefore, the defendant's motion should be denied.

<b><u>RESPONSE</u></b>

<b>RELEVANT FACTS</b>

The defendant, in at least five separate instances, proactively and forcibly attacked law enforcement on January 6, 2021.  Some of the evidence showing the defendant's five assaults may be summarized as follows:

- **Count Three:**  At 3:30 p.m., the defendant runs up a small set of stairs and punches and/or pushes his fists directly into the chest of Metropolitan Police Department (MPD) Officer R.A. (Figure 1); Officer R.A. then pushes the defendant back down the set of stairs (Figure 2).





*Figure 1 & 2*

- **Count Four:** A second later, the defendant runs up the set of stairs a second time (Figure 3 and 4) and punches and/or pushes MPD Officer M.N. in the chest (Figure 5).





*Figure 3, 4, & 5*

- **Count Five:** Almost an hour later, at around 4:22 p.m., the defendant, while holding his phone in his right hand pushes against MPD Officer R.A.'s riot shield with his left arm with his left hand balled in a fist (Figures 6, 7, and 8). After pushing with his left arm, the defendant turns around and uses his back to continue pushing against officers.





*Figure 6, 7, & 8*

- **Count Six:** Four minutes later, beginning at 4:26 p.m., and about twenty yards back from the defendant's previous interaction with law enforcement, as the defendant repeatedly, and in angrier and angrier tones, shouts, "HOLD THE LINE!" Police officers, who were attempting to move the mob of rioters off of Capitol Grounds, were in a line chanting, "move back!" while slowly advancing forward and physically moving the crowd backwards. The defendant raised his left hand in a fistand then joined arms with other rioters to push violently with their backs up against the line of police, including MPD Officer K.V., while continuing to shout "HOLD THE LINE!" and , "PUSH!"



5



*Figure 9, 10, & 11*

- **Count Seven:** Two minutes later, at 4:28 p.m., after descending a small set of stairs, the defendant reengaged with the police line and pushed into MPD Officer R.N.'s riot shield multiple times. He also again chanting, "HOLD THE LINE!" while pushing and then grabbing an officer's baton.





*Figure 12, 13, 14, 15, & 16 (left to right)*

**ARGUMENT**

**I.   The Defendant is Appropriately Charged with Five Separate Assaults.**

  The defendant argues that because his physical contact with police officers was in quick succession and formed a part of "two 30-second scrums amid crowd chaos," his conduct should constitute "a single altercation" and "a single assault offense instead of five." ECF No. 63 at 2-6. The defendant did engage in a continuing course of conduct that can generally be described as obstructing law enforcement officers during a civil disorder, which is why he is charged with a single violation of 18 U.S.C. § 231 under Count One. *See* ECF No. 49. However, during the hours that he obstructed law enforcement's efforts generally, the defendant committed discrete assaultive conduct by physically engaging with five separate officers, in distinct ways, in different locations, and driven by separate impulses.

  The Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. Crosby*, 20 F.3d 480, 483 (D.C. Cir. 1994) (citations omitted). "To claim benefit of the guarantee, 'a defendant must show that the two offenses charged are **in law and fact** the same offense.'" *Id.* (emphasis added) (citing *United States v. Benefield*, 874 F.2d 1503, 1505 (11th Cir. 1989)). One of the factors courts consider as to whether counts are multiplicitous is "whether there is more than one act resulting in the assaults." *See* ECF No. 63 at 5 (citing *United States v. Theriault,* 531 F.2d 281 (5th Cir. 1976)). Courts also consider whether each assault has a separate,

7

corresponding victim, or took place in separate locations.  *See, e.g., United States v. Duran*, 96 F.3d 1495, 1498 (D.C. Cir. 1996); *United States v. Mejia*, 545 F.3d 179, 205 (2d Cir. 2008) (no multiplicity issues where the appellants were "convicted of three counts of the same criminal violation, assault, but the assaults were based on two separate drive-by shootings that resulted in the shooting of three separate victims"); *see also, e.g., United States v. Sandstrom*, 594 F.3d 634, 652 (8th Cir. 2010) (denying any multiplicity issues where "the two attacks on McCay . . . were separated by both time and location. The first attack occurred at 9th Street and Spruce Avenue at 6:00 a.m. The second attack occurred at 9th Street and Brighton Avenue approximately ten minutes later.") (citations omitted).  On closer calls, courts often apply the "impulse test," where they review whether "'the unlawful course of conduct is set on foot by a single impulse . . ..'"  *See United States v. Ali*, 982 F. Supp. 2d 85, 87 (D.D.C. 2013) (citing *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C.Cir.1987) ((quoting *Toussie v. United States*, 397 U.S. 112, 136 (1970) (White, J., dissenting))); *see also, e.g., Sandstrom*, 594 F.3d at 652 ("To determine how many courses of conduct [the defendants] undertook, we apply the so-called 'impulse test.' Applying this test, 'we treat as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single impulse.' If an attack is 'uninterrupted,' then we will 'discern a single impulse.'  Here, the two attacks on McCay were not 'uninterrupted.'") (citations omitted).

The circumstances here are similar to those in which the D.C. Circuit has upheld multiple 18 U.S.C. § 111(a) convictions.  In *United States v. Duran*, the defendant imperiled the lives of four Secret Service officers who were present on White House grounds when the defendant "ran east along the White House fence, spraying gunfire across the North Lawn." *Id.* at 1498. The D.C. Circuit upheld the four 18 U.S.C. § 111(a) convictions "because, viewing the evidence in the light

8

most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that as the defendant ran east along the White House fence, spraying gunfire across the North Lawn, he acted with the purpose of putting Secret Service agents on the North Lawn in fear of imminent serious bodily harm." *Id*.

Other federal courts have rejected multiplicity arguments where, like here, each of multiple 18 U.S.C. § 111 assaults occurred had a corresponding victim. For example, in 2020, the Ninth Circuit Court of appeals rejected the defendant's reliance on *Ladner v. United States*, 358 U.S. 169 (1958)—one of the main cases relied upon by defendant Thomas in his motion—and instead held as follows:

> [Defendant] argues that because he fired the four shots in quick succession, he committed only one assaultive act and can be convicted of only one assault. Voris primarily relies on *Ladner*, but *Ladner* did not consider whether multiple shots fired in quick succession must be considered as only one assault. Indeed, in *Ladner*, the Court suggested that multiple shots might constitute more than one violation. 358 U.S. at 178 n.6, 79 S.Ct. 209 (stating that "[i]n view of the trial judge's recollection that more than one shot was fired ... we cannot say that it is impossible that petitioner was properly convicted of more than one offense, even under the principles which govern here" (internal quotation marks omitted)).
>
> Moreover, the out-of-circuit cases Voris cites do not support his position that the district court plainly erred in entering judgment on four of the assault convictions. None addressed the question here of whether multiple gunshots fired in quick succession must be construed as one assaultive act.
>
> Nor does logic support Voris's position. Voris committed four assaultive acts by firing his weapon four separate times toward the door. Fortuitously, none of the officers was hit, but four (or more) could have been hit. And the evidence clearly supports that Voris knew multiple officers were in the precise area he targeted when he intentionally fired his deadly weapon through a wooden door and surrounding area. As long as there were four assaultive acts and at least four potential victims, there were four assaults.

*United States v. Voris*, 964 F.3d 864, 870–71 (9th Cir. 2020)[1] (citing, *e.g., Duran, supra*; *Thorne v. United States*, 406 F.2d 995, 998–99 (8th Cir. 1969) (holding the petitioner was properly sentenced on two § 111 counts where the petitioner fired more than one shot during a scuffle with two agents); *Cameron v. United States*, 320 F.2d 16, 17–18 (5th Cir. 1963) (holding the petitioner had been properly convicted of two assaults where the petitioner and his co-defendant (Ladner) shot "as many as five shots" at two officers)).

As shown above, each of defendant's five assaults occurred at different times, in different locations, against different officer-victims, and were driven by a different impulse. Therefore, they are not identical in law and in fact. For this reason, the defendant's motion should be denied.

## II. Defendant's Motion is Premature, Given Multiplicity Does Not Provide Grounds for Dismissal.

Even if the defendant had established that the assault counts are multiplicitous, the United States Supreme Court has explained how a trial court should address an indictment that charges potentially multiplicitous counts:

> [W]hile the Government may seek a multiple-count indictment . . . the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.

*Ball v. United States*, 470 U.S. 856, 865 (1985); *see also Ohio v. Johnson*, 467 U.S. 493, 500 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution."). As the D.C. Circuit

---

[1] The Ninth Circuit did reverse one of the five assault convictions, however, because only four victims had been established at trial.

has stated, "[t]he primary evil of multiplicitous charges is that a defendant will be punished twice for the same offense. This harm, if it exists at all, may be remedied during the sentencing phase if the jury returns a conviction on all counts of the Superseding Indictment." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 124 (D.D.C. 2012); *see also, e.g., United States v. Platter*, 514 F.3d 782, 786 (8th Cir. 2008) (affirming trial court's refusal to require the government to elect among multiplicitous charges because "the proper remedy when a defendant is convicted of multiplicitous counts is merger of the counts into one count"). Thus, any potential for multiplicity in an indictment may be remedied after trial if and when the jury convicts on each of the five assault charges. For this additional reason, the defendant's motion is premature and should be denied.

### III.    Defendant is Properly Charged with Assaulting Officers.

The defendant also contends that the "assaulting officer" counts in his indictment "do not allege conduct that rises to the level contemplated by 18 U.S.C. § 111(a)(1)" and that his conduct of "mere touching, bumping, or brushing" an officer is not an aggravated felony offense. Focusing primarily on policy considerations and, without providing a legal basis to do so, the defendant claims that the assault charges in his case should be dismissed. The government construes this as a motion to dismiss due to a failure to state an offense due to a defect in the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). However, "[b]ecause a court's 'use[] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." *See United States v. Cua*, Case No. 21-cr-00107-RDM, ECF No. 288 (February 22, 2023 Memorandum Opinion and Order) (denying motion to dismiss 111 charges on 12(b) grounds) (citing *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (other citation omitted)). When considering a motion to dismiss, the Court "is limited to reviewing the *face* of the indictment and more specifically, the *language*

11

used to charge the crimes." *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009) (internal citations and quotations omitted). "[T]he indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings." *United States v. Bowdoin*, 770 F.Supp.2d 142, 145 (D.D.C. 2011).

The circumstances here are not unusual. The defendant is charged with violating five counts of assault on a federal officer, in violation of 18 U.S.C. § 111(a). ECF No. 49. On each of these counts, the grand jury charged him with "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidate[ing], and interfere[ing] with an officer of the United States[.]" *Id*. (Count Three, Count Four, Count Five, Count Six, and Count Seven). 18 U.S.C. § 111(a) prohibits "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidate[ing], and interfere[ing] with" an officer of the United States. Instead of using the plain language of the statute, referring to the charging language, or the evidence as presented by the government, defendant appears to argue that the government's failure to adhere to a reading of the charging statute that *has not been adopted* in the D.C. Circuit somehow makes the charge subject to dismissal for failure to state a claim. That is not and cannot be the standard. The government adhered to the law in the D.C. Circuit when charging the statute, and does not have to charge every crime according to every interpretation of a statute by every court in the United States. Such a requirement would bring the criminal justice system to a halt and undermine the law's bedrock principle of *stare decisis*.

Moreover, only after trial will the Court be able to determine whether defendant's conduct violates the statute. In addition to selecting his preferred charging policies and law, the defense bases his argument on his own interpretation of the facts, claiming that his "impulsive" actions represent "mere touching, bumping, or brushing" without reference to the facts as contained in the evidence provided or laid out in the affidavit supporting his arrest. A cursory review of those

materials demonstrates that the defendant utilized significantly more forcible and intentional conduct against the police officers. Given defendants have been convicted of assault for less, the government submits that, at trial, it will also be able to clear this hurdle. *See, e.g., United States v. Dombrowsky,* 111 App'x 716, 718 (5th Cir. 2004) (intentionally pushing officer constitutes assault); *United States v. Hernandez*, 921 F.2d 1569, 1577 (11th Cir. 1991) (poking agent in chest constitutes assault); *United States v. Fernandez*, 837 F.3d 1031, 1035 (11th Cir. 1988) (bumping Assistant U.S. Attorney constitutes assault); *United States v. High Tower*, 512 F.2d 60, 61 (5th Cir. 1975) (grabbing agent's jacket constitutes assault).

For all of these reasons, the defendant's motion must be denied.

## CONCLUSION

Based on the above, the government respectfully requests that defendant's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Samantha R. Miller
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Samantha.Miller@usdoj.gov

SEAN P. MCCAULEY
Assistant United States Attorney
NY Bar No. 5600523
United States Attorney's Office
601 D Street NW
Washington, DC 20530
Sean.McCauley@usdoj.gov