UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Criminal No. 21-CR- 552 DLF |
| KENNETH JOSEPH OWEN THOMAS, | : | |
| | : | |
| Defendant. | : | |

UNITED STATES' MOTION IN LIMINE TO
PRECLUDE THE USE OF CERTAIN IMPROPER DEFENSES

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, now moves this court to preclude the defendant, Kenneth Joseph Owen Thomas (hereinafter, "the Defendant") from eliciting evidence or arguing to the jury that (1) his statements and actions were protected by the First Amendment, (2) other individuals who are not a party to this case are culpable for the conduct with which the defendant is now charged, or (3) that it was factually impossible for him to have committed the charged crimes.

INTRODUCTION

The Court is well familiar with the background of this case and the broader background of the January 6, 2021, riot at the United States Capitol. The government has set forth the detailed facts of this case numerous times. *See* ECF 1; *see also* ECF 57 - ECF 59. But as is relevant to this motion, the brief facts are that in the days and weeks leading up to January 6, 2021, the Defendant made numerous statements indicating that he believed the results of the 2020 Presidential Election to be fraudulent and that the transition of power between presidential administrations needed to be stopped. The Defendant led a "MAGA Caravan" from Alabama to Washington, D.C., for the purpose of attending the "Stop the Steal" rally at the Ellipse. After the rally, the Defendant then walked to the Capitol and, during the course of a riot, assaulted five law enforcement officers who were attempting to clear rioters from the West Front of the Capitol. The Defendant is now charged

via Second Superseding Indictment with eleven counts relating to his specific conduct that day, including disorderly conduct during a civil disturbance in violation of 18 U.S.C. § 231(a)(3), obstruction of an official proceedings in violation of 18 U.S.C. § 1512(c)(2), and five counts of assaulting or impeding certain law enforcement officers in violation of 18 U.S.C. § 111(a). He is neither charged with conspiracy nor charged together with any co-defendants.

Certain pre-trial disclosures and motions suggest that the defendant intends to raise two improper defenses as to his conduct on January 6, 2021. In these filings and disclosures, the Defendant has signaled that he intends to argue that his conduct was protected by the First Amendment. *See* Defendant's Proposed Amendments to Jury Instructions, 3/20/3023 (hereinafter, "Defendant's Proposed Jury Instructions"). The Defendant has further indicated that he intends to argue that other persons who are not a party to this case were responsible for the delay of the certification of the Electoral College. *See* ECF 64 at 6-9; *see also* Defendant's Proposed Jury Instructions. Contradicting his defense of alternative perpetrators, the Defendant has also signaled that he intends to claim a defense of factual impossibility. *Id*. All these defenses are improper and should be precluded.

**ARGUMENT**

**I. The Defendant's conduct is not protected by the First Amendment.**

In pre-trial filings and disclosures, the Defendant, through his attorneys, has repeatedly indicated that he intends to argue that his conduct at the Capitol was protected by the First Amendment to the United States Constitution. Since the inception of this case, the Defendant himself has also repeatedly stated on social media, including his weekly podcast, that he was only "protesting" and "exercising his First Amendment right to free speech." The crucial distinction between the Defendant's statements and protected First Amendment speech is that the Defendant is being prosecuted for the violent and obstructive conduct that he took in furtherance of that

speech, not for the speech itself. *United States v. Chansley*, 525 F. Supp 3d 151, 164 (D.D.C. 2021) (Lamberth, J.) ("[E]ven if [defendant's statements were themselves protected, the First Amendment does not prohibit their consideration as evidence of motive or intent.")

Moreover, the Defendant's assertions about any First Amendment protection for his conduct at the Capitol on January 6 run directly contrary to the evidence that the government has provided to the Defendant in discovery. This includes body worn camera footage and videos personally recorded by the Defendant which show him entering a restricted area, repeatedly striking officers, charging up a flight of stairs and throwing the weight of his body against police officers, and physically resisting efforts by law enforcement officers to clear the West Front of the Capitol. None of this conduct is sanctioned by the First Amendment. Therefore, to avoid confusing the issues or misleading the jury, the Court should (A) permit the government to use otherwise-protected speech (such as political speech) as evidence in this trial, and (B) preclude the Defendant from arguing that his conduct on January 6 was protected by the First Amendment.

A.  The government should be permitted to introduce the Defendant's statements as evidence of his corrupt intent.

The statements that the Defendant made about his beliefs surrounding the 2020 Presidential Election and the certification thereof are admissible intent evidence. It is uncontroversial that a defendant's statements, which would otherwise be protected under the First Amendment, may be introduce in a criminal case when those statements are evidence of the intent behind a defendant's acts. *See Wisconsin v. Mitchell*, 508 U.S. 476 (1993). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trial subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id*. at 489. Courts across the country have followed the mandate in *Mitchell* and admitted evidence for this purpose. *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (admitting musical lyrics composed by a defendant in a

Hobbs Act prosecution); *United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) ("The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [defendant's] participation in, the alleged RICO enterprise[.]" (internal citations omitted); *United States v. Salameh*, 152 F.3d 188, 111-112 (2d Cir. 1998)  (the defendants were not "prosecuted for possessing or reading terrorist materials. The materials seized […] were used appropriately to prove the existence of the bombing conspiracy and its motive."). This same principle has been upheld and applied in the context of cases arising from the Capitol Riot.  *Chansley*, 525 F. Supp 3d at 164; *United States v. Robertson*, 2022 WL 969546 at *6 (D.D.C. 2022) (Cooper, J.) ("If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.").

The Defendant is not being prosecuted *for* his speech. Instead, his speech is relevant and highly probative evidence of the corrupt intent behind his actions. *Id.* Among the Defendant's charges are multiple counts which require the government to prove his intent beyond a reasonable doubt. The First Amendment thus does not bar the admission of any evidence which the government offers to establish the Defendant's motive, intent, or an element of the crime, including that his actions that day were intended to stop the certification of the Electoral College vote. *Mitchell*, 508 U.S. at 489. The Court should therefore find that the government may introduce these statements as probative of the Defendant's intent. *Id*.

B. <u>The Defendant should be precluded from arguing that his conduct was protected by the First Amendment.</u>

    1. *The area around the Capitol had been lawfully closed and the Defendant had no First Amendment right to breach that restricted perimeter.*

The Court should preclude the Defendant from eliciting evidence, arguing, or asking questions that suggest that there was a First Amendment right to protest inside the restricted area around the Capitol on January 6. At trial, the government will show that the Capitol Grounds were restricted that day. There is no First Amendment right to protest in a restricted area. The government can—and on January 6, 2021—did restrict an area that is a traditional public forum for legitimate government ends. This Court has affirmed that the government may close a public forum in similar circumstances. *See Mahoney v. U.S. Marshals Service*, 454 F. Supp 2d 21, 32-33 (D.D.C 2006) (U.S. Marshals Service did not violate First Amendment by restricting access to sidewalk in front of St. Matthew's Cathedral for Red Mass, even though sidewalk was a traditional public forum).

Other courts have similarly upheld temporary closures of traditional public fora for safety reasons. *See Mahoney*, 454 F. Supp. 2d at 21; *Menotti v. City of Seattle*, 409 F.2d 1113, 1129-1130 (9th Cir. 2005) (finding that an emergency order to close a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions."); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.2d 1212, 1222 (10th Cir. 2007) ("In this case, there can be no doubt that the City's interest in providing security to a gathering of defense officials is of the highest order'); *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street closure plan around

the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of delegates).

On January 6, 2021, the United States Capitol Police and the United States Secret Service coordinated to establish a restricted perimeter around the Capitol building that encompassed a portion of the Capitol grounds. That restricted perimeter was for a legitimate government purpose. No member of the public, including the Defendant, had a First Amendment right to engage in protest or speech within that restricted area. The Court should therefore enter an order precluding the Defendant from arguing to the contrary or stating during *voir dire*, questioning, or opening or closing statements that Defendants were engaged in protected speech or pursuing their "right" to protest at any point when they were on U.S. Capitol grounds.

2. *The Defendant's conduct within the breached restricted perimeter was not protected by the First Amendment.*

The First Amendment to the United States Constitution protects many sacred rights, but the right to engage in violence is not among them. *Grayned v. City of Rockford*, 408 U.S. 104, 116 ("Of course, where demonstrations turn violent, they lose their protected quality as expression under the First Amendment."). "Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *United States v. Gregg*, 226 F.3d 253, 267-268 (3d Cir. 2000). Even conduct which is not outright violent but which physically "obstructs or unreasonably interferes" with official functions of government business loses its First Amendment protection. *Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (finding that a picket demonstration which physically blocked ingress or egress from a courthouse was not protected by the First Amendment); *see also Cox v. Louisiana*, 379 U.S. 536, 555 (1965) (physical "cordon" of a street or a public or private building by demonstrators who refused to let anyone pass if they "did not agree to listen to their exhortations."). Importantly, that some aspect of a

Defendant's conduct was protected by the First Amendment does not negate criminal action for his unprotected conduct because "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). That is to say that even if a defendant is engaged in speech that is protected, when his actions turn physically obstructive or outright violent, the First Amendment ceases to protect the speech itself because the government has a legitimate interest in preventing or stopping violent conduct. *Id.*; *see also Grayned*, 408 U.S. at 116. These First Amendment principles have been applied and upheld with respect to the January 6 Capitol Riot. *See*, *e.g.*, *United States v. Nordean et al.*, 579 F.Supp.3d 28, 53-55 (D.D.C. 2021) (Kelly, J.) (finding that charges for violations of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 1512(c)(2) withstood constitutional scrutiny).

The Defendant's conduct on January 6 was plainly not protected by the First Amendment. *Id.* On January 6, 2021, the Defendant joined a riotous mob that had descended upon the Capitol, completely obstructing the flow of people, including the Vice President of the United States and other lawmakers inside, from ingress or egress from the building without the consent of the mob. *Cox*, 379 U.S. at 555; *Johnson*, 390 U.S. at 617. His actions, as one among many in the mob, had the effect of impeding and obstructing official government business, that being the certification of the Electoral College vote, for hours. *Id.* When law enforcement officers attempted to clear the Defendant and the mob from the West Front, he assaulted five separate officers over the course of a little more than one hour. *Grayned*, 408 U.S. at 116; *Gregg*, 226 F.3d at 267-268. That the Defendant's conduct early in the day on January 6 was protected by the First Amendment is of no moment in light of his breach of a restricted perimeter, assaults on law enforcement, and obstructive conduct against law enforcement when they attempted to clear the area around the

Capitol: the moment he engaged in such conduct he crossed beyond the boundary of conduct protected by the First Amendment. *Id*; *see also Grayned*, 408 U.S. at 116. Permitting the defendant to raise this defense, in addition to running contrary to well-established law, risks confusing the issues and the jury. Fed. R. Evid. 401. Therefore, the court should preclude the Defendant from raising this defense.

## II. The Defendant should be precluded from arguing that the jury must find that he was the direct cause of the delay in the certification of the Electoral College vote.

In the Defendant's Proposed Jury Instructions, he repeatedly inserts elements into the charges against him that alter the elements of the various statutes that he has been indicted for violating. One of those inserted elements was that the jurors must find that the Defendant was the direct or but-for cause of the delay in the certification of the Electoral College. Defendant's Jury Proposed Instructions at 5-6. By inserting this element, in addition to fundamentally changing the nature of the statute at issue, the Defendant is in effect raising two new defenses: (1) that other individuals are culpable for the crimes with which he is now charged, and (2) a defense of factual impossibility.

In a prior motion, the Defendant argued for disclosure of certain materials based on conjecture about what led to the recess of the Joint Session on January 6, 2021. ECF 64 at 18-21. In light of the Defendant's Proposed Jury Instructions, the government now revisits that motion. In that motion, the Defendant insinuated based on pure conjecture that his presence and assaults on law enforcement at the Capitol was not the reason for the recess of the Joint Session. ECF 64 at 20-21. The Defendant further erroneously argued that the cause of the recess was the pipe bombs that were found at the Republican National Committee and Democratic National Committee

buildings.[1] *Id.* at 6-7. Despite the fact that many of these assertions could easily have been refuted by a cursory review of the evidence that has been made available to the Defendant, all of these arguments and factual assertions are purely speculative, factually mistaken, and utterly without merit.[2].

---

[1] Building upon conjecture regarding the source of the pipe bombs, which is not relevant to his case, the defense then erroneously conflates separate Capitol Hill evacuations on January 6, 2021. Certain buildings in the U.S. Capitol complex were evacuated starting at 1:11 p.m. on January 6, 2021, due to the discovery of an explosive device at the RNC headquarters. However, that did not include the U.S. Capitol Building and the joint session remained ongoing for well over an hour after these devices were discovered. Similarly, then-Senator Kamala Harris's evacuation from the DNC, where an explosive device was discovered at 1:07 p.m., did not cause the recess of the joint session that was occurring at the Capitol Building. What caused the recess of the Senate at 2:13 p.m. is what the staffer told Senator Lankford at the time; rioters were, at that very moment, climbing through broken windows on a floor below them. This is further reinforced by the fact that the alert from USCP at 2:10 p.m. cited danger on the West Front and that the alert at 2:17 p.m. cited a security threat within the building and urged occupants to hide and keep quiet. Neither these geographic descriptions or the precautions cited have anything to do with explosives that had been located more than an hour prior and were already contained. A cursory review of the voluminous audio, video, and documentary evidence already available to the defense in discovery would confirm this.

[2] The Defendant's motion does not rely on any of the evidence it has received in discovery that would be relevant to an inquiry into the reasons the presiding officers of the two chambers—Senator Grassley at 2:13 p.m. in the Senate chamber and Representative McGovern at 2:29 p.m. in the House chamber, *see* 167 Cong. Rec. S18, H85 (daily ed. Jan. 6, 2021)—declared the respective Houses in recess subject to the call of the chair. This includes records for the MPD and USCP that are contemporaneous to the discovery of the explosive devices, the breach of the Capitol Building, and the recess of each chamber, such as radio communications, recorded phone calls, text messages, and emails, as well as body-worn camera and surveillance footage. Additionally, the defense possesses subsequently created records in discovery, such as after-action reports and investigative reports detailing the work of each police department's internal affairs bureaus. Moreover, there are records in discovery created by the FBI that may reflect the communications or actions that led to the decision to recess each chamber. These records include memoranda of interviews of relevant personnel, including select USCP employees such as plain-clothes officers who were in the House and Senate chambers; the U.S. Secret Service; the House of Representatives, including individuals who work for the Parliamentarian, Sergeant at Arms, and Clerk; and the Senate, including individuals who work for the Secretary. Finally, publicly available records, including the Congressional Record and the C-SPAN feeds of each chamber, also show the official actions in each chamber leading up to and including the recesses. The defense also has in its possession, as part of global discovery, each chamber's official time-stamped video feed while that chamber was in session.

A. <u>The Defendant should not be permitted to raise an alternative perpetrators defense.</u>

Only evidence that is relevant may be admitted at trial.  Fed. R. Evid. 402.  To be relevant, the evidence must have a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also United States v. Sesay*, 313 F.3d 591, 599-600 (D.C. Cir. 2002).  Even if the defendant can articulate *some* basis for believing that certain information is relevant to his defense, the Court "may exclude marginally relevant evidence and evidence posing an undue risk of confusion of the issues without offending a defendant's constitutional rights." *United States v. Alayeto*, 628 F.3d 917, 922 (7th Cir. 2010) (citing *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)).  Thus, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403. Finally, the introducing party carries the burden to establish both relevancy and admissibility under the evidentiary rules. *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).

As it relates to a potential "alternative perpetrator" defense, "[e]vidence tending to show the commission by another person of the crime charged may be introduced by [the] accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded." *Holmes*, 547 U.S. at 327 (internal citations omitted). Evidence may be excluded "where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." *Id.*; *see*, *e.g.*, *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998) (affirming district court's exclusion of proffered evidence of two alternative perpetrators, specifically, two members of Elohim City, a white supremacist, anti-government organization, where such evidence would have created a "great threat of 'confusion of the issues'"

and a "side trial" that might "invite the jury to blame absent, unrepresented individuals and groups for whom there often may be strong underlying emotional responses"); *United States v. Moore*, 2022 WL 715238 (D.D.C Mar. 10, 2022) (excluding evidence of two alleged alternative perpetrators, where defendant failed to establish nexus between alternative perpetrators and the offense for which the defendant was charged). For the reasons below, the Court should exclude evidence and argument as to the culpability of other participants in the riot at the Capitol.

Furthermore, it is well-established that the possible guilt of others is no defense to a criminal charge, and a jury may not consider whether anyone else should be prosecuted during its deliberations. The Sixth Circuit's Pattern Jury Instruction sets forth this principle, warning jurors that the possible guilt of others may not influence their decision:

> Also keep in mind that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. *Do not let the possible guilt of others influence your decision in any way.*

Sixth Circuit Pattern Jury Instructions, Defining the Crime and Related Matters No. 2.01(3) (2021) (emphasis added). Likewise, the Tenth Circuit's pattern instruction states that the possible guilt of others should not even enter the jurors' thinking:

> You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.
>
> It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. *The fact that another person also may be guilty is no defense to a criminal charge.*
>
> *The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.*

Tenth Circuit Criminal Pattern Jury Instructions No. 1.19 (2021) (Caution – Consider Only Crime Charged) (emphasis added); *see also United States v. Arras*, 373 F.3d 1071, 1076 (10th Cir. 2004)

(affirming use of the jury instruction, "You are here to decide whether the government has proven beyond a reasonable doubt that each defendant is guilty of the crimes charged. And you must not be concerned with the guilt or innocence of other persons not on trial as a defendant in this case"); *United States v. Dennis*, 645 F.2d 517, 520, n.3 (5th Cir. May 22, 1981), overruled on other grounds, *United States v. Lane*, 474 U.S. 438 (1986)) (affirming jury instruction stating in relevant part, "You are not called upon to return a verdict as to the guilt or innocence of any other person or persons who you think might also be guilty but are not charged in the Indictment."). In the Superior Court for the District of Columbia, the pattern jury instructions also recognize a similar principle in multi-defendant cases. *See* Criminal Jury Instructions for the District of Columbia No. 2.403 (Fifth Edition, 2021) ("The fact that you may find one defendant guilty or not guilty should not influence your verdict as to any other defendant.").

The government acknowledges that the charges of civil disorder, 18 U.S.C. § 231(a)(3), and obstruction of an official proceeding, 18 U.S.C. §§ 1512(c)(2) & 2, implicate events and aspects of the January 6, 2021 Capitol riot where the defendant was not personally present, and therefore, evidence that does not involve the defendant will be relevant to establish that law enforcement officers were engaged in responding to a civil disorder when the defendant interfered with them, and that Congress was actually obstructed by the defendant and/or others he aided and abetted. Nonetheless, evidence intended to highlight the specific culpability or actions of handpicked individuals with no relation to the defendant or the charges he faces invites the jury to do precisely what the law prohibits: "let[ting] the possible guilt of others influence [their] decision in any way." Sixth Circuit Pattern Jury Instructions, No. 2.01(3). Any remote probative value such evidence might carry is far outweighed by the likelihood of confusion and the distraction brought on by the need for a "mini-trial" on the conduct of other parties. Efforts to introduce such evidence can only be designed to either unfairly prejudice the jury by creating confusion, garner sympathy

for a "lesser" participant in the riot like the defendant or support a bid for jury nullification. All such evidence should therefore be excluded.[3]

B. <u>The Defendant should not be permitted to raise a defense of factual impossibility.</u>

The Defendant's argument about direct causation and alternative perpetrators is really a claim of factual impossibility – that he cannot be guilty of disrupting Congress because Congress already had been disrupted by reports of pipe bombs and the presence of other rioters and gone into recess well before he arrived on Capitol Grounds at the West Front. Analyzed as a claim of factual impossibility, the Defendant's claim fails.

"'Factual impossibility is said to occur when extraneous circumstances unknown to the actor or beyond his control prevent consummation of the intended crime.'" *United States v. Duran,* 884 F. Supp. 577, 580 n. 5 (D.D.C. 1995), *aff'd,* 96 F.3d 1495 (D.C. Cir. 1996) ("Implicit in the Court's Order … was an understanding that the impossibility issue raised by the defense … was one of factual impossibility. Framed this way, the fact that the person whom the Defendant shot at was not, in fact, President Clinton was an extraneous circumstance, unknown to him, which prevented consummation of the intended crime.") (internal citation omitted). Factual impossibility is not a defense to inchoate crimes. *United States v. Williams,* 553 U.S. 285, 300 (2008) ("The impossibility of completing the crime because the facts were not as the defendant believed is not a defense"); *United States v. Washington,* 106 F.3d 983, 1006 (D.C. Cir. 1997) ("factual impossibility is no defense to an attempt crime").

"In order to determine whether factual impossibility is a defense to the substantive crimes with which [the defendant] has been charged, one must look to the elements of the crimes

---

[3] To the extent that any such evidence or argument is admitted over the government's objection, the government will seek a jury instruction akin to the Sixth Circuit or Tenth Circuit pattern instructions cited herei

themselves." *United States v. Colburn,* 475 F. Supp. 3d 18, 26 (D. Mass. 2020) (citation omitted). The Defendant is contending that he cannot be guilty of obstructing or disrupting Congress by anything that he did at the Capitol, because Congress already had gone into recess (i.e., it already had been obstructed and disrupted) because of reports of pipe bombs and the crowd that had already amassed and surrounded the Capitol. Essentially, his claim is that the government cannot prove the element of obstruction. But the Defendant's claim misapprehends the government's allegations and evidence. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.[4] The proceedings did not resume until approximately 8:00 p.m. after the building had been secured.

Thus, the inapplicability of any factual impossibility claim for the Defendant undermines any reliance on alternative perpetrator defense. The Defendant's conduct in entering and remaining at the Capitol obstructed and impeded law enforcement and Congress, in violation of 18 U.S.C. §§ 231, 1512, 1752, and 5104, because Congress could not reconvene to carry out its constitutional and statutory obligations to certify the results of the Electoral College vote on January 6 until after the Defendant and every other unauthorized person had been removed from the Capitol building and grounds, and the building and grounds had been secured. The Defendant

---

[4] To this point, Judge Kollar-Kotelly has reasoned, "Just as heavy rains cause a flood in a field, each individual raindrop contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption." *United States v. Rivera,* 2022 WL 2187851 (D.D.C. June 17, 2022)

should thus be precluded from arguing or soliciting any evidence to support a defense of factual impossibility.

## CONCLUSION

For the foregoing reasons, any First Amendment defense or any defense that raises alternative perpetrators or factual impossibility should be precluded.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

*/s/ Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
NY Bar No. 5600523
United States Attorney's Office
601 D Street NW
Washington, DC 20530
Sean.McCauley@usdoj.gov