UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-552 (DLF) |
| : | |
| KENNETH JOSEPH OWEN THOMAS, : | |
| : | |
| Defendant. : | |

### UNITED STATES' MOTION IN LIMINE TO PRECLUDE
### CERTAIN ARGUMENTS AND EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby requests that the Court issue an order precluding Kenneth Joseph Owen Thomas (hereinafter, "the Defendant") from presenting arguments or evidence during the trial of this action that are misleading, unduly prejudicial, or irrelevant in determining his guilt of the offenses charged in the Second Superseding Indictment.

### INTRODUCTION

The Defendant has made numerous public statements that suggest his intent to introduce arguments and evidence alleging that law enforcement officers on January 6, 2021, did not comply with standard police policies and procedures and/or committed acts of wrongdoing with regard to other individuals who were on Capitol Grounds. For example, the Defendant recently filed a motion in which he seeks to admit expert testimony about "police uses of force." ECF 85. The Defendant himself has made numerous public statements in which he has asserted that he was acting in self-defense or in defense of others. Using only one of the most recent examples, the Defendant gave a nearly two-hour long interview on Rumble in which he stated,

> I was up on the Upper West Terrace and the police were trying to push the crowd out of the area. They were pushing people up against concrete walls and smashing people. People were being squeezed and pushed and trampled on. And so I just kinda said, "look I am not going to move until these people can kinda

1

clear out because that's a safety issue."[1] So, I just stood there. I kept screaming at them to hold the line. That's a term that the Capitol Police use to get them to stop advancing. And I was holding back I don't know how many officers, but I was just not moving until people could be safe. So, they decided to beat me with nightsticks and spray me directly in the face.[2]

In the same Rumble video, the Defendant later said: "I stopped violence. I protected the defenseless. I took weapons away from people who were trying to cause trouble and violence."

Based on these filings and the Defendant's many public statements on Rumble and his weekly podcast, the Defendant apparently intends to introduce argument and evidence claiming that law enforcement officers were the primary aggressors and that he was acting in self-defense and in the defense of others. The Defendant has also signaled his intent to introduce evidence and argument about baseless conspiracy theories about both law enforcement and civilians who died in connection with January 6, uses of force against other rioters who were nowhere near the Defendant, the alleged bias of the D.C. jury pool, the fairness of this Court which he has characterized as "a kangaroo court,"[3] vindictive or selective prosecution, and the compliance of the United States with its discovery obligations in this and other cases arising from January 6.

The Defendant's assertions, when combined with his pre-trial filings, indicate that he intends to argue that he was acting in self-defense that day and, in effect, for jury nullification. For the reasons stated below, the Defendant should be precluded from making these arguments.

**I. The Court Should Preclude the Defendant from Arguing Self Defense or Defense of Others**

The Defendant has not formally raised a claim of self-defense or defense-of-others. If he does, such arguments and evidence should be precluded. To establish a prima facie case of self-

---

[1] The Defendant did not say this to any police officer at any time during his numerous confrontations with them.

[2] The Remington Report, *The Remington Report Episode 4*, YouTube (Apr. 17, 2023), *available at* https://rumble.com/v2iu2uv-the-remington-report-episode-4.html. The Defendant's narrative and assertions about his actions on the Upper West Terrace and throughout the day on January 6, 2021, are flatly refuted by the evidence that the Government has provided to the Defendant.

[3] *See Id*. at 22:00-23:37 and 26:00-27:39.

2

defense, the Defendant must make an offer of proof of "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006). "If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial." *United States v. Cramer*, 532 F. App'x 789, 791 (9th Cir. 2013) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980)).

There is no reasonable argument that self-defense or defense-of-others are valid excuses for the offenses alleged under 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e). However, a defendant like Thomas who is charged under 18 U.S.C. § 111(a) may assert, as an affirmative defense, a theory of self-defense, "which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger." *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982).

This defense contains two important limitations. First, Congress enacted Section 111 "to protect both federal officers and federal functions." *United States v. Feola*, 420 U.S. 671, 679 (1975). As a result, "[a]n individual is not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties." *United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011); *see also United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."). Second, even in circumstance where an individual might be justified in using some force to resist a federal officer, that resistance must be reasonable under the circumstances. *See Abrams v. United States*, 237 F.2d 42, 43 (D.C. Cir. 1956) (observing that "the use of 'reasonable

3

force' only would have been open to defendants"); *see also United States v. Wallace*, 368 F.2d 537, 538 (4th Cir. 1966) (explaining that Section 111 permits "reasonable force employed in a justifiable belief that it is exerted in self-defense"); *United States v. Perkins*, 488 F.2d 652, 655 (1st Cir. 1973) (defendant may be convicted under Section 111 where "he used more force than was necessary to protect the person or property of himself or others").

Both limitations apply here. The evidence that the Government has disclosed and intends to introduce at trial shows that the Defendant and his fellow rioters were illegally present in a restricted area of the Capitol and were violently engaging law enforcement officers. Specifically, the evidence shows the Defendant charging up a short flight of stairs multiple times and throwing the weight of his body into police officers who were attempting to prevent additional rioters from breaching the police line on the Upper West Terrace. The evidence further shows that the Defendant came to function as one of the *de facto* leaders of the mob on the Upper West Terrace, standing face-to-face with officers at the head of a line of rioters, shouting fifteen times to other rioters to "hold the line," shoving officers, and pushing his back up against multiple officers as they tried to clear the Terrace. His assault does not appear to have been targeted at any particular officer but instead committed so that the rioters could continue their advance to the Capitol. "A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g., United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault.").

Even accepting that the Defendant had a right to resist the officers attempting to clear the

West Terrace—which he did not—the evidence shows that the Defendant escalated the encounter into a violent attack on the victim-officers. *See Waters v. Lockett*, 896 F.3d 559, 570 (D.C. Cir. 2018) (self-defense is not applicable "if [the defendant] and his co-conspirators used excessive force to repel [the] attack"). The Defendant's violent conduct was not necessary to defend himself or others, as he simply could have returned home instead of continuing his unlawful presence on restricted Capitol Grounds. The force he used to resist was unreasonable and, accordingly, disqualifies him from any claim of self-defense. *Abrams*, 237 F.2d at 43; *Wallace*, 368 F.2d at 538.

The Defendant's anticipated attempt to argue or submit evidence that his assaultive conduct was in defense of other rioters on the West Terrace should also be barred. First, such a defense would be directly counter to the facts of this case: the body-worn camera and open-source footage show the Defendant charging into lines of police officers who were attempting to hold the line against advancing rioters on the Upper West Terrace, not coming to the aide of any particular individual and, insofar as the Defendant may argue that it does, further shows him continuing to assault and impede officers once the crowd behind him—and thus any individual whom he may claim he was acting in the defense of—had retreated. It should therefore be excluded to avoid confusing or misleading the jury. Fed. R. Evid. 403. Second, such a claim would be barred as a matter of law. When an individual uses force to come to the aide of another who is not justified in their initial use of force against a third person, then the claim of defense of others does not apply. *Fersner v. United States*, 482 A.2d 387, 390 (App. D.C. 1984) ("The trial court correctly observed that the right to use force in defense of a third person is predicated upon that other person's right of self-defense (citing *Taylor v. United States*, 380 A.2d 989, 994-995 (D.C. 1977)). Here, any person to whom the Defendant could possibly claim that he was coming to the aide or defense of would also be actively committing another federal offense, such as a violation of 18 U.S.C. § 231(a)(3), 18 U.S.C § 1752(a), or 18 U.S.C § 111(a). The Defendant cannot claim that his use of force against

the officers was in the defense of another who was also assaulting federal law enforcement officers because that person's physical engagement with the officers would itself be unlawful. *Saleh*, 946 F.3d at 110; *Acosta-Sierra*, 690 F.3d at 1126. The Defendant should therefore be barred as a matter of law from arguing that his actions were in the defense of another person. *Fersner*, 482 A.2d at 290; *see also United States v. Alberts*, 21-cr-26 (CRC), Oral Ruling Precluding A Jury Instruction for Self-Defense or Defense of Others, April 18, 2023 ("In order to […] establish the right to an instruction or to justify [a self-defense] instruction, there must be sufficient evidence from which a reasonable juror might infer that either the defendant did not know the identity of the law enforcement officer […] or that the law enforcement officer's use of force viewed from the perspective of a reasonable officer at the scene was objectively unreasonable under the circumstances." (citing *Drapeau*, 644 F.3d 646, and *Branch*, 91 F.3d 699)).

### II. This Court Should Preclude the Defendant from Arguing in a Manner That Encourages Jury Nullification, Whether During *Voir Dire* or During Trial.

The Defendant should also be prohibited from making arguments or attempting to introduce non-relevant evidence that encourages jury nullification. As the D.C. Circuit has made clear in *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983):

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power

Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant").

The Defendant may again claim that he has been unfairly singled out for prosecution because of his political views, that others with different political views have been treated differently, that this court or the larger justice system is a "kangaroo court,"[4] or that—at the very least—his conduct does not merit felony charges. But a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The Court already has rejected the Defendant's motion to dismiss that alleged selective prosecution. Minute Order, March 20, 2023. And allegations of discrimination based on political views have no place in a jury trial. *Id.* The Court should therefore not permit him to repackage these arguments at trial, or other similar arguments about his perceptions about the fairness of either this Court or the Government's case against him, to argue for jury nullification.[5] *See United States v. King*, No. CR-08-002-E-BLW, 2009 WL 1045885, at *3 (D. Idaho Apr. 17, 2009) ("The Court will therefore exclude any evidence or argument as to selective prosecution at trial."); *United States v. Kott*, No. 3:07-CR-056 JWS, 2007 WL 2670028, at *1 (D. Alaska Sept. 10, 2007) (where defendant, in response to government's expressed concern that defendant might use challenged evidence to claim selective prosecution at trial, the defendant "abjured any effort to" to make such a claim, "[t]he court will enforce that promise").

The Defendant may face significant prison time were he to be found guilty in this case. The government will request that the Court give a commonplace instruction that the jury should not concern itself with a possible sentence in the event of a conviction. *See United States v. Feuer*, 403 F.

---

[4] *See supra* at n. 3.

[5] As with many defendants who have sought to minimize or justify their criminal conduct on January 6, the Defendant has sought to admit improper or misleading evidence and arguments which he feels will exonerate him and, when the Government argues that that evidence and argument is improper or misleading or the Court properly excludes it for being so, that exclusion is, in his estimation, evidence of the bias against him. By the Defendant's circular logic, the only way that he could receive what he believes to be a fair trial is if he was able to cherry-pick all of the evidence presented to the factfinder.

7

App'x 538, 540 (2d Cir. 2010) (unpublished). Defendant should not be permitted to arouse the jury's sympathy by introducing any evidence or attempting to argue about the possible sentence in this case. These circumstances have no bearing on the Defendant's guilt and invite jury nullification. *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("evidence which has the effect of inspiring sympathy for the defendant or for the victim … is prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C. 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded.").

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court preclude improper argument or evidence.

Dated:   April 25, 2023

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:   */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov