**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 1:21-cr-00552 (DLF)** |
| **v.** | : | |
| | : | |
| **KENNETH JOSEPH OWEN THOMAS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO STRIKE**
**DEFENDANT'S AFFIRMATIVE DEFENSES**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this motion to strike Defendant Kenneth Joseph Owen Thomas's Motion to raise certain affirmative defenses. ECF 91.  In his notice, the Defendant raises four affirmative defenses: (1) self-defense and defense of others, (2) justification and necessity, (3) lawful exercise of First Amendment rights, including freedom of speech, the press, assembly, and to petition the government, and (4) "civil disobedience, in connection with the First Amendment." ECF No. 91 at 1.  Each of the defenses raised is meritless and would, at the very least, confuse the issues and mislead the jury in violation of Fed. R. Evid. 403.

**BACKGROUND**

In Counts Three, Four, Five, Six, and Seven of the Second Superseding Indictment (ECF No. 49 at 2-3), Thomas is charged with five counts of assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111(a)(1).

On January 6, 2021, starting at approximately 3:30 p.m., Thomas initiated a series of physical altercations with law enforcement officers on the Upper West Terrace of the United States Capitol. Contrary to his notice of affirmative defense, there is no indication that officers were "were unlawfully shooting protesters in the face with rubber bullets and pepperballs and launching

flash-bang grenades at protestors without warning."  ECF 91 at 1-2.

In the two assaults occurring at the 3:30 PM timeframe, the below still shots show Thomas affirmatively running up a small set of stairs (15:30:44 PM), assaulting an officer (15:30:46PM), getting forced back down those stairs (15:30:48 PM), then again running up a second time to assault yet another officer (15:30:49, 50 PM):





In the three assaults occurring at the 4:30 PM timeframe, the below still shots show Thomas affirmatively stepping forward and in front of other rioters to attack the police line in front of him, while screaming and with his fist clenched (16:22:40 PM).



Four minutes later, he does the same thing again, this time using his back to push forward and lean in towards the line of officers, fist clenched, while screaming, "HOLD THE LINE" and "PUSH!" (16:26:03 - 06 PM).



Then, two minutes later, after descending a small set of stairs, Thomas pulls his hood up and proactively approaches the line of officers, violently pushing into a police shield multiple times, grabbing a police baton, and screaming, "HOLD THE LINE!" (16:28:51 – 16:29:02 PM).



As is shown by these stills and the videos from which they are derived, officers were lawfully attempting to clear a crowd from restricted area.[1] In the face of this reasonable application of

---

[1] To assist the Court in advance of the May 8, 2023 pre-trial conference, the government will provide the Court via USAfx with the body-worn camera referenced herein, as well as some corroborating open-source video, should the Court wish to review these videos for the purposes of ruling on various pre-trial motions.

lawful force, the defendant repeatedly initiated physical contact with the officers and resisted their efforts, provoking further conflict.

## ARGUMENT

**I.     Thomas's Conclusory Statements are not Sufficient Proffers to Support Affirmative Defenses.**

The government has already addressed many of the affirmative defenses Thomas raises. *See* ECF No. 82, Government's Mot. to Preclude Improper Defenses, including that the Defendant was engaging in lawful First Amendment activity;[2] *see also* ECF No. 89, Government's Mot. to Preclude Self Defense, Defense of Others, and Jury Nullification. Therefore, the government incorporates by reference those filings in full herein.  As previously noted, a defendant is not entitled to assert a defense that is invalid under the law or unsupported by fact. He may not introduce irrelevant evidence which "has the effect of inspiring sympathy for the defendant." *United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974). And he may not make arguments or introduce evidence that encourage jury nullification. *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983). Each of Thomas's asserted defenses runs afoul of this well-established law.

---

[2] The Defendant's fourth affirmative defense, "civil disobedience, in connection with the First Amendment" is little more than a retooling of his third affirmative defense about the protections that he claims the Free Speech Clause gave to his actions. The Government has thoroughly addressed why the Defendant cannot assert that his actions were protected under the First Amendment. ECF 82. However, insofar as the Defendant claims that he was engaging in civil disobedience, he has not identified the law he was willfully violating much less the necessity, under a reasonable person standard, that gave rise to his "civil disobedience." The Defendant's only assertion for why he should be entitled to claim that he was engaging in "civil disobedience" is based upon his own misguided, subjective judgments rather than those of a reasonable person. See *United States v. Schoon,* 971 F.2d 193, 197 (9th Cir. 1991) ("The law could not function were people allowed to rely on their *subjective* belief and value judgments in determining which harms justified the taking of criminal actions." (citing *United States v. Moylan*, 417 F.2d 1002, 1009-1009 (4th Cir. 1969)) (emphasis in original). The Defendant's conclusory assertions based on his subjective views is, as a matter of law, insufficient for him to claim that he was engaging in civil disobedience. *Id.*

A pretrial ruling on the availability of Thomas's proposed affirmative defenses is appropriate here. "If . . . an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it, even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *United States v. Bailey*, 444 U.S. 394, 416 (1980); *see also United States v. Lebreault-Feliz*, 807 F.3d 1, 4 (1st Cir. 2015) ("[W]hen the proffer in support of an anticipated affirmative defense is insufficient as a matter of law to create a triable issue, a district court may preclude the presentation of that defense entirely." (citation omitted)); *United States v. Portillo-Vega*, 478 F.3d 1194, 1197-98 (10th Cir. 2007) ("A defendant must carry his burden on each of the elements [of the affirmative defense]; if the evidence is insufficient on even one element, the trial court and jury need not be burdened with testimony supporting other elements of the defense." (internal quotation marks omitted)). "[W]here the evidence proffered in response to the motion in limine is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate." *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002).

## II.   Thomas Was Not Acting as a Journalist or Member of the Press in Any Capacity on January 6.

The Defendant claims that he is "a recognized media personality, a podcaster, a political journalist, and videographer" and that he "was videoing as a member of the press on Jan. 6 to document actions of authorities." ECF 91 at 5. This statement is untrue.  Although the Defendant does now run a podcast and has a Rumble channel with eighty-seven followers, that was not the case on January 6, 2021. The Defendant began his podcast in late 2022,[3] and posted his first video

---

[3] The Government became aware of the Defendant's podcast in late December 2022. At that time, the Defendant's Google podcast account indicated that the first episode has been posted in early December. Since that time, the Defendant apparently deleted and reuploaded all of his podcast episodes on or about March 15, 2023.

to Rumble approximately one year ago.[4] Thus, the Defendant began acquiring his current following more than a year after January 6.

On January 6, 2021, like millions of other ordinary Americans, including many who participated in the Capitol Riot, the Defendant did have a Twitter, Facebook, and a YouTube page and had friends, followers, and/or subscribers on all three. Both his Facebook and Twitter have since been deleted, and so the government cannot determine how many friends or followers he had on either on January 6, 2021. However, the below screenshot, which was taken in early 2021, shows that the Defendant's YouTube channel then had even fewer followers (36) than his current following on Rumble, and was in his own name, rather than representing or linking to a media entity:



Far from being a "recognized media figure," the Defendant is a person with a slightly outsized digital footprint and an unexceptional digital following.

---

[4] Rumble does not give exact upload dates. The first video on the Defendant's Rumble channel indicates that it was posted "1 year ago." *See* Kekistani Rumblings, A Patriots Pledge of Allegiance, *available at* https://rumble.com/vj35lp-a-patriots-pledge-of-allegiance.html.

Why the Defendant filmed and then published videos of himself and thousands around him committing federal offenses is known only to him. But, where violence begins, the First Amendment ends. *See, e.g., United States v. Alberts*, 21-cr-26 (CRC), Trial Tr., April 11, 2023 at 261-63 ("With respect to the First Amendment defense, the Court previously ruled that there is no First Amendment right to engage in assaultive or other unlawful conduct."). When the Defendant assaulted law enforcement officers who were lawfully engaged in their duties—protecting the Capitol and the elected officials and employees therein—the protections of the First Amendment ceased to apply to him. *See*, *e.g.,* ECF 82, Gov. Mot. to Preclude First Amendment Defenses. That he was holding a camera while doing so is of no moment.

## III.     Thomas Cannot, as a Matter of Law, Assert Self Defense.

Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties. 18 U.S.C. § 111(a)(1). To raise a valid claim of self-defense to a charge of assault under Section 111, the defendant must show (1) that he reasonably believed the use of force was necessary to defend himself or another against an immediate use of excessive force by a federal law enforcement officer; and (2) he used no more force than appeared reasonably necessary in the circumstances. *United States v. Urena*, 659 F.3d 903, 906-07 (9th Cir. 2011) (quoting *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006)); *United States v. Span*, 970 F.2d 573, 576-77 (9th Cir. 1992); *United States v. Weekes*, 517 F. App'x 508, 510-11 (6th Cir. 2013); *United States v. Middleton,* 690 F.2d 820, 826 (11th Cir. 1982) ("[S]elf-defense is a defense which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is

necessary to avoid this danger."). *See generally United States v. Waldman*, 835 F.3d 751, 754 n.1 (7th Cir. 2016) (collecting cases).

Apart from these prerequisites, "a defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018). That principle applies fully to Section 111 prosecutions. *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in selfdefense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault."); *Urena,* F.3d at 907 (an individual who is the attacker cannot make out a claim of self-defense as a justification for an assault)*; Weekes*, 517 F. App'x at 510–11 (same).

Thus, Thomas would be entitled to a jury instruction on self-defense only if he could establish each of the following: (1) he was not the initial aggressor; (2) he reasonably believed that his use of force was necessary to defend against officers' immediate use of excessive force; and (3) he responded with no more force than reasonably necessary under the circumstances. As video footage shows, Thomas fails each of these conditions.

A. *Thomas Cannot, as the Initial Aggressor, Assert Self-Defense*

Video evidence demonstrates that Thomas was the initial aggressor.  He repeatedly emerged from the crowd, physically engaging with officers who were using minimal force to clear a crowd from a restricted area. As the instigator, Thomas cannot, as a matter of law, defeat the Section 111 charge by asserting self-defense.

B. *Thomas's Use of Force Was Objectively Unreasonable*

Thomas is also precluded from asserting self-defense or defense of others because no

reasonable person in his in Thomas's position would have believed that the police were using excessive force. *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012).

Thomas and the crowd he had joined were illegally in a restricted area of the U.S. Capitol. Officers were ordering them to "move back" and actively manning barricades. Because of this violation, law enforcement had probable cause to arrest Thomas for violations of federal criminal law. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

Because officers had the right to physically detain and arrest Thomas, who had illegally entered and was unlawfully remaining on restricted grounds despite lawful orders to move back, officers pushes against the crowd reflected a "reasonable[] [display] of force based on the facts and circumstances." *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011) (internal quotation marks, brackets, and citation omitted).

C. *Thomas Responded With Greater Force Than Neceesary*

Even if it were objectively reasonable for Thomas to respond with some force to officers' use of force to clear the upper west terrace, his repeated assaults for over an hour, including with a clenched fist, were greater than necessary to protect himself. *See Waters*, 896 F.3d at 570 (self-defense not applicable 'if [the defendant] and his co-conspirators used excessive force to repel Hargrove's attack"). Because the defendant and the other members of the crowd had the ability to disperse, at some point, Thomas's continued assaultive conduct was more than necessary. His decision to remain and continue the struggle against the officers was therefore unreasonable.

For each of these reasons, any self-defense assertion fails as a matter of law in this case. Thomas therefore should be precluded from presenting evidence or testimony regarding self

defense, and from referencing or suggesting self-defense in statements to the jury.

**IV.    Thomas Cannot, as a Matter of Law, Advance any Other Affirmative Defense.**

For these same reasons, Thomas will be unable to present a valid defense of necessity, justification, or duress.   The affirmative defenses of necessity, justification, and duress are available where there was a "reasonable, legal alternative to violating the law, a chance both refuse to do the criminal act and also to avoid the threatened harm."   *Baily*, 444 U.S. at 410.   Here, Thomas could have avoided any potential threatened harm by avoiding the restricted area of the U.S. Capitol.   He instead deliberately entered that area and then, encountering a police line clearly indicating its desire that he disburse, he antagonized officers and spent more than an hour engaging with them.   Moreover, Thomas had a reasonable, legal alternative: he could have retreated a multiple points.   Thomas did the opposite, attacking officers more than five times.   Accordingly, Thomas cannot legally invoke these affirmative defenses and should be precluded from arguing them to the jury.

## **CONCLUSION**

For the reasons set forth in the Government's previous motions and above, the United

States respectfully requests that this Court strike these affirmative defenses.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Samantha R. Miller
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Samantha.Miller@usdoj.gov

SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov