**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No.** |
| | : | |
| **KENNETH JOSEPH OWEN THOMAS,** | : | **1:21-cr-00552 (CRC)** |
| | : | |
| **Defendant** | : | |
| | : | |

## DEFENDANT THOMAS' RESPONSE AND OPPOSITION TO GOVERNMENT'S MOTION TO STRIKE AFFIRMATIVE DEFENSES, and MEMORANDUM OF LAW

Defendant KENNETH JOSEPH OWEN THOMAS ("Thomas"), through the undersigned counsel, John L. Pierce, Esq. presents this Memorandum of Law in OPPOSITION to the Government's Motion to Strike Defendant's Affirmative Defenses.   In opposition Thomas states that the government is seeking to preclude Thomas' defenses merely by invading the province of the jury and seeking to script the facts as the government likes them.

The United States, with its vast resources, keeps abusively filing the same arguments over and over.  As pointed out in Thomas' response to the government's #89 Motion in Limine, the government possesses information which belies the government's claims that Thomas has no affirmative defenses.

In ECF #89, the United States referenced "a nearly two-hour long interview

on Rumble in which [defendant Thomas] stated,

> I was up on the Upper West Terrance and the police were trying to push the crowd out of the area. They were *pushing people up against concrete walls and smashing people.* People were being *squeezed and pushed and trampled on*. And so I just kinda said, "look I am not going to move until these people can kinda clear out because that's *a safety issue*." So, I just stood there. I kept screaming at them to hold the line. That's a term that the Capitol Police use to get them to stop advancing. And I was holding back I don't know how many officers, but *I was just not moving until people could be safe*. So, they decided to *beat me with nightsticks and spray me directly in the face*.

ECF #89 at 1-2.

In the same Rumble video, defendant Thomas also said: "I stopped violence. I protected the defenseless. I took weapons away from people who were trying to cause trouble and violence."

**Far from precluding self defense evidence, these nuggets of information <u>open the door</u> for self defense evidence.**

The law of self defense is that a party accused of violence <u>may proffer facts</u> which support a justifiable use of force defense. And the government is in possession of facts and statements by Thomas which justify Thomas asserting the affirmative defenses of justified-use-of-force, justification, and necessity. The government, nonetheless, with savage repetitiveness, seeks to waylay and intercept Thomas' defense by depriving the jury of information the jury needs to evaluate the facts.

"A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself," states the government (p. 4), citing *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018).  But the government's own motion (ECF #89) evokes Thomas' proffer <u>that the officers on the West Terrace were the aggressors</u>:

> I was up on the Upper West Terrance and the *police were trying to push the crowd out of the area*. They were *pushing people up against concrete walls* and *smashing people*. People were being squeezed and pushed and trampled on.
> ***
> I was just not moving until people could be safe. So, they decided to *beat me with nightsticks and spray me directly in the face*.

Pushing a crowd out is aggression.  Pushing people up against concrete walls is aggression and excessive force. Smashing people is aggression and excessive force.  Spraying Thomas directly in the face with teargas is excessive force and aggression. But the government seeks to rig the trial by depriving the Court and the jury of Thomas' defense.


## I.  INTRODUCTION AND OVERVIEW

The Government has persistently insisted in the face of overwhelming precedent to the contrary that it need not provide any details of charged crimes in indictments or criminal informations beyond repeating the bare bones of a statute, that is simply the identification of the statute, the year in which the alleged crime

occurred, and the city in which the alleged crime occurred.  Beyond that, the
Government has furiously resisted any attempt to provide any factual details of its
allegations against January 6 Defendants.  Early on, the U.S. Attorney's Office for
the District of Columbia wrote more proper indictments for grand jury
consideration with factual details.  But in the USAO's mad scramble to
prematurely bring cases that were not ready for official action, these early
indictments melted down over the factual inconsistencies and easily disproven
factual allegations.  The USAO switched to providing no factual allegations in
charging documents.

But now the same USAO expects this Court to fall for the idea that the
Defendant must put on its entire defense case for trial well in advance of trial as a
misguided interpretation of a 'proffer."  That is, the same prosecutors who offer no
factual allegations in cases against January 6 Defendants demand "a trial within a
trial" as if that level of detail were normal for simply notifying the Court and the
USAO of Defendant's intent to prove and argue Affirmative Defenses.

The operative Second Superseding Indictment  ("SSI") in this case, filed on
December 14, 2022, at Dkt. No. 49, contains no allegations of facts.  We must look
if at all to the Statement of Facts filed at Dkt. # 1-1.  Assuming, *arguendo*, that the
Government may offer the Statement of Facts in lieu of a factually deficient
indictment, that a "JOSEPH THOMAS" (alleged to be Kenneth Thomas) known to

the Government only by comparing one video against another, not from any personal knowledge, is noticed in the evidence at the earliest at 3:09 PM and is observed, the document claims, on body-worn ("bodycam") videos until 3:20 PM, when he left an area of the "risers" as the document describes.

The Statement of Facts then includes extensive factual allegations of encounters from 4:22 PM to 4:30 PM.  However, the Government has not identified when it believes Thomas departed the Capitol area entirely.  However, the Government's evidence of someone whom they think is "Joseph Thomas" being near the U.S. Capitol apparently runs only up to about 4:40 PM EST on January 6, 2021.

However, the recess of the Joint Session of Congress on January 6, 2021, **began at 2:13 PM** when Speaker Nancy Pelosi's security detail whisked her away from the Speaker's dais and she "tossed" (figuratively speaking) the presiding officer status to Rep. Jim McGovern (D. - Mass.)    During the prosecution case in chief of *USA v. Stewart Rhodes*, in this District Court, Case No. 1:22-cr-00015, on October 19, 2022, the (then) U.S. House of Representatives Parliamentarian Thomas Wickham testified that Speaker of the House Nancy Pelosi was whisked away from the podium by security at 2:13 on January 6, 2021.

According to the Congressional Record, Rep. McGovern then took over and

recessed the House at 2:18 PM. [1]

## II. ARGUMENT

### A. YOUR GOVERNMENT JUST DOESN'T BELIEVE YOU

The Government's Motion filed at Dkt. # 92 on May 2, 2023, is invalid and improper because it seeks to invade the province of the jury and entirely usurp the role of the jury.

The Government seeks to pre-decide for the jury Defendant's Affirmative Defenses because….

**"We don't believe you."**

The Government's argument in Dkt. #92 consists exclusively of the Government arguing its belief about the factual underpinnings of the Defendant's defense case in chief and Affirmative Defenses.  But the Government does not decide the facts, nor does the presiding judge.  The jury decides what the facts are.

The Government presents its Motion to Strike as if it were challenging the _legal_ validity of the Affirmative Defenses, but in reality this is just a circular argument or endless loop.  The invalidity to the Government is "We don't believe

---

[1]    The court may take judicial notice that the House was recessed by the presiding officer at 2:18 PM, pursuant to standing Rule I, Clause 12(b) (allowing for immediate recess without a vote upon notice of a threat).  **Congressional Record House Articles | Congress.gov | Library of Congress,** Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1; Congressional Record Vol. 167, No. 4 (House of Representatives - January 06, 2021)
**https://www.congress.gov/congressional-record/2021/01/06/house-section/article/H76-4**

you" on the factual bases.  Yes, it is dressed up to sound as if the validity of the

Affirmative Defenses are at issue.  But pulling the thread of the sweater and

following back to the origins, the alleged invalidity is simply that the

Government's version of the facts is in dispute with the Defendant's version of the

facts.  Resolving those disputes is what juries do.

Affirmative Defenses, properly considered are merely the contour of the

application of the criminal law.  That is, doing X is a crime, _except_ when it is done

under Y circumstances.  Thus Affirmative Defenses are actually no different from

a clear definition of when a criminal law applies and when it doesn't.

The Government argues on page 7 of 14 in its Motion "**As previously**

**noted, a defendant is not entitled to assert a defense that is invalid under the**

**law or unsupported by fact."**  But a defense that proves the prosecution

unfounded has nothing to do with this.

### B. THE JURY'S ROLE IN DECIDING THE FACTS: GOVERNMENT'S EXAGGERATED VIEW OF "PROFFER" WOULD BECOME A "TRIAL WITHIN A TRIAL"

So what is a "proffer" exactly?  A proffer must provide a "minimum

standard" but what is that standard?  The U.S. Supreme Court has shined a bit of a

light on this in a glancing blow as enough "as to each element of the defense so

that, if a jury finds it to be true, it would support an affirmative defense…."

That is, if the Defendant's proffered factual allegations that – if the jury

believed the proffered facts – the affirmative defense could be found true by the

jury, then the proffer is legally sufficient.  Of course, the jury retains a lot of

decision-making.  But facts that would "support" a finding that the affirmative

defense was established at trial, then the facts noticed prior to trial are adequate:

> But precisely because a defendant is entitled to have the
> credibility of his testimony, or that of witnesses called on his
> behalf, judged by the jury, it is essential that the testimony
> given or proffered meet a minimum standard as to each
> element of the defense so that, if a jury finds it to be true, it
> would support an affirmative defense—here that of duress or
> necessity.

*United States v. Bailey United States v. Cogdell,* 444 U.S. 394, 100 S.Ct. 624, 62
L.Ed.2d 575 (1980)

Here, the Government wishes to play the role of the jury as well as the

prosecutor.  The Government has offered no argument concerning the law, only

that the Government and the Defendant dispute the facts, and therefore the

Government should win automatically.

> Two bedrock characteristics of our system of trial by jury, a
> system the Supreme Court has labeled "fundamental to the
> American scheme of justice," *Duncan v. Louisiana*, 391 U.S.
> 145, 149, 88 S.Ct. 1444 1447, 20 L.Ed.2d 491 (1968), are that
> jury deliberations occur in seclusion and that the jury serves as
> the sole finder of fact. Regarding the first characteristic, not
> only is "the sanctity of jury deliberations... a basic tenet of our
> system of criminal justice," *United States v. Schwarz*, 283
> F.3d 76, 97 (2d Cir.2002), but courts go to great lengths to
> protect that sanctity.   * * * *
>                              * * *

No less fundamental than jury seclusion is the principle that the jury — not the trial judge and not the attorneys — serves as the trier of fact. As the Supreme Court has said:

> Of course, ... in a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.

*United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572-73, 97 S.Ct. 1349 1355, 51 L.Ed.2d 642 (1977) (citations omitted). This court has also emphasized the importance of the jury as fact-finder. Indeed, "our opinions have repeatedly emphasized our conviction that the jury's role as fact-finder is ... central to our jurisprudence." *United States v. Comer*, 421 F.2d 1149, 1154 (D.C.Cir.1970); see *also Belton v. United States*, 382 F.2d 150, 156 (D.C.Cir.1967) ("[T]he principle that the jury should be permitted to find the facts is a cornerstone of our jurisprudence...."). Underscoring the importance of that role, this court, sitting en banc, has declared that "[a]ny undue intrusion by the trial judge into this exclusive province of the jury is error of the first magnitude." *United States v. Thomas*, 449 F.2d 1177, 1181 (D.C.Cir.1971) (en banc).

* * *

*United States v. Ayeni*, 374 F.3d 1313 (D.C. Cir. 2004) (Tatel, Circuit Court Judge, Concurring).

Furthermore, the USAO is effectively – though it would rather just win without even trying – calling for a "trial within a trial" to pre-decide the facts.

But the Government's overly-expansive demands for a "proffer" constituting every fact that may be presented at trial is mistaken.  A "proffer" concerning the factual bases of affirmative defenses is essentially "notice pleading" not a complete trial cover to cover.

No, Defendant Thomas has not filed in advance the entire contents of the expected trial.  No, that is not required.  The Government is placed on notice as to the factual bases for each Affirmative Defense.

## C. PROOF DEFEATING CRIMINAL CHARGES IS NOT JURY NULLIFICATION NOR AN APPEAL TO NULLIFICATION.

This current U.S. Attorney's Office seems fixated on the dialectic that only evidence which might confirm guilt is legitimate while evidence that proves the Defendant not guilty is an appeal to "emotion" or "jury nullification."   (In fact, the USAO's case in court consists almost exclusively of inflaming the emotions of the jury in every January 6 trial.  But they sure don't want anyone else doing what they focus on.)

It is a sad state of affairs but an undeniable and consistent pattern.  One cannot look away from the consistent pattern that this USAO these days seeks to transform any evidence of innocence into an appeal to jury nullification or

otherwise exclude a Defendant's right to present a defense.

But proof of innocence – that one or more elements of the charged crime has not been proven beyond a reasonable doubt – is not an appeal to jury nullification. It is proof that the prosecution is merely wrong.  Presenting proof that the U.S.A.O's jaundiced and imaginative re-interpretation of the facts is mistaken is the core function of a standard criminal trial.

> While intent to disregard the applicable law constitutes a valid basis for dismissal ***[of a juror],*** "a court may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence." *Brown* , 823 F.2d at 596. If it were otherwise, "the government [could] obtain a conviction even though a member of the jury ... thought that the government had failed to prove its case," rendering a defendant's Sixth-Amendment right to a unanimous verdict "illusory." *Id.* ; accord *Thomas* , 116 F.3d at 621. A court thus might face the "often difficult distinction between the juror who favors acquittal because he is purposefully disregarding the court's instructions on the law, and the juror who is simply unpersuaded by the Government's evidence." *Thomas* , 116 F.3d at 621. "[A]n effort to act in good faith may easily be mistaken" for "purposeful disregard of the law." Id. at 618.

*United States v. Wilkerson*, 966 F.3d 828 (D.C. Cir. 2020) (clarification in brackets added).

> It may be possible for a defense lawyer to satisfy the *Strickland* standard while using a defense ***with little or no basis in the law*** if this constitutes a reasonable strategy of seeking jury nullification when no valid or practicable defense exists, ***but such was not the case in regard to Sams' conspiracy charge.*** Sams was in a position to show the jury that he was addicted to heroin during the time he was charged

> with participating in the conspiracy, and thus he could have
> relied upon the valid defense of lack of "specific intent."...

*United States v. Sams*, 104 F.3d 1407 (D.C. Cir. 1996) (arguing whether the lawyers' defense constituted ineffective assistance of counsel) (emphasis added).

Jury nullification is when the evidence proves guilt beyond a reasonable doubt but the jury is asked to ignore the evidence.

A Defendant putting on a defense is showing that the USAO is simply wrong in its view of the evidence and the facts of what actually happened is exactly what defense counsel are supposed to present to make our criminal justice system function properly.

Here, the Government wishes to play the role of the jury as well as the prosecutor.

This current U.S. Attorney's Office seems fixated on the dialectic that only evidence which might confirm guilt is legitimate while evidence that proves the Defendant not guilty is an appeal to "emotion" or "jury nullification."  It is a sad state of affairs but an undeniable and consistent pattern.  One cannot look away from the consistent pattern that this USAO these days seeks to transform any evidence of innocence into an appeal to jury nullification or otherwise exclude a Defendant's right to present a defense.

But proof of innocence – that one or more elements of the charged crime has not been proven beyond a reasonable doubt – is not an appeal to jury nullification.

It is proof that the prosecution is merely wrong.  Presenting proof that the
U.S.A.O's jaundiced and imaginative re-interpretation of the facts is mistaken is
the core function of a standard criminal trial.

Jury nullification is when the evidence proves guilt beyond a reasonable
doubt but the jury is asked to ignore the evidence.

A Defendant putting on a defense is showing that the USAO is simply
wrong in its view of the evidence and the facts of what actually happened.

Why bother with a jury when the prosecution can just tell us what they hope
we will decide?

### D. GOVERNMENT OFFERS NO ARGUMENT OF LAW, ONLY "I DON'T LIKE YOUR FACTS"

The Government has – when one scratches beneath a hasty coat of paint –
really offered no argument concerning the law of self-defense, only that the
Government and the Defendant dispute the facts, and therefore the Government
should win automatically.

The Government argues as if the Affirmative Defenses were not legally
available, but in fact the only argument the Government raises is the claim that the
Defendant's defenses are not valid _because the Government disagrees_ – nothing
more than that.

For example, on page 8, the Government argues "**This statement is
untrue.**"

On page 10, the Government argues "**Why the Defendant filmed and then published videos of himself and thousands around him committing federal offenses is known only to him.**"

On page 10, the Government argues "**But, where violence begins, the First Amendment ends,**" lacking the perspective that Defendant Thomas is _DENYING_ that he was involved in any violence.

Once again, the USAO begins with the self-deception that it is always correct and there must be something crooked about evidence revealing that the USAO is actually wrong.  Or put another way, the Government attempts to transform by a wave of the hand the Defendant's defense into a strawman argument:  A presumption that the Government must be correct (it is not) but that presumed violence can be excused by the First Amendment.

That is not Defendant's defense.  The evidence will show that Defendant Thomas sought to keep a distance between the aggressive law enforcement officers engaged in excessive use of force and himself and other demonstrators.

As law enforcement officers began to crush crowds of demonstrators, which caused the death of at least two demonstrators, Defendant Thomas signaled the importance of keeping a gap between the officers and the crowds – which of course is the standard policy, teaching, practice, and rules governing the Metropolitan Police Department.

Thus, Thomas acted to defend himself against excessive use of force and being crushed between the officers and the crowd (who had nowhere to retreat to, at least at the front of the crowd) and the same in the defense of other members of the crowd by merely reminding them that the gap was closing and creating a danger of both demonstrators and police being crushed in the gathering crowd.

### E.   DEFENDANT SATISFIES EVEN THE PROSECUTION'S LEGAL STANDARD

In other words, Defendant Thomas' Notice satisfies every aspect of the law, including as presented by the Government itself.  As the Government argues on pages 10 through 11 (reformatted for clarity of discussion):

> To raise a valid claim of self-defense to a charge of assault under Section 111, the defendant must show
>
> > (1) that he reasonably believed the use of force was necessary to defend himself or another against an immediate use of excessive force by a federal law enforcement officer; and
> >
> > (2) he used no more force than appeared reasonably necessary in the circumstances.
>
> *United States v. Urena*, 659 F.3d 903, 906-07 (9th Cir. 2011) (quoting *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006)); *United States v. Span*, 970 F.2d 573, 576-77 (9th Cir. 1992); *United States v. Weekes*, 517 F. App'x 508, 510-11 (6th Cir. 2013); *United States v. Middleton,* 690 F.2d 820, 826 (11th Cir. 1982) ("[S]elf-defense is a defense which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger."). *See*

generally *United States v. Waldman*, 835 F.3d 751, 754 n.1
(7th Cir. 2016) (collecting cases).

**<u>At least two (2) demonstrators DIED on January 6, 2021, caused by the</u>**
**<u>excessive use of force and police brutality</u>**, such as piling more and more people
on top of Roseanne Boyland while she is heard in muffled tones crying weakly,
and whimpering her last breath and while other demonstrators screamed at MPD
offices to stop crushing Boyland.  MPD officer body-worn camera video
recordings show Boyland's whimpers dying out to silence as her leg sticking out
from a pile of bodies stops twitching at that moment.

The danger to Thomas and others is not mere conjecture.  **<u>PEOPLE</u>**
**<u>ACTUALLY DIED</u>** in reality at the hands of MPD officers.

Thus, let us hear no more of a legal requirement

> (1) that he reasonably believed the use of force was
> necessary to defend himself or another against an
> immediate use of excessive force by a federal law
> enforcement officer; and

People actually, in fact, died.  That is the end of that issue.

Minneapolis Police Officer Derek Chauvin was sentenced to 252 months in
prison for less serious, less egregious "unreasonable force by a police officer" for
putting his knee on George Floyd's back.  Here, while bystanders nearby screamed
at police officers at the opening of the arched tunnel to *STOP!* and cried "You're
killing her," the MPD officers piled more and more other demonstrators on top of

her.  MPD officers shown on video recordings savagely beat Victoria White on the head until her white hoodie oozed red with blood from underneath. This is video, not words, not testimony.

Law enforcement officers were required to modify any use of force by carefully observing whether demonstrators had any avenue of retreat.  They did not.  Because the crowd pushing from behind left no pathway for the people whom police officers were beating to withdraw, any use of force at any level was illegal. Defendant's expert witness will testify, among other things, that taking care as to whether people are able to comply with police demands, no matter how much the police beats them, is a requirement of proper police practices.

The Government argues on page 12:  **Thomas and the crowd he had joined were illegally in a restricted area of the U.S. Capitol. Officers were ordering them to "move back" and actively manning barricades."**

However, the Defendant will put on evidence – the Government's own evidence in the form of Government officer's body-cam video and Capitol security surveillance video recordings – that in fact the crowd could not "move back" because there was nowhere for them to go.  Perhaps a crazy situation, and an example of the madness of crowds, but the ever-growing crowds of more people continually arriving meant that the Defendant and those around him were being crushed and pushed forward toward the police, so that no amount of police

brutality could induce the demonstrators to retreat because there was no place for them to retreat to.

Being pushed from behind, they could only stand and be targets of violence from the police.  Naturally, this situation eventually deteriorated. The crowd is seen on video recordings growing increasingly angry – that is shouting for the police to stop – in reaction to these events.  With aggressive MPD officers tone deaf to these matters and "**The Blood on the Marble**" from demonstrators' wounds beneath their feet, the situation escalated iteratively and grew out of control.  And again, these are the Government's own videos, although kept from the public by an excessive mis-use of the Protective Order.

The DoJ should be opening a criminal investigation of Roseanne Boyland's death.  Counsel would be willing to walk FBI investigators through the evidence, particularly the same FBI / DoJ team that prosecuted Derek Chauvin.

Therefore, Defendant Thomas has alleged sufficient grounds for believing that he and others were at risk of imminent bodily harm while in the middle of circumstances that in fact resulted in actual deaths.

Next, Thomas tapping the shields of police officers very gently and peacefully to remind them to keep a gap – which the officers should already know and observe – is in no way any kind of violence.  Yet twisting words beyond recognition to call what is not violence as violence has become the stuff of modern

prosecutions:

> No word in the B vocabulary was ideologically neutral. A great many were euphemisms. Such words, for instance, as *joycamp* (forced-labour camp) or *Minipax* (Ministry of Peace, i.e. Ministry of War) meant almost the exact opposite of what they appeared to mean. Some words, on the other hand, displayed a frank and contemptuous understanding of the real nature of Oceanic society. An example was *prolefeed*, meaning the rubbishy entertainment and spurious news which the Party handed out to the masses. Other words, again, were ambivalent, having the connotation 'good' when applied to the Party and 'bad' when applied to its enemies. But in addition there were great numbers of words which at first sight appeared to be mere abbreviations and which derived their ideological colour not from their meaning, but from their structure.
>
> **-- Appendix:  The Principles of Newspeak, George Orwell, "Nineteen Eighty Four"**

### F.  DEFENDANT THOMAS HAS PROFFERED AN EXPERT WITNESS ON THE FACTUAL GROUNDS THAT THE GOVERNMENT CLAIMS IS LACKING

Meanwhile, the Government is fighting against the testimony on these very facts by expert witness Steve Hill. The Government believes that there is not sufficient evidence, while trying to block the presentation of that very same evidence by an expert (and by other means).

### G. TRIAL WITHIN A TRIAL

If the Court feels that the requirement of a proffer requires all of the factual evidence that the Defendant would present at trial – a trial within a trial – Defendant Thomas would be delighted to put on a full presentation of evidence and videos as well as a *Daubert* hearing by way of the presentation of expert witness Steve Hill.  The Defendant can present all of the hair-raising video recordings

taken by MPD officer's body-cam (the USCP did not have body-worn cameras).

### III. CONCLUSION

The Court should deny the Government's Motion to Strike and if uncertain hold a full evidentiary hearing of the factual bases for Thomas' Affirmative Defenses.

Counsel for the Defendant would be happy to submit to the Court a complete set of the video recordings proving the excessive use of force that has never been seen by the public or apparently by any judge, if the Court will receive it.

However, counsel believes this is wrong because this is what trials are for. The Government should not effectively turn every attempt to twist the facts into a mini-trial.  That's what trials do, and it is the jury who should do it.

Dated:  May 5, 2023                                RESPECTFULLY SUBMITTED

*By Counsel*

John M. Pierce, Esq.
John Pierce Law Firm
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: *jpierce@johnpiercelaw.com*
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that this document is being filed on this May 5, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants.  From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
**Samantha.Miller@usdoj.gov**

SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, DC 20530
**Sean.McCauley@usdoj.gov**

/s/ John Pierce_____
John M. Pierce, Esq.