UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Case No. |
| : | |
| KENNETH JOSEPH OWEN THOMAS, : | 1:21-cr-00552 (CRC) |
| : | |
| **Defendant** : | |
| : | |

**DEFENDANT'S MOTION TO PROHIBIT USE OF FBI CASE AGENTS AT TRIAL**

Defendant KENNETH JOSEPH OWEN THOMAS ("Thomas"), through the undersigned counsel, John M. Pierce, Esq. and Roger Roots, Esq., and hereby moves the Court for the exclusion of the testimony or participation at trial of an FBI "case agent" providing supposed rights to the Government's prosecution denied to the Defendant at trial.

The Government's frequent success in criminal prosecutions is in part due to court rules which allow the Government to frame, stage and rig trials in the government's favor. If the government were confined to the constraints imposed on defendants, the government could not so easily win convictions.

Herein defendant challenges the government's frequent practice of having a case agent sit at the prosecution table and then using that same case agent as a key witness in the prosecution's case, while precluding defendants from designating their own key researchers familiar with the evidence to introduce images, records and recordings as evidence in the same trials.

1

I. **RELEVANT CONTEXT**

This case like most January 6 related criminal prosecutions depends almost entirely on video recordings made by the Government itself (security video and body-worn camera video from law enforcement officers) and video seized by the Government from individuals (sometimes called these days "civilian video").

The Government has, with cumulative evidence of knowing intent, buried defense counsel in as much as 7 terabytes of mostly irrelevant video recordings and other information in order to (we infer from their behavior) bury the gems under a mountain of junk. The gems of course are evidence of various Defendants innocence either directly or under affirmative defenses, known to the Government and prosecution as de-legitimizing the prosecutions.

Therefore, Defendant Thomas' legal counsel named its key paralegal and factual researcher Ms. Lambert as a witness to introduce video recordings and other evidence provided from the Government to the defense and place those into the record. Upon the objection of the prosecution team that the witness was a key part of the defense' legal team and was participating in the case at the defense table in court, Defendant's counsel explained that she was the Defendant's "case agent" in exactly the same manner as the FBI case agent (one of many) the Government would call to testify about things the FBI case agent actually does not know but discerns from reviewing video recordings from January 6, 2021.

The Court wondered if only the Government can have a "case agent" while the Defendants' counsel cannot. "It's sort of a Government thing" (paraphrasing) the Court asked and ordered this brief.

Because of this sequence of discussions, the Defendant also noticed an alternative witness, Mr. Moseley, to introduce the videos into the record if Ms. Lambert is ruled unable to

2

do so.  Thereupon, Mr. Moseley – despite coming to town to help in the courtroom shuffling papers, taking notes, etc. – left the Courtroom during jury selection and remained out of Court.

While Ms. Lambert is deeply familiar with every bit of video produced by the Government after spending hundreds of hours reviewing the disclosures (most of which are in common across most or all Defendants), Mr. Moseley can best satisfy the standards of the revisions to the rules of authenticating video evidence, which requires a witness to demonstrate that he is familiar with the location and/or scenes depicted and that the video accurately shows the location and scene claimed.  Mr. Moseley has lived in the D.C. area off and on since being a Congressional intern in the Summer of 1985, including with authorization to access locations closed to the public, and many dozens of visits to the Capitol and its grounds over the years, including for work meeting with Members of Congress and distributing press releases and materials all throughout the Capitol complex for many years.  Therefore, he recognizes each scene in the videos provided by the Government from personal knowledge of the Capitol.

Again, the triggering issue is that the Government's case agent is sitting in court despite a "rule on witnesses" under FRE Rule 615, and participating in the Government's legal team in real time in Court, but will nevertheless testify.  And the consistent practice has been in these related cases for the FBI case agent to not merely sponsor video into evidence but to comment and explain the Government's dark and sinister interpretations of otherwise innocent behavior or at times justifiable but controversial behavior.

The practice has been that the FBI case agent will tell the jury what the Defendant was thinking, planning, intending, and/or trying to do with no evidence to support those of any kind but will abuse the title to persuade the jury to accept the Government's unfounded assumptions. The result is to hold Defendants guilty based upon being accused.

## II. FBI "CASE AGENTS" HAVE NO FOUNDATION TO ADMIT VIDEO RECORDINGS OR PHOTOGRAPHS

It should be understood that these are not witnesses who personally took photographs or video recordings. The FBI case agent will not testify "I took that video on my video camera." Nor does the Government call an appropriate witness to lay a "business records" exception to hearsay for security camera video recordings. The FBI case agent is used to testify that the FBI received video recordings and information from hundreds or thousands of different sources, all coming together like raindrops on a baseball field. The only qualifications for an FBI case agent to testify to any video recordings or other information is to say "Someone gave this to me and I watched it."

## III. THERE IS NO PROVISION IN THE RULES OF EVIDENCE OR LAW FOR A "CASE AGENT"

Consistent with the overwhelming practice of the Government claiming for itself rights and privileges that it denies to its citizens, such as accused Defendants in criminal trials, the Government has arrogated to itself on its own claimed authority to designate "case agents" of the FBI with special powers and rights.

We are reminded that one of the driving forces and purposes of the Bill of Rights in the U.S. Constitution was the practice of the British Crown using abusive and excessive criminal prosecutions as a guise with which to suppress political dissent. The United States was designed to reject an authoritarian monarchy where dissent is not permitted.

There is no authority in the Federal Rules of Evidence or any other statute, law, or rule for an "FBI case agent." In January 6 related trials FBI "case agents" have been allowed on the witness who have no knowledge of what they testify to in violation of Federal Rules of Evidence

Rule 602.  Several times in trials of other cases from January 6, 2021, "case agents" have testified to assertions about which they have no knowledge and then when cross-examined admit on the witness stand, under oath, that they have no knowledge of the assertions to respond to questions on cross-examination.  These are not witnesses.  They are merely reading from documents in the file.  They might be compared to what the British call "news readers" on television news, in which an on-air anchor is simply handed a script to read without any personal investigation.

This adds to the problem that the FBI case agent, consciously or unconsciously, will add opinion dressed up as conclusions of the investigation, hinting (wink, wink, nod, nod) on evidence that is not admitted into evidence and is not before the jury.  Their testimony is as if to say "If only you'd seen what I've seen" but "just trust me on this one."

In *United States v. Hampton*, 718 F.3d 978 (D.C. Cir. 2013), this Circuit rejected the use of FBI "case agents" in the manner in which they have been rampantly used in January 6 criminal prosecutions.  However, the DoJ never seems to learn from being chastised by appellate courts, but keeps on repeating the same rejected techniques:

> FBI Agent Bevington was a key witness against Hampton at trial. The government did not attempt to qualify him as an expert witness under Rule 702 of the Federal Rules of Evidence. Instead, he was called as a lay witness. Agent Bevington testified that he had 20 years of FBI experience at the time of this trial, including more than 100 drug investigations and more than 50 investigations with court-ordered wiretaps. With respect to Glover's drug operation, Bevington testified that he was the case agent—the supervisor of the FBI agents conducting the investigation. In that capacity, he monitored wiretaps, performed physical surveillance, provided daily reports to the United States Attorney's Office, and supervised other personnel monitoring the wiretaps. He also testified that he had reviewed every conversation—some 20,000—captured by the wiretaps, not just the 100 or so recordings admitted into evidence. The government put Bevington on

the stand five times during the trial, usually to give the context and an explanation of recorded statements admitted into evidence. As the government told the jury during its opening statement, the recorded telephone calls were "very, very cryptic," and the government used Bevington to interpret them for the jury.

Federal Evidence Rule 701 permits lay testimony in the form of an opinion when it meets the following criteria: it must be rationally based on the witness's perception and helpful to the jury in understanding the witness's testimony or the determination of a "fact in issue," and may not be based on the kind of specialized knowledge possessed by experts within the scope of Rule 702.1 We review the district court's admission of evidence for abuse of discretion. *United States v. Williams*, 212 F.3d 1305, 1308 (D.C.Cir.2000).

When there has been a proper objection, the district court of course must determine whether the lay witness's opinion testimony satisfies Rule 701's requirements. See Williams, 212 F.3d at 1309–10 & n. 6;see also 29 Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold & Michael H. Graham, Federal Practice and Procedure: Evidence §§ 6254, 6255 (1997 & Supp. 2013); Anne Bowen Poulin, Experience–Based Opinion Testimony: Strengthening the Lay Opinion Rule, 39 Pepp. L.Rev. 551, 595–96, 610–11 & n.227 (2012).

Jurors too must independently assess the basis of the opinion and scrutinize the witness's reasoning. But "[w]hen a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find." United States v. Rea, 958 F.2d 1206, 1216 (2d Cir.1992). Enforcement of Rule 701's criteria thus ensures that the jury has the information it needs to conduct an independent assessment of lay opinion testimony. Judicial scrutiny of a law-enforcement witness's purported basis for lay opinion is especially important because of the risk that the jury will defer to the officer's superior knowledge of the case and past experiences with similar crimes. United States v. Grinage, 390 F.3d 746, 750–51 (2d Cir.2004).

Here, the district court's failure to enforce Rule 701's boundaries on lay-opinion testimony denied the jury the information it

needed to assess the FBI agent's interpretations of recorded statements.

On several occasions the district court allowed Agent Bevington to provide opinions about the meaning of ambiguous references in recordings admitted into evidence. The prosecutor, for example, played a tape in which Velma Williams asked Lonnell Glover: "[H]ave you talked [to] your brother? ... [H]e say he feeling fine then?" The prosecutor then asked Agent Bevington to interpret the questions. When Agent Bevington opined that Williams was referring to Hampton, defense counsel objected, calling this mere speculation, and adding at the bench conference that Glover himself had a brother. In response to the court's question about the basis of Bevington's opinion, the prosecutor replied: "I think he has listened to all of the calls, and he's done the surveillance, and he has seen all of the evidence in this case, and he has based his opinion ... on this investigation." Apparently convinced, the court overruled the objection.

That was only one of several such exchanges. After considering Hampton's objection that Agent Bevington's opinions about the meaning of certain terms used by the participants in the recordings were admissible only as expert testimony, the district court ruled that it would allow the testimony "because of the work here in this case where [Agent Bevington] has testified that he listened to thousands of conversations" recorded during the investigation.

The prosecutor asked Agent Bevington what he thought Glover meant when he said to Hampton during a phone call, "[s]o a boy come pick me up, then I had to ride around with him, when I see you I'm gonna tell you everything been going on, I just man you talking about a hectic [expletive deleted] day." 2 The court overruled Hampton's objection and explained, "I think that there is sufficient basis on the record with the sequence and the contents of each of these phone calls, and Agent Bevington has experience in this case from reviewing all of the thousands of phone calls and understanding, so he can talk about his opinion as to what he believed they were discussing when he says that." The agent testified that he believed the statement indicated that Glover was planning to tell Hampton, when they met in person, that on the previous day police had executed a search warrant on the home of one of Glover's lieutenants and had seized PCP there.

On cross-examination, defense counsel challenged the basis for that opinion. The agent defended his testimony, stating, "There

7

is more to it based on other activations on the phone and in the truck," and "it is based on other conversations." When asked if someone else could understand the statement differently, Agent Bevington replied, "If they just had this portion of the conversation and didn't know other things about the investigation and other conversations, maybe. But I think—anybody who has listened to all of the calls and is aware of all of the conversations would agree with me."...

When an agent, particularly a case agent, see *United States v. Dukagjini*, 326 F.3d 45, 53–55 (2d Cir.2003), provides interpretations of recorded conversations based on his "knowledge of the entire investigation," " the risk that he was testifying based upon information not before the jury, including hearsay, or at the least, that the jury would think he had knowledge beyond what was before them, is clear." Grinage, 390 F.3d at 750;see also United States v. Garcia, 413 F.3d 201, 213–15 (2d Cir.2005). The Grinage court held that the agent's interpretation of conversations in that case was not a permissible lay opinion under Rule 701 "because, rather than being helpful to the jury, it usurped the jury's function." 390 F.3d at 751.

Grinage and this case are basically the same, with one important difference, a difference that highlights the error in admitting Agent Bevington's opinion testimony. In Grinage the government recorded 2000 telephone calls from the defendant's cellular phone. 390 F.3d at 747. Although the prosecution played only 13 of these calls for the jury, all 2000 were admitted into evidence. Id. at 747–48. Here there were approximately 20,000 recorded calls, but only 100 or so were admitted into evidence, and fewer still were played in court. And so when Bevington interpreted those conversations on the basis of his listening to "all of the calls," the jury had no way of verifying his inferences or of independently reaching its own interpretations.

We draw further support for our conclusion from cases discussing the government's use of summary or overview witnesses at trial, the analysis of which, we have noted, approaches the question presented here but from a different perspective. See United States v. Moore, 651 F.3d 30, 57 (D.C.Cir.2011) (per curiam) (citing Garcia, 413 F.3d at 211–17);see also Garcia, 413 F.3d at 214–15; *United States v. Casas,* 356 F.3d 104, 117–20 (1st Cir.2004). There is an overarching concern in that context with a witness using, as the basis for his opinion, evidence outside the record. "Such testimony raises the very real specter that

8

> the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence." *Moore*, 651 F.3d at 57 (quoting Casas, 356 F.3d at 119–20) (brackets omitted).
>
> * * *
>
> "For all of these reasons, we agree with Hampton that the district court abused its discretion in allowing Agent Bevington's opinion testimony in violation of Rule 701.3..."

*United States v. Hampton*, 718 F.3d 978, 981-984 (D.C. Cir. 2013).

Therefore, there is no special status carved out in the law or the rules for whatever titles the FBI wishes to use internally.  <u>Here, most relevant to the case at bar, the Government there designating and calling the "case agent" as a witness offered no special rights or special category to the Government.</u>  **The Circuit was unimpressed by titles but applied the Federal Rules of Evidence the same to "case agents" as to anyone else.**

A government agency is free to arrange its own activities as seems best.  A government agency may not rearrange the federal law or the federal courts to suit its own tastes.  There is no designation that can be recognized in the Federal Rules of Evidence for an "FBI case agent" to act outside of the Federal Rules of Evidence.

## IV. DUE PROCESS AND EQUAL JUSTICE UNDER THE LAW

Of course, the granting of special privileges at trial to the Government not available to the Defendant offends the due process and equal protection requirements of the Constitution.

## V. CONCLUSION

The Court is asked to order the same single standard with regard to the ability of the Defendant's key researcher most familiar with the video recordings provided by the Government to introduce those into the record on the same terms and the same procedures as the

9

Government's "case agent."

| | |
|---|---|
| Dated:  May 16, 2023 | RESPECTFULLY SUBMITTED<br>**KENNETH JOSEPH OWEN THOMAS**,<br><br>*By Counsel*<br><br>_____/s/_____<br>Roger Root, Esq.<br>John Pierce Law Firm<br>21550 Oxnard Street<br>3rd Floor, PMB #172<br>Woodland Hills, CA 91367<br>Tel: (213) 400-0725<br>Email: ***jpierce@johnpiercelaw.com***<br>Attorney for Defendant |

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed on this May 16, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants.  From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
**Samantha.Miller@usdoj.gov**

SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, DC 20530
**Sean.McCauley@usdoj.gov**

_____/s/_____
Roger Root, Esq.