# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CASE NO. 1:21-cr-00552 (DLF)** |
| **v.** | **:** | |
| | **:** | |
| **KENNETH JOSEPH OWEN THOMAS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## AUTHORITY REGARDING ATTORNEY ETHICS ISSUES

    a.  Case Law.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *United States v. Celis*, 608 F.3d 818, 828 n.3 (D.C. Cir. 2010) (quoting U.S. Const. amend. VI). An element of this right is the right of the defendant to choose who will serve as defendant's counsel. *Wheat v. United States*, 486 U.S. 153, 159 (1988), *aff'd*, 486 U.S. 153 (1988). This right, however, is not absolute, and is circumscribed in several important respects. *Id*. The Supreme Court has recognized that a defendant is not entitled to his preferred counsel when the preferred counsel has an actual or potential conflict of interest. *Id*. This is because a criminal defendant also has a Sixth Amendment right to representation by an attorney who pursues the defendant's interest "singlemindedly" and whose strategic decisions are not influenced by obligations to others. *Wood,* 450 U.S. at 271-72. Thus, the defendant's right to counsel of choice must be balanced against the defendant's right to an attorney free from conflicts of interest. *Wheat,* 486 U.S. at 160.

When a potential conflict becomes apparent to the Government, the Government usually assumes the duty of raising the issue to the court and, if necessary, moving for disqualification of counsel. *See, e.g., United States v. Flynn,* 411 F. Supp. 3d 15, 54–55 (D.D.C. 2019) ("Although

the government brought the potential for serious conflict of interest to the district court's attention, the Supreme Court's holding in *Wheat* does not compel the government to raise potential conflicts of interest with the Court[.]") (internal citations and quotations omitted); *United States v. Tatum*, 943 F.2d 370, 380 (4th Cir. 1991). The "prosecution's duty to disclose defense counsel's potential or actual conflicts of interest facilitates the administration of justice by helping to avoid lengthy delays or retrials that could occur when conflicts render defense counsel's representation ineffective." *See, e.g., United States v. McKeighan*, 685 F.3d 956, 967 (10th Cir. 2012). When a potential conflict is brought to the attention of the trial court, the court "has the responsibility to investigate further, to advise the defendant personally, and to receive a knowing waiver if that is the expressed wish of the defendant." *Tatum*, 943 F.2d at 379. A trial court's failure to make an inquiry into a potentially or reasonably known conflict mandates reversal. *Wood v. Georgia*, 450 U.S. 261, 272 n.18 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)). "This is because where a defendant's chosen counsel suffers from a conflict of interest, … the court's own institutional interests' are implicated." *United States v. Bikundi*, 80 F. Supp. 3d 9, 16 (D.D.C. 2015) (citations and quotations omitted) (alteration in original). "Guaranteeing conflict-free counsel protects not just defendants' rights, but also the [f]ederal courts['] … independent interest in ensuring that criminal trials are conducted within the ethical standards of the [legal] profession and that legal proceedings appear fair to all who observe them." *Id.*

Conflicts of interest occur when an "attorney reveals privileged communications . . . or otherwise divides his loyalties so that he is incapable of diligently representing his client." *Wheat*, 813 F.2d at 1402,. Thus, conflicts arise when defense attorneys "have divided loyalties due to concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a government witness." *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991); *United States*

3

*v. Weaver*, 265 F.3d 1074, 1075–77 (D.C. Cir. 2001) (holding that counsel's representation of a client and a potential witness against the client created a conflict of interest). Moreover, "an attorney who cross-examines [current or] former clients inherently encounters divided loyalties." *Moscony*, 927 F.2d at 750 (citations omitted). In addition, a defense counsel's simultaneous representation of a prosecution witness and a defendant creates a conflict because counsel may have confidential information concerning his or her representation of the witness. *See Tatum*, 943 F.2d at 377. An attorney whose current or former client is a witness is ordinarily precluded from exploiting any privileged information obtained from that client, such as by use in cross-examination. *See, e.g.*, *United States v. Stites*, 56 F.3d 1020, 1025 (9th Cir. 1995).

Some circuits have even erected an irrebuttable presumption that counsel obtained privileged information from the prior client, *see, e.g.*, *United States v. Provenzano*, 620 F.2d 985, 1005 (3d Cir. 1980), and the mere possession of a client's and codefendant's privileged communications, even where counsel does not plan to rely on those privileged communications during cross-examination, poses a conflict of interest. *See Wheat*, 813 F.2d at 1402; *see also United States v. James*, 708 F.2d 40, 45 (2d Cir. 1983) (approving the disqualification of attorneys who "very likely were privy to confidential communications" despite counsel's offer to limit questioning to matters of public record). The D.C. Circuit has noted several of the conflicts facing zealous defense counsel during the course of a criminal trial, including as follows:

> [W]hether or not to present a defense that helps one defendant more than the other; whether or not to cross-examine a witness whose testimony may help one defendant and hurt the other; whether to have one defendant testify while the other remains silent; whether to have neither defendant testify because one would be a poor or vulnerable witness; whether or not to emphasize in summation that certain evidence is admitted only against (or is less compelling against) one defendant rather than the *19 other; whether or not to argue at sentencing that one defendant's role in the criminal enterprise was shown only to be subordinate to that of the other defendant.

*Bikundi*, 80 F. Supp. 3d at 18–19 (quoting *United States v. Curcio*, 680 F.2d 881, 887 (2d Cir.

4

1982)).

However, as the Supreme Court has repeatedly observed, even where proper waivers are obtained, it is virtually impossible in the earliest stages of trial to predict how conflicts may arise and affect counsel's ability to adequately defend a client. *Wheat*, 486 U.S. at 162-63 (multiple representation poses special dangers to clients because of the practical inability to predict where the lawyer's efforts may be inhibited by a conflict of interest). For this reason, the D.C. Circuit has acknowledged that if the "court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented . . .." *Flynn*, 411 F. Supp. at 55 (citing *Wheat*); *see also, e.g., United States v. Childress*, 58 F.3d 693, 735 (D.C. Cir. 1995) (finding no abuse of discretion in disqualifying defense counsel whose partner represented co-conspirator "because a conflict between [co-defendants] could have developed during the evolution of the government's conspiracy case").   The Supreme Court has said:

> [T]he likelihood and dimensions of nascent conflicts of interest are hard to predict. . . . . A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

*Wheat*, 486 U.S. at 162-163.

Accordingly, it may difficult to assert that the client's waiver is truly "knowing" where it is virtually impossible to know all the problems that will be encountered. *See, e.g., United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998).   For this reason, the Court is allowed "substantial latitude" in refusing waivers of conflicts of interest, not only in those rare circumstances where an actual conflict may be demonstrated before trial, but also in the more common cases where a potential for conflict exists that may flourish into an actual conflict as trial

progresses. *Id.* at 163. This latitude prohibits the courts from being "whip-sawed" by defendants who insist on conflicted counsel, then later claim that they did not receive effective assistance because of the conflicts. *Id.* at 161-62 (noting that ineffective assistance of counsel is reversible error). This is particularly important given the "apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." *Id.* at 162.

        b.   <u>Rules of Professional Conduct.</u>

Similarly, Rule 1.7 of D.C.'s Rules of Professional Conduct states that "(b) . . . a lawyer shall not represent a client with respect to a matter if: (2) Such representation will be or is likely to be adversely affected by representation of another client; [or] (3) Representation of another client will be or is likely to be adversely affected by such representation[.]"[1] Rule 1.6 provides that "(a) . . . a lawyer shall not knowingly: (1) reveal a confidence or secret of the lawyer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person."[2] "'Confidence' refers to information protected by the attorney-client privilege." *Id.*

Rule 1.9 of the D.C. Bar's Rules of Professional Conduct further states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."[3]  The comments

---

[1]    https://www.dcbar.org/for-lawyers/legal-ethics/rules-of-professional-conduct/client-lawyer-relationship/conflict-of-interest-general-rule.

[2]    https://www.dcbar.org/Legal-Ethics/Rules-of-Professional-Conduct/Client-Lawyer-Relationship/Confidentiality-of-Information.

[3]    https://www.dcbar.org/For-Lawyers/Legal-Ethics/Rules-of-Professional-Conduct/Client-Lawyer-Relationship/Conflict-of-Interest-Former-Client.

to Rule 1.9 also indicate that these questions are fact-specific, and a "lawyer's involvement in a matter can also be a question of degree." *Id.,* Comment 2. "When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id.* (noting Rule 1.9 is intended to incorporate District of Columbia and federal case law defining the "substantial relationship" test) (citing *Brown v. District of Columbia Board of Zoning Adjustment,* 486 A.2d 37 (D.C. 1984) (en banc); *T.C. Theatre Corp. v. Warner Brothers Pictures,* 113 F. Supp. 265 (S.D.N.Y. 1953), and others)).

"'[S]ubstantially related' for purposes of this rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.,* Comment 3. The comments further specify that, "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." *Id.* And, "[a] former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id.*

Although the cited Rules of Professional Conduct do allow clients and/or former clients to waive certain conflicts, *see e.g.,* D.C. Rule 1.7, Comment 31, "[o]rdinarily . . . the waiving client [should have] other current counsel independent of the lawyer soliciting the waiver." *Id.* In

addition, Rule 1.10 of the American Bar Association's Model Rules of Professional Conduct provides that a single attorney's conflict of interest may be imputed to the entire law firm: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing."[4]

                                 Respectfully submitted,

                                 MATTHEW M. GRAVES
                                 United States Attorney
                                 D.C. Bar No. 481052

By:     */s/ Samantha R. Miller*
                                 SAMANTHA R. MILLER
                                 Assistant United States Attorney
                                 New York Bar No. 5342175
                                 United States Attorney's Office
                                 For the District of Columbia
                                 601 D Street, NW 20530
                                 Samantha.Miller@usdoj.gov

                                 SEAN P. McCAULEY
                                 Assistant United States Attorney
                                 New York Bar No. 5600523
                                 United States Attorney's Office
                                 For the District of Columbia
                                 601 D. Street, NW
                                 Washington, DC 20530
                                 Sean.McCauley@usdoj.gov

---

[4] https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_10_imputation_of_conflicts_of_interest_general_rule/.

8