**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Criminal No. 21-CR- 552 DLF** |
| **KENNETH JOSEPH OWEN THOMAS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' RESPONSE TO
THE DEFENDANT'S TRIAL BRIEF**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia respectfully responds to the Defendant's trial brief. ECF 116.

**I.    The Defendant's assertion that the Capitol Police could not lawfully close the area surrounding the Capitol lacks a foundation in law.**

The Government notes that it has previously briefed the issue about whether the Capitol Grounds may be temporarily closed to First Amendment activities.  ECF 82 (Gov. Mot. to Preclude Certain Improper Defenses) at 5-6.[1] In response to the Defendant's trial brief, the government adopts in full—again—the argument from its prior motion. *Id.*

However, the Government notes that many of the cases the Defendant cites to support his assertion that any closure of the Capitol grounds at any time is unlawful do not stand for the propositions that he contends. The Defendant, in both his trial brief and in court proceedings, has cited *Adderley v. Florida*, 385 U.S. 39 (1966). *See* Def. Trial Brief at 13. The Defendant's reliance on this case is misplaced. In *Adderley*, the Court did remark that protesting at a state capitol is different in character from protesting at a jail because "[t]raditionally, state capitol grounds are

---

[1] In this same motion, the Government moved to preclude the Defendant from arguing that his assaults on law enforcement officers on January 6 were protected by the First Amendment. ECF 82 at 6-8. On May 8, 2023, and then again on May 23, 2023, the Court granted the Government's motion.

open to the public." *Id.* at 41. The context in which the Court made this observation, though, is of great import. In asserting that "traditionally capitols grounds are open to the public," the Court was extrapolating upon its decision in *Edwards v. South Carolina*, 372 U.S. 229 (1963). In that case, the Court struck down a statute that was "so broad and all-embracing as to jeopardize speech, press, assembly, and petition[.]" *Id.* at 42 (citing *Edwards*, 372 U.S. at 237). It was this same doctrine of overbreadth, the *Adderley* Court noted, that rendered Louisiana's breach-of-the-peace statute unconstitutional. *Id.* (citing *Cox v. Louisana*, 379 U.S. 536, 551-552 (1965)). The Court's statement about capitols being traditional public fora was not, as the Defendant asserts, a holding that *any* regulation that limits First Amendment activities on any capitol ground *ever* is unconstitutional. It was, instead, a truism that supported the holding from *Edwards* that a statute or regulation that was so overbroad and all-embracing such that it prohibited, in effect, *any* First Amendment Activity on capitol grounds at *any* time is unconstitutional. *Adderley*, 385 U.S. at 42.

The Defendant's citation to *Community for Creative Non-Violence v. Kerrigan*, 865 F.2d 382 (1989), is also inapposite. In that case, the plaintiffs challenged a Capitol Police regulation that prohibited permits to protest being issued for more than seven consecutive days or for more than twenty-four consecutive hours. The Defendant asserts that the holding of *Kerrigan* is that "there is no doubt that the Capitol Grounds are a public forum." Def. Trial Brief at 2. That is not the holding of *Kerrigan*. The holding of *Kerrigan* is that the Capitol Police regulation at issue in the case was "narrowly tailored to meet the significant governmental interest in maintaining control over Capitol Grounds." *Kerrigan*, 865 F.2d at 391. This holding is consistent with the holding in *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp 575 (1972),[2] another

---

[2] The Defendant asserts that *Jeanette Rankin Brigade* held that "Capitol Grounds are 'an area to which access cannot be denied broadly or absolutely.'" Def. Trial Brief at 2. This is not the holding of *Jeanette Rankin Brigade*. It is a quote to *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308 (1967), which appears within *Jeanette Rankin Brigade*.

case which the Defendant has consistently relied upon in briefs and in court proceedings. In that case, a special panel of the District Court for the District of Columbia did strike down a Capitol Police regulation that prohibited protesting but, in doing so, observed that the 90-year-old statute at issue functioned as "a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on the Capitol Grounds" and was "flatly prohibitory." *Id.* at 585-586.

The Defendant's assertions of law in his trial brief are unfounded. The government has a significant interest "in maintaining control over Capitol Grounds." *Kerrigan*, 865 F.2d at 391. The government may exclude from the Capitol "any group which is noisy, violent, armed, or disorderly in behavior, any group which has a purpose to interfere with the processes of Congress, any member of Congress, congressional employee, visitor or tourist; and any group which damages any part of the building, shrubbery, or plant life." *Jeanette Rankin Brigade*, 342 F. Supp at 580. On January 6, 2021, the government closed a limited area immediately surrounding the Capitol for a limited time and did so in such a way that anyone who wished to protest the proceedings inside of the Capitol could still do so within sight and earshot of the building. The closed area was marked with signs, fences, and gates around the entire area of the Capitol, along with an increasingly heavy police presence guarding the building. The Defendant's knowledge of these signs and other indicators that he was in a closed area is a matter of fact to be decided by the factfinder.[3] This limited closure was not so overbroad that it prohibited all First Amendment at any time in the vicinity of the Capitol. *Adderley*, 385 U.S. at 42 (citing *Edwards*, 385 U.S. 39); *see also* ECF 82

---

[3] The specific area of the Upper West Terrace where the Defendant ultimately assaulted law enforcement officers is a sensitive area that had been closed for twenty years for security reasons because, as happened when that area was breached on January 6, it provides direct access to the Capitol through the Senate Wing Door and Parliamentarian Door. The entire West Front of the Capitol was also closed that day, as it had been since the preceding August, for construction of the inauguration stage. Thus, in this case, the Capitol Police had closed the specific area at issue in this case thrice over, and each time had narrowly tailored the closure in such a way that people could—and did—lawfully exercise their First Amendment rights on Capitol Grounds.

at 5-6. Therefore, the closure of the Capitol Grounds on January 6, 2021, does not violate the First Amendment. *Ibid.*

**II.     The Defendant's reading of 18 U.S.C. § 111(a) is contrary to law.**

The government has previously briefed the Defendant's specific assaultive conduct on January 6 in response to the Defendant's motion to dismiss those counts. ECF 75. The Court then denied the Defendant's motion to dismiss for multiplicity of the charges relating to 18 U.S.C. § 111(a) and for insufficient factual allegations. Minute Order, March 20, 2023. The Government again discussed the Defendant's specific assaultive conduct on January 6 in its Motion to Strike the Defendant's Affirmative Defense. ECF 92. The government again relies on those filings.

The Defendant, minimizing his conduct on January 6, "submits that his brushings, push-offs, or contacts with police shield and/or protective equipment on January 6 simply do not qualify assaults under 18 USC 111 [sic]" because he "could not have intended to harm or injure the officers by any stretch of the imagination." Def. Trial Brief at 10. As the Court noted with respect to the Defendant's proposed jury instructions in both the March 20, 2023, motions hearing and the May 8, 2023, pretrial hearing, this injects an additional element into 18 U.S.C. § 111(a). The statute only requires that a person forcibly assault, resist, oppose, impede, intimidate, or interfere with any person who is designated as a federal law enforcement officers. 18 U.S.C. § 111(a)(1). It does not require that he do so with the intent to harm or injure the officer, only that he assault, resist, oppose, impede, intimidate, or interfere with a law enforcement officer who is engaged in his official duties.

**III.     The Defendant's reading of 18 U.S.C. § 231 is contrary to law.**

The Defendant asserts that because certain business did "better than average" on January6, 2021, that there was no effect on commerce as is required under 18 U.S.C. §231. The Defendant does not present any evidence to support these factual assertions that rises to a level above mere

speculation. Furthermore, as the Court noted on the record in open court on May 17, 2023, this reading again inserts an element into the statute that simply is not there. Specifically, that the civil disorder have a "net effect" on commerce. The statute only requires that the Defendant's conduct "in *any way or degree* obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 231(a)(3) (emphasis added). In any event, the effect on commerce, in any way or degree, is an ultimate issue in the case that must be decided by the jury.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

*/s/ Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
Washington, DC 20530
Sean.McCauley@usdoj.gov