UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 1:21-cr-00552 (DLF) |
| v. | : | |
| | : | |
| KENNETH JOSEPH OWEN THOMAS, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S SUPPLEMENTAL
REPLY TO THE DEFENDANT'S REPLY IN
RESPONSE TO THE GOVERNMENT'S RESPONSE TO THE
DEFENDANT'S TRIAL BRIEF AND SUPPLEMENTAL TRIAL BRIEF

In his Reply to Government's Response to Defendant's Trial Brief and Supplement to Defendant's Trial Brief (Supp. Tr. Br.) (ECF No. 130),[1] defendant Kenneth Joseph Owen Thomas raises additional arguments regarding the charges in this case that have no basis in law.[2] For the reasons discussed below, the Court should reject Thomas's legally unsupported interpretation of the statutes at issue in this case.

A. The Proper Interpretation of 18 U.S.C. § 231(a)(3)

Thomas first makes several assertions about the requisite effect on commerce under 18 U.S.C. § 231(a)(3) that cannot be squared with the statutory text. Section 231(a)(3) provides:

Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful

---

[1] This item has not yet been docketed due to an error in the signature block.

[2] The Defendant's reply discusses the Capitol Police's ability to close Capitol Grounds. ECF 130 at 8-11. Focusing on the public nature of the grounds and referencing "National Watermelon Day" celebrations, the defense contends, without support or citation, that the nature of the physical barriers and signage is essential for establishing a restricted perimeter and further contends that any closure of Capitol Grounds *ever* violates the First Amendment. ECF 130 at 9-11. The Government has briefed the issue of why the temporary closure of the Capitol Grounds does not violate the First Amendment. ECF 82 (Gov. Mot. to Preclude Certain Improper Defenses) at 5-6; ECF 125 at 1-4 (Gov. Resp. to Defendant's Trial Brief). Irrespective of the Defendant's assertions that temporary and moveable fencing/signage represents an inappropriate boundary, the Government relies on its previous briefing of this issue.

1

performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—[s]hall be fined under this title or imprisoned not more than five years, or both.

As the plain language of this statute makes clear and consistent with the government's proposed jury instructions, the jurisdictional element addresses whether "a civil disorder"—not the individual defendant—"in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function[.]" *Id.*[3] It is not necessary, therefore, for there to be a direct causal link between a defendant's obstructive conduct during the civil disorder and the civil disorder's adverse effects as the defendants contend.

In *United States v. Mostofsky*, 579 F.Supp. 3d 9, 18 (D.D.C. 2021), another case stemming from the events of January 6, 2021, the defendant acknowledged that "§ 231 unambiguously modifies the term 'civil disorder,' not 'any act[,]'" but argued that this represents a constitutional defect in the statute.  In rejecting this claim, Chief Judge James E. Boasberg relied on the analysis of *United States v. Howard*, No. 21-28, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).  As the court explained, "[w]hen a person deliberately commits some act to obstruct, impede or interfere with those officers [who are 'attempting to quell an interference with interstate commerce'], that person is impacting interstate commerce."  *Mostofsky*, 579 F.Supp. at 18 (*quoting Howard,* 2021 WL 3856290 at *10).

Several other judges of this court have addressed this section of the statute while ruling following bench trials in January 6, 2021-related cases.  For example, in *United States v. Patrick*

---

[3] The terms "civil disorder," "commerce," "law enforcement officer," and "federally protected function" are defined in 18 U.S.C. § 232.

*Edward McCaughey, III et al.*, 21-cr-40-TNM, Judge Trevor N. McFadden recited the elements of a violation of 18 U.S.C. § 231 in announcing his verdict on that count.  Government's Exhibit 1 at 43–47.  The court explained that "[t]he third element [of a § 231 violation] is that the civil disorder in any way or degree obstructed, delayed or adversely affected either interstate commerce or the movement of any article or commodity in interstate commerce or the conduct or performance of any federally protected function."  *Id*. at 46.  In assessing the evidence related to this element and addressing the defendants' claim that it was the mayor's curfew that caused an adverse impact on commerce rather than the events at the Capitol, the court explained that "[t]he mayor's order was made necessary only by the civil disorder, so I cannot view it as some superseding event for the purposes of causation.  Without the events at the Capitol, there would be no curfew and therefore no effect on interstate commerce."  *Id*. at 46-47.

To be clear, the government does not need to show such an effect on commerce.  The jurisdictional element can be satisfied by a showing that the civil disorder obstructed, delayed, or adversely affected *either* "commerce or the movement of any article or commodity in commerce" or "the conduct or performance of any federally protected function" (in this case, the Secret Service's duties to protect the Vice President and his family members and the Capitol Police's function of protecting the Capitol building and grounds and those inside the building.).  In other words, the government can prove this jurisdictional element by establishing that the civil disorder, in any way or degree, (1) obstructed commerce; (2) delayed commerce; (3) adversely affected commerce; (4) obstructed the movement of any article or commodity in commerce; (5) delayed the movement of any article or commodity in commerce; (6) adversely affected the movement of any article or commodity in commerce; (7) obstructed the performance of any federally protected

function; (8) delayed the performance of any federally protected function; *or* (9) adversely affected the performance of any federally protected function.

Thus, the government may meet its burden by showing that the civil disorder had an adverse impact on a federally protected function irrespective of any effect on commerce. *See, e.g.*, *United States v. Phomma*, 561 F. Supp. 3d 1059, 1067 (D. Ore. 2021) ("[E]ven if this court were to conclude that § 231(a)(3) runs afoul of the Commerce Clause, the government could seek a superseding indictment because the statute also applies when there is 'a civil disorder which in any way or degree obstructs, delays, or adversely affects . . . *performance of any federally protected function*.'") (quoting 18 U.S.C. § 231(a)(3); *United States v. Red Feather*, 392 F. Supp. 916, 918 (D.S.D. 1975) ("In order to meet its burden under 18 U.S.C. § 231(a)(3), the government must prove beyond a reasonable doubt each of the following elements: . . . 2. That such civil disorder interfered with a federally protected function[.]"); *United States v. Jaramillo*, 380 F. Supp. 1375, 1376 (D. Neb. 1974) (same).

As for the commerce-related jurisdictional hook, to establish the requisite effect on commerce, "the Government need only show a minimal effect on interstate commerce to support a conviction." *United States v. Pugh*, Cr. No. 1:20-cr-73-TFM, 2021 U.S. Dist. LEXIS 177266, at *14 (S.D. Ala. May 13, 2021); *see, e.g.*, *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290, at *9 (E.D. Wis. Aug. 30, 2021) (same); *cf. United States v. Jamison*, 299 F.3d 114, 118 (2d Cir. 2002) ("We have long recognized that the requirement of showing an effect on commerce involves only a minimal burden of proving a connection to interstate commerce, and is satisfied by conduct that affects commerce in any way or degree.") (quotation marks omitted). This conclusion is consistent with longstanding Supreme Court precedent that Congress may regulate activities that substantially affect commerce "so long as they substantially affect interstate

commerce in the aggregate, even if their individual impact on interstate commerce is minimal." *Taylor v. United States*, 579 U.S. 301, 306 (2016); *see Wickard v. Filburn*, 317 U.S. 111, 125 (1942) ("[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce"). As one court recently explained, "[t]he fact that the individual violation— or, in this case, the individual civil disorder—may have only a minimal impact on interstate commerce is irrelevant if the aggregate impact of such disorders overall is substantial." *United States v. Mayes*, No. 18-cr-154-pp, 2022 WL 203373, at *8 (E.D. Wis. Jan. 24, 2022).

In his initial Trial Brief (Tr. Br.) (ECF No. 116), Thomas asserted that he intended to show that there was no "negative impact on commerce" for purposes of Section 231(a)(3)'s jurisdictional requirement. According to Thomas, at trial he would "show that the D.C. economy suffered no harms whatsoever from the Jan. 6 incident. The food truck industry did better than average, the hotels were packed, and the bars and restaurants were making fantastic profits during and after the event." Tr. Br. at 10. In his Supplemental Trial Brief, Thomas asserts that "the effect on commerce must be from the Defendant's conduct – not from some other cause." Supp. Tr. Br. at 2. And he claims that he "must have intended to affect interstate commerce." *Id.* at 5. In addition to being replete with proof problems, these arguments are meritless.

First, even if Thomas were able to prove by competent evidence that the civil disorder on January 6 did not "adversely affect" commerce—which seems unlikely—that is immaterial to the government's ability to prove the jurisdictional element in this case. As discussed above, an "adverse effect" on commerce is just one of the many ways the government can establish "the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects

commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function[.]" § 231(a)(3).

Second, the statute does not require the government to directly link any effect on commerce (or the performance of a federally protected function) to a particular defendant's conduct. To the contrary, the statutory language is clear: it is the *civil disorder*, not the particular defendant, that must have the requisite effect. *See, e.g.*, *United States v. Mostofsky*, 579 F. Supp. 3d 9, 19 (D.D.C. 2021) (Bates, J.) ("The jurisdictional element in § 231(a)(3) requires precisely a showing that the regulated conduct 'interferes with or otherwise affects commerce' — namely, that the individual civil disorder at issue 'obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce.'"); *United States v. Wood*, Cr. No. 20-56 MN, 2021 WL 3048448, at *6 (D. Del. July 20, 2021) ("there must first be a civil disorder that affects commerce"). As one court recently explained,

> A defendant may be convicted of violating the statute only if the civil disorder during which the law enforcement officers are lawfully performing their lawful duties obstructs, delays or affects interstate commerce. As Judge Duffin implied, this means that the officers are, among other things, attempting to quell an interference with interstate commerce. When a person deliberately commits some act to obstruct, impede or interfere with those officers, that person is impacting interstate commerce. That person is trying to prevent, or is preventing, the officer from performing duties which include the protection of interstate commerce. The person may not know that that is what he is doing, any more than a defendant who commits a Hobbs Act robbery knows that he is interfering with interstate commerce, or a felon who possesses a gun that previously has traveled in interstate commerce knows that he is committing a federal offense. But the person's act of attempting to obstruct or obstructing the law enforcement officer does impact interstate commerce, by preventing the officer from protecting interstate commerce.

*Howard*, 2021 WL 3856290, at *10.

Finally, there is no legal basis for the Thomas's claim that he "must have intended to affect interstate commerce." Supp. Tr. Br. at 5. Section 231(a)(3) does not contain any express *mens rea* requirement for the jurisdictional element. As the Supreme Court has made clear "when Congress

has said nothing about the mental state pertaining to a jurisdictional element . . . [c]ourts assume

that Congress wanted such an element to stand outside the otherwise applicable *mens rea*

requirement. In line with that practice, courts have routinely held that a criminal defendant need

not know of a federal crime's interstate commerce connection to be found guilty." *Torres v. Lynch*

578 U.S. 452, 468 (2016); *see also, e.g.*, *United States v. Feola*, 420 U.S. 671, 676-77 n. 9 (1975)

("the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor

at the time he perpetrates the act made criminal by the federal statute"); *United States v. Burwell*,

690 F.3d 500, 537 n.10 (Kavanaugh, J., dissenting) ("The presumption of mens rea does not

generally apply . . . to jurisdictional-only elements[.]").[4]

---

[4] The defense motion refers to Congress's power to regulate interstate commerce under the Commerce Clause.  In addition to its power to regulate foreign and interstate commerce, Congress has broad authority to oversee the District of Columbia.  U.S. Const. Article I, Section 8, Clause 17.  The relevant constitutional clause states that:

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States.

U.S. Const. Art. I, § 8, Cl. 17.  Such power "is plenary."  *Palmore v. United States*, 411 U.S. 397 (1973).  "Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." *Id*.  "Congress 'may exercise within the District all legislative powers that the legislature of a state might exercise within the State … so long as it does not contravene any provision of the constitution of the United States.'" *Id*. (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 5 (1899)). "Congress may legislate within the District for every proper purpose of government," and "[w]ithin the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments." *Neild v. D.C.*, 110 F.2d 246, 249 (D.C. Cir. 1940).  "[W]hen it legislates for the District, Congress … exercise[s] complete legislative control as contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the boundaries of the states, on the other.  *Id.* at 250-51.  *See also Hyde v. S. Ry. Co.*, 31 App. D.C. 466, 469 (D.C. Cir. 1908) ("The legislative power of Congress over the District of Columbia and the Territories [is] plenary, and [is] not depending upon the interstate-commerce clause").

By enacting § 231(a)(3), Congress relied on its plenary power over the District of Columbia.  "Commerce," as used in § 231(a)(3), "means commerce (A) between any State or the

B.  The Proper Interpretation of 18 U.S.C. § 111(a)

Thomas makes two legally unsupported assertions regarding the proper interpretation of Section 111(a): (1) that "the Government must prove as an element of the crime that Defendant Thomas intended to assault a police officer and intended to cause the officer harm," and (2) that "the term 'forcibly' requires the intent to harm the police officer[.]" Supp. Tr. Br. at 6, 8. These arguments are meritless.

As an initial matter, Thomas's argument cannot be squared with the plain language of Section 111(a). That statute makes it a crime whenever someone "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title . . . while engaged in or on account of the performance of official duties[.]" § 111(a)(1). Recognizing that Section 111 prohibits acts other than assault—resisting, opposing, impeding, intimidating, and interfering—numerous courts of appeals have held that "assault is not an essential element of every § 111 offense." *United States v. Stands Alone*, 11 F.4th 532, 535 (7th Cir. 2021); *see also United States v. Briley*, 770 F.3d 267, 273-75 (4th Cir. 2014); *United States v. Williams*, 602 F.3d 313, 315-18 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021, 1024-27 (6th Cir. 2009). There is thus no basis for Thomas's claim that the government must prove he intended to assault a police officer as an element of Section 111(a).

There is likewise no statutory basis for Thomas's argument that the government must prove that he intended to harm an officer. To the contrary, Section 111(a) makes it a felony to have "physical contact" with a law enforcement officer "while [that officer is] engaged in" his official duties—there is no harm, or intent to harm, required. As numerous courts have recognized, "[t]he

---

District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) *wholly within the District of Columbia*." 18 U.S.C. 18 U.S.C.A. § 232(2) (emphasis added).

government is not required to establish that the defendant was aware that his intended victim was a federal officer or that the defendant intended to injure that officer." *United States v. Woody*, 55 F.3d 1257, 1265-66 (7th Cir. 1995); *see also United States v. Jackson*, 728 F. App'x 969, 972 (11th Cir. 2018) ("§ 111 is a general intent statute, requiring only intent to commit the underlying act, not necessarily intent to injure"); *United States v. Moore*, 997 F.2d 30, 35 n.8 (5th Cir. 1993) ("No proof of intent to injure or knowledge that the victim is a federal officer is needed."); *United States v. Sanchez*, 914 F.2d 1355, 1358 (9th Cir. 1990) ("no intent to injure is required for the offense of assaulting a federal officer").

This conclusion would not, as Thomas asserts, "delete 'forcibly' from the statute." Supp. Tr. Br. at 8. The government recognizes that the defendant must have acted "forcibly," and that the jury must so find. *See United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) ("the adverb 'forcibly' in the first element of the offense modifies each of the prohibited acts specified in the second element: that is, a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc."). But that element does not, as Thomas would have it, "require[ ] the intent to harm the police officer." Supp. Tr. Br. at 8. Rather, it merely requires "some measure of presently applied force . . . . Threats of the future use of force are not enough[.]" *United States v. Cunningham*, 509 F.2d 961, 963 (D.C. Cir. 1975). "[A] defendant may be convicted of violating section 111 if he or she uses any force whatsoever against a federal officer[.]" *United States v. Sommerstedt*, 752 F.2d 1494, 1496 (9th Cir. 1985); *see also United States v. Fernandez*, 837 F.2d 1031, 1035 (11th Cir. 1988) (same); *United States v. Hernandez*, 921 F.2d 1569, 1577 (11th Cir. 1991) (holding that that Section 111 "may be violated . . . by minimal physical contact . . . or even without the presence of any physical contact") (citing cases) *United States v. Mathis*, 579 F.2d 415, 418 (7th Cir. 1978) ("A verdict of guilty of assault or

interference with a federal official without a weapon under 18 U.S.C. § 111 requires evidence that the defendant used some quantum of force or *threat* of force in committing the offense."); *United States v. Frizzi*, 491 F.2d 1231, 1232 (1st Cir. 1974) (holding that "spitting in the face . . . is an application of force to the body of the victim"); *Lucas v. United States*, 443 F. Supp. 539, 544 (D.D.C. 1977) (holding that Section 111 "includes the lifting of a menacing hand toward the officer, or shoving him").

## <u>CONCLUSION</u>

For these reasons, the United States respectfully requests that this Court reject the Defendant's erroneous interpretation of 18 U.S.C. §231 and 18 U.S.C. § 111(a).

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Samantha.Miller@usdoj.gov

SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov