```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
THE UNITED STATES OF AMERICA,
                                        Criminal Action No.
            Plaintiff,                  1:21-cr-00026-CRC-1
                                        Tuesday, April 18, 2023
vs.                                     9:10 a.m.
                                        *MORNING SESSION*
CHRISTOPHER ALBERTS,

            Defendant.
- - - - - - - - - - - - - - - - x
_____

                    TRANSCRIPT OF JURY TRIAL
        HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                  UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the United States:     JORDAN ANDREW KONIG, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           P.O. Box 55
                           Ben Franklin Station
                           Washington, DC 20044
                           (202) 305-7917
                           jordan.a.konig@usdoj.gov

                           SAMUEL DALKE, ESQ.
                           DOJ-USAO
                           228 Walnut Street, Suite 220
                           Harrisburg, PA 17101
                           (717) 221-4453
                           samuel.s.dalke@usdoj.gov

                           SHALIN NOHRIA, ESQ.
                           UNITED STATES ATTORNEY'S OFFICE
                           601 D Street NW
                           Suite Office 6.713
                           Washington, DC 20001
                           (202) 344-5763
                           shalin.nohria@usdoj.gov


       (CONTINUED ON NEXT PAGE)
```

```
APPEARANCES (CONTINUED):

For the Defendant:          JOHN M. PIERCE, ESQ.
                            ROGER ROOTS, ESQ.
                            JOHN PIERCE LAW P.C.
                            21550 Oxnard Street
                            Suite 3rd Floor OMB #172
                            Woodland Hills, CA 91367
                            (213) 400-0725
                            jpierce@johnpiercelaw.com
                            rroots@johnpiercelaw.com


Court Reporter:             Lisa A. Moreira, RDR, CRR
                            Official Court Reporter
                            U.S. Courthouse, Room 6718
                            333 Constitution Avenue, NW
                            Washington, DC  20001
                            (202) 354-3187
```

```
 1                  So we're going to take a break until noon.  Feel
 2      free to -- Ms. Jenkins, can they walk -- they can walk
 3      outside the building, if they like?
 4                  THE COURTROOM DEPUTY:  Yes, Your Honor.
 5                  THE COURT:  So be back in the jury room by noon.
 6      Okay?
 7                  Thank you very much.  No discussions about the
 8      case.  No research about the case.
 9                  (Jury exits courtroom)
10                  THE COURT:  All right.  Have a seat.
11                  All right.  Why don't we start with the self-
12      defense and defense of others, Mr. Dalke, if you're ready to
13      be heard on that; and then we can move to everything else.
14                  MR. DALKE:  So just in the self-defense and where
15      the government would start is we previously did file a
16      motion on this.  It was Docket 106.  It was the government's
17      motion in limine.  It's still the government's position --
18      and we briefed the law and the issues related to that.
19                  THE COURT:  Okay.  Hold on.  Let me just -- let me
20      just...
21                  And I'm going to ask my counsel to come up to the
22      witness stand because she's more familiar with the logistics
23      of the instructions.
24                  MR. ROOTS:  All this time I thought she was a U.S.
25      Marshal.
```

1           THE COURT: She's an infiltrator.
2           Okay. Go ahead. I think I'm with you.
3           MR. DALKE: And I just wanted to point that out.
4  And we can cover the points here on the record, but I didn't
5  want you to think we hadn't addressed the issue already.
6           THE COURT: No, I understand. It was addressed in
7  the context of a motion in limine. Now that all the
8  evidence is in, the question is is there enough in evidence
9  to support an instruction.
10          MR. DALKE: So there's two fundamental principles
11 I want to start out with before we even get to whether the
12 defense has put on enough to raise it, and those two points
13 are as follows:
14          First, the defendant cannot claim self-defense if
15 he was the aggressor or if he provoked the conflict upon
16 himself. And that's the *Waters v. Lockett* decision from the
17 D.C. Circuit 2018 that I believe we cited in the briefing.
18 So that's principle number one. It just doesn't apply,
19 period, if he was the aggressor or if he provoked the
20 conflict itself relating to the specific assault, which is
21 the 1:54 time when the defendant grabs the officer and then
22 proceeds with the pallet.
23          The second kind of underlying fundamental
24 principle is that you don't have self-defense, in the
25 government's view, when you assault a federal law

1    enforcement officer.  So self-defense, as a matter of law,
2    does not apply to resisting arrest or performances of duty
3    by law enforcement officers; and we cite two decisions in
4    our brief.  The *U.S. vs. Drapeau* from the Eighth Circuit as
5    well as *U.S. vs. Branch.*
6            THE COURT:  Sorry, the first one was...?
7            MR. DALKE:  D-R-A-P-E-A-U.
8            THE COURT:  Got it.
9            MR. DALKE:  Drapeau maybe.  644 F. 3d 646 from the
10   Eighth Circuit, pincite 654.
11           And the quote from there is an individual -- this
12   is a direct quote, "An individual is not justified in using
13   force for the purpose of resisting arrest or other
14   performance of duty by a law enforcement officer within the
15   scope of his official duties."
16           And the *Branch* decision has a similar quote.
17           But the concept is that we don't think -- as a
18   preliminary matter with these two fundamental tenets of when
19   self-defense even comes into play, that it wouldn't be in
20   play here because the evidence in the record does show that
21   he's the aggressor, that he provoked this specific
22   advancement, and putting hands on.
23           And, second, he can't, as a matter of law, get
24   this instruction under these circumstances because he was
25   subject to arrest.  He was committing multiple violations of

1    law at the time he was on those steps, and he was
2    interfering with the performance of law enforcement.  And
3    there's no evidence in the record that those officers, you
4    know, weren't discharging their duties.
5                So I just wanted that as the backdrop before we
6    get --
7                THE COURT:  Sure.  Let's start with the first
8    point.
9                I mean, my understanding is that the standard for
10   an instruction is whether there is at least some evidence --
11   I mean, you may think the evidence tilts in your favor as to
12   whether he was the aggressor or not, but, you know, to get
13   an instruction on that isn't the standard whether there is
14   some evidence?  Right?
15               And here -- I will hear from Mr. Roots, but I'm
16   sure the argument will be that he only started advancing
17   after he was himself hit with nonlethal or observed others
18   he was around having been hit with nonlethal rounds.
19               And so if there's a factual question about that,
20   that's a jury question, and there should be an instruction
21   on it.
22               MR. DALKE:  I guess what I'm trying to get at is
23   with these fundamental underlying opinions, before we even
24   get to that --
25               THE COURT:  Well, let's talk about that first, and

| | |
|---|---|
| 1 | then if it's totally out because it's a law enforcement |
| 2 | officer, that's a different question. |
| 3 | MR. DALKE:  That's what I'm saying.  The rules in |
| 4 | the Red Book apply to assault, right? |
| 5 | THE COURT:  Sure. |
| 6 | MR. DALKE:  You're in Superior Court. |
| 7 | THE COURT:  Sure. |
| 8 | MR. DALKE:  Two civilians, you get an assault.  I |
| 9 | get the situation. |
| 10 | That's not the situation we have here, so I think |
| 11 | there is a question of whether we even get to Step B. |
| 12 | THE COURT:  All right.  Let's take it in your |
| 13 | order then. |
| 14 | Judge Mehta gave an instruction in the *Webster* |
| 15 | case.  Did that involve a law enforcement officer? |
| 16 | MR. DALKE:  It did, Your Honor. |
| 17 | THE COURT:  So he was -- that was wrong? |
| 18 | MR. DALKE:  I think in the position of the |
| 19 | government, that's not the instruction that we would -- we |
| 20 | don't think those instructions should be given. |
| 21 | THE COURT:  Okay. |
| 22 | MR. DALKE:  I wasn't involved in the Mehta case. |
| 23 | THE COURT:  Do you know if the government proposed |
| 24 | that instruction or whether the government objected to it? |
| 25 | MR. DALKE:  I'm not sure of the origins of it.  It |

1    is the same instruction that we would be submitting; that if
2    the Court was going to go that way, essentially that's what
3    we would be submitting.
4            THE COURT:  Okay.  So the legal question is, as a
5    matter of law, if the evidence shows that the officers were
6    performing their duties, there is no self-defense
7    instruction under any circumstances?
8            MR. DALKE:  Because the individual's not justified
9    in using force under either resisting arrest or performance
10   of a duty by a law enforcement officer within the scope of
11   his duties.  That's the first step.
12           THE COURT:  Okay.
13           MR. DALKE:  And I don't think they've presented
14   any evidence contrary to that.
15           THE COURT:  Okay.
16           MR. DALKE:  So then you get to the second step --
17           THE COURT:  What if the force -- and I'm just
18   thinking out loud here.  What if the force by the police or
19   the federal officials in this case was arguably excessive
20   and a jury could make that finding?  Is there a self-defense
21   claim or right to self-defense in that situation?
22           MR. DALKE:  I think that would go to whether it
23   was within or outside the scope of their duties.
24           THE COURT:  Okay.
25           MR. DALKE:  I mean, we're starting to get into the

1        kind of tail end of that kind of preliminary question.
2                THE COURT:  So it's always within the scope of
3        their duties to use reasonable force?
4                MR. DALKE:  Reasonable force.  And if you're
5        getting beyond that, then I think you're outside the scope.
6                I think when we get to whether or not it's legally
7        permitted for him to argue self-defense in this case, to --
8        it then comes to the question of what's the standard to
9        raise that.  And the -- I do think I've read the *Webster*
10       instructions, and those would be where we're headed.
11               I guess the question is even to get to giving that
12       instruction to the jury that was given in *Webster*, you know,
13       he has to show through his own testimony, through the
14       evidence, a standard which I don't think he's met that prima
15       facie case.  Right?  So it is essentially that where a
16       person reasonably believes that he or another is in
17       immediate danger of unlawful bodily harm from an adversary
18       and the use of force is necessary to avoid the danger.  And
19       so that's what he must demonstrate.
20               And we cite the *United States vs. Slatten*
21       decision, again, from the District of Columbia from 2018.
22       There is also the *United States vs. Middleton*, which is an
23       11th Circuit Decision, as well as Judge Mehta in *Webster*.  I
24       believe there's also the *Biggs* decision in the Ninth Circuit
25       that we cited as well.

```
 1                  But it's clear from all these decisions, they just
 2      don't say self-defense and you give it.  There's got to be a
 3      showing to meet that burden, if it even applies.  So that's
 4      where we're at.
 5                  THE COURT:  And which of those -- which parts of
 6      that showing do you contend have not been met here?
 7                  MR. DALKE:  I don't think there's a reasonable
 8      belief, I don't think there's an immediate danger, and I
 9      don't think force is necessary to avoid the danger.  So
10      those will be the three that there hasn't been a showing
11      about.
12                  The first is the defendant was not in immediate
13      danger of unlawful bodily harm, nor were the others around
14      him.  There's no evidence of injuries that have been
15      presented in this case.  The only evidence of a rioter being
16      injured around that time was Guy Reffitt, the guy in the
17      blue jacket who was sprayed.
18                  THE COURT:  He showed his injuries in the
19      photographs of the bruises, right, the defendant's injuries?
20                  MR. DALKE:  You mean from the photographs
21      themselves?
22                  THE COURT:  Yes.  And he testified he was injured.
23                  MR. DALKE:  And my counsel reminds me, those
24      injuries -- and I believe -- if I recall the testimony
25      correctly, were all after he advances up, gets hit with the
```

1    baton.  I mean, that's the first contact.  Right?
2              He doesn't have contact with law enforcement
3    before he moves up those steps.  He wasn't -- he couldn't
4    have been shot with the PepperBalls because he's weaving his
5    way up through the crowd.
6              He gets up there.  He takes the pallet; he moves
7    up; they have the interaction.  And that's when he
8    testified, "This is when they hit me with the baton, and
9    this is when they shot me in the groin area or in the leg
10   area," when he was on that front line committing the
11   assault.  So I don't think there's evidence of injuries.
12             I do think, when we talk about defense of others,
13   the case I want to talk about and the thing that we've got
14   to get into is that only comes into play if others had the
15   right to self-defense.  Right?  He doesn't just get to put a
16   blanket around everyone around him and say, "Well, I'm going
17   to defend you all."  It has to go that they had to have a
18   reasonable belief that they were in immediate danger of
19   unlawful bodily harm and that force was needed.
20             There's the *Fersner* decision, F-E-R-S-N-E-R,
21   involving the United States from D.C. in 1984, and the quote
22   was, "The trial court correctly observed that the right to
23   use force in defense of a third person is predicated upon
24   that other person's right to self-defense."
25             And here the evidence that's been shown is Guy

1 Reffitt repeatedly ignored those warnings that were on
2 video, you know, and law enforcement didn't continue to use
3 any force as to Guy Reffitt after he was sprayed.  And
4 there's no evidence of anything.  He gets sprayed.  He lies
5 down.  He continues to wave, but they're not -- there's no
6 video of them shooting him.  There's no video of, you know,
7 any use of force.
8 　　　　　So to say that he could take up arms and assault
9 the officers to protect Guy Reffitt, there's no evidence of
10 that in the record.
11 　　　　　The second one is the immediate danger.  Again,
12 he's fully suited up.  The evidence of -- there is no
13 evidence that he was in immediate danger.  I think from his
14 own words, you know, it was, you know -- I forget the exact
15 quote.  I don't have it for you.  But it was something to
16 the effect of, you know, "Try that on me."
17 　　　　　He's got the body armor.  He's got the gas mask.
18 I think he testified at one point he took the gas mask off
19 and then he was sidelined.
20 　　　　　But in that moment before the assault is all that
21 matters, and I don't think there's been a showing of that.
22 　　　　　And I don't think there's been a showing -- and
23 this is where maybe it all comes down -- that force was
24 necessary to avoid the danger, and they have to show that
25 force was necessary to avoid the danger.  That moving up

1   those steps, that putting the hands on the officer, to
2   moving forward with the pallet was necessary.  And it's not
3   necessary.  I mean, there's no -- he's four or five steps
4   above the next rioter.
5              Guy Reffitt sat down, and he wasn't shot anymore.
6   When Alberts came back down after confronting those
7   officers, he wasn't shot anymore.  Right?  It was when he
8   was moving up as the aggressor that they responded.
9              You know, I do think there was testimony from the
10  defendant of people ducking in and out under the
11  scaffolding, was his own words, "ducking in and out."  You
12  know, "ducking under."
13             He made his way up pretty easy, kind of weaving
14  through the mob.  He certainly could have made his way back
15  down.
16             Again, to say that force was necessary and to put
17  that question to the jury, they haven't -- and that's just
18  to get it before the jury.  I don't think they've met that.
19             I think he -- there is evidence -- what is in the
20  evidence is that he ignored the warnings, that he escalated.
21             I think, as we also talked, there's evidence that
22  at the time of this incident he was breaking the law, which
23  goes to, you know, that underlying principle that use of
24  force is not justified when they're resisting arrest or --
25  and he certainly could have been arrested there.  He's

1   subject to arrest.
2           And, again, all the evidence that the Court has
3   seen and even from the defendant's own words is that he
4   advanced; he moved forward; he moved forward and upward; he
5   proceeded up those steps.  There's nothing about the
6   retreat.
7           It would be one thing if you say he stood there,
8   and the law enforcement officers came down, and then there
9   was a fight or a grapple.  He advanced on those officers.
10          So I just don't think, for those reasons, both the
11  underpinnings as well as the actual facts as applied to this
12  case, the defendant has -- one, is not entitled to it; and,
13  two, even if they were entitled to it under the
14  circumstance, haven't met the preliminary showing for that
15  issue to even reach the jury.
16          THE COURT:  Okay.  And if you could state as best
17  you can what the standard is for that preliminary showing.
18  Any evidence?  Scintilla of evidence?  Prima facie case?
19          When I go back and decide whether there's enough
20  in evidence -- assuming you're not right as a matter of law
21  with respect to a federal law enforcement officer.
22          MR. DALKE:  I think they have to make a showing, a
23  prima facie case.  They have to make some type of
24  demonstration, and that's what we don't think is made here.
25          THE COURT:  So something less than a

```
 1     preponderance, but just some prima facie showing?
 2               MR. DALKE:  I mean, it has to be a real showing.
 3     It can't be --
 4               THE COURT:  Sure.
 5               MR. DALKE:  -- speculative, hypothetical.  Like
 6     it's got to be -- and it has to be consistent with the
 7     evidence that's in there.
 8               THE COURT:  Of course.
 9               MR. DALKE:  I think if it's clearly -- the videos
10     confront -- you know, Mr. Alberts got up and for a day
11     testified about all those things, but it's not consistent
12     necessarily with the videos shown.  So I don't think just
13     saying "Well, he testified about it" is sufficient where,
14     when he testifies, it's belied by the video evidence of the
15     same time frame.
16               So I don't think that gets him there just to say,
17     "Well, he listened to all the testimony throughout the week,
18     and then he said otherwise."  That doesn't get it.  It needs
19     to be a little bit more.
20               THE COURT:  Okay.
21               All right.  Mr. Roots?  Mr. Pierce?
22               MR. ROOTS:  I think --
23               THE COURT:  Hold on one second.  I'm having
24     trouble getting what I'm looking for.
25               (Pause)
```

1            THE COURT:  Okay.

2            MR. PIERCE:  Excuse me, Your Honor.  We really

3    haven't had a break with everybody so far to use the

4    restroom, and I --

5            THE COURT:  Sure.  Why don't we take a ten-minute

6    break.

7            MR. PIERCE:  Thank you so much.

8            (Recess taken)

9            THE COURT:  All right.  I am not going to give a

10   self-defense or defense of others instruction.  I went back

11   and read the cases cited by the government, *Drapeau* from the

12   Eighth Circuit and *Branch* from the Fifth Circuit.

13           Obviously the application of self-defense in the

14   context of law enforcement officers performing their lawful

15   duties, which it's clear these officers were, is a different

16   sort of analytical issue than self-defense in regular

17   assault cases not involving law enforcement.

18           Quoting from the *Drapeau* case, "An individual is

19   not justified in using force for the purpose of resisting

20   arrest or in other performance of duty by a law enforcement

21   officer within the scope of his official duties."

22           In order to, I believe, establish the right to an

23   instruction or to justify an instruction, there must be

24   sufficient evidence from which a reasonable juror might

25   infer that either the defendant did not know the identity of

|    |                                                                           |
|----|---------------------------------------------------------------------------|
| 1  | the law enforcement officer -- here there's testimony that                |
| 2  | the defendant obviously knew that the people at the top of                |
| 3  | the stairs were law enforcement officers -- or that the law               |
| 4  | enforcement officer's use of force viewed from the                        |
| 5  | perspective of a reasonable officer at the scene was                      |
| 6  | objectively unreasonable under the circumstances.                         |
| 7  | Based on the evidence presented, the Court finds                          |
| 8  | that no reasonable juror that could conclude that the use of              |
| 9  | nonlethal pepper spray, tear gas, and plastic projectiles to              |
| 10 | protect rioters from scaling the stairs to eventually breach              |
| 11 | the Capitol who, from the perspective of the officers, were               |
| 12 | unauthorized to be there under all the circumstances                      |
| 13 | reflected in the video and given the uses of those forms of               |
| 14 | lethal -- of nonlethal force testified to by Officer                      |
| 15 | Kerkhoff, the Court does not think that there is sufficient               |
| 16 | evidence to justify a self-or-others defense instruction to               |
| 17 | a charge of assault against a law enforcement officer.  And               |
| 18 | that is especially so given that there is no evidence of any              |
| 19 | injuries resulting from that use of nonlethal force other                 |
| 20 | than the superficial injuries that Mr. -- that the defendant              |
| 21 | has testified to.                                                         |
| 22 | So we won't give a self-defense instruction.                              |
| 23 | Obviously your objections are noted for the record for any                |
| 24 | appellate review.                                                         |
| 25 | Okay.  We distributed the latest version of the                           |