**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CASE NO. 1:21-cr-00552 (DLF)** |
| **v.** | **:** | |
| | **:** | |
| **KENNETH JOSEPH OWEN  THOMAS, :** | | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS (ECF NO. 137)**

The United States of America respectfully files this Response to the Defendant's recent

Motion to Dismiss (the "Motion," ECF No. 137).  For the reasons below, Defendant's Motion

should be denied.

**RESPONSE**

**I.**   **Relevant Facts.**

The Government began its case-in-chief on the morning of Wednesday, May 17, 2023.

That day, it presented the testimony of three law enforcement witnesses: J.B., A.C., and R.A.  The

Government's planned order of witnesses for Thursday, May 18, 2023 (which had previously been

provided to the Court and the defense) was (1) MPD Officer D.P.L., (2) MPD Officer R.N., and

(3) the FBI case agent, who was the Government's final witness for its case-in-chief.

On the evening of Wednesday, May 17, 2023, the undersigned realized that, although

intending to provide all relevant witness materials to the defense prior to the beginning of jury

selection, it had mistakenly forgotten to update its production folder to include FBI 302s related to

witness preparation sessions it had conducted in the two weeks leading up to trial.  This omission

1

was discovered while preparing the FBI case agent for her direct examination on the night of May 17, 2023.

Immediately upon this realization, at 7:34 p.m., the Government provided the relevant materials to the defense team via email with the following message:

> Last week, we uploaded to USAfx in the discovery folder Sentinel serials which we thought included 302s from our recent meetings with witnesses. In speaking with our case agent this evening, we realized that those 302s were missing from that production. We will make the court aware of this issue tomorrow. We've now uploaded them to the discovery folder . . . Apologies for the error.

The Government then, indeed, alerted the Court to its mistake before trial resumed on Thursday morning, and offered to recall any previously-released witness the defense wished to re-examine as to the narrow question of the contents of this newly-disclosed information.

The materials provided on May 17, 2023 included the following, all of which covered witness prep sessions that occurred after May 1, 2023: (a) two 302s covering two witness prep sessions with A.C. (dated 5/4/2023 and 5/11/2023); (b) one 302 covering a prep session with R.A. (dated 5/8/2023); (c) one 302 covering a prep session with J.B. (dated 5/8/2023); (d) one 302 covering a witness prep session with S.A. (dated 5/11/2023); (e) one 302 covering a witness prep session with D.P.L. (dated 5/11/2023); (f) one 302 covering a witness prep session with R.N. (dated 5/11/2023); and (g) one 302 covering a witness prep session with an officer the Government was considering calling, but ultimately did not call (M.N.).[1]   Combined, these documents are approximately fifteen pages long, plus attachments.

---

[1] The defense has filed with the Court many materials, including the May 2023 302s, some rough notes underlying those documents, and a smattering of other seemingly unrelated items, some of which are discussed below.  However, to be cautious, the Government will also provide the Court and the Defendant via USAfx with the following: (1) the May 2023 302s, (2) the two older 302s involving S.A., (3) the Government's email from May 17, 2023, (4) screenshots of the materials originally provided via USAfx to the defense on or before May 9, 2023, and (5) a longer clip of Officer A.C.'s body-worn camera covering the time period discussed in Defendant's Motion.  The Government will supplement this filing with redacted copies of these materials, should the Court

## A.  PG PD Officer S.A.

On or before May 9, 2023, the defense team was provided with two 302s covering S.A.'s

potential testimony (dated 2/12/2021 and 1/23/2023); these materials had already been included in

case-specific discovery long ago.[2]  Importantly, the 2/12/2021 FBI 302 contained the following:

> JANURY 6
> . . .
> [S.A.] did not recall exactly when the [police] "line started going forward."  Some
> in the crowd "started to resist" being pushed, but it was "light at first."  One or two
> individuals "tried to grab" [S.A.'s] shield, and "numerous individuals" were trying
> to knock [S.A.] and other [officers] down.  A female officer fell and some in the
> crowd attempted to drag her away from the line . . . [S.A.] was "hit 7 or 8 times"
> and several rioters were "kicking my shield." [S.A.] was "pushing someone to my
> left" when a rioter "hit from my right."  [S.A.] fell on another [police officer] . . .
>
> [S.A.] admitted the crowd was a "free for all . . . very chaotic."  He recalled two
> individuals, a "middle-aged guy wearing a brown or coyote [dark tan] jacket" who
> was "very vocal" . . ..
>
> INDIVIDUAL RIOTERS
> . . .
> The Author sent [S.A.] pictures of three separate rioters who were depicted in a
> video [from January 6] . . . [S.A.] identified Subject 1 [(a picture of Defendant
> Thomas)] as the "white male with the coyote brown jacket" . . . [who] was "one of
> the first to come in and start hitting/Pushing officer's [sic] on the line."  Subject 1
> "hit, grabbed and pushed" [S.A.].

As the Government has repeatedly advised this defense team, PG PD witness S.A. was the only

officer-witness with whom the Government had spoken regarding this case prior to May 1, 2023.

## B.  MPD Officer A.C.

Separately, only one of the Government's five assault-related witnesses had ever testified

previously in any January 6 trial.  MPD Officer A.C. testified in *United States v. Wren, et al.*, 21-

---

so require.

[2] Notably, the Government reminded the defense team of this fact in a May 20, 2023 email sent at
11:03 am, before the instant, revised Motion to Dismiss was filed (ECF No. 137).

cr-00599-RBW, a two-defendant trial that concluded on May 5, 2023.[3]   Upon information and belief, the subject of Officer A.C.'s testimony in *Wren* was as follows:   around 4:26 pm on January 6, 2021, Defendant Smith picked up a metal pole and threw it at Officer A.C.[4]   This officer's trial testimony was made publicly and, although the Government has ordered transcripts of his testimony, the court reporter has not yet completed them.  As such, these transcripts are not in the Government's possession and cannot be disclosed.

As this Court is aware, Officer A.C.'s testimony in the instant case revolved around a completely different time period, beginning around 3:12 p.m., and covered A.C.'s interaction with the Defendant where he caught the Defendant holding a knife. *See, e.g.,* Govt Trial Ex. 309.1. Contrary to Defendant's claims in his Motion, Officer A.C.'s testimony does not involve "identical players and identical location and issues." *See* ECF No. 137 at 2.[5]

### C.  MPD Officer R.N.

Officer R.N. was the Government's fifth witness, testifying second on **Thursday, May 18, 2023**.  *See* May 18, 2023 Minute Entry ("Minute Entry for proceedings held before Judge Dabney L. Friedrich: Jury Trial as to KENNETH JOSEPH OWEN THOMAS held on 5/18/2023.  . . . Government's Witnesses: Officer Leano, **Officer [R.N.]**, Special Agent . . . (Entered: 05/18/2023).") (emphasis added).

---

[3] Although the 302 states that he had testified "in other January 6 cases, most recently in U.S. v. WREN[,]" upon information and belief, *Wren* is the only January 6, 2021 trial he has testified in.

[4] Furthermore, the Defendant clearly had access to, and did access, Officer A.C.'s body-worn camera from January 6, 2021, because he introduced a different portion of Officer A.C.'s body-worn camera from earlier in the day and used it to cross-examine Officer A.C.  *See* Def Ex. 236.

[5] The defense represented that "while Smith and Wren were indeed convicted of several counts on May 5, 2023, their self-defense and defense-of-others defenses *prevailed* regarding some counts, which Wren was acquitted of on May 5." ECF No. 137 at 10 (emphasis in original).  A review of the verdict form reveals that Wren and Smith were convicted on all assault counts. *United States v. Wren, et al.*, 21-cr-00599-RBW, ECF No. 119.

The defense repeatedly states, erroneously, that, "on the night of May 17—**after [Officer R.N.] had already finished testifying**—the United States provided [Officer R.N.]'s May 11 302." ECF No. 137 at 11 (emphasis added); *see also id.* at 1 n.1, 10, 12.  In an attempt to highlight the significance of this erroneous claim, the Motion emphasizes that the "defense team had **no way of anticipating or preparing for such testimony**." *Id.* at 12 (emphasis added).

Not only had the defense been provided with the relevant 302 in advance of Officer R.N.'s testimony, but it is not uncommon for law enforcement officers or crime victims generally to recount the stress of their victimization while testifying, even if it has not previously been recorded or disclosed.  This is especially so given the extreme circumstances faced by officers on January 6, 2021, specifically.  Thus, it was not surprising when, in this case, Officer R.N. began to recount the stress and trauma he still feels as a result of his experiences on January 6, 2021.  Moreover, upon information and belief, the defense immediately objected, the objection was sustained, further questioning was narrowed, and a curative instruction was given.  Despite having just successfully prevented the Government from eliciting this evidence, however, on cross examination, the defense began to pointedly question Officer R.N. about his mental health, the impact January 6, 2021 had on him, and whether he had sought medical help for his condition, strongly implying that he was not capable of continuing his law enforcement career.

Thus, the Defendant was provided with Officer R.N.'s 302 prior to the commencement of his direct testimony, a 302 that explicitly discussed his feelings of trauma, and the defense cross-examined him on the issue.

## II.     Defendant's Motion is Baseless.

Contrary to the basic facts outlined above, the Defendant baselessly asserts that the Government has committed a number of *Brady* and *Jencks* violations.[6]  Many pages of the Defendant's allegations revolve around the Defendant's erroneous statement that he received R.N.'s 302s *after* R.N.'s trial testimony.  However, the trial record, as is shown on the public docket, clearly indicates that officer R.N. testified *after* his 302s were disclosed to the defense on the evening of May 17, 2023.  Thus, the Motion's many misstatements to the contrary were made in bad faith and should be stricken.[7]  *See* ECF No. 137 at 1 n.1, 10, 11, 12.  Otherwise, the Defendant's arguments fail to carry water, as described below, and his Motion should be denied.

### A.  Brady.

Defendant's *Brady* violation claims fail.  To satisfy a claim under *Brady* and its progeny, the Defendant must show that "the evidence at issue must be favorable to the accused, either because it was exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." *Stickler v. Greene*, 527 U.S. 263 (1999). The Defendant fails all three elements of this test: (1) the evidence at issue in this dispute was not favorable to the Defendant or impeaching, (2) it was not suppressed, and (3) the Defendant has not been prejudiced.

Any FBI 302 that mentioned Officer A.C.'s interaction with the Defendant was squarely

---

[6] Although the Defendant's revised Motion to Dismiss (ECF No. 137) removed the Giglio allegations in the previously-filed version (ECF No. 134), the Government notes, in an abundance of caution, that the Defendant's original *Giglio v. United States*, 405 U.S. 150 (1972) argument did not outline the purported benefit received or the purported reason any Government witness had to be untruthful; therefore, that argument failed.

[7] This is particularly so given, on the morning of May 20, 2023, the Government alerted the Court and the defense of these misstatements in the Defendant's original Motion (ECF No. 134), but the Defendant nonetheless made them a second time in his revised filing (ECF No. 137).

consistent with Officer A.C.'s testimony at trial, which was plainly unfavorable to the Defendant.

Thus, it was neither impeaching nor favorable to the Defendant.  His testimony also was not

suppressed because the Defendant had the body worn camera footage of Officer A.C. and the other

officers around him, which showed the totality of Officer A.C.'s activities before, during, and after

his interaction with the Defendant. Indeed, as noted above, the Defendant used some of this body

worn camera in his cross examination of Officer A.C. Furthermore, because the Defendant was

able to cross examine Officer A.C. with his and other officers' body worn cameras, he cannot show

prejudice.  Even assuming, *arguendo*, that the Defendant had not had the chance to cross examine

Office A.C using his body worn camera, the Defendant still could not show prejudice because the

material in the 302s about the Government's meetings with Officer A.C. is neither *favorable* nor

*inconsistent* with the officer's testimony. *United States v. Wilson*, 605 F.2d 985, 1005 (D.C. Cir.

2010) (*quoting Stickler*, 527 U.S. at 280).

Similarly, no Brady violation occurred with respect to Officer S.A. because there was no

suppression of the material. During the course of this trial and in the Motion, the Defendant seems

to have fixated on the fact that, in his February 2021 interview with the FBI, Officer S.A. did not

specifically say something to the effect of, "the man in the coyote brown jacket pushed me and he

was the sole reason that I fell down around 4:20 pm on January 6."  He argues the non-existence

of that specific statement in S.A.'s 2021 and January 2023 302s constitutes a Brady violation.

Not so.  First, the Defendant's assertion is a mischaracterization of both the substance of Officer

S.A.'s February 2021 interview, and the substance of his testimony at trial.[8]

---

[8]  The January 2023 FBI 302 of S.A. involved a different defendant, Jesse James Rumson.
However, the Government turned it over because it involved discussion of the same "scrum line"
in which the Defendant was involved around 4:20 pm on January 6.  Rumson's name has already
appeared in prior filings in this case because Attorney Pierce also represents him.

As noted above, S.A. specifically recounted in his 2021 interview that "numerous individuals were trying to knock [him] down." At trial, he said largely the same thing, but, after reviewing (a) video in advance of his testimony that he had not seen before his 2021 interview, and (b) a few de-contextualized moments of video put on by the defense on cross, video which S.A. said he had never seen before his cross-examination, he testified that he now believed it was the Defendant that knocked him down. Second, it is not a *Brady* violation because this report was not suppressed: not only has the Defendant had the 2021 and January 2023 302s for many, many months, but the defense also cross-examined Officer S.A. about his failure to make this specific allegation against the Defendant in those 302s. Clearly, it is impossible for the Government to suppress reports with which the Defendant cross-examined the witness on the stand. As the futility of this exercise shows, the conclusion here is that Officer S.A.'s 2021 or January 2023 interviews with the FBI were not *Brady* material. *See Stickler*, 527 U.S. at 280. The May 2023 302 relating to Officer S.A. also is not Brady material for the same reason that Officer A.C.'s are not: it is consistent with his testimony and is not favorable to the Defendant.

### B. Jencks.

The Defendant's Jencks claims fare no better. As this Court has already tentatively held, the Defendant has failed to demonstrate any Jencks violation. Pursuant to the Jencks Act and *Jencks v. United States*, 353, U.S. 657 (1957), upon the Defendant's demand, the Government must disclose materials that comprise the written or recorded statements of a witness that relate to the subject of the witness' direct testimony. *See* 18 U.S.C 3500(b); *Jencks*, 353 US. at 669. To be subject to disclosure, the statement must be "a written statement made by said witness and signed or otherwise approved by him" or "a stenographic, mechanical, electrical or other recording or transcription thereof., which is substantially verbatim." 18 U.S.C. 3500(e)(1)-(2). Thus, trial

testimony given in open Court falls outside of *Jencks*, and, given the *Wren* trial transcripts are not ready yet, these materials are not in the Government's possession. *See id.* 3500(a)-(b).

Moreover, as the Court has recently noted, statements made by a witness to a government agent are not required to be disclosed prior to the witness taking the stand because they are not the *Jencks* material of the witness, but are, instead, the *Jencks* material of the authoring agent. *See, e.g., Palermo v. United States*., 360 U.S. 343 (1959). Statements written by a law enforcement officer interviewing a witness are "not usually a 'substantially verbatim recital,'" they are summaries of the witness' words, or are 'adopted or approved by' the witness." *United States v. v. Moore*, 651 F.3d 30, 75 (D.C. Cir. 2011) (citations omitted). "Moreover, even if the interviewer wrote down a few of the witness's exact words, there is no 'substantially verbatim recital' if the interviewer engaged in a 'substantial selection' in quoting the witness." *Id.* (citations omitted).

Here, the May 2023 FBI 302 reports were authored by the FBI case agent. The interviewee-witnesses never saw the reports, signed them, or adopted them. The reports contained quotations of the interviewee-witnesses' statements, but were not substantially verbatim, as this Court preliminary ruled on May 19, 2023. *See Palermo*, 360 U.S.at 352 ("Quoting out of context is one of the most frequent and powerful modes of misquotation."). The Government disclosed the reports prior to the FBI Special Agent's trial testimony. Therefore, no *Jencks* violation has occurred.

### III.    Defendant Failed to Show Any Basis for Re-Opening Testimony of the Government's Witnesses.

In addition, the Defendant made absolutely no attempt at complying with this Court's order to specifically describe what, if any, portions of the "new" 302s would require the re-opening of testimony of any Government witness.  Because the Defendant failed to do so, no Government witnesses need be re-called for these purposes.

## **CONCLUSION**

Because the Defendant's claims are baseless, the Motion should be denied in full, and the

Court should award any other relief it deems necessary and proper.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov