UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CASE NO. 1:21-cr-00552 (DLF) |
| | : |
| v. | : |
| | : |
| KENNETH JOSEPH OWEN THOMAS, | : |
| | : |
| Defendant. | : |

### THOMAS' MOTION FOR NEW TRIAL UNDER RULE 33, AND/OR JUDGMENT OF AQUITTAL NOTWITHSTANDING THE VERDICT UNDER RULE 29

COMES NOW, Defendant, KENNETH JOSEPH OWEN THOMAS, (hereinafter, "Defendant" or "Thomas"), by and through undersigned counsel, with this post-conviction motion for acquittal and/or a new trial pursuant to both Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure.

Thomas was convicted by a jury of seven (7) counts:

a. Count One, 18 U.S.C. § 231(a)(3) -- Obstructing, impeding, or interfering with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder

b. Count Three, 18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding MPD Officer Rodney Anderson.

c. Count Four, 18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding MPD Officer M.N.

    d. Count Six, 18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding K.Versage

    e. Count Seven, 18 US.C. 111(a)(1) Assaulting, Resisting, or Impeding Officer M.N.

    f. Count Eight, 18 U.S.C. § 1752(a)(1)) -- Entering or Remaining in a Restricted Building or Grounds

    g. Count Nine, 18 U.S.C. § 1752(a)(2) – Disorderly and Disruptive Conduct in a Restricted Building [or Grounds]

**Each of Thomas' convictions are legally and factually deficient.**

1. Thomas was convicted of assaulting two officers, Nickerson and Versage, who never testified, never said they were assaulted by Thomas, and never wrote reports saying they were assaulted by Thomas. The supposed evidence of these two "assaults" came in the form of *other officers* who were not assaulted by Thomas but who claimed to have reviewed videos and made such determinations. If an important witness does not appear and one of the parties had some special ability to produce him, "the law permits the jury to draw an inference-namely, that the missing witness would have given testimony damaging to that party." United States v. Pitts, 918 F.2d 197, 199 (D.C.Cir.1990). Although Thomas submitted a proposed "missing witness" instruction, ECF 149, the Court wrongly denied the instruction.

2. Another of the "assault victims" whom Thomas was convicted of assaulting (MPD Officer Rodney Anderson) testified he didn't remember Thomas, didn't recognize Thomas in court, didn't remember being assaulted by

Thomas, and even after watching video of the alleged "assault," testified that he didn't think Thomas had any intent to harm him. Officer Anderson testified that he is 6 foot 4 inches tall and weighs around 300 pounds. He barely noticed Thomas' physical contact at all on January 6.

A general consensus among federal courts is that "assault" as used in the federal criminal code does not include mere touching, bumping, or brushing against another person. See United States v. Vallery, 437 F.3d 626, 631–32 (7th Cir.2006) (assault requires an intent to injure). In the words of the *Vallery* Court:

> There is no dispute that "simple assault" is a crime "committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." Chestaro, 197 F.3d at 605 (quoting United States v. Johnson, 637 F.2d 1224, 1242 n. 26 (9th Cir.1980)); accord United States v. Ramirez, 233 F.3d 318, 321–22 (5th Cir.2000), overruling on other grounds recognized by United States v. Longoria, 298 F.3d 367, 372 n. 6 (5th Cir.2002). 437 F.3d 626, at 631.

3. Moreover, all four officers were Riot officers specially equipped and trained for physical contact with the public. They don special crowd control gear in preparation, expectation and anticipation of making forceful contact with protestors in chaotic situations. The evidence showed that all four riot officers were wearing "hard gear" and were

in aggressive advancement to push demonstrators off of the upper west terrace of the Capitol. These officers intend and expected to make physical contact. Their brief moments of contact with Thomas do not qualify as assaults under the law and the facts. After all, the very reason that mere simple assaults on law enforcements are treated as aggravated assaults is that unprepared officers need protection in a wide variety of situations so that officers may perform their duties unhindered. But in circumstances where officers are equipping and using themselves as forceful crowd control tools, the basis for special protections evaporates.

4. Regarding Count 1, resisting officers during a civil disorder, the government's claims of "effect on commerce" failed utterly, totally, and completely. The government put on no evidence of any city-wide, neighborhood-wide, or even regional negative economic impact due to Thomas' participation in events at the Capitol. The only exception was some unauthenticated data from the Safeway Corporation, presented by the FBI case agent. The agent could not answer basic questions regarding the Safeway data, such as any questions about market trends, comparisons with other curfew times, etc. Thus, this entire examination should have been stricken as a violation of the 6th amendment right to confront accusers.

5. Although the Safeway data purported to show Safeway stores reported losses on January 6, these losses are attributable to the DC Mayor's declaration of a curfew at 6 PM on January 6 ordering all Safeway stores closed.  (Safeway stores all reported above-normal profits the next day, Jan. 7, 2021.)

6. Thus, any commerce lost by the Safeway corporation on Jan. 6 was (1) caused by an independent and intervening force, the DC government, and (2) likely made up by the following days as people who would have purchased groceries at Safeway on the 6th did so on the 7th and/or other days.

7. Nor did the United States satisfy any of the other possible ways in which a person's opposition to officers could constitute an 18 USC § 231 violation. Nothing Thomas did on Jan. 6 could have interfered with officers' performance of a federal function.

8. Thomas' conviction under § 1752(a)(1) and (a)(2) are also invalid.  The statute provides:

(a) Whoever—

(1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

(c) In this section—

(1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

(A) of the White House or its grounds, or the Vice President's official residence or its grounds;

(B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

(2) the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

At trial the government put on no evidence whatsoever that Thomas' actions could have disrupted or interfered with any Secret Service protectee. Thomas was never inside the Capitol, and no witness claimed that anyone inside the Capitol could have heard or been affected by Thomas' words or actions. Nor did the government lay any foundation for the proposition that the Capitol grounds where Thomas visited were properly declared a restricted area by the Secret Service.

Nor even did the government present sufficient evidence that Thomas could see or hear announcements or warnings that the area was restricted. There is a long line of cases holding that people have a right to use the Capitol Grounds as a free speech and protest forum. See Jeannette Rankin Brigade v. Chief of Capitol Police, 342 F. Supp. 575 (D.D.C. 1972). In Jeannette Rankin Brigade, a special 3-judge panel of the DC District Court held that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F. Supp. 575, 583-84 (D.D.C. 1972). The Supreme Court summarily affirmed, making Jeannette Rankin Brigade binding precedent. 409 U.S. 972 (1972). Later, in Community for Creative Non-Violence v. Kerrigan, the DC Circuit held that "there is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding "a reasonable time, place or manner restriction," a regulation limiting the length of time during which demonstration "props and equipment" may remain on the Grounds). Clearly, therefore, the "Grounds (excluding such places as the Senate

and House floors, committee rooms, etc.) have traditionally been open to the public," and "the primary purpose for which the Capitol was designed--legislating"--is entirely consistent "with the existence of all parades, assemblages, or processions which may take place on the grounds." Jeannette Rankin Brigade, 342 F. Supp. at 584.

Indeed, in Jeannette Rankin Brigade, the district court observed that "the fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion." Id. See also, Lederman v. United States, 291 F.3d 36 (DC Cir. 2002) (striking down a regulation banning leafleting and other "demonstration activities" on the sidewalk at the foot of the House and Senate steps on the East Front of the Capitol). The Lederman Court found that sidewalks around the Capitol are a public forum, and that a regulation banning leafleting and other "demonstration activities" at the foot of the House and Senate steps on the east side of the Capitol is unconstitutional.

**No law makes the Capitol a restricted area.  No court case makes the Capitol a restricted area.  No published federal rule or regulation makes the Capitol a restricted area.  So how is the Capitol grounds a restricted area?**

Significantly, no law of Congress makes the Capitol a restricted area.  No detailed court case ever published[1] makes the Capitol a restricted area.  Indeed,

---

[1] Ironically the only courts that have ever pronounced the Capitol grounds to be a restricted area are some trial courts in Jan. 6 cases who fell for the government's claims.  Most of these rulings are unpublished.

these sources of law resoundingly say the opposite. So how do prosecutors in these cases contend the Capitol or its grounds were restricted areas on Jan. 6?

**The presence of so many hundreds of others around Thomas who regarded the area as unrestricted also contributed to Thomas' innocent state of mind regarding the restrictedness or nonrestrictedness of the area.**

Grounds in frequent use by pedestrians, such as the Capitol grounds, become a right-of-way over time. *See, e.g., McKinnon v. Northeast Illinois Regional Commuter R.R. Corp.*, 263 Ill. App. 3d 774, 779 (1994) (reversing the trial court's dismissal where complaint alleged that there was a particular right-of-way extending through a densely populated village that was easily accessible to the public and that the defendant permitted the use of the right-of-way to the extent that it became the custom of persons to do so). So it is that Thomas' assessment that hundreds of people around him who evidently believed they were rightfully in the area is a defense for Thomas.

The case law regarding the open-public-free-speech-forum area of the Capitol cannot be overcome by a decree of the Capitol Police, or the Secret Service, or federal prosecutors. The U.S. Capitol is one of America's largest public buildings, with well over 1.5 million square feet, over 600 rooms, and miles

of corridors.[2] Previous case law in other federal jurisdictions has invalidated government attempts to extend no-advocacy zones beyond a few feet.

For example, the Supreme Court invalidated attempts to ban protesting within 300 feet of an abortion clinic. *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 771 (1994) (finding thirty-six-foot buffer was acceptable). "[C]itizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to freedoms protected by the First Amendment." *Id*. at 774.

For these reasons, Thomas is entitled to acquittal of the counts described, or a new trial.

RESPECTFULLY SUBMITTED,

/s/ Roger I. Roots, esq.

CERTIFICATE OF SERVICE

I hereby certify that on 6/22/2023 I uploaded this document to the Court's electronic docketing system, thereby serving all counsel of record.

/s/ Roger I. Roots

---

[2] See Architect of the Capitol, "U.S. Capitol Building," **https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building** (accessed 9/27/2022).