

U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D Street St., N.W.*
*Washington, D.C.  20530*

August 16, 2023

**VIA EMAIL**

Aidee V. Gravito
United States Probation Officer
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, N.W.
Washington, D.C. 20001

        Re:    *United States v. Kenneth Joseph Owen Thomas*, Case No. 21-cr-552-DLF
               Government's Response to the Draft Presentence Investigation Report

Dear Ms. Gravito:

      We have received and reviewed the draft Presentence Investigation Report ("PSR") in the above-captioned matter, and we make the following objections.

**Paragraph 7: Charge(s) and Conviction(s)**

      The PSR incorrectly states that the Second Superseding Indictment was returned on January 26, 2022. The Second Superseding Indictment in this case was returned on December 14, 2022.

**Paragraphs 24: Offense Conduct**

      The government wishes to clarify what the Defendant said when he was confronted by an MPD officer on the Upper West Terrace after that officer observed him to have a knife in his hand and appearing to take steps to cut a portion of the canvassing/zip-ties underneath the grandstands. When he was confronted, the Defendant, after appearing to turn off his camera, leaned towards the officer and said, "Let us in. I'm asking you. No violence. No violence. This is our house. This is our house. We're not backing down. You took an oath. We want freedom. We want peace. No violence. I just want to go knock on the door."

**Paragraphs 31: Victim Impact**

Paragraph 31 should be amended to reflect that MPD Sergeant M.N., MPD Officer R.A., MPD Officer K.V., and MPD Officer R.N. were the victims of the Defendant's assaults. None of these victims sustained physical injuries as a direct result of the Defendant's conduct against them.

**Paragraphs 41: Offense Conduct**

The government wishes to clarify the conduct for which the Defendant was convicted under Count 8. The Draft PSR states that the "defendant unlawfully entered a restricted building (i.e., the United States Capitol) with the intent to obstruct an official proceeding." The Defendant did *not* enter the Capitol building itself. He entered the secured perimeter around the Capitol, including spending significant time battling back against lines of officers on the Upper West Terrace, and did so with the intent to obstruct an official proceeding.

**Offense Conduct Omitted from Draft PSR**

The government notes that the conduct giving rise to the convictions under 18 U.S.C. § 111(a)(1) for Counts 3 and 4 was omitted from the Draft PSR. The conduct is set forth below:

> At approximately 3:30 p.m., the Defendant is seen on the body worn cameras of two MPD officers and in open-source video footage. At this time, the Defendant was standing at the bottom of a short flight of stairs leading up the Northwest Courtyard on the Upper West Terrace of the Capitol. At the top of that flight of stairs was a line of MPD officers, including Sergeant M.N. and Officer R.A., who were attempting to hold the crowd back from entering the Northwest Terrace. Open-source footage captures another rioter counting down from ten. At the conclusion of the countdown from ten, the crowd and the Defendant began to surge forward against the line of officers. Body worn cameras capture the Defendant running up the stairs twice. The first time he ran up the stairs, the Defendant's hands struck Officer R.A. The second time he ran up the stairs, the Defendant's hand struck Sergeant M.N. When the officers pushed back against the Defendant, he turned around and, while bracing his legs against the ground from a squatting position, pushed his back into Sergeant M.N.'s legs. This was captured in officers' body-worn camera, and in an open-source video introduced by the defense.
>
> Despite the videos' clarity, Thomas told an entirely different story on the stand regarding this particular conduct, testimony that was materially false and totally non-credible. At trial, he testified as follows:
>
>> [There was a] gentleman that was trying to convince the crowd to use pipes against the police . . . in that countdown when people started to rush the police line, he went running forward, and there was . . . an older man standing on the steps carrying a cane. And so I ran up past him for two purposes. Well, one, actually, my initial reason was to go after the guy that was wearing the glasses, the pipe

> guy. I don't know what to call him. I suspected he was trying to agitate the crowd to do things . . .
> But anyway . . . when I saw him rushing the police line, I chased after him. And then I saw that he was running towards the guy that was on the steps that . . . had the cane.
>
> So my purpose was to yank him away from the guy with the [g]lasses, to yank him away from the police, but in that same sense, I kind of got shoved away.
>
> So I went to step up again. I stood up. In uprighting myself, I took a couple steps forward because it was on some steps, and I kind of was reaching out before I had gotten pushed to try to grab him and kind of get between the older guy. But I failed because one of the police officers shoved me down the stairs.

(5/19/23 Trial Tr. 250:1-24).

**Paragraph 105: Offender Characteristics**

The Defendant reported being born in Steubenville, Ohio. According to his Naval Records, the Defendant has previously reported being born in Chester, West Virginia. This is consistent with records obtained by the government during its investigation into this case.

**Paragraph 128: Offender Characteristics**

The Defendant reported receiving "a non-judicial punishment for an unspecified offense" while serving in the United States Navy. This is untrue. The Defendant received three non-judicial punishments while serving in the Navy and was ultimately dismissed connected to misconduct:

- On September 30, 2001, the Defendant received a non-judicial punishment for making "provoking speech and gestures" to another sailor. For this first non-judicial punishment, the defendant was reduced in rank, placed on leave restrictions, reduced in pay, and given extra duty.

- On May 6, 2022, the Defendant received a second non-judicial punishment for absenting himself without leave from Naval Air Station Oceana in Virginia Beach, Virginia, and for failing to report for his assigned watch shift during his period of absence. For this second non-judicial punishment, the Defendant forfeited a portion of his pay and committed to and was placed in Navy correctional custody for thirty days.

- On July 30, 2003, the Defendant received a third non-judicial punishment again being absent without leave and for testing positive for methamphetamines and marijuana. In addition to his drug use, the Defendant was found to have demonstrated a "pattern of misconduct," to "not have the maturity or discipline necessary to succeed in the Navy," to not "exercise the Navy's core values of honor, service and commitment," and to "not [be]

recommended for advancement or retention." For his misconduct, the Defendant received a general discharge from the Navy under honorable conditions on October 20, 2003.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney

By:   /s/ *Samantha R. Miller*
        SAMANTHA R. MILLER
        SEAN P. McCAULEY
        Assistant United States Attorneys

CC:   John Pierce, Esq.
      Roger Roots, Esq.
      *Counsel for Kenneth Joseph Owen Thomas*