UNITED STATES DISTRICT **COURT**
**FOR THE  DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No.** |
| | **:** | |
| **KENNETH JOSEPH OWEN THOMAS,** | **:** | **1:21-cr-00552 (CRC)** |
| | **:** | |
| **Defendant** | **:** | |
| | **:** | |
| _____ | | |

## KENNETH JOSEPH OWEN THOMAS'
## SENTENCING MEMORANDUM

Defendant KENNETH JOSEPH OWEN THOMAS ("Thomas"), through the

undersigned counsel, presents this Sentencing Memorandum.


I.      DEFENDANT'S REQUESTED SENTENCE

The Defense respectfully requests that Thomas be sentenced to **a term of**

**home confinement for 12 months, no fine, and three years of supervised**

**release.**

Thomas was fully acquitted by the jury of the most serious charge in the

case, obstruction of an official proceeding, 18 U.S.C. § 1512.  The jury also fully

acquitted Thomas of **all** violence, finding Thomas not guilty of Count 10 (act of

physical violence in a restricted building or grounds), and Count 12 (engaging in physical violence on Capitol Grounds).

Thomas was, however, convicted of four counts of 18 U.S.C. § 111(a), which applies to "Whoever (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" officers performing official duties. From the jury's careful analysis of the verdict form, it is obvious the jury <u>rejected</u> the notion that Thomas "forcibly assaulted" any officers.  Rather, the jury determined that Thomas "opposed," "impeded," or "interfered with" officers.

This conclusion is clear and obvious because the jury acquitted Thomas of knowingly engaging in "any act of physical violence against any person or property in any restricted building or grounds" pursuant to 18 U.S.C. § 1752(a)(4) in Count 10, as well as engaging "in an act of physical violence in the Grounds or any of the Capitol Buildings" pursuant to 40 U.S.C. § 5104(e)(2)(F).

The Court is aware, simply to make it clear with emphasis, that 18 U.S.C. § 111(a) covers these many different prongs of somewhat dissimilar conduct.  This may be efficient for Congress to enact the statute but it requires a bit of attention on our end at this stage.  Everything from "assaulted" to merely "interferes with" or even just "opposes" is embraced within the exceedingly broad swath of the statute.  Therefore, we have an unusually clear situation where the jury explicitly found Thomas not guilty of violence.  This gives us some clarity

that might not always be apparent.  Thomas was not found guilty of a violent version of 18 U.S.C. § 111(a).

The statutes Thomas was convicted under impose a <u>maximum</u> sentence of five years imprisonment (for Section 231 resisting officers during a civil disorder) and eight years (for the 111(a) convictions).

## II.    OVERVIEW AND RESPONSE TO GOVERNMENT'S POSITION AND PRETRIAL SENTENCING REPORT

Yet astoundingly, the government and the PSR place Thomas in a proposed guideline range at or <u>above the statutory maximum</u> allowed by Congress. This is true even though Thomas has only 1 criminal history point.

**The government's preposterous Guideline placement.**

The government's preposterous placement of Thomas in such an outrageous guideline range relies upon a series of radical enhancements, double countings of enhancements, and upward adjustments which are self-evidently inapplicable.

Thomas' appropriate total offense score is 13, which would suggest 12 to 18 months imprisonment.  If awarded a 2-point downward adjustment for acceptance of responsibility (which should be awarded), Thomas will have an 11-point total, and will be subject to 8 to 14 months imprisonment. Thomas has special circumstances which warrant leniency so Thomas can support, maintain, treat and care for members of his family who have extreme medical needs.

### III.   ENHANCEMENTS DO NOT APPLY

"Courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." *United States v. Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999) (internal citations omitted). Speculation is defined as "the practice or an instance of theorizing about matters over which there is no certain knowledge" (*Black's Law Dictionary*, 11th ed. 2019); "the contemplation or consideration of some subject" (Dictionary.com); "ideas or guesses about something that is not known." (Merriam-Webster, 2019). *See United States v. McSherry*, 226 F.3d 153, 157-158 (2d Cir. 2000) ("In the absence of persuasive reasons to the contrary, terms in the Guidelines are given their ordinary meanings."). Here, Probation offers a rationale for the application of this offense level increase that is purely speculative and which is, therefore, deficient.

For the reasons discussed in Defendant's objections to the PSR, the conduct outlined in the PSR (essentially nothing but an evidence-less claim that Thomas deleted video footage from his cell phone at a time when no court case or investigation even existed) did not cause significant, further obstructions of the prosecution of this case. Such conduct—even if it occurred (which is contested)-- ceased well before the criminal investigation into Thomas even began. Whether or not Thomas deleted any footage, it had no impact on the grand jury and trial jury.

And this is but one obvious problem with the PSR.  The PSR's "aggravated assault" enhancement (for "resisting officers" with the intent to "resist officers" during a civil disorder;) and "official victim" enhancements ("resisting officers performing official duties"—because they are performing "official duties"; LOL) are equally preposterous and evidence-free.

As stated, these are duplicative of the base offense among other problems. 18 U.S.C. § 111(a) can only apply to an "official victim."  If there were no "official victim" – even where the "victim" was merely "opposed" or "interfered with" – then 18 U.S.C. § 111(a) could not apply to begin with.  Therefore, sentencing 18 U.S.C. § 111(a), particularly a non-violent variation, with an "official victim" enhancement merely duplicates the base offense of 18 U.S.C. § 111(a).

The "aggravated assult" enhancement factually cannot apply.  However, even if we try to redefine terms (like defining an orange to be apple) to consider "aggravated" non-violent "assault" because of the envisioned mental state, there was no evidence (other than government witnesses speculating which is not evidence) that Defendant Thomas had any such mental state.  The evidence decisively refuted the idea that Thomas was intending to resist officers in support of a civil disorder.  Thomas testified that there were times when an officer stepped on a demonstrator on the ground and he tried to assist.  Or he did not want to be hit

himself.  But that is not what the enhancement is based upon.  Resisting

unnecessary and collateral harm to himself or those who were on the ground under

foot is not non-violent "aggravated assault" with the intent to further a civil

disorder.  For example, envision that there is a civil disorder taking place on

Capitol Hill.  Simultaneously, 10 blocks away, a motorist unwisely argues with a

parking enforcement officer why he should not get a parking ticket.  Arguing with

the officer may be unwise or even boil over into something more serious.  But the

fact that 10 blocks away there is a civil disorder does not make it "aggravated

assult."  In like manner, acting to communicate amidst the noise "You're stepping

on someone down at your feet," is not furthering or advancing a civil disorder.

That is, the base offense provides the grounds for sentencing.  The enhancement

suggested is not applicable and is duplicative of the base offense.


### IV.   KENNETH JOSEPH THOMAS' BACKGROUND, WORK HISTORY, AND FAMILY LIFE

**Thomas' background, work history, and family life.**

Kenneth Joseph Owen Thomas, 41, is a decorated veteran of the U.S. Navy.

Throughout America's most dangerous sea-based skirmishes in the Middle East,

Thomas held one of the most dangerous jobs in the U.S. Navy.  He worked on the

runway decks, and was responsible for fighter jets taking off and landing on U.S.

Naval aircraft carriers.  Ultimately, he became a Certified Plane Captain and a trainer of others in his position.

**Thomas' record of medals and military awards**

During his service, Thomas received the following decorations and awards: Sea Service, National Defense, Battle Efficiency, and Navy Unit Commendation. Mr. Thomas served multiple combat missions in Operation Enduring Freedom and Operation Iraqi Freedom.Mr. Thomas did struggle with some substance abuse issues while in the Navy.  He received non-judicial punishment and a general discharge.

Kenneth Joseph Thomas was born in Steubenville, Ohio on July 1, 1982. Thomas has been married to his wife Carolyn Melissa Thomas for 14 years, since May 16, 2009. They have four children: Mary Lynn Pamela Claire Thomas, age 12, Jonathan Daniel Chapman Thomas, age nine, Brennon Paul Venus Wright, age 20; and Emily Dell Louise Wilcox, 18.

Brennon Paul Venus Wright is serving in the United States Navy and is stationed in Washington state. Emily Dell Louise Wilcox resides at home with Thomas and his wife and will soon graduate from high school.

### V.   APPLICATION FOR A 18 U.S.C. § 3553(A) DOWNWARD DEPARTURE, VARIANCE, OR A NON-GUIDELINES SENTENCE BECAUSE MR. THOMAS'S EXTRAORDINARY FAMILY CIRCUMSTANCES.

Thomas has extraordinary crisis-level family circumstances.  Thomas is fundamentally necessary to the well-being of his family.  Thomas' children Brennan, Mary Lynn, and Jonathan all suffer from a chronic condition called Beta Thalassemia Minor (BTM), a condition in which the body makes less hemoglobin than normal. Mr. Thomas and his wife have meticulously monitored and carefully isolated foods in their family diets so as to treat and care for themselves and their children. The children have a special diet which Mr. Thomas has painstakingly developed.

In addition to the family's special diet for treatment of Beta Thalassemia Minor, a special diet and medication is necessary for Mr. Thomas's daughter Mary Lynn~~Pamela Claire~~.  Mary Lynn~~Pamela Claire who~~ was diagnosed with Postural Tachycardia Syndrome (PoTS) disease, a condition in which the heart rate increases very quickly after getting up from sitting or lying down.

And, of course, Mr. Thomas himself is 30% service-related disabled. Thomas has service-related tinnitus (ringing in the ears), hearing loss, and lumbosacral strain.  Thomas has also been diagnosed with Beta Thalassemia Minor, bursitis, tinnitus, and lumbosacral strain. He receives treatment for his ailments at the Veterans Affairs clinic in East Liverpool, Ohio.

**Thomas work history.**

From May 2013 to August 2013, Thomas was employed as an archeology field and lab technician for Franciscan University of Steubenville, Ohio.  Later he worked for the Louis Berger Group and Associates in Fort Wayne, Indiana as an archeological field technician.  From April 2015 to June 2015, he was employed as a closing coordinator for Mortgage Connect Moon in Pennsylvania. From June 2015 to July 2016, he was employed as a salesperson for Team Automotive Group in Steubenville, Ohio.

From March 2018 to May 2021, Thomas was employed as a traveling water, gas and electric utility meter installation laborer for Aclara Smart Grid Solutions. Then from July 2021 to May 2023, Mr. Thomas was employed as a Make Ready Engineering Field Technician by Davey Resource Group in Richfield, Ohio.

## VI.    CREATING SENTENCING DISPUTES TO BE AVOIDED

**Severe sentencing Disparities between "Left Wing" and "Right Wing" Rioters Have Emerged—Which are Anathema to the Rule of Law and the Legitimacy of the Federal Courts.**

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

While the Government, in its Sentencing Memo, preaches rhetoric about the need to avoid sentencing disparities, it is the government's own conduct regarding American political protest which has caused the greatest disparities of all: the gaping disparities between "left wing" and "right wing" protestors and rioters.

Federal sentencing laws are concerned with sentence disparities unequal treatment of different offenders violates the very essence and foundation of respect for the rule of law.  Indeed, the legitimacy of Congress, the federal courts, and the United States government itself depends on the notion that when Congress enacts laws, such laws must be equally applicable.

Yet in the past five years, the government has treated pro-government ("left wing") rioters—who generally seek more power for government, more intrusive and expansive bureaucracy, higher taxes, and more government regulations of the environment, speech, public health, and near-total control of commercial enterprise and commerce—with kid gloves; while sentencing "right wing" rioters—who seek limited government, lower taxes, and less regulation to the max.

In the case of fellow Jan. 6 defendant Garrett Miller (before the honorable Judge Nichols), Miller's able counsel performed an exhaustive review of these disparities between the "right wing" Trump supporters of January 6

In May and June of 2020, the City of Portland was the scene of several political riots. Much of the rioting took place on a city block in Portland occupied by the Hatfield federal courthouse. The federal government owns that entire Portland City block. Portland protests were followed by nightly criminal activity stretching for weeks in the form of vandalism, destruction of property, looting, arson and assault. The Hatfield Courthouse and ICE facility have experienced significant damage to the facade and building fixtures during the last year.

**To Avoid Severe Sentencing Disparities, the Court should Avoid Sentencing Thomas to more than One Year Imprisonment.**

As Garrett Miller's analysis reveals, most of the Portland rioters charged with charges identical to those faced by January 6 felony defendants ended up with extremely light prison sentences, probation, or having charges dropped.

> Undersigned Counsel has undertaken an extensive review of pleadings filed on PACER, press releases issued by the United States Attorney's Office for the District of Oregon, and various news accounts as they relate to the Portland riots. From that review, it appears that approximately 74 persons were charged with criminal offenses arising out of the riots. 5 Of those 74 persons, to date, approximately 30 persons have had their cases dismissed (often with prejudice) upon motion of the government, 12 persons appear to have been offered dismissals upon completing a pre-trial diversion program, and at least 3 persons have been allowed by the government to plead guilty to significantly reduced charges.
>
> This analysis does not include 18 persons who were charged with simply failure to obey an order. [6]The analysis by Undersigned Counsel appears consistent with one done by the news media.

"Almost Half of Federal Cases Against Portland Rioters Have Been Dismissed," Wall Street Journal (April 16, 2021)

**Most of the Portland rioters were charged with a violation of 18 U.S.C. § 231(a)(3) (civil disorder) and/or a violation of 18 U.S.C. § 111 (assault on a federal officer).** These are the same charges brought against Mr. Miller **[and Mr. Thomas]** based upon his participation in the Washington, D.C. riots.

Significantly, a large majority of the prosecutions arising out of the Portland riots appear to have been initiated under former District of Oregon United States Attorney Bill Jay Williams, who was appointed to that office by former President Donald Trump. Meanwhile, most if not all of the dismissals, offers of pretrial diversion, and pleas to significantly reduced charges in these cases came after President Biden requested the resignation of various United States Attorneys, including Williams.

*Id. (emphases added).*

## 1. Portland Riot Cases Dismissed to Date

*United States v. Travis Williams*, NO. 20-CR-296 (D. Or.)

After taunting law enforcement officials, the Defendant lunged toward the face and neck of a Deputy United States Marshal. When officers attempted to arrest the Defendant, he ripped the communication devices off two Marshals' vests and partially ripped the ballistic vest off of one of the Marshals. Tasering the Defendant had no affect and he continued fighting the Marshals. He then tried to break a Marshal's arm. Following his arrest, the Defendant told a jailer, "I almost ripped your buddy's arm off, I am a state wrestler."

*United States v. Taylor Charles Lemons*, NO. 20-CR-374 (D. Or.) (Attachment 4)- Charged a Deputy United States Marshal and struck him with a shield while the Marshal was performing his official duties. When arrested, Defendant was found with a loaded pistol.

*United States v. Thomas Johnson*, NO. 20-MJ-00170 (D. Or.) (Attachment 5)- Assaulted a Deputy United States Marshal in the face

with a shield. Defendant was arrested in possession of an asp, OC spray, plated body armor, helmet, gas mask, and goggles.

*United States v. Nicholas Joseph Bantista*, NO. 20-CR-431 (D. Or.) (Attachment 6)- Defendant had a previous conviction for aggravated assault of a police officer in Illinois. During the Portland riots, he struck a federal law enforcement official in the head with a rock. Upon arrest, he was found in possession of a pellet gun and a nail gun power load cartridges.

*United States v. Caleb Willis*, NO. 20-CR-296 (D. Or.) (Attachment 7)- Along with two other individuals, he began punching a Deputy United States Marshal and tried to steal the Marshal's gas mask while the Marshal was performing his official duties.

*United States v. Joshua Webb,* NO. 20-MJ-00169 (D. Or.) (Attachment 8)- Struck a Deputy United States Marshal in the face with a shield and then punched him in the face while the Marshal was performing his official duties. When arrested, the Defendant was found in possession of a tactical vest.

*United States v. David Michael Bouchard*, NO. 20-MJ00165 (D. Or.) (Attachment 9)- Assaulted a federal law enforcement officer using a headlock maneuver while the officer was performing his official duties. When arrested, Defendant was found in possession of a shield and leaf blower.

*United States v. Rebecca Mota Gonzalez*, NO. 20-MK00168 (D. Or.) (Attachment 10 )- Punched a DeputyUnited States Marshal in the face while the Marshal was performing his official duties. When arrested, Defendant was found in possession of a gas mask and goggles.

*United States v. Evan Louis Kriechbaum*, NO. 20-MJ00178 (D. Or.) (Attachment 11 )- Elbowed a uniformed law enforcement officer in the face while the officer was performing his official duties.

*United States v. Giovanni Terrance Bondurant*, NO. 20- CR-302 (D. Or.) (Attachment 12)- Forcibly assaulted a law enforcement officer frombehind when the office wasin the process of arresting

another rioter. When arrested, Defendant was found in possession of a shield and gas mask.

*United States v. Patrick Stafford*, NO. 20-CR-295 (D. Or.) (Attachment 13)- Slammed a DeputyUnited StatesMarshal with a shield allowing another rioter who the Marshal was attempting to arrest to escape.

*United States v. Taimane Jame Teo*, NO. 20-CR-205 (D. Or.) (Attachment 14)- Shined laser into the eyes of a federal law enforcement officer while the officer was performing his official duties. The officer could still see spots 15 minutes after the assault.

*United States v. Gretchen Margaret Blank*, NO. 20-CR-224 (D. Or.) (Attachment 15)- Assaulted a federal law enforcement officer using a shield while the officer was in the process of making an arrest.

*United States v. Christopher Fellini*, NO. 20-CR-212 (D. Or.)

Assaulted a federal law enforcement officer with a laser while the officer was performing his official duties, resisted arrest, and was found with pepper gel and a knife upon his arrest. *United States v. Stephen Edward Odonnell,* NO. 20-MJ00166 (D. Or.)

Threw a hard object that struck a federal law enforcement officer in the face while the officer was performing his official duties.

*United States v.Nathan Onderdonk-Snow*, NO. 20-CR-293 (D. Or.) (Attachment 18)- Shoved a Deputy United States Marshal from behind with a shield while the Marshal was performing his official duties and resisted arrest.

*United States v. Brodie Storey*, NO. 20-CR-330 (D. Or.) (Attachment 19)- Lunged at and tackled a Deputy United States Marshal while the Marshal was performing his official duties.

*United States v. Jeffrie Cary,* NO. 20-CR-329 (D. Or.) (Attachment 20)- Attacked a DeputyUnited States Marshal with a shield while the Marshal was performing his official duties. *United States v. Jordan Matthew Johnson*, NO. 20-MJ00179 (D. Or.) (Attachment 21)- Attempted to grab a smoke grenade and struck a Deputy United States Marshal in the head while resisting arrest.

*United States v. Jesse Herman Bates*, NO. 20-CR-245 (D. Or.) (Attachment 22)- Shot medic in the chest with a metal ball bearing. Defendant was arrested with a crowbar.

*United States v. Michelle Peterson O'Connor*, NO. 20-CR00023 (D. Or.) (Attachment 23)- Struck a law enforcement officer in the head with a helmet and "rung his bell."

*United States v. William Grant Reuland,* NO. 20-CR-460 (D. Or.) (Attachment 24)- Engaged in civil disorder by shining lasers at various law enforcement officials.

*United States v. Travis Hessel, NO*. 20-CR-450 (D. Or.)- Arrested and later indicted for civil disorder by interfering with law enforcement officials engaged in their official duties. The details are unknown because the complaint was never unsealed.

*United States v. Richard Singlestad,* NO. 20-MJ-00028 (D. Or.)-

Arrested for civil disorder by interfering with law enforcement officials engaged in their official duties. The details are unknown because the complaint was never unsealed.

*United States v. Benjamin Wood-Pavich,* NO. 20-CR-209 (D. Or.)

Charged with assault of a federal official while the official was performing his official duties. The details are unknown because a complaint was not filed.

*United States v. Jerusalem Callahan,* NO. 20-CR-247 (D. Or.)- Charged with destruction of federal property. The details are unknown because a complaint was not filed.

*United States v. Zachary Roy Duffly*, NO. 20-CR-241 (D. Or.)- Charged with impeding and obstructing governmental employees in performance of their official duties. The details are unknown because a *complaint was not filed*.

*United States v. Jennifer Lynne Kristiansen,* NO. 20-CR-45 (D. Or.)- Charged with assault of a federal official while the official was

performing his official duties and failure to obey lawful orders. The details are unknown because a *complaint was not filed.*

*United States v. DouglasRobert Dean*, NO. 20-CR-279 (D. Or.)-

Charged with assault of a federal official while the official was performing his official duties. The details are unknown because a complaint was not filed. *United States v. Pablo Avvacato*, NO. 20-CR-278 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties.The details are unknown because a complaint was not filed.

*United States v. Pedro Aldo Ramos, Jr.,* NO. 20-CR-290 (D. Or.) (Attachment 25)- Punched a law enforcement officer in the face. Defendant was charged with civil disorder.

*United States v. Kristopher Michael Donnelly,*NO. 20-CR436 (D. Or.) (Attachment 26)- Destroyed a police station window with a hammer and forcefully elbowed an officer in the face who attempted to arrest him. Defendant also was throwing frozen eggs and other hard objects at officers. Defendant was charged with civil disorder.

*United States v. Lillith Etienne Grin*, NO. 20-CR-290 (D. Or.) (Attachment 27)- Assaulted a Deputy United States Marshall with a laser, thereby affecting his vision "for 30 minutes after the incident" that resulted in "blurry vision and 'sunspots'" for the officer. Defendant also resisted arrest.

*United States v. Joshua Warner*, NO. 20-CR-442 (D. Or.) (Attachment 2)- Assaulted law enforcement officials by pointing a laser at their eyes and resisted arrest. Defendant was indicted for civil disorder.

*United States v. Charles Randolph Comfort*, NO. 20-CR290 (D. Or.) (Attachment 28)- Assaulted a law enforcement officer by repeatedly charging at him with a shield. Defendant was indicted for civil disorder.

*United States v. Alexandra Eutin,* NO. 20-CR-459 (D. Or.) (Attachment 29)- Struck a law enforcement officer in the head with a

wood sign/shield while officer was attempting to arrest another rioter. Defendant was indicted for civil disorder.

*United States v. Skyler Ward Rider*, NO. 20-CR-496 (D. Or.)-

Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3) and felony assault on a federal officer in violation of 18 U.S.C. § 111. The details are unknown because a complaint was not filed.

*United States v. Sebastián Dunbar,* NO. 20-CR-289 (D. Or.)- Defendant was indicted for assault on a federal officer in violation of 18 U.S.C. § 111. The details are unknown because a complaint was not filed.

*United States v. Meganne Elizabeth Englich-Mills,* NO. 20-CR-458 (D. Or.)- Defendant wasindicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

*United States v. Phillip John Wenzel ,* NO. 20-CR-464 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

*United States v. Ty John Fox,* NO. 20-CR-501 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

*United States v. Alexa Daron Graham*, NO. 20-CR-449 (D. Or.)- Defendant was indicted for pointing a laser at an aircraft in violation of 18 U.S.C. § 39a.

### 3. **Portland Riot Cases with Extremely Favorable Plea Agreements**

*United States v. Jeffrey Richard Singer*, NO. 20-CR-218 (D. Or.) (Attachment 30)- Defendant had a "reoccurring role" in the Portland riots and charged at an officer who was trying to arrest him and injured the officer's thumb. Defendant also broke several windows at a private business and stole a United Statesflag. Although the defendant was charged with civil disorder and theft of government property, the civil disorder charge was dismissed, and Defendant was

allowed to plead to simply stealing the flag. Because the government "appreciated" the Defendant not engaging in further rioting after his arrest, it recommended a sentence of "time served" and one year supervised release.

*United States v. Anthony Amoss*, NO. 21-MJ-00113 (D. Or.)

Defendant broke a window of the federal courthouse with a rock. The cost to replace windows was over $1,000 a piece. Defendant was allowed to plead to a citation only. 7 7 In the complaint against Amoss, the government noted: "Protest events in Portland are primarily attended by people in 'black bloc," a term used to describe the all black, nondescript clothing. ANTIFA and other groups have stated that the intent of wearing 'black block' is to protect members of the group willing to take 'direct action' by making it difficult for law enforcement to identify individuals and further anonymizing them ('direct action' is most often a criminal act of vandalizing property or assaulting people)."

*United States v. Carly Anne Ballard*, NO. 20-MJ-000083 (D. Or.) (Attachment 31)- Resisted arrest by kicking a United States Marshal. Defendant was allowed to plead to a citation only.



**VII.**   DISCUSSION OF SENTENCING

While the government has "broad discretion" in "enforc[ing] the Nation's criminal laws," that discretion is, nevertheless, "subject to constitutional constraints." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citations omitted). "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment" is that the government cannot pursue criminal charges against a citizen that amounts to a "'practical denial' of equal protection of law." Id. (citations omitted). Such a pursuit would give rise to a claim of "selective prosecution." Id. While "selective prosecution" claims generally involve claims of disparate treatment based upon race or religion, it is clear that a claim of selective prosecution can be based upon the disparate treatment of those espousing different political viewpoints. It is clear that discriminatory enforcement of the law, by either state or federal officials, constitutes a denial of equal protection. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Washington v. United States*, 130 U.S.App.D.C. 374, 401 F.2d 915 (1968).

The primary way in which discriminatory law enforcement can be exhibited is by the use of the prosecutorial prerogative itself to discriminate against those whose constitutionally protected views or activities are not popular with the

government (selective prosecution). United States v. Banks, 368 F.Supp. 1245, 1251 (D.S.D. 1973).

## VIII.  CONCLUSION

Accordingly, this Court should avoid creating further disparities regarding defendants convicted of violating 18 U.S.C. § 231 and §111(a) during politically-charged riots.  Thomas should be sentenced along the lines of other defendants who have been prosecuted for riot-related offenses nationwide.

Dated:  August 23, 2023                RESPECTFULLY SUBMITTED


    /s/    Roger Roots, Esq.

Roger Roots, Esq.
John Pierce Law
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
rroots@johnpiercelaw.com
*Attorney for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed on this  August 23, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system.  All attorneys of record will receive an electronic copy, including:

MATTHEW M. GRAVES
United States Attorney

SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
**Samantha.Miller@usdoj.gov**

SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, DC 20530
**Sean.McCauley@usdoj.gov**


   /s/   Roger Roots, Esq.