# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | **1:21-CR-00119-CJN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GARRET MILLER,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY HEARING IN SUPPORT OF DEFENDANT'S CLAIM OF SELECTIVE PROSECUTION AS IT RELATES TO COUNTS ONE, TWO AND FOUR OF THE SUPERSEDING INDICTMENT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS...........................................................................................2

TABLE OF AUTHORITIES.....................................................................................3

I. BACKGROUND...................................................................................................4

     A. Garret Miller..................................................................................................4

     B. Portland Riots.................................................................................................6

          1. Portland Riot Cases Dismissed to Date.................................................8

          2. Portland Riot Cases Headed for Dismissal.........................................13

          3. Portland Riot Cases with Extremely Favorable Plea Agreements......15

II. DISCUSSION....................................................................................................16

III. RELIEF REQUESTED......................................................................................19

CERTIFICATE OF SERVICE................................................................................21

# TABLE OF AUTHORITIES

**Page**

*Attorney General v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982)......................18

*Branch Ministries, Inc. v. Richardson*, 970 F.Supp. 11 (D.D.C. 1997)...............17, 18

*United States v. Armstrong*, 517 U.S. 456 (1996)..................................................16, 19

*United States v. Banks*, 368 F.Supp. 1245 (D.S.D. 1973)...........................................17

*United States v. Crowthers*, 456 F.2d 1074 (7th Cir. 1972)...........................................4

*United States v. Cyprian*, 23 F.3d 1189, (3rd Cir.), *cert. denied*, 513 U.S. 879 (1994)......................................................................................................................17

*United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997), *cert. denied*, 523 U.S. 1060 (1997)......................................................................................................................17

## Statutes

18 U.S.C. § 111...............................................................................................5, 8, 18

18 U.S.C. § 231(a)(3).......................................................................................5, 8, 18

The government "may not pick and choose for the purpose of selecting expressions of viewpoint pleasing to it and suppressing those that are not favored." *United States v. Crowthers*, 456 F.2d 1074, 1078 (7th Cir. 1972).

## I. BACKGROUND

### A. Garret Miller

Defendant Garrett Miller is charged in the Superseding Indictment with several offenses, often in multiplicious counts, related to his entry into the United States Capitol Building on January 6, 2021. It appears from the discovery provided by the government that Mr. Miller entered the Capitol Building *after* the electoral proceedings had been stopped. While in the Capitol Building, Mr. Miller remained in the Rotunda. He did not damage any property, nor did he take any property. Mr. Miller was not armed with weapons when he entered the Capitol. The government has described, Mr. Miller's assaultive conduct while in the Capitol Rotunda as follows:

> Miller went to the police line, at the front of the crowd, and refused to move. When officers attempted to push him back Miller fell to the ground[1] but quickly got up and again refused to move. He yelled, "Hooah! Hooah!" at the officers. He then got into a fighting stance with one of his legs in front of the other and yelled, "OOOH! OW! OW!

---

[1] Video reveals that Mr. Miller was actually pushed to the ground with the assistance of a night stick to his mid-section.

4

OW!"  Officers eventually pushed him back.

Doc. 16 .[2]  Mr. Miller left the Capitol Building after learning that President Trump

told his supporters to go home.

Mr. Miller is charged in Counts One and Two,[3] with committing civil disorder,

in violation of 18 U.S.C. § 231(a)(3), in relation to his entry into the Rotunda.  He is

charged in Count Four with assault on a federal officer, in violation of 18 U.S.C. §

111, presumably related to his alleged refusal to move and yelling "Hooah! Hooah!"

and "OOOH! OW! OW! OW!" while in a "fighting stance" in the Rotunda after being

pushed to the ground with an officer's night stick.

Mr. Miller has become familiar with how the Department of Justice has

handled the bulk of the 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111 charges arising out

of the Portland riots, which took place during the summer of 2020.  Unlike simply

getting into an alleged "fighting stance" while yelling "Hooah! Hooah!" and "OOOH!

OW! OW! OW!" at officers, many of those Portland assault cases involved punching

officers, attempting to break bones of officers, putting officers in choke holds or head

locks, and alike.  Moreover, often the assaults by rioters in Portland were committed

in order to prevent officers from arresting other rioters.

---

[2]Government's Opposition to Defendant's Motion to Revoke Magistrate Judge's Detention Order.

[3]Counts he submits are multiplicious

5

Based upon the handling of the Portland cases by the new Department of Justice and the recent completely one-sided and draconian plea agreement offer recently made to Mr. Miller, Mr. Miller submits he has a "colorable claim" of selective prosecution. To be absolutely clear, Mr. Miller is not attempting to excuse his actions on January 6, 2021. Indeed, Mr. Miller has previously stated that many of his actions were completely wrong. Nevertheless, Mr. Miller should not be treated differently based upon the political views he espoused viz-a-viz the political views espoused by the Portland rioters.

## B. Portland Riots

In May and June of 2020, the City of Portland was the scene of several riots. Much of the rioting took place on a city block in Portland occupied by the Hatfield federal courthouse. *See* Attachment 1. The federal government owns that entire Portland City block. *Id*. According to the government:

> ...Portland protests have often been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson and assault. As a result, the Hatfield Courthouse and ICE facility have experienced significant damage to the facade and building fixtures during the last year. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. Other federal properties in Portland which have experienced heavy vandalism over the last 10 months include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, the Edith Green Wendall Wyatt Federal Office Building and the Citizenship and Immigration Services Building. Federal officials estimate $2.3 million in damage has been inflicted on

federal buildings in Oregon during the year's protests, including $1.6 million in damage to the Hatfield US Courthouse. FPS law enforcement officials, Deputy U.S. Marshals, Boarder and Customs Enforcement Agents, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes,[4] thrown rocks, bottles, and balloons filled with paint from demonstrators while preforming their duties.

*Id*.

Undersigned Counsel has undertaken an extensive review of pleadings filed on PACER, press releases issued by the United States Attorney's Office for the District of Oregon, and various news accounts as they relate to the Portland riots. From that review, it appears that approximately **74 persons** were charged with criminal offenses arising out of the riots.[5] Of those 74 persons, to date, approximately **30 persons** have had their cases dismissed (often with prejudice) upon motion of the government, **12 persons** appear to have been offered dismissals upon completing a pre-trial diversion program, and at least **3 persons** have been allowed by the government to plead guilty to significantly reduced charges.[6]

---

[4]According to the government, such lasers "can temporarily blind an officer and may cause significant and lasting eye damage to an officer." *See* Attachment 2.

[5]This analysis does not include 18 persons who were charged with simply failure to obey an order.

[6]The analysis by Undersigned Counsel appears consistent with one done by the news media. "Almost Half of Federal Cases Against Portland Rioters Have Been Dismissed," *Wall Street Journal* (April 16, 2021)

Most of the Portland rioters were charged with a violation of 18 U.S.C. § 231(a)(3) (civil disorder) and/or a violation of 18 U.S.C. § 111 (assault on a federal officer). These are the same charges brought against Mr. Miller in Counts One, Two and Four of the Superseding Indictment based upon his participation in the Washington, D.C. riots.

Significantly, a large majority of the prosecutions arising out of the Portland riots appear to have been initiated under former District of Oregon United States Attorney Bill Jay Williams, who was appointed to that office by former President Donald Trump. Meanwhile, most if not all of the dismissals, offers of pretrial diversion, and pleas to significantly reduced charges in these cases came after President Biden requested the resignation of various United States Attorneys, including Williams.

### 1. Portland Riot Cases Dismissed to Date

*United States v. Travis Williams*, NO. 20-CR-296 (D. Or.) (Attachment 3)- After taunting law enforcement officials, the Defendant lunged toward the face and neck of a Deputy United States Marshal. When officers attempted to arrest the Defendant, he ripped the communication devices off two Marshals' vests and partially ripped the ballistic vest off of one of the Marshals. Tasering the Defendant had no affect and he continued fighting the Marshals. He then

---

(https://www.wsj.com/articles/almost-half-of-federal-cases-against-portland-rioters-have-been-dismissed-11618501979)

tried to break a Marshal's arm. Following his arrest, the Defendant told a jailer, "I almost ripped your buddy's arm off, I am a state wrestler."

*United States v. Taylor Charles Lemons,* NO. 20-CR-374 (D. Or.) (Attachment 4)- Charged a Deputy United States Marshal and struck him with a shield while the Marshal was performing his official duties. When arrested, Defendant was found with a loaded pistol.

*United States v. Thomas Johnson*, NO. 20-MJ-00170 (D. Or.) (Attachment 5)- Assaulted a Deputy United States Marshal in the face with a shield. Defendant was arrested in possession of an asp, OC spray, plated body armor, helmet, gas mask, and goggles.

*United States v. Nicholas Joseph Bantista*, NO. 20-CR-431 (D. Or.) (Attachment 6)- Defendant had a previous conviction for aggravated assault of a police officer in Illinois. During the Portland riots, he struck a federal law enforcement official in the head with a rock. Upon arrest, he was found in possession of a pellet gun and a nail gun power load cartridges.

*United States v. Caleb Willis*, NO. 20-CR-296 (D. Or.) (Attachment 7)- Along with two other individuals, he began punching a Deputy United States Marshal and tried to steal the Marshal's gas mask while the Marshal was performing his official duties.

*United States v. Joshua Webb*, NO. 20-MJ-00169 (D. Or.) (Attachment 8)- Struck a Deputy United States Marshal in the face with a shield and then punched him in the face while the Marshal was performing his official duties. When arrested, the Defendant was found in possession of a tactical vest.

*United States v. David Michael Bouchard*, NO. 20-MJ-00165 (D. Or.) (Attachment 9)- Assaulted a federal law enforcement officer using a headlock maneuver while the officer was performing his official duties. When arrested, Defendant was found in possession of a shield and leaf blower.

*United States v. Rebecca Mota Gonzalez*, NO. 20-MK-00168 (D. Or.) (Attachment 10 )- Punched a Deputy United States Marshal in the face while the Marshal was performing his official duties. When arrested, Defendant was found in possession of a gas mask and goggles.

*United States v. Evan Louis Kriechbaum*, NO. 20-MJ-00178 (D. Or.) (Attachment 11 )- Elbowed a uniformed law enforcement officer in the face while the officer was performing his official duties.

*United States v. Giovanni Terrance Bondurant*, NO. 20-CR-302 (D. Or.) (Attachment 12)- Forcibly assaulted a law enforcement officer from behind when the office was in the process of arresting another rioter. When arrested, Defendant was found in possession of a shield and gas mask.

*United States v. Patrick Stafford*, NO. 20-CR-295 (D. Or.) (Attachment 13)- Slammed a Deputy United States Marshal with a shield allowing another rioter who the Marshal was attempting to arrest to escape.

*United States v. Taimane Jame Teo*, NO. 20-CR-205 (D. Or.) (Attachment 14)- Shined laser into the eyes of a federal law enforcement officer while the officer was performing his official duties. The officer could still see spots 15 minutes after the assault.

*United States v. Gretchen Margaret Blank*, NO. 20-CR-224 (D. Or.) (Attachment 15)- Assaulted a federal law enforcement officer using a shield while the officer was in the process of making an arrest.

*United States v. Christopher Fellini*, NO. 20-CR-212 (D. Or.) (Attachment 16)- Assaulted a federal law enforcement officer with a laser while the officer was performing his official duties, resisted arrest, and was found with pepper gel and a knife upon his arrest.

*United States v. Stephen Edward Odonnell*, NO. 20-MJ-00166 (D. Or.) (Attachment 17)- Threw a hard object that struck a federal law enforcement officer in the face while the officer was performing his official duties.

*United States v. Nathan Onderdonk-Snow*, NO. 20-CR-293 (D. Or.) (Attachment 18)- Shoved a Deputy United States Marshal from behind with a shield while the Marshal was performing his official duties and resisted arrest.

*United States v. Brodie Storey*, NO. 20-CR-330 (D. Or.) (Attachment 19)- Lunged at and tackled a Deputy United States Marshal while the Marshal was performing his official duties.

*United States v. Jeffrie Cary*, NO. 20-CR-329 (D. Or.) (Attachment 20)- Attacked a Deputy United States Marshal with a shield while the Marshal was performing his official duties.

*United States v. Jordan Matthew Johnson*, NO. 20-MJ-00179 (D. Or.) (Attachment 21)- Attempted to grab a smoke grenade and struck a Deputy United States Marshal in the head while resisting arrest.

*United States v. Jesse Herman Bates*, NO. 20-CR-245 (D. Or.) (Attachment 22)- Shot medic in the chest with a metal ball bearing. Defendant was arrested with a crowbar.

*United States v. Michelle Peterson O'Connor*, NO. 20-CR-00023 (D. Or.) (Attachment 23)- Struck a law enforcement officer in the head with a helmet and "rung his bell."

*United States v. William Grant Reuland*, NO. 20-CR-460 (D. Or.) (Attachment 24)- Engaged in civil disorder by shining lasers at various law enforcement officials.

*United States v. Travis Hessel*, NO. 20-CR-450 (D. Or.)- Arrested and later indicted for civil disorder by interfering with law enforcement officials engaged in their official duties. The details are unknown because the complaint was never unsealed.

*United States v. Richard Singlestad*, NO. 20-MJ-00028 (D. Or.)- Arrested for civil disorder by interfering with law enforcement officials engaged in their official duties. The details are unknown because the complaint was never unsealed.

*United States v. Benjamin Wood-Pavich*, NO. 20-CR-209 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties. The details are unknown because a complaint was not filed.

*United States v. Jerusalem Callahan*, NO. 20-CR-247 (D. Or.)- Charged with destruction of federal property. The details are unknown because a complaint was not filed.

*United States v. Zachary Roy Duffly*, NO. 20-CR-241 (D. Or.)- Charged with impeding and obstructing governmental employees in performance of their official duties. The details are unknown because a complaint was not filed.

*United States v. Jennifer Lynne Kristiansen*, NO. 20-CR-45 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties and failure to obey lawful orders. The details are unknown because a complaint was not filed.

*United States v. Douglas Robert Dean*, NO. 20-CR-279 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties. The details are unknown because a complaint was not filed.

*United States v. Pablo Avvacato*, NO. 20-CR-278 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties. The details are unknown because a complaint was not filed.

## 2. Portland Riot Cases Headed for Dismissal

*United States v. Pedro Aldo Ramos, Jr.*, NO. 20-CR-290 (D. Or.) (Attachment 25)- Punched a law enforcement officer in the face. Defendant was charged with civil disorder.

*United States v. Kristopher Michael Donnelly*, NO. 20-CR-436 (D. Or.) (Attachment 26)- Destroyed a police station window with a hammer and forcefully elbowed an officer in the face who attempted to arrest him. Defendant also was throwing frozen eggs and other hard objects at officers. Defendant was charged with civil disorder.

*United States v. Lillith Etienne Grin*, NO. 20-CR-290 (D. Or.) (Attachment 27)- Assaulted a Deputy United States Marshall with a laser, thereby affecting his vision "for 30 minutes after the incident" that resulted in "blurry vision and 'sunspots'" for the officer. Defendant also resisted arrest.

13

*United States v. Joshua Warner*, NO. 20-CR-442 (D. Or.) (Attachment 2)- Assaulted law enforcement officials by pointing a laser at their eyes and resisted arrest. Defendant was indicted for civil disorder.

*United States v. Charles Randolph Comfort*, NO. 20-CR-290 (D. Or.) (Attachment 28)- Assaulted a law enforcement officer by repeatedly charging at him with a shield. Defendant was indicted for civil disorder.

*United States v. Alexandra Eutin*, NO. 20-CR-459 (D. Or.) (Attachment 29)- Struck a law enforcement officer in the head with a wood sign/shield while officer was attempting to arrest another rioter. Defendant was indicted for civil disorder.

*United States v. Skyler Ward Rider*, NO. 20-CR-496 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3) *and* felony assault on a federal officer in violation of 18 U.S.C. § 111. The details are unknown because a complaint was not filed.

*United States v. Sebastián Dunbar*, NO. 20-CR-289 (D. Or.)- Defendant was indicted for assault on a federal officer in violation of 18 U.S.C. § 111. The details are unknown because a complaint was not filed.

*United States v. Meganne Elizabeth Englich-Mills*, NO. 20-CR-458 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

*United States v. Phillip John Wenzel* , NO. 20-CR-464 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

14

*United States v. Ty John Fox*, NO. 20-CR-501 (D. Or.)-
Defendant was indicted for civil disorder in violation of 18
U.S.C. § 231(a)(3). The details are unknown because a
complaint was not filed.

*United States v. Alexa Daron Graham*, NO. 20-CR-449 (D.
Or.)- Defendant was indicted for pointing a laser at an
aircraft in violation of 18 U.S.C. § 39a.

### 3. Portland Riot Cases with Extremely Favorable Plea Agreements

*United States v. Jeffrey Richard Singer*, NO. 20-CR-218
(D. Or.) (Attachment 30)- Defendant had a "reoccurring
role" in the Portland riots and charged at an officer who
was trying to arrest him and injured the officer's thumb.
Defendant also broke several windows at a private business
and stole a United States flag. Although the defendant was
charged with civil disorder *and* theft of government
property, the civil disorder charge was dismissed, and
Defendant was allowed to plead to simply stealing the flag.
Because the government "appreciated" the Defendant not
engaging in further rioting after his arrest, it recommended
a sentence of "time served" and one year supervised
release.

*United States v. Anthony Amoss*, NO. 21-MJ-00113 (D.
Or.) (Attachment 1)- Defendant broke a window of the
federal courthouse with a rock. The cost to replace
windows was over $1,000 a piece. Defendant was allowed
to plead to a citation only.[7]

---

[7]In the complaint against Amoss, the government noted: "Protest events in Portland are
primarily attended by people in 'black bloc,' a term used to describe the all black, nondescript
clothing. ANTIFA and other groups have stated that the intent of wearing 'black block' is to
protect members of the group willing to take 'direct action' by making it difficult for law
enforcement to identify individuals and further anonymizing them ('direct action' is most often a
criminal act of vandalizing property or assaulting people)."

*United States v. Carly Anne Ballard*, NO. 20-MJ-000083
(D. Or.) (Attachment 31)- Resisted arrest by kicking a
United States Marshal. Defendant was allowed to plead to
a citation only.

## II.  DISCUSSION

While the government has "broad discretion" in "enforc[ing] the Nation's

criminal laws," that discretion is, nevertheless, "subject to constitutional constraints."

*United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citations omitted).  "One of

these constraints, imposed by the equal protection component of the Due Process

Clause of the Fifth Amendment" is that the government cannot pursue criminal

charges against a citizen that amounts to a "'practical denial' of equal protection of

law." *Id*. (citations omitted).  Such a pursuit would give rise to a claim of "selective

prosecution." *Id*.

While "selective prosecution" claims generally involve claims of disparate

treatment based upon race or religion, it is clear that a claim of selective prosecution

can be based upon the disparate treatment of those espousing different political

viewpoints.

It is clear that discriminatory enforcement of the law, by either state or
federal officials, constitutes a denial of equal protection.  *Yick Wo v.
Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Washington
v. United States*, 130 U.S.App.D.C. 374, 401 F.2d 915 (1968).  The
primary way in which discriminatory law enforcement can be exhibited
is by the use of the prosecutorial prerogative itself to discriminate

against those whose constitutionally protected views or activities are not popular with the government (selective prosecution).

*United States v. Banks*, 368 F.Supp. 1245, 1251 (D.S.D. 1973).[8]  Moreover, while the government will argue that Mr. Miller was not engaged in constitutionally protected activities when he entered the Capitol on January 6, 2021, neither were the Portland rioters engaged in constitutionally protected activities when they attacked federal officers in Portland and assaulted various federal buildings.  Thus, it appears at first blush that Mr. Miller has been treated differently by the government than the Portland rioters based upon the politics involved.  Indeed, the fact that most, if not, all of the Portland dismissals, offers of pretrial diversion, and pleas to significantly reduced charges came after a change in the Department of Justice is strong evidence of Mr. Miller's claim of potential selective prosecution.

Mr. Miller acknowledges that a person asserting a "selective prosecution" claim has a "heavy burden."  *Branch Ministries*, 970 F.Supp. at 15.  He likewise acknowledges that, to show selective prosecution, he must show that (1) he was treated differently from others similarly situated with regard to his criminal

---

[8]*See also*, *United States v. Hastings*, 126 F.3d 310, 311 (4th Cir. 1997), *cert. denied*, 523 U.S. 1060 (1997) ("A prosecution also cannot be motivated by a suspect's exercise of constitutional rights through participation in political activity."); *United States v. Cyprian*, 23 F.3d 1189, 1195 n. 10 (3rd Cir.), *cert. denied*, 513 U.S. 879 (1994) (""Selective prosecution is grounds for acquittal only if the basis of selection is a forbidden ground, such as race, religion or political opinion."); *Branch Ministries, Inc. v. Richardson*, 970 F.Supp. 11 (D. D.C. 1997) (similar).

prosecution and (2) charges were improperly motivated based on his political beliefs. *See Attorney General v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982). Finally, he acknowledges that, to obtain discovery or an evidentiary hearing, he "must offer at least a colorable claim'" as to these two prongs. *Branch Ministries*, 970 F.Supp. at 16.

Still, Mr. Miller "is not required to produce direct evidence of intent; indeed, direct evidence of motive or intent is rarely available. As in any equal protection case, evidence concerning the unequal application of the law, statistical disparities and other indirect evidence of intent may be used to show bias or discriminatory motive." *Branch Ministries*, 970 F.Supp. at 17.

Here, Mr. Miller submits that he has made "a colorable claim" that, at least with regard to Counts One, Two, and Four, he is the subject of selective prosecution when compared with those arrested for violations of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111 in relation to the Portland riots. First, as noted above, a large majority of the Portland rioters charged with identical offenses arising out of a "political riot" had their cases dismissed, were offered pretrial diversion, or plead to significantly reduced charges. And, unlike Mr. Miller, many of the Portland rioters engaged in serious assaultive conduct such as punching officers, attempting to break bones of officers, putting officers in choke holds or head locks, and alike. Second, as noted

above, it can easily be established that most, if not all, of the Portland dismissals, offers of pretrial diversion, and pleas to significantly reduced charges came *after* a change from the Republican administration to the Democratic administration running the Department of Justice.

### III.  RELIEF REQUESTED

Based upon the above showing of a "colorable claim" of selective prosecution, Mr. Miller respectfully requests this Court order discovery in which the "Government must assemble from its own files documents which might corroborate or refute his selective prosecution] claim." *See Armstrong*, 517 U.S. at 468.   In addition, Mr. Miller respectfully requests this Court hold an evidentiary hearing to which Mr. Miller can subpoena those officials overseeing the prosecutions of the Portland arrestees and those overseeing the officials in charge of Mr. Miller's case in order to "corroborate or refute" his selective prosecution claim.

Respectfully submitted,


/s/ F. Clinton Broden
F. Clinton Broden
TX Bar No. 24001495
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
214-720-9552
214-720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Defendant
Garret Miller

## <u>CERTIFICATE OF SERVICE</u>

I, F. Clinton Broden, certify that, on June 24, 2021 I caused a copy of the above

document to be served by electronic means on:

Elizabeth C. Kelley
United States Attorney's Office
555 4th Street, N.W.
Washington, DC 20350

<u>/s/ F. Clinton Broden</u>
F. Clinton Broden

# ATTACHMENT 1

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the

District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 3:21-mj-00113 |
| | ) | |
| ANTHONY A. AMOSS | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___(As provided in Attachment 1)___ in the county of ___Multnomah___ in the _____ District of ___Oregon___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S. Code § 1361 | Destruction of Government Property, as more fuly set forth in Attachment 1 |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Micah D. Coring, US Department of Homeland Security, Federal Protective Service

☑ Continued on the attached sheet.

_____
*Complainant's signature*

MICAH D. CORING, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___12:56___ a.m./p.m.

Date: ___05/28/2021___

/s/ *Youlee Yim You*
*Judge's signature*

City and state: ___Portland, Oregon___        Hon. Youlee Yim You,  U.S. Magistrate Judge
*Printed name and title*

3:21-mj-00113

STATE OF OREGON          )
                         )  ss:              AFFIDAVIT OF MICAH CORING
County of Multnomah      )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Micah Coring, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am a Senior Special Agent with the Federal Protective Service (FPS) and have been since 2009.  My current assignment is the Federal Protective Service Field Office in Portland, Oregon, where I am assigned to investigate general crimes.  I am also a liaison for the Federal Bureau of Investigation's Joint Terrorism Task Force (JTTF) and the FPS agency representative for the Titan Fusion Center.  I graduated from the Federal Law Enforcement Training Center's Criminal Investigator Training Program in August 2009.  I have experience investigating crimes against federal employees and federal property, including threats and assaults on federal government employees, and damage to federal buildings and property.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Anthony AMOSS.  As set forth below, I have probable cause to believe that on three occasions AMOSS committed or attempted to commit Destruction of Government Property of a federal building, specifically the Mark O. Hatfield United States Courthouse and the Portland Field Office of the Immigration and Custom Enforcement (ICE), in violation of 18 U.S. Code § 1361.

3.      The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and

**Page 1 – Affidavit of Micah Coring**

circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

### Applicable Law

4.      18 U.S.C. § 1361 makes it an offense to willfully injure or commit any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses.

### Statement of Probable Cause

5**.**      Since on or about May 26, 2020, protesters have gathered regularly in Portland public areas including Elizabeth Caruthers Park, Lownsdale Square, Chapman Square, and Terry Schrunk Plaza among others.  The Multnomah County Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), the Mark O. Hatfield United States Courthouse (Hatfield Courthouse), and the Edith Green-Wendell Wyatt Federal Building are across the street from three of these public areas.

6      The federal government owns the entire city block (Block #24) occupied by the Hatfield Courthouse.  Easements have been granted for the sidewalks surrounding the Hatfield Courthouse, but the property boundary extends past the sidewalks and into the streets surrounding the courthouse, as shown below:

 **Page 2 – Affidavit of Micah Coring**



7.     The federal government leases the entire facility occupied by ICE, located at

ICE facility located at 4310 S Macadam Ave in Portland, OR., as depicted below.



**Page 3 – Affidavit of Micah Coring**

8. When they have occurred, Portland protests have often been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. As a result, the Hatfield Courthouse and the ICE facility have experienced significant damage to the façade and building fixtures during the last year. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. Other federal properties in Portland which have experienced heavy vandalism over the last 10 months include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, the Edith Green Wendall Wyatt Federal Office Building, and the Citizenship and Immigration Service Building. Federal officials estimate $2.3 million in damage has been inflicted on federal buildings in Oregon during the year's protests, including $1.6 million in damage to the Hatfield US Courthouse. FPS law enforcement officers, Deputy U.S. Marshals, Boarder and Customs Enforcement Agents, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint from demonstrators while preforming their duties.

### *Hatfield Courthouse Damage – March 13-14, 2021*

9. Beginning March 10, 2021, the General Services Administration and the FPS began the process of removing the fence surrounding the Hatfield Courthouse. These barriers had been erected during the summer of 2020 to protect the facility from nightly vandalism. By the afternoon of March 13, 2021 all fencing, concrete barriers and plywood had been removed from the facility. Later that evening, a number of windows were broken on the west side of the courthouse.

**Page 4 – Affidavit of Micah Coring**

10.    A Multnomah County Sheriff's Deputy operates exterior Closed-Circuit Video (CCV) cameras at the Multnomah County Justice Center which borders the Hatfield Courthouse to the south.  The cameras cover the area between the two buildings, some of the main entry to the courthouse and views to the front of both buildings. The deputy provided footage recorded the night of March 13, 2021, and the early morning of March 14, 2021.  I reviewed the footage and saw an individual later identified as AMOSS throw 9 objects in the direction of the Hatfield Courthouse windows.  Below are photos of the security video taken on March 13 – 14, 2021 showing AMOSS.



11.    On April 22, 2021, I received damage costs from a General Services administration (GSA) Project Manager. The documents included photos of windows broken from March 11-March 14, 2021 at the Hatfield Courthouse and an itemized bill for window replacement and labor. The GSA Project Manager noted that the windows at this location require a special film for impact, graffiti, and tint, causing the price to be higher than glass. The bill for window replacement totaled $143,513.50.  Photos of some of the damaged windows are below.

**Page 5 – Affidavit of Micah Coring**





///

///

///

**Page 6 – Affidavit of Micah Coring**



*ICE Facility Damage – March 20, 2021*

12.     I reviewed video retrieved from the CCV system located at the ICE facility for March 20, 2021 between April 14-20, 2021. In the videos, I observed AMOSS throw 4 objects at the facility on March 20, 2021. Based on my observations, and using still images from the security video, I created a flier for law enforcement circulation asking for assistance in identifying AMOSS.  Several photographs used in that flier appear below.

///

///

///

///

**Page 7 – Affidavit of Micah Coring**





13.    Photos of collected rocks and damaged windows found at the scene on March 20, 2021 appear below:



**Page 8 – Affidavit of Micah Coring**



*ICE Facility Damage – April 1, 2021*

14.     Additionally, I reviewed video retrieved from the CCV system located at the ICE facility for April 1, 2021 from April 14-20, 2021. In the videos, I observed AMOSS throw 36 objects at the facility on April 1, 2021. Photos of AMOSS in the April 1, 2021 video are below.



15.     On April 1, 2021, AMOSS was arrested by FPS at the ICE facility for Failure to Comply with Lawful Directions of Federal Law Enforcement (Title 41 CFR 102-74.385) for remaining on property after the Long Range Acoustic Device (LRAD) warning had been given and for Preservation of Property (Title 41 CFR 102-74.380) for uprooting and burning a landscaping plant.  Photos taken during AMOSS' booking process are below.

**Page 9 – Affidavit of Micah Coring**



16.    Protest events in Portland are primarily attended by people in "black block," a term used to describe the all black, nondescript clothing. ANTIFA and other groups have stated that the intent of wearing "black block" is to protect members of the group willing to take "direct action" by making it difficult for law enforcement to identify individuals and further anonymizing them ("direct action" is most often a criminal act of vandalizing property or assaulting people).

17.    During my viewing of security footage taken of the Hatfield Courthouse surroundings and the ICE facility, both live and recorded, I was able to readily identify AMOSS by his distinctive attire. In the video footage of March 13 - 14, and again on March 20, I observed that AMOSS was attired in a red hat, dark rimmed glasses, and a black and white sweatshirt with a black fist on the chest. Additionally, AMOSS wore a distinct blue UnderArmor brand backpack on March 20. Prior to AMOSS's arrest on April 1, FPS officers recognized AMOSS from the flyer I issued the week prior. Nearly all people seen in the March

**Page 10 – Affidavit of Micah Coring**

13 - 14, March 20, and April 1 videos are attired in black block with very little variations in shade or style. AMOSS's appearance in contrast was a marked difference and easy to follow in video. Additionally, On April 1, AMOSS was in possession of a blue UnderArmor backpack matching the one seen in the March 20, 2021 video.

18.     On April 29, 2021, I received a repair quote from the owner of the ICE facility. The repair estimate is for two line items. The first is the replacement of 7 broken insulated windows at a cost of $9,152.00. The second is for the replacement of 9 broken insulated windows at a cost of $11,925.00. The owner stated, to the best of his knowledge the first 7 windows were broken by vandals on March 20, 2021 and the additional 9 windows were broken on April 1, 2021.

### Conclusion

19.     Based on the foregoing, I have probable cause to believe the following:

A.     That on March 13, 2021, Anthony AMOSS willfully damaged and destroyed, and attempted to damage or destroy, property owned by the United States, that is, glass windows of the Mark O. Hatfield United States Courthouse, which damage exceeds $1000, in violation of 18 U.S.C § 1361;

B.     That on March 20, 2021, Anthony AMOSS willfully damaged and destroyed , and attempted to damage or destroy, property leased by the United States, that is, glass windows of the Portland Field Office of Immigration Customs Enforcement, which damage exceeds $1000, in violation of 18 U.S.C § 1361; and

C.     That on April 1, 2021, Anthony AMOSS willfully damaged and destroyed, and attempted to damage or destroy, property owned by the United States, that is, glass windows of

 **Page 11 – Affidavit of Micah Coring**

the Mark O. Hatfield United States Courthouse, which damage exceeds $1000, in violation of 18 U.S.C § 1361.

And I therefore request that the Court issue a criminal complaint and arrest warrant charging AMOSS with these offenses.

19.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Greg Nyhus.  AUSA Nyhus informed me that in his opinion, the affidavit is legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*_____
Micah CORING
Senior Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means in accordance with Fed. R. Crim. P. 4.1 at
___12:56 pm___ ~~a.m./p.m.~~ on May ___28___, 2021.

/s/ *Youlee Yim You*
_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Page 12 – Affidavit of Micah Coring**

# ATTACHMENT 2

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

United States of America        )
              v.                  )

<span style="color:red">SEALED</span>

)    Case No.
)
)       3:20-mj-  00219
)
JOSHUA M. WARNER, AKA EVA WARNER      )
)

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     August 8, 2020     in the county of     Multnomah     in the

_____ District of    Oregon    , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 231(a)(3) | Civil Disorder - Intentionally Obstructing, Impeding, Interfering with Law Enforcement Officers Engaged in Official Duties |

This criminal complaint is based on these facts:

    See attached affidavit of FBI Special Agent Joseph Youngblood

☑ Continued on the attached sheet.

*Joseph O. Youngblood*
_____
*Complainant's signature*

FBI Special Agent Joseph O. Youngblood
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at   3:41    ~~a.m.~~/p.m.

Date:    08/27/2020

*Youlee Yim You*
_____
*Judge's signature*

City and state:     Portland, Oregon       Hon. Youlee Yim You, U.S. Magistrate Judge
_____
*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

SEALED

DISTRICT OF OREGON, ss:        AFFIDAVIT OF JOSEPH O. YOUNGBLOOD

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Joseph O. Youngblood, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Federal Bureau of Investigation and have been employed as such since July of 2019.  I successfully completed 21 weeks of training at the FBI Academy located in Quantico, Virginia.  During that time, I was taught the use and practical application of various investigative techniques that federal law enforcement officers are allowed to employ.  Since December of 2019, I have been assigned to the Portland Division Violent Crime Squad.  My training and experience include my time in the FBI as well as four years of previous federal law enforcement experience as a Military Police Officer in the United States Marine Corps. I have been empowered under Title 18, United States Code, Sections 3052 and 3053, and Rule 4 of the Federal Rules of Criminal Procedure, to conduct investigations and make arrests for federal criminal offenses, including violations of 18 U.S.C. § 231(a)(3) (civil disorder – obstruction of law enforcement); 18 U.S.C. § 231(a)(1) (civil disorder - incendiary device); 18 U.S.C. § 844(f)(1) (arson); 18 U.S.C. § 2101 (riot); and 18 U.S.C. § 371 (conspiracy).

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Joshua "Eva" WARNER, for civil disorder in violation of 18 U.S.C. § 231(a)(3).  As set forth below, there is probable cause to believe, and I do believe, that WARNER shined a green laser in the eyes of multiple law enforcement officers for the intended purpose of obstructing, impeding, or interfering in a violent manner with such law enforcement officers; that WARNER intentionally participated in blocking traffic on a public street; that WARNER did so knowingly and willfully, and that WARNER did so during a civil disorder that adversely affected interstate commerce.

**Applicable Law**

3.      Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to an during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce . . . shall be fined under this title or imprisoned not more than five years or both."   The term "civil disorder" means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

**Statement of Probable Cause**

4.      The information stated herein is based on my own personal involvement in this investigation, as well as my discussions with other law enforcement officers involved in this investigation, and information I have read that is contained in written reports pertaining to this investigation.  This affidavit does not include all facts known to me regarding this investigation but contains only those facts which I believe are sufficient to establish the requisite probable cause.

5.      On May 25, 2020, George Floyd died during his arrest by law enforcement officers in Minneapolis, Minnesota, sparking nationwide protests that eventually extended to Portland, Oregon.  The protests have, at times, included violence, civil disorder, arson, and looting.  On August 8, 2020, at 11:35 p.m. a riot was declared at the Portland Police Association office, located at 1868 N Lombard Street, Portland, Oregon.  This was due to individuals in the crowd breaking a window to the office, entering and starting a fire inside.  According to a Portland Police Bureau

press release, during this activity the crowd utilized vehicles and dumpsters to illegally block vehicular traffic on North Lombard Street.

6.      Portland Police Bureau officers, assigned to a Rapid Response Team and working the ongoing riot, were engaging in the targeted arrests of individuals for whom probable cause existed to arrest.  They were notified by multiple Oregon State Police troopers that troopers had identified WARNER as an individual who had directed a green laser pointer into the eyes of law enforcement officers attempting to disperse the riot.  Since the beginning of the demonstrations, officers have repeatedly encountered individuals who direct laser pointers into the eyes of law enforcement officers.  Based on my training and experience, and the training and experience of other law enforcement officers with whom I have communicated, I know these lasers can temporarily blind an officer and may cause significant and lasting eye damage to an officer.  Furthermore, according to the National Institute of Standards and Technology, an "inexpensive" ($15) green laser pointer produces enough infrared light to pose a serious hazard to human eyesight and may result in significant eye damage.[1]

7.      When PPB officers moved in to arrest WARNER, he initially resisted arrest, causing officers to use force.  Upon searching WARNER, officers seized a black, pen-style, green laser pointer.  WARNER was readily identifiable due to his attire differing significantly from the people around them.  Individuals involved in the riots typically dress in "black bloc" attire to prevent identification; WARNER was wearing a distinctive red plaid jacket while shining the laser in officer's eyes and when arrested.

---

[1]  Galang et al. "A Green Laser Pointer Hazard." National Institute of Standards and Technology, July, 2010, https://tsapps.nist.gov/publication/get_pdf.cfm?pub_id=906138, accessed August 26, 2020.

## <u>Conclusion</u>

8.      Based on the foregoing, I have probable cause to believe, and I do believe, that WARNER intentionally obstructed, impeded, and interfered with law enforcement officers who were engaged in the lawful performance of their duties when WARNER shined a green laser into their eyes; furthermore, WARNER participated in blocking traffic on a public street.  All of these actions took place during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. § 231(a)(3).  I therefore request that the Court issue a criminal complaint and arrest warrant for WARNER.

9.      Prior to being submitted to the Court, this affidavit was reviewed by Assistant United States Attorneys (AUSAs) Kelly A. Zusman and Thomas S. Ratcliffe.  AUSAs Zusman and Ratcliffe advised me that, in their opinions, the affidavit is legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

 / / /

/ / /

## **Request for Sealing**

10.     I respectfully request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.  I believe that sealing these documents is necessary because any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, or otherwise seriously jeopardize an investigation, including the planned arrest of the defendant.


_Joseph O. Youngblood_
Joseph Youngblood
Special Agent, Federal Bureau of Investigation


Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone  3:40 p.m. on August 27, 2020.


_Youlee Yim You_
THE HONORABLE YOULEE YIM YOU
United States Magistrate Judge

# ATTACHMENT 3

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )   Case No.   3:20-mj-00172 |
| | ) |
| Travis Williams | ) |
| | ) |
| | ) |
| _Defendant(s)_ | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/27/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Kyle Cozart attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____via telephone_____
_Complainant's signature_

_____USMS DUSM Kyle Cozart_____
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at ___12:10__ a̶.m./p.m.

Date: _____July 27, 2020_____

_____Jolie A. Russo_____
_Judge's signature_

City and state: _____Portland, Oregon_____        Hon. Jolie A. Russo, U.S. Magistrate Judge
_Printed name and title_

STATE OF OREGON                  )
                                 )  ss:   AFFIDAVIT OF KYLE COZART
 County of Multnomah             )


### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Kyle Cozart, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since August of 2017.  I am assigned to the District of Oregon where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court.  As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Travis WILLIAMS.  As set forth below, I have probable cause to believe that Travis WILLIAMS committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of

 **Page 1 – Affidavit of Kyle Cozart**

records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse, are directly across the street from those parks. The United States of America owns the entire city block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the

 **Page 2 – Affidavit of Kyle Cozart**



6.     Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the six weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since then. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats,

---

Portland area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

Page 3 – Affidavit of Kyle Cozart

aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

7.      Specifically, on July 27, 2020, federal law enforcement officers attempted to disperse a crowd on 3rd Avenue between Main and Salmon streets in Portland, OR after the Federal Protective Service (FPS) declared an unlawful assembly multiple times. This occurred after violent opportunists attempted to destroy the security fence in front of the Mark Hatfield Federal Courthouse with power tools. Additionally, violent opportunists attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them.  During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 01:30 hours, DUSM Victim 1 was lined up with fellow officers along 3rd Avenue. Officers began giving the crowd lawful commands to disperse from the area. An individual, later identified as Travis WILLIAMS, was yelling "Take your mask off! Let's go." Law enforcement officers began moving in a line west towards the crowd into Lownsdale Park to disperse. As deputies moved forward, WILLIAMS lunged forward with both hands towards the neck and face area of DUSM Victim 2. DUSM Victim 1 attempted to restrain WILLIAMS and place him under arrest. WILLIAMS immediately began violently resisting and pulled DUSM Victims 1 and 2 over a park bench. WILLIAMS was able to rip communication sets off both officers' vests and ripped part of DUSM Victim 1's ballistic vest partially off his body. DUSM's 1 and 2 were giving lawful commands to stop resisting arrest, but WILLIAMS

**Page 4 – Affidavit of Kyle Cozart**

refused to comply. DUSM Victim 1 removed his taser and utilized it on WILLIAMS. The Taser

had no effect and WILLIAMS continued to fight deputies. WILLIAMS continued to stop

deputies from placing restraints on him. DUSM Victims 1 and 2 were unable to place restraints

on WILLIAMS hands. A third officer from the Federal Protective Service (FPS) assisted DUSM

victims 1 and 2 in restraining WILLIAMS. WILLIAMS was finally placed in handcuffs by

DUSM victim 1 with the assistance of DUSM victim 2 and the FPS officer.

        9.      As the victims walked WILLIAMS away, he suddenly stopped walking and went

limp. WILLIAMS began to scream that deputies would need to carry him if they were going to

arrest him. DUSM Victim 1 was able to radio for a transport vehicle to move WILLIAMS to the

courthouse. When the transport arrived, WILLIAMS went into the vehicle. However, he refused

to place his legs inside the vehicle and continued to violently resist. The FPS transporting officer

was forced to go to the other side of the vehicle and pull WILLIAMS into the vehicle as DUSM

Victims 1 and 2 pushed from the other side. The FPS officer transported WILLIAMS

approximately 1 block to the Hatfield courthouse.

        10.     When WILLIAMS arrived at the courthouse, he was still actively resisting

officers. Deputies removed him from the vehicle and moved him to a wall. WILLIAMS

continuously attempted to turn around to confront deputies and made repeated attempts to whip

deputies with his hair. He continued to actively resist and required 2 deputies to move him to an

elevator. While deputies were moving him to an elevator, WILLIAMS squeezed his elbow into

the deputy's arm and placed all his body weight on it. The deputy began to yell "he's trying to

break my arm!" Responding deputies told WILLIAMS to release the arm. The deputy was able

**Page 5 – Affidavit of Kyle Cozart**

to remove his arm with the help of responding deputies. Once placed in a cell, WILLIAMS stated to deputies "I almost ripped your buddy's arm off. I'm a state wrestler."

## <u>Conclusion</u>

11.    Based on the foregoing, I have probable cause to believe, and I do believe, that WILLIAMS assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111. I therefore request that the Court issue a criminal complaint and arrest warrant charging WILLIAMS with that offense.

12.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight. AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*
_____
Kyle Cozart
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at __12:10__ am/pm on July ___27___, 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of Kyle Cozart**

# ATTACHMENT 4

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.  3:20-mj-159 |
| TAYLOR CHARLES LEMONS | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____July 22, 2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Felony Assault on a Federal Officer |

This criminal complaint is based on these facts:

See attached Affidavit of Senior Inspector William Boldin, U.S. Marshals Service

☑ Continued on the attached sheet.

/s/ Signed by telephone IAW Fed. R. Crim. P. 4.1
*Complainant's signature*

William Boldin, Sr. Inspector, U.S. Marshals Service
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at __8:55__ a.m./p.m.

Date: __July 22, 2020__ _____
*Judge's signature*

City and state: _____Portland, Oregon_____ _____Hon. John V. Acosta_____
*Printed name and title*

DISTRICT OF OREGON ) 
                                 ) ss:   AFFIDAVIT OF Senior Inspector
County of Multnomah                 )        William Boldin

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, William Boldin, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am employed as a Sr. Inspector with the U.S. Marshals Service and have been so employed since July 2003. I have completed the Basic Deputy U.S. Marshal Academy and the Federal Criminal Investigators Training Program. My duties include conducting investigations into violations of federal law and have conducted numerous investigations involving assaults and threats on federal officers and employees.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Taylor CHARLES LEMONS. As set forth below, there is probable cause to believe, and I do believe, that LEMONS committed the felony offense of Assaulting a Federal Officer, in violation of 18 U.S.C. §§ 111(a)(1).

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.  Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts involve physical contact with the victim, the offense is a felony punishable by imprisonment up to 8 years.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas to protest.  Three of these public areas are Lownsdale Square, Chapman Square and Terry Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the Mark O.Hatfield United States Federal Courthouse[1].  The United States of America owns the entire city block (Block #24) occupied by the courthouse building depicted below:

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.



Daily protests have regularly been followed by nightly criminal activity in the form of

vandalism, destruction of property, looting, arson, and assault. Most violent of these impacting

federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration

and Customs Enforcement (ICE) was targeted by a Molotov Cocktail. The Mark O. Hatfield

Courthouse has experienced significant damage to the façade, glass, and building fixtures during

the weeks following this incident, and was targeted by a Molotov Cocktail on the night of July

22, 2020. Additionally, mounted building security cameras and access control devices have been

vandalized or stolen. The most recent repair estimate for the damage at the Mark O. Hatfield

Courthouse is in excess of $50,000. Other federal properties in the area routinely being

vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and

the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S.

Marshal Service Deputies and other federal law enforcement officers working in the protection

of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks

Page 3 – Affidavit of Sr. Inspector                    USAO Version Rev. April 2018
William Boldin

including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

6.     On multiple occasions on July 22, 2020, protesters attempted to set fire to, and breach into, the Mark O. Hatfield Federal United States Courthouse (USCH) setting fires against the building, and by removing the wooden protective sheets used to board up windows and entrances of the USCH. As protesters made a hole through a wooden sheet, U.S. Customs and Border Protection (CBP), U.S. Marshals Service (USMS), and FPS tactical team deployed to the affected area to prevent further damage and a possible breach into the USCH. Tactical teams verbally and visually identified themselves as "POLICE" and ordered protesters to move away from the USCH.

7.     After tactical teams dispersed the crowd, the USMS tactical team established a perimeter in front of the USCH to maintain security while other officers repaired and secured doors that had been damaged in the attack.

8.     At approximately 02:15 a.m., an unknown male, later identified as LEMONS, carrying a home-made shield, ran up to members of the USMS tactical team. LEMONS charged towards U.S. Marshal Service Law Enforcement Officer 1 (USMS LEO 1) in an aggressive manner, with his makeshift shield in front of him, and USMS LEO 1 pushed him back with his left arm, while ordering him to stay back. LEMONS responded by charging at USMS LEO 1 a second time, utilizing his shield to strike USMS LEO 1 in his left arm, pushing USMS LEO 1 backwards causing USMS LEO 1 to lose his balance.[2] At the time LEMONS approached, USMS LEO 1 was standing on Third Street in front of the USCH building, up against the sidewalk when

---

[2] The identities of these U.S. Marshal Service Law Enforcement Officers (USMS LEOs) are personally known to me. I know these USMS LEOs to be federal officers for the purposes of 18 U.S.C. § 1114. I have withheld their names from this affidavit for their safety and security.

Page 4 – Affidavit of Sr. Inspector          USAO Version Rev. April 2018
William  Boldin

LEMONS initially struck USMS LEO 1. USMS LEO 1 was wearing his tactical uniform, clearly marked with patches identifying him as a law enforcement officer, and wearing protective gear including a helmet, gas mask, and body armor.

9.      USMS LEO 2 and USMS LEO 3 told LEMONS he was under arrest and took him to the ground. LEMONS violently resisted arrest by twisting, turning, and fighting with the officer. LEMONS continued to fight with officers and had to be forcefully carried into the USCH.

9.      While the arrest was occurring, numerous other violent protestors were present and continued launchings fireworks, throwing objects, and yelling threats at law enforcement. At the same time other officers were still attempting to secure the USCH. LEMONS actions caused a severe risk of physical harm to law enforcement and federal property.

10.      Subsequent to the arrest LEMONS was turned over to USMS deputies to be taken to the cellblock. USMS LEO 4 searched LEMONS after arrest and located a Luger LCP pistol, loaded with 6 rounds, in his right, front, pants pocket. Simultaneous to the weapon being found, LEMONS stated that he had the weapon. Initial checks indicate that LEMONS has a valid CCW permit.[3]

11.      Affiant personally observed the arrest and can attest to the information contained in this affidavit.

12.      While in the USMS cellblock affiant and USMS LEO 4 attempted to interview LEMONS. LEMONS provided biographical information but invoked his right to remain silent

---

[3] There are potential crimes related to LEMONS possession of the firearm during this incident that are still under investigation.

**Page 5 – Affidavit of Sr. Inspector**          **USAO Version Rev. April 2018**
**William Boldin**

and to have an attorney present during questioning.  USMS investigators terminated all contact

with LEMONS, and he was not interviewed.

### Conclusion

14.     Based on the foregoing, I have probable cause to believe, and I do believe, that

Taylor Charles LEMONS committed a violation of 18 U.S.C. § 111(a)(1), and in so doing made

physical contact with USMS LEO 1.

15.     Prior to being submitted to the Court, this affidavit, the accompanying complaint

and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul T.

Maloney, who advised that in his opinion the affidavit and complaint are legally and factually

sufficient to establish probable cause to support the issuance of the requested criminal complaint

and arrest warrant.

/s/ *Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*
William Boldin, Senior Inspector
U.S. Marshals Service

Sworn to by telephone or other reliable means at 8:55 a.m./p.m. in accordance with

Fed. R. Crim. P. 4.1 this 22nd day of July 2020.

HONORABLE JOHN V. ACOSTA
United States Magistrate Judge

# ATTACHMENT 5

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>THOMAS JOHNSON | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   3:20-mi-170

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/26/2020_____ in the county of _____Multnomah_____ in the District of _____Oregon_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Christopher Tomayo attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____via telephone_____
*Complainant's signature*

USMS DUSM Christopher Tamayo
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___8:03___ a.m./p̶.m̶.

Date: _____July 27, 2020_____

_____
*Judge's signature*

City and state: _____Portland, Oregon_____     Hon. Jolie A. Russo, U.S. Magistrate Judge
*Printed name and title*

STATE OF OREGON      )
             ) ss:   AFFIDAVIT OF CHRISTOPHER TAMAYO
County of Multnomah      )

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Christopher Tamayo, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.   I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since 2013. I am assigned to the Pacific Northwest Violent Offender Task Force where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court. As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of a California Peace Officer Standard Training Academy, the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.   I submit this affidavit in support of a criminal complaint and arrest warrant for Thomas JOHNSON. As set forth below, I have probable cause to believe that JOHNSON committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.   The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this

**Page 1 – Affidavit of Christopher Tamayo**

investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such officer or employee in the performance of official duties.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Christopher Tamayo**

are directly across the street from those parks. The United States of America owns the entire city

block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.    Daily protests have regularly been followed by nightly criminal activity in the

form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse

has experienced significant damage to the façade and building fixtures during the six weeks

following this incident. Additionally, mounted building security cameras and access control

devices have been vandalized or stolen. The most recent repair estimate for the damage at the

Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since

then. Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the
Portland area. The federal government owns the entire city block occupied by the Mark O.
Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The
property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Christopher Tamayo**

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

7.      Specifically, on July 26, 2020, federal law enforcement officers attempted to disperse a crowd in front of the U.S. Hatfield Courthouse in Portland, OR.  The crowd was part of a protest that was declared an unlawful assembly by the Federal Protective Service and a riot by the Portland Police Bureau.  This occurred after violent opportunists destroyed the security fence in front of the Mark Hatfield Federal Courthouse, and attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them.  During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 0130 hours DUSM Victim 1 was walking with a group of officers attempting to clear the park across the street from the Hatfield Courthouse.  A male, who later identified himself as Thomas JOHNSON, was ordered to leave the park by DUSM Victim 1. As DUSM Victim 1 approached JOHNSON used a homemade shield to strike the officer in the face.  A second DUSM observed the assault and both officers restrained JOHNSON by placing him on the ground while telling him he was under arrest.  JOHNSON was placed under arrest and taken to the U.S. Marshals Cellblock.

**Page 4 – Affidavit of Christopher Tamayo**

9.      On July 26, 2020, I contacted JOHNSON in the United States Marshals Service detention center at the Hatfield Courthouse. I identified myself as a Deputy with the U.S. Marshals Service wearing my agency issued badge displayed on my duty belt, before I could read JOHNSON his rights he informed me he would not want to speak with me. Therefore my communication with JOHNSON ended.

10.      On July 26, 2020, JOHNSON's belongings were searched incident to arrest and the following were found: asp extendable baton, OC spray, steel plated body armor, helmet, individual first aid kit, shin guards, gas mask, goggles, phone, and miscellaneous clothing.





*Figures 1-3. Johnson's possessions*

**Page 5 – Affidavit of Christopher Tamayo**

## Conclusion

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that Thomas JOHNSON assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111. I therefore request that the Court issue a criminal complaint and arrest warrant charging JOHNSON with that offense.

12.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight.  AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

_(By telephone)_____
Chris Tamayo
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at ___8:03___ am/pm on July ___27___, 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of Christopher Tamayo**

# ATTACHMENT 6

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.    **3:20-mj-239** |
| | ) | |
| NICHOLAS JOSEPH BANTISTA | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___9/18/2020___ in the county of ___Multnomah___ in the
District of ___Oregon___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer, Class A Misdemeanor |

This criminal complaint is based on these facts:

See Affidavit of DHS FPS SA Thomas McNutt attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____via telephone_____
*Complainant's signature*

_____DHS FPS SA Thomas McNutt_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at ___4:35___ a.m./p.m.

Date: ___09/20/2020___

_____[signature]_____
*Judge's signature*

City and state:      ___Portland, Oregon___          Hon. Jolie A. Russo, U.S. Magistrate Judge
_____*Printed name and title*_____

DISTRICT OF OREGON        )
                                    )  ss:   AFFIDAVIT OF SPECIAL AGENT

County of Multnomah        )       Thomas McNutt

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Thomas McNutt, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I, Thomas McNutt, am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws of the United States and duly authorized by the Attorney General to request an arrest warrant. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I have been employed as a Special Agent with the United States Department of Homeland Security / Federal Protective Service (DHS/FPS) since March of 2013. I am currently assigned as a general crimes agent out of Baltimore, Maryland.

2. As a Special Agent, I have participated in all the normal methods of investigation, including electronic surveillance, physical surveillance, interviews of witnesses, execution of search and arrest warrants, and the use of sources and cooperating witnesses. I have investigated and assisted other agents/inspectors in investigating, federal and state firearm violations, threats to federal government employees, bomb threats to federal facilities, suspicious packages, thefts, burglaries, assaults, narcotics, threats against federal facilities/employees and destruction of government property.

**Page 1 – Affidavit of SA Thomas McNutt**

3. I submit this affidavit in support of a complaint for Nicholas Joseph BANTISTA. As set forth below, there is probable cause to believe that BANTISTA committed the following offense: assault of a federal officer in violation of Title 18 United States Code § 111 (a)(1), as a Class A misdemeanor, when he threw an unidentified object at an agent of the Federal Protective Service, striking him on his helmet at the Immigration and Customs Enforcement (ICE) facility in Portland, Oregon.

4. The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a criminal complaint and arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

5. 18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in

**Page 2 –Affidavit of SA Thomas McNutt**

the performance of official duties.  Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts involve physical contact with the victim, the offense is a felony.

**<u>Statement of Probable Cause</u>**

6.  Starting on or about May 26, 2020, protesters have gathered in Portland, Oregon's public areas to protest.  Some of these public areas are Lownsdale Square, Chapman Square, Terry Schrunk Plaza, and the ICE facility located at 431 SW Macadam Avenue.  Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault.  One of the most violent of these incidents on federal property occurred on May 28, 2020, when the Portland Field Office for Immigration and Customs Enforcement was targeted by a Molotov Cocktail. Federal law enforcement officers have been subjected to physical assaults, verbal threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, hard projectiles (rocks, glass bottles and metal food cans), balloons filled with paint, bodily waste and vulgar language from demonstrators while preforming their duties.  On July 11, 2020, a protestor physically attacked a federal Officer, at the Mark O. Hatfield Courthouse, by striking the officer several times with a sledgehammer to the upper body and head.

7.  On September 18, 2020, at approximately 11:30 p.m., at the ICE facility, in Portland, OR, BANTISTA did forcibly assault an agent of the Federal Protective Service, (Agent Victim 1) who was engaged in the performance of his official duties, in violation of Title 18, United States Code, Section 111(a)(1), as a Class A Misdemeanor.

**Page 3 –Affidavit of SA Thomas McNutt**

8. AV1 and I were positioned at the intersection of SW Bancroft Street and S Moody Street along with a multitude of FPS officers in order to address a large group of demonstrators. The demonstrators had been verbally warned multiple times that the gathering had been deemed unlawful and were ordered to disperse. A bulk of the demonstrators refused to disperse, remained in the area, and continued to throw objects at FPS officers.

9. AVI and I observed a person, later identified as BANTISTA, throw an unidentified object, but was believed to be a small rock, that struck AV1 on his helmet. After throwing the object, BANTISTA fled on foot, North on Moody Ave. AVI and I, along with other FPS officers pursued BANTISTA on foot. BANTISTA was taken to the ground in order to effect an arrest. BANTISTA resisted arrest throughout the entire event by pulling his arms under his chest and refusing to comply with verbal orders from Law Enforcement. During the struggle, a gun (later found to be an air soft replica) was discovered wedged between BANTISTA's chest and the ground. The gun was recovered on scene. BANTISTA was placed in flex cuffs and escorted to the ICE facility for processing.

10. During an interview conducted at 3:13 a.m. on September 19, 2020, BANTISTA signed a waiver of rights form and discussed his past experience with law enforcement officers. BANTISTA admitted to throwing an object at the officer but claimed that it was a "bouncy ball" and that he did not intend any violence. Officers had witnessed bouncy balls thrown earlier in the evening. AV1 stated that the object felt denser than a "bouncy ball," and the sound and impact of the object felt against AV1's helmet was more consistent with a rock.

**Page 4 –Affidavit of SA Thomas McNutt**

11. BANTISTA also admitted to possessing a "pellet gun" and was found in the possession of nail gun powerload cartridges, as shown below:





**Page 5 – Affidavit of SA Thomas McNutt**

12. A review of law enforcement data bases indicate that BANTISTA was convicted of
felony aggravated assault of a peace officer in Illinois (September 2019); and was
arrested for criminal damage to state property in Illinois (June 2020).

## Conclusion

13. Based on the foregoing, I have probable cause to believe, and I do believe, that Nicholas
Joseph BANTISTA committed assault on a federal officer, in violation of Title 18 U.S.C
§ 111(a)(1), as a Class A misdemeanor. I therefore request the Court issue an arrest
warrant and criminal complaint for BANTISTA.

14. Prior to being submitted to the Court, this affidavit, the complaint and the arrest warrant
were all reviewed by Assistant United States Attorney Natalie Wight. In her opinion the
affidavit and complaint are legally and factually sufficient to establish probable cause to
support the issuance of the requested criminal complaint and arrest warrant.

*Sworn to by telephone pursuant to FRCP 4.1*
Thomas McNutt
Special Agent, Federal Protective Service

Sworn to by telephone or other reliable means at ___4:35___ a.m./p.m. in accordance with

Fed. R. Crim. P. 4.1 this ___20___ day of September 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 –Affidavit of SA Thomas McNutt**

# ATTACHMENT 7

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.     3:20-mj-171 |
| | ) |
| Caleb Wills | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/27/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Kyle Cozart attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

via telephone
_____
*Complainant's signature*

USMS DUSM Kyle Cozart
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at ___12:10___ a.m./p.m.

Date: _____July 27, 2020_____

_____
*Judge's signature*

City and state: _____Portland, Oregon_____     Hon. Jolie A. Russo, U.S. Magistrate Judge
*Printed name and title*

STATE OF OREGON          )
                               )   ss:   AFFIDAVIT OF KYLE COZART
County of Multnomah      )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kyle Cozart, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since August of 2017. I am assigned to the District of Oregon where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court. As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Caleb WILLS. As set forth below, I have probable cause to believe that Caleb WILLS committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this

**Page 1 – Affidavit of Kyle Cozart**

investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

### Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

### Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Kyle Cozart**

are directly across the street from those parks. The United States of America owns the entire city block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.       Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the six weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since then. Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

Page 3 – Affidavit of Kyle Cozart

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

7.      Specifically, on July 27, 2020, federal law enforcement officers attempted to disperse a crowd on 3rd Avenue between Main and Salmon streets in Portland, OR after the Federal Protective Service (FPS) declared an unlawful assembly multiple times. This occurred after violent opportunists attempted to destroy the security fence in front of the Mark Hatfield Federal Courthouse with power tools. Additionally, violent opportunists attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them. During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 01:30 hours, DUSM Victim 1 was walking with a group of officers when a group of individuals formed a line in front of them. Officers were ordering the subjects to disperse and they failed to comply with repeated lawful orders. As the United States Marshals Service (USMS) line approached, DUSM Victim 1 was assisting another deputy with an arrest. While assisting, DUSM Victim 1 was attacked by 3 individuals. The three assailants grabbed DUSM Victim 1 and began punching him all over his body, and attempted to dislodge his mask. DUSM Victim 1 began pushing the subjects off him to defend himself. As other

**Page 4 – Affidavit of Kyle Cozart**

officers responded, 2 assailants ran. DUSM Victim 1 was able to grab the third assailant as he began to run. This assailant was later identified as Caleb WILLS. WILLS actively resisted arrest as DUSM 1 attempted to place handcuffs on him. Once he was handcuffed, WILLS began to comply with lawful orders.

9.      Upon his arrest, the USMS ran Caleb WILLS for active warrants. It was revealed WILLS has two active warrants from High Point Police Department in Tennessee. The warrants are for burglary and felony breaking and entering. However; these warrants are currently non-extraditable.  For the Court's reference, WILLS has a criminal history to include absence without leave (AWOL) from the Tennessee National Guard in 2011, probation violation in 2012, drug manufacturing delivery and sale of a schedule IV controlled substance 2013, possession of drug paraphernalia in 2014, and failure to appear in 2014.

## Conclusion

10.     Based on the foregoing, I have probable cause to believe, and I do believe, that Wills assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111.  I therefore request that the Court issue a criminal complaint and arrest warrant charging WILLS with that offense.

//


//


//



**Page 5 – Affidavit of Kyle Cozart**

11.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight.  AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*_____
Kyle Cozart
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at __12:10__ ☒m/pm on July ___27___, 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of Kyle Cozart**

# ATTACHMENT 8

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. **3:20-mj-00169** |
| | ) | |
| JOSHUA WEBB | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/26/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Christopher Tomayo attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

<table>
<tr><td></td><td>via telephone</td></tr>
<tr><td></td><td><i>Complainant's signature</i></td></tr>
<tr><td></td><td>USMS DUSM Christopher Tamayo</td></tr>
<tr><td></td><td><i>Printed name and title</i></td></tr>
</table>

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at ___8:03___ a.m./~~p.m.~~

Date: ___July 27, 2020___

_____
*Judge's signature*

City and state: _____Portland, Oregon_____    Hon. Jolie A. Russo, U.S. Magistrate Judge
_____
*Printed name and title*

STATE OF OREGON          )
                         )  ss:   AFFIDAVIT OF CHRISTOPHER TAMAYO
County of Multnomah      )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Christopher Tamayo, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since 2013.  I am assigned to the Pacific Northwest Violent Offender Task Force where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court.  As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of a California Peace Officer Standard Training Academy, the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Joshua WEBB.  As set forth below, I have probable cause to believe that WEBB committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this

 **Page 1 – Affidavit of Christopher Tamayo**

investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.     18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5.     Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Christopher Tamayo**

are directly across the street from those parks. The United States of America owns the entire city

block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.      Daily protests have regularly been followed by nightly criminal activity in the

form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse

has experienced significant damage to the façade and building fixtures during the six weeks

following this incident. Additionally, mounted building security cameras and access control

devices have been vandalized or stolen. The most recent repair estimate for the damage at the

Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since

then. Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the
Portland area. The federal government owns the entire city block occupied by the Mark O.
Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The
property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Christopher Tamayo**

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

7.      Specifically, on July 26, 2020, federal law enforcement officers attempted to disperse a crowd on SW Salmon Street between 4th and 5th streets in Portland, OR.  The crowd was part of a protest that was declared an unlawful assembly by the Federal Protective Service and a riot by the Portland Police Bureau.  This occurred after violent opportunists destroyed the security fence in front of the Mark Hatfield Federal Courthouse, and attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them. During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 0130 hours DUSM Victim 1 was walking with a group of officers and a group of subjects formed a line in front of them.  Officers were ordering the subjects to disperse, and they failed to comply with repeated orders.  As the United States Marshals Service (USMS) line approached, a subject later identified as Joshua WEBB struck DUSM Victim 1 in the face with a shield and then punched DUSM Victim 1 in the face with a closed fist.  WEBB was taken to the ground with the assistance of a second DUSM and placed

**Page 4 – Affidavit of Christopher Tamayo**

under arrest.  WEBB resisted arrest by pulling his arms away from the DUSMs in an attempt to avoid being restrained.  WEBB was eventually placed in handcuffs.

9.      On July 26, 2020, I contacted WEBB in the United States Marshals Service detention center at the Hatfield Courthouse.  I identified myself as a Deputy with the U.S. Marshals with my agency issued badge displayed and advised WEBB of his Miranda Rights. WEBB stated that he understood his rights and was willing to waive his rights in order to make a statement.  WEBB's waiver of rights was documented.

10.      WEBB stated that he comes out often to the protests because he supports the movement that the protest represents.  During this protest he said was wearing a tactical vest that held medical supplies and that he was hanging out in the park near 3rd Avenue and Salmon Street when he saw the crowd start to get pushed north and west on 3rd.  WEBB states he did not hear any warnings given by both FPS and PPB to leave the area.  As WEBB started to back up and move towards 4th Avenue, he said a line of Marshals tackled and arrested him.


//



//



//



**Page 5 – Affidavit of Christopher Tamayo**

11.     On July 26, 2020, WEBB's belongings were searched incident to arrest and the following were found:  black/green backpack, gray sweatshirt, black tactical vest, JBL speaker, gloves, shin guards, passport, and wallet.


*Webb's possessions*

## Conclusion

12.     Based on the foregoing, I have probable cause to believe, and I do believe, that Joshua WEBB assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111.  I therefore request that the Court issue a criminal complaint and arrest warrant charging WEBB with that offense.

13.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie

**Page 6 – Affidavit of Christopher Tamayo**

Wight. AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*
Chris Tamayo
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at _____ 8:03 _____ am/pm on July _____ 27 _____, 2020.

HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 7 – Affidavit of Christopher Tamayo**

# ATTACHMENT 9

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>DAVID MICAHEL BOUCHARD<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.    3:20-mj-165

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ 7/24/2020 _____ in the county of _____ Multnomah _____ in the

_____ District of _____ Oregon _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of FPS Special Agent Steven Bingley, attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FPS Special Agent Steven Bingley
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _12:55_ a.m./p.m.

Date: _July 24, 2020_

_____
*Judge's signature*

City and state:    _____ Portland, Oregon _____          Hon. John V. Acosta, U.S. Magistrate Judge
*Printed name and title*

3:20-mj-165

DISTRICT OF OREGON          )
                            )  ss:  AFFIDAVIT OF SPECIAL AGENT
County of Multnomah         )       STEVEN BINGLEY

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Steven Bingley, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.     I am employed as a Special Agent (SA) with the Federal Protective Service (FPS) and have been employed by FPS since February 2009. I have participated in several investigations relating to the protection of federal facilities and personnel. I am currently assigned to Region 8 in Fort Collins, Colorado as a general crimes agent.

2.     I submit this affidavit in support of a criminal complaint and arrest warrant for David Michael BOUCHARD. As set forth below, there is probable cause to believe, and I do believe, that BOUCHARD committed the offense of Assaulting a Federal Officer (Felony), in violation of 18 U.S.C. § 111(a)(1).

3.     The facts set forth in this affidavit are based on the following: my own personal knowledge; information obtained from other individuals during my participation in this investigation including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communication with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

**Page 1 – Affidavit of Steven Bingley**

**Applicable Law**

4.        18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.  Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts involve physical contact with the victim, the offense is a felony punishable by imprisonment up to 8 years.

**Statement of Probable Cause**

5.        Since on or about May 26, 2020, protesters have gathered in Portland public areas to protest.  Three of these public areas are Lownsdale Square, Chapman Square and Terry Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the Mark O. Hatfield United States Federal Courthouse[1].  The United States of America owns the entire city block (Block #24) occupied by the courthouse building depicted below:

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 2 – Affidavit of Steven Bingley**



Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. One violent event impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov Cocktail. The Mark O. Hatfield Courthouse has experienced significant damage to the façade, glass, and building fixtures during the weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial

**Page 3 – Affidavit of Steven Bingley**

fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

6.     On July 24, 2020, at approximately 01:35 a.m., protesters attempted to breach into the Mark O. Hatfield Federal United States Courthouse (USCH) by damaging and removing the protective fencing around the west entrances of the USCH. As protesters cut open a section of the fence, U.S. Customs and Border Protection (CBP), U.S. Marshals Service (USMS), and FPS tactical teams deployed to the affected area to prevent further damage and a possible breach into the USCH. Tactical teams verbally and visually identified themselves as "POLICE" and ordered protesters to move away from the USCH.

7.     While FPS and CBP tactical teams deployed to the intersection of SW Main Street and SW Fourth Avenue near the USCH, CBP BORTAC OFFICER 1 (Officer 1) [2] and CBP BORTAC Officer (Officer 2) observed a group of demonstrators not following the verbal directives to move away from the USCH.  CBP Officer 1 (Victim) moved closer to the group while verbally telling them to "move back." The group was physically defiant and remained in the area of USCH property as FPS and CBP tactical teams moved forward while using their hands to direct the group away from the USCH.

8.     At approximately 01:37 a.m., an unknown male, later identified as David Michael BOUCHARD, was given verbal commands to "move" and "move back" by CBP Officer 1, there were numerous audio messages from a trailing FPS vehicle loudspeaker in the immediate area

---

[2] Identification of the CBP BORTAC Agent(s) is known to me. For security reasons his/her name will not be included in this affidavit, but is readily available for the court if needed.

**Page 4 – Affidavit of Steven Bingley**

telling the crowd to leave as BOUCHARD stood near the intersection of SW Main Street and SW Fourth Avenue. BOUCHARD was not moving away from the USCH, and stood in the path of CBP Officer 1. CBP Officer 1 placed his right hand on BOUCHARD's shoulder to remove him from his path, BOUCHARD then placed his right arm around the neck of CBP Officer 1 in headlock maneuver. CBP Officer 2 attempted to remove BOUCHARD's right arm from around the neck of Officer 1 and as result all three individuals went to the ground. CBP Officer 1 was able to remove the arm of BOUCHARD from around his neck and subsequently arrested him for assault on a federal officer.

9.  CBP Officers 1 and 2 were interviewed following the event, and provided a written statement regarding what they observed. CBP Officer 1 added that BOUCHARD was wearing shorts, a white t-shirt, and a mask with the Texas state flag on it. Additionally, CBP Officer 1 stated BOUCHARD was carrying a leaf blower and a shield. BOUCHARD was transferred to Deputy U.S. Marshals for processing.

10.  Shortly after the arrest, FPS personnel confirmed CBP Officer 1 was wearing the same clothing and gear that he had on earlier when he confronted BOUCHARD, which was clearly identified as "POLICE." CBP Officer 1 did not display any visible bruising in the areas where BOUCHARD grabbed him.

11.  At approximately 03:38 a.m., law enforcement asked BOUCHARD for biographical information and advised BOUCHARD of his legal rights. BOUCHARD waived his right to remain silent and to have an attorney present during questioning. BOUCHARD provided a verbal statement that he did place his right arm around the neck and shoulder area of CBP Officer 1. BOUCHARD stated his intent was not to hurt anyone, but to "stand his ground."

**Page 5 – Affidavit of Steven Bingley**

Law enforcement identified BOUCHARD through his Texas issued Driver's License which was acquired during a search incident to arrest.

<u>**Conclusion**</u>

12.     Based on the foregoing, I have probable cause to believe, and I do believe, that David Michael BOUCHARD committed a violation of 18 U.S.C. § 111(a), and in so doing made physical contact with CBP BORTAC Z-19.

13.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorneys (AUSA) Kelly Zusman and Natalie Wight, who advised that in their opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*/s/ Sworn to by telephone*
<u>*In accordance with Fed. R. Crim. P. 4.1*</u>
Steven Bingley
Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means at 6:55 a.m./p.m. in accordance with Fed. R. Crim. P. 4.1 this 24th day of July 2020.

HONORABLE JOHN V. ACOSTA
United States Magistrate Judge

**Page 6 – Affidavit of Steven Bingley**

# ATTACHMENT 10

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   3:20-mj-00168 |
| REBECCA MOTA GONZALEZ | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/26/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Christopher Tomayo attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

| |
|---|
| via telephone |
| *Complainant's signature* |
| USMS DUSM Christopher Tamayo |
| *Printed name and title* |

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _____8:03_____ a.m./p.m.

Date:   _____July 27, 2020_____

| |
|---|
| *Judge's signature* |

City and state:          _____Portland, Oregon_____

| |
|---|
| Hon. Jolie A. Russo, U.S. Magistrate Judge |
| *Printed name and title* |

STATE OF OREGON            )
                                  )  ss:   AFFIDAVIT OF CHRISTOPHER TAMAYO
County of Multnomah         )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Christopher Tamayo, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.     I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since 2013. I am assigned to the Pacific Northwest Violent Offender Task Force where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court. As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of a California Peace Officer Standard Training Academy, the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.     I submit this affidavit in support of a criminal complaint and arrest warrant for Rebecca MOTA GONZALEZ. As set forth below, I have probable cause to believe that MOTA GONZALEZ committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.     The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this

**Page 1 – Affidavit of Christopher Tamayo**

investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such officer or employee in the performance of official duties.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Christopher Tamayo**

are directly across the street from those parks.  The United States of America owns the entire city

block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.      Daily protests have regularly been followed by nightly criminal activity in the

form of vandalism, destruction of property, looting, arson, and assault.  The Hatfield Courthouse

has experienced significant damage to the façade and building fixtures during the six weeks

following this incident.  Additionally, mounted building security cameras and access control

devices have been vandalized or stolen.  The most recent repair estimate for the damage at the

Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since

then.  Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the
Portland area. The federal government owns the entire city block occupied by the Mark O.
Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The
property boundary extends past the sidewalks and into the streets surrounding the courthouse.

 **Page 3 – Affidavit of Christopher Tamayo**

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal

Office Building.  FPS law enforcement officers, Deputy U.S. Marshals, and other federal law

enforcement officers working to protect the Hatfield Courthouse have been subjected to threats,

aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks,

bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming

their duties.

       7.      Specifically, on July 26, 2020, federal law enforcement officers attempted to

disperse a crowd in front of the U.S. Hatfield Courthouse in Portland, OR.  The crowd was part

of a protest that was declared an unlawful assembly by the Federal Protective Service and a riot

by the Portland Police Bureau.  This occurred after violent opportunists destroyed the security

fence in front of the Mark Hatfield Federal Courthouse, and attacked law enforcement officers

by throwing hard objects, throwing explosive devices, and physically attacking them.  During the

dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked

police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and

body armor.

       8.      At approximately 0130 hours DUSM Victim 1 was walking with a group of

officers attempting to clear the park.  A female, later identified as Rebecca MOTA GONZALEZ,

and an unknown male, stood directly in front of the line of officers and failed to comply with

orders to disperse.  MOTA GONZALEZ stood her ground and this forced officers to stop and

impeded them in their ability to perform their duties of clearing the park.  In addition to

numerous general commands to disperse, DUSM Victim 1 gave MOTA GONZALEZ multiple

specific commands to disperse.  DUSM Victim 1 told MOTA GONZALEZ to leave or be

**Page 4 – Affidavit of Christopher Tamayo**

arrested and reached out to remove her gas mask. As DUSM Victim 1 reached for MOTA GONZALEZ she struck him in the face with a closed fist. A second DUSM observed the assault and both officers restrained her by placing her on the ground while telling her she was under arrest. MOTA GONZALEZ was handcuffed after minor resistance. DUSM 2 is also a medic and asked MOTA GONZALEZ if she needed medical care and she refused.

9. On July 26, 2020, I contacted MOTA GONZALEZ in the United States Marshals Service detention center at the Hatfield Courthouse. I identified myself as a Deputy with the U.S. Marshals Service wearing my agency issued badge displayed on my duty belt and advised MOTA GONZALEZ of her Miranda rights. MOTA GONZALEZ stated that she understood her rights but wanted to speak to a lawyer before making a statement.

10. On July 26, 2020, MOTA GONZALEZ' belongings were searched incident to arrest and the following were found: a light blue helmet, gas mask, goggles, gloves, phone, and miscellaneous other items.


*Mota Gonzalez' possessions*

**Page 5 – Affidavit of Christopher Tamayo**

## Conclusion

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that Rebecca MOTA GONZALEZ assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111.  I therefore request that the Court issue a criminal complaint and arrest warrant charging MOTA GONZALEZ with that offense.

12.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight.  AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

_(By telephone)_____
Chris Tamayo
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at __8:03__ am/pm on July ___27___, 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of Christopher Tamayo**

# ATTACHMENT 11

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  3:20-mj-178 |
| | ) | |
| EVAN LOUIS KRIECHBAUM | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/30/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of DHS FPS SA BRYAN TURK attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____via telephone_____
*Complainant's signature*

_____DHS FPS SA BRYAN TURK_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __8:17__ a.m./~~p.m.~~

Date: _____07/30/2020_____

*Judge's signature*

City and state: _____Portland, Oregon_____    _____Hon. Jolie A. Russo, U.S. Magistrate Judge_____
*Printed name and title*

DISTRICT OF OREGON     )
                          )  ss:  AFFIDAVIT OF SPECIAL AGENT
County of Multnomah     )      BRYAN D. TURK

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Bryan D. Turk, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.     I, Bryan Turk, being duly sworn upon my oath depose and state that I am a Special Agent for The United States Department of Homeland Security (DHS), Federal Protective Service (FPS) assigned to the Portland, Oregon FPS office. My duties as an FPS Special Agent are to conduct Federal investigations and law enforcement duties and enforce the United States Codes as they relate to all Federal property and employees located in The District of Oregon. I've been employed as a federal law enforcement officer for over 3.5 years with the Federal Protective Service. My law enforcement history consists of employment with the Houston Police Department and Federal Protective Service, as an Inspector and Special Agent.

2.     I submit this affidavit in support of a criminal complaint and arrest warrant for KRIECHBAUM, Evan Louis.  As set forth below, there is probable cause to believe, and I do believe, that KRIECHBAUM committed the offense of Assault on a Federal Officer, which is a violation of 18 U.S.C. § 111. Assaulting, resisting, or impeding certain officers or employees.

3.     The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and

experience. Because this affidavit is submitted for the limited purpose of establishing probable

cause in support of the application for an arrest warrant, it does not set forth each fact that I or

others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose,

impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in

or on account of the performance of official duties.  Persons designated in § 1114 include any

officer or employee of the United States or of any agency in any branch of the United States

government while such officer or employee is engaged in or on account of the performance of

official duties, and any person assisting such an officer or employee in the performance of

official duties.  Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts

involve physical contact with the victim, the offense is a felony punishable by imprisonment up

to 8 years.  18 U.S.C. § 111(b) provides for an enhanced penalty; where the assaultive conduct

involves the use of a deadly or dangerous weapon, or causes bodily injury, the offense is

punishable by a term of imprisonment up to 20 years.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas

to protest.  Three of these public areas are Lownsdale Square, Chapman Square and Terry

Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's (PPB) Central

Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the

**Page 2 – Affidavit of SA Bryan Turk**

Mark O.Hatfield United States Federal Courthouse[1].  The United States of America owns the

entire city block (Block #24) occupied by the courthouse building depicted below:



Daily protests have regularly been followed by nightly criminal activity in the form of

vandalism, destruction of property, looting, arson, and assault.  The Mark O. Hatfield

Courthouse has experienced significant damage to the façade, glass, and building fixtures during

the weeks following this incident.  Additionally, mounted building security cameras and access

control devices have been vandalized or stolen.  The most recent repair estimate for the damage

at the Mark O. Hatfield Courthouse is in excess of $50,000.  Other federal properties in the area

routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of SA Bryan Turk**

Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

6.        On July 30, 2020, at approximately 12:45 a.m., an unknown male, later identified as Evan KRIECHBAUM, was observed picking up a newly expended tear gas canister thrown by uniformed federal officers in order to disperse violent opportunists from damaging federal property. The incident occurred across the street from Hatfield Federal Courthouse, at Lownsdale Park, near the east sidewalk, near 3rd Ave and SW Salmon Street.     At that time, uniformed federal law enforcement officers were staged in a linear formation, adjacent to Hatfield Federal Courthouse to provide exterior security, and to direct violent opportunists away from federal property. Immediately after the uniformed federal law enforcement officers deployed the canister of tear gas (on the ground), the federal officers saw KRIECHBAUM pick up the smoking or "hot" tear gas canister from the ground.  They immediately attempted to temporarily detain KRIECHBAUM for officer safety.   The officers did not intend to arrest KRIECHBAUM, because they did not witness KRIECHBAUM attempting to throw the tear gas canister at law enforcement.

7.        During the detention, KRIECHBAUM actively resisted uniformed federal law enforcement officers, by swinging his left elbow in a rear motion, towards the head and face of the uniformed law enforcement officer, making physical contact with the left side of the face of

**Page 4 – Affidavit of SA Bryan Turk**

U.S. Customs and Border Patrol Officer #1 (victim). The blow from KRIECHBAUM'S elbow created enough force to break the airtight seal on Officer #1's protective mask. In addition to the protective mask, the Officer 1 was wearing a dark blue uniform marked with "POLICE" and a helmet. Due to the protective gear, Officer 1 did not display any visible bruising in the areas where KRIECHBAUM had struck him with his elbow. U.S. Customs and Border Patrol Officer #2 witnessed KRIECHBAUM resisting, rapidly swing his hands and arms, and jerking away from law enforcement control. Officer #2 observed KRIECHBAUM hit Officer #1 in the face with an elbow while KRIECHBAUM actively resisted law enforcement detention. The officers arrested KRIECHBAUM and transported him to the Hatfield Federal Courthouse for processing.

8.      On July 30, 2020, at approximately 2:11 a.m., Federal Protective Service conducted a custodial interview of KRIECHBAUM at the Hatfield USCH. I read KRIECHBAUM his Miranda Rights, and KRIECHBAUM made voluntary to the officers. KRIECHBAUM confirmed his name as Evan Louis KRIECHBAUM, and provided his date of birth. KRIECHBAUM stated he is single man, from Portland, Oregon. I informed KRIECHBAUM of the assault allegations brought against him. KRIECHBAUM stated that he actively resisted law enforcement detention and that he "may have" hit a uniformed law enforcement officer with his elbow. KRIECHBAUM also made that statement that he did not realize the uniformed law enforcement officers were police officers at the time. KRIECHBAUM later stated he complied with law enforcement once he realized they were police.

9.      Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight, who advised that in his opinion the affidavit and complaint are legally and factually

**Page 5 – Affidavit of SA Bryan Turk**

sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

Bryan Turk
_____
BRYAN TURK
Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means at 8:17 a.m./p.m. in accordance with Fed. R. Crim. P. 4.1 this ___30___ day of July 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of SA Bryan Turk**

# ATTACHMENT 12

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  3:20-mj-00160 |
| GIOVANNI TERRANCE BONDURANT | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 22, 2020 _____ in the county of _____ Multnomah _____ in the

_____ District of _____ Oregon _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Felony Assault on a Federal Officer |

This criminal complaint is based on these facts:

See attached Affidavit of Federal Protective Services Special Agent Frank Pelligrini.

☑ Continued on the attached sheet.

/s/ Signed IAW Fed. R. Crim. P. 4.1
_____
_Complainant's signature_

SA Frank Pelligrini, Federal Protective Services
_____
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _10:51_ (a.m.)/p.m.

Date:  _July 22, 2020_

_____
_Judge's signature_

City and state:  _____ Portland, Oregon _____

Hon. John V. Acosta
_____
_Printed name and title_

DISTRICT OF OREGON          )
                            )  ss:  AFFIDAVIT OF SPECIAL AGENT
County of Multnomah         )        FRANK PELLEGRINI

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Frank Pellegrini, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I, Frank A. Pellegrini have been a criminal investigator (Special Agent) with the Federal
   Protective Service (FPS) since September of 2017. I am currently assigned to the
   Sacramento California area of responsibly, investigating violations of federal law in the
   Eastern District of California. I am a sworn federal law enforcement officer and have
   authority to investigate federal offenses pursuant to Title 18 of the United States Code. I
   am certified to work as a criminal investigator with FPS after completing the Federal Law
   Enforcement Training Center's (FLETC) Criminal Investigator Training Program in
   Glynco Georgia. I am also certified to work as a part time Investigator for FPS' Office of
   Internal Investigations (OII) after completing the FLETC based FPS OII Basic Training
   Program. I was a uniformed police officer (Inspector) with FPS from February of 2009
   to September of 2017. I was certified to work as an Inspector with FPS after completing
   FLETC's Uniformed Police Training Program in Glynco, Georgia. During my
   assignment as an Inspector, I was also employed as a K9 officer with FPS from 2011 to
   2017.

2. I submit this affidavit in support of an information for Giovanni Terrance
   BONDURANT. As set forth below, there is probable cause to believe, and I do believe,
   that BONDURANT committed the following offenses: Assault in violation of 18 U.S.

Code § 111 (a)(1) when he tackled a Uniformed Federal Law Enforcement Officer attempting to affect an arrest in the course of his official duties.

3. The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

### Applicable Law

4. 18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with a victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any other agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5.  Since on or about May 26, 2020, protesters have gathered in Portland, Oregon's public

areas to protest.  Three of these public areas are Lownsdale Square, Chapman Square and

Terry Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's

(PPB) Central Precinct and the Multnomah County Detention Center (MCDC), border

these parks, as does the Mark O. Hatfield United States Federal Courthouse[1].  The United

States of America owns the entire city block (Block #24) occupied by the courthouse

building depicted below:

MAP 1



Daily protests have regularly been followed by nightly criminal activity in the form of

vandalism, destruction of property, looting, arson, and assault.  The most violent of these

incidents impacting federal property occurred on May 28, 2020, when Portland Field

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks.

Office Immigration and Customs Enforcement (ICE) facility was targeted by a Molotov Cocktail. The Mark O. Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized and/or stolen. The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000. Other federal properties in the area are routinely being vandalized to include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to physical assaults, verbal threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown hard projectiles (rocks, glass bottles and metal food cans), thrown balloons filled with paint, thrown bodily waste and vulgar language from demonstrators while preforming their duties. On July 11, 2020, a protestor physically attacked a US Federal Officer, at the Mark O. Hatfield Courthouse, while carrying out his official duties. The protester struck the officer several times with a sledgehammer to the upper body and head.

6. On July 22, 2020, at approximately 12:26 a.m., violent opportunists threw two Molotov cocktails at the southern entrance and started a fire at the front entrance of the Hatfield building (Protective Security Officer witnessed via security camera). When Agents/Officers attempted to utilize a porthole to put the fire out, violent opportunist shined laser inside the porthole and tried to throw objects inside the courthouse.

7. On July 22, 2020, at approximately 12:30 a.m., at Chapman Park in the downtown
   Portland Oregon area (District of Oregon), Giovanni Terrance BONDURANT (date of
   birth: 12/1/2000) did forcibly assault the Agent Victim 1(AV-1), a federal officer, while
   said officer was engaged in the performance of his official duties in violation of Title 18,
   United States Code, Section 111(a)(2).[2] BONDURANT did forcibly assault the AV-1
   while said officer was engaged in the performance of his official duties in violation of
   Title 18, United States Code, Section 111(a)(1).

8. AV-1 made a written statement which states the following:

   > On July 22, 2020, I responded with my squad, BORTAC DELTA, to the corner of
   > 3rd Street and Main Street to apprehend two rioters with shields who were
   > throwing rocks and bottles at officers and agents. As my team and I walked
   > through Chapman Square Park I could see the two rioters with shields, who had
   > been throwing rocks and bottles, walking in my direction. They were approaching
   > the northeast corner of the park near 3rd Street and Main Street. I announced
   > myself as a U.S. Border Patrol Agent and told both rioters to stop and drop their
   > shields. I approached one of the rioters wearing dark clothing, holding a black
   > shield. I told him to put down the shield, and he refused, and tried to abscond. I
   > grabbed the rioter's arm and began to remove his shield. At this time, I was struck
   > and grabbed from behind by the other rioter. The other rioter was wearing dark
   > clothing with a white backpack, and he was wearing a gas mask. This rioter pulled

---

[2] The identities of the Agent Victim and Agent Witnesses referenced herein are known to me, and I know them to be
law enforcement officers for the purposes of 18 U.S.C. § 1114. I have withheld their names from this affidavit for
their safety and security.

**Page 5 –Affidavit of SA Frank A. Pellegrini**          **USAO Version Rev. April 2018**

me to the ground and began striking my chest and head. I gained control of the

rioter's hand and arm. I then restrained the rioter and applied flexible restraints to

his hands. The rioter continued to try to fight while he was in restraints. At this

time, Federal Protective Service arrived to assist me and my team and took

possession of both of the rioters.

9. Agent Witness 1 (AW-1) made a written statement which states the following:

On July 22, 2020, I responded with my squad, BORTAC DELTA, to the corner of

3rd Street and Main Street to apprehend rioters that were assaulting agents and

officers at the intersection of SW 3rd Avenue and Main Street.

As I approached the area from the south in Chapman Park, I observed several

subjects throwing rocks, bottles, fireworks and other unknown objects at agents

and officers. I focused my attention on two suspects that I observed throwing

glass bottles and other unknown objects. Both suspects were retreating from

assaulting agents. They attempted to move south away from agents and officers at

the intersection of SW 3rd and Main, unbeknownst to them I was approaching

from the flank with other Agents.

The first subject, Nicholas YARNELL, was running in my direction, I called out

Police, Federal Agent and attempted to apprehend the subject. I grabbed a hold of

his shield. The subject immediately began to flail and attempt to evade arrest.

AV-1 then approached and called out to the subject again and announced U.S.

**Page 6 –Affidavit of SA Frank A. Pellegrini**          **USAO Version Rev. April 2018**

Border Patrol before grabbing the subject. As AV-1 wrestled with the subject, a second suspect that I also observed throwing objects at agents and officers, stopped his retreat, and returned in an attempt to tackle AV-1 in an attempt to free YARNELL.

The second subject, Giovanni BONDURANT, struck AV-1 from behind. BONDURANT then began to strike AV-1 in an effort to free YARNELL. I immediately focused my attention on BONDURANT as AW-2 grabbed a hold of YARNELL and placed him under arrest as AV-1 focused on BONDURANT and placed him under arrest. At that time, Federal Protective Services Officers arrived on the scene to take control of the suspects and place them under arrest and transported them to the Hatfield Courthouse for processing.

Both suspects were dressed in dark clothing, had shields and gas masks in their possession.

10. Agent Witness 2 (AW-2) made a written statement which states the following:

On July 22, 2020 I was assigned to BORTAC team Delta and responded to the corner of 3rd Street and Main Street in order to apprehend two rioters with shields who were throwing rocks and bottles at officers and agents. As we walked through Chapman Square Park, I turned around and observed AV-1 attempting to detain a subject who was actively resistant. I immediately moved to the AV-1's location and gained control of the subject AV-1 was attempting to detain. I

Page 7 –Affidavit of SA Frank A. Pellegrini          USAO Version Rev. April 2018

maintained control of the subject until Federal Protective Officers arrived and assisted. A Federal Protection Officers then took custody of the subject I detained.

11. On July 22, 2020, at approximately 5:30 a.m., I conducted an interview with FPS Inspector Tremaine MCMILLIAN. MCMILLIAN stated he was the first FPS Inspector to arrive and help the BORTAC officers. MCMILLIAN stated he observed two BORTAC officers on the ground struggling to handcuff a subject. MCMILLIAN stated the officers were able to handcuff the subject and transferred custody to FPS. MCMILLIAN stated he did not see what lead to the detainment.

12. On July 22, 2020, at approximately 6:00 a.m. I conducted an interview with BONDURANT. Below is a summary of the interview:

> I introduced himself as a Special Agent with the Federal Protective Service, began an audio recording and advised BONDURANT he would be recoding. I read BONDURANT his Miranda warning. I showed BONDURANT the FPS Miranda Waiver form and asked if BONDURANT wished to speak with him. BONDURANT appeared to read the form as I filled out his name. I asked if BONDURANT wished to speak with him. BONDURANT stated sure.

> I asked what happened. BONDURANT stated he was in the park with his friend Noah (known to me as Nicholas YARNELL). BONDURNAT stated some uniformed officers approached them, didn't speak to anyone and took them into custody. I asked where BONDURANT was in the park and used tiles on the wall to depict the Mark O. Hatfield Federal Courthouse and the Chapman Park.

BONDURANT showed I was in Chapman Park by physically pointing to the center of the tile I depicted as Chapman Park. I asked where the uniformed officers arrived. BONDURANT stated he didn't know. I referenced BONDURANT and his friend having homemade shields. BONDURANT stated they had picked up some shields from the ground and stated they did not make them.

I stated BONDURANT's friend had informed the two were throwing rocks. BONDURANT stated he didn't throw anything as he had his shield in his hand. BONDURANT then stated his friend was getting arrested and they had gotten split up. I asked what happened when BONDURANT's friend was getting arrested. BONDURANT stated, he went to go pick him up and help him, when he was tackled. I asked if BONDURANT came into contact with the officers when he was trying to help his friend. BONDURANT stated officers came into contact with him, adding he didn't contact the officers.

I re-stated how BONDURANT grabbed his friend and asked what had happened next. BONDURANT stated the officers then grabbed him and took his mask off. I asked if there was a struggle. BONDURANT stated, probably, because he was pissed as fuck because that they took his mask off. BONDURANT then clarified his answer with, most likely.

I asked BONDURANT to describe how the officers where dressed. BONDURANT stated the officers were dressed in desert camouflage. I asked if the BONDURANT exchanged strikes with the officer during his detainment. BONDURANT denied striking the officer stating he only tried to help his friend up.

I warned BONDURANT about lying and asked if he had exchanged strikes with the officer, or if the officer had struck him. BONDURANT stated, he didn't get hit or anything. I asked about when BONDURANT ran towards his friend to help him up, if it was possible that BONDURANT contacted the officer at that point. BONDURANT stated it was possible, but if it happened it wasn't intentional. BONDURANT explained he ran towards his friend with his shield in one hand, tried to help his friend get up and was then detained. I asked BONDURANT to clarify whether he was struck, or if he struck officers. BONDURANT stated it was possible that when he was picking his friend up, he could have ran into the officer. BONDURANT clarified even though there were about five officers involved, he still tried to pick his friend up, was able to touch his friend, but was unsuccessful at getting his friend to his feet.

SA MILLER asked BONDURANT what his shield looked like. BONDURANT stated the shield was a circular shield. SA MILLER asked if he was holding it with both hands. BONDURANT stated the shield was a one-handed shield. SA

**Page 10 –Affidavit of SA Frank A. Pellegrini**    **USAO Version Rev. April 2018**

MILLER asked what BONDURANT's purpose was when trying to help him.

BONDURANT stated he was trying to help him up. I then ended the interview.

#### Conclusion

13. Based on the foregoing, I have probable cause to believe, and I do believe, that Giovanni BONDURANT committed felony Assault on a Federal Officer, in violation of Title 18 U.S.C § 111 (a)(1). I therefore request the Court issue an arrest warrant and complaint for Giovanni BONDURANT.

14. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney. In his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*
Frank Pellegrini
Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means at _10:51_ a.m./p.m. in accordance with Fed. R. Crim. P. 4.1 this _22nd_ day of July 2020.

HONORABLE JOHN V. ACOSTA
United States Magistrate Judge

**Page 11 –Affidavit of SA Frank A. Pellegrini**                **USAO Version Rev. April 2018**

# ATTACHMENT 13

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )    Case No.    3:20-mj-00175 |
| | ) |
| Patrick Stafford | ) |
| | ) |
| | ) |

_Defendant(s)_

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/27/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Kyle Cozart attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

| |
|---|
| via telephone |
| _Complainant's signature_ |
| USMS DUSM Kyle Cozart |
| _Printed name and title_ |

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at __12:40__ a.m./p.m.

Date: __July 27, 2020__

_Judge's signature_

City and state: _____Portland, Oregon_____    Hon. Jolie A. Russo, U.S. Magistrate Judge

_Printed name and title_

| | | |
|---|---|---|
| STATE OF OREGON | ) | |
| | ) ss: | AFFIDAVIT OF KYLE COZART |
| County of Multnomah | ) | |

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kyle Cozart, being duly sworn, do hereby depose and state as follows:

<u>**Introduction and Agent Background**</u>

1.      I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since August of 2017.  I am assigned to the District of Oregon where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court.  As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Patrick STAFFORD.  As set forth below, I have probable cause to believe that Patrick STAFFORD committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this

**Page 1 – Affidavit of Kyle Cozart**

investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such officer or employee in the performance of official duties.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza.  The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Kyle Cozart**

are directly across the street from those parks.  The United States of America owns the entire city

block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.      Daily protests have regularly been followed by nightly criminal activity in the

form of vandalism, destruction of property, looting, arson, and assault.  The Hatfield Courthouse

has experienced significant damage to the façade and building fixtures during the six weeks

following this incident.  Additionally, mounted building security cameras and access control

devices have been vandalized or stolen.  The most recent repair estimate for the damage at the

Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since

then.  Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the
Portland area. The federal government owns the entire city block occupied by the Mark O.
Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The
property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Kyle Cozart**

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

7.     Specifically, on July 27, 2020, federal law enforcement officers attempted to disperse a crowd on 3rd Avenue between Main and Salmon streets in Portland, OR after the Federal Protective Service (FPS) declared an unlawful assembly multiple times. This occurred after violent opportunists attempted to destroy the security fence in front of the Mark Hatfield Federal Courthouse with power tools. Additionally, violent opportunists attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them.  During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.     At approximately 01:30 hours, DUSM Victim 1 was walking with a group of officers when a group of subjects formed a line in front of them.  Officers were ordering the subjects to disperse, and they failed to comply with repeated orders.  As the United States Marshals Service (USMS) line approached, individuals holding shields began to group in Lownsdale park. As deputies approached, an individual later identified as Brodie Storey lurched forward and attempted to tackle DUSM Victim 1. DUSM Victim 1 struggled and went to the ground. Subsequently, DUSM Victim 1 attempted to place Brodie Storey under arrest, but Storey

 **Page 4 – Affidavit of Kyle Cozart**

was violently resisting. DUSM Victim 1 instructed Storey to place his hands behind his back. Storey continued to resist, refused to comply with orders, and squeezed his arms under his chest. During this time, DUSM Victim 1 was getting hit with bottles and other projectiles from members of the crowd. As DUSM Victim 1 was attempting to gain control of Storey's arms, another individual later to be known as Patrick STAFFORD, assaulted DUSM Victim 1 with a shield. STAFFORD attempted to stop the arrest by slamming a shield into DUSM Victim 1 so that Storey could escape. Subsequently, STAFFORD was restrained by another responding DUSM and placed under arrest. Once on the ground, STAFFORD was compliant and obeyed all commands. Storey continued to refuse to comply with orders and fought with officers, resulting in DUSM Victim 1 utilizing his taser. DUSM Victim 1 was able to gain compliance after the application of the taser and Brodie Storey was placed under arrest.

## Conclusion

9.      Based on the foregoing, I have probable cause to believe, and I do believe, that Patrick STAFFORD assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111. I therefore request that the Court issue a criminal complaint and arrest warrant charging Patrick STAFFORD with that offense.

//

//

//

**Page 5 – Affidavit of Kyle Cozart**

10.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight.  AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

_(By telephone)_____
Kyle Cozart
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at _12:40_ am/pm on July ____27____, 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of Kyle Cozart**

# ATTACHMENT 14

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  3:20-mj-00148 |
| TAIMANE JAME TEO, | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___July 6, 2020___ in the county of ___Multnomah___ in the

District of ___Oregon___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111 | Assault on a federal officer |

This criminal complaint is based on these facts:

See Attached Affidavit of Federal Protective Service Senior Special Agent Micah Coring.

☑ Continued on the attached sheet.

_/s/ Signed IAW Fed. R. Crim. P. 4.1_
*Complainant's signature*

Micah Coring, Senior Special Agent, FPS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _12:39._ a.m./p.m.    Xxx

Date: ___July 6, 2020___

*Judge's signature*

City and state: ___Portland, Oregon___    HON. JOLIE A RUSSO, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON      )
                        )  ss:        AFFIDAVIT OF MICAH CORING
County of Multnomah      )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Micah Coring, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am a Special Agent with the Federal Protective Service (FPS) and have been since 2009. My current assignment is the Federal Protective Service Field Office in Portland, Oregon assigned to investigate general crimes and in the capacity of a part time investigator for the FPS Office of Internal Investigations (OII) and liaison for the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF). My training and experience includes graduating from the Federal Law Enforcement Training Center's Criminal Investigator Training Program in August 2009. I have experience investigating crimes against federal employees including threats and assaults on federal government employees, to include law enforcement officers.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Taimane Jame TEO. As set forth below, there is probable cause to believe, and I do believe, that TEO committed the following offenses: Assault in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable

cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.        18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5.        Since on or about May 26, 2020, protesters have gathered in Portland public areas to protest.  Three of these public areas are Lownsdale Square, Chapman Square and Terry Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the Mark O.Hatfield United States Federal Courthouse[1].  The United States of America owns the entire city block (Block #24) occupied by the courthouse building depicted below:

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.



6.     Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. Most violent of these impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov Cocktail. The Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the six weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000, and there has been additional extensive damage since then. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers

targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

      7.      On July 6, 2020, TEO assaulted federal law enforcement officers by directing a laser, a device that generates an intense beam of coherent monochromatic light (or other electromagnetic radiation) by stimulated emission of photons from excited atoms or molecules, towards officers during the performance of their duties on federal property, at the Mark O. Hatfield Federal Courthouse.

      8.      On July 6, 2020, SA Coring interviewed United States Border Patrol (USBP) Tactical (BORTAC) Agent Adult Victim 1 (AV1)[2]. Agent AV1 related he was in an overlook position on the 9th floor of the Hatfield USCH. Agent AV1 stated a green laser was shined into his eyes from the park below by a white male demonstrator wearing a black hoodie and cross-body satchel. Agent AV1 said he relayed the subject's location and description to BORTAC arrest teams and kept his eyes on the subject from the time the laser was shined into his eyes until the subject was apprehended by fellow BORTAC Agent Arresting Agent 1 (AA1). Agent AV1 said he still could see spots in his vision since the laser was shined in his eyes 15 minutes earlier.

      9.      On July 6, 2020, SA David Miller interviewed Border Patrol Agent AA1 at the Hatfield USCH. Border Patrol Agent AA1 related he was operating as a member of an arrest team to locate a subject wearing black clothing, a cross-body satchel, overalls, a hoodie, and a backpack. Agent AA1 said the subject was standing on the front steps on the Hatfield USCH when Agent AA1 and his team exited the building. The subject ran across

---

[2] The identities of AV1 and AA1 are known to investigators in this case. Both are federal officers working to secure the courthouse during the on-going civil unrest. Their identities are being withheld from this affidavit for their safety.

the street into Lownsdale Square and Agent AA1 said he could see a green laser flickering in the

subject's hand as his arms pumped back and forth while running. Agent AA1 was able to

apprehend the subject and search incident to arrest, Agent AA1 discovered a green laser on the

subject's person.

10.     On July 6, 2020, SA Coring and SA Desens interviewed TEO in the United States

Marshalls Service (USMS) detention center at Hatfield USCH. SA Coring introduced himself

and SA Desens presenting their credentials. SA Coring read Miranda Warning to TEO who

indicated he understood them and would like to speak without an attorney present. TEO said he

had never been down to the ongoing protests in front of the Justice Center before but came down

to observe and paint stuff. SA Coring asked TEO why he was arrested and TEO said he didn't

know. SA Coring asked TEO why he had a laser. TEO said he had always wanted one because

he had seen them at The Oregon Fair, hadn't tried it yet, and knows not to shine it in a person's

face. TEO said he ordered the laser from Amazon. When asked if his Amazon account would

reflect this purchase, TEO said it wouldn't because a friend bought it from him. SA Coring

asked who his friend was and how the laser came to be in TEO's possession. TEO related that

he doesn't know his friend's real name and calls him "Elbow". TEO said he has never been to

Elbows house and met him in the park. TEO said Elbow bought the lasers in bulk and sold him

one for $20 in the park earlier in the evening. SA Coring asked TEO what he intended to use the

laser for. TEO said he did internet research about what to bring to protests and a laser was an

item recommended. SA Coring asked again what TEO intended to do with the laser and TEO

said he thought it would be able to make shapes, but when he tried it, it was just a straight beam.

TEO again stated he knows he shouldn't shine it in people's faces. SA Coring reminded TEO of

**Page 5 – Affidavit of SA Micah Coring**          **USAO Version Rev. April 2018**

his earlier statement when he said he hadn't tried the laser yet. TEO admitted to using the laser but would not say where he had shined it. SA Coring asked if he was shining the laser at buildings or trees and TEO said into the trees. SA Coring said he would be interviewing other people who had been arrested and asked TEO what he thought they would say about what he did with the laser. TEO said others will say I was shining it at trees. TEO then asked to speak with an attorney before continuing questioning and the interview was concluded.

### Conclusion

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that Taimane Jame TEO committed Assault in violation of Title 18 U.S.C § 111. I therefore request that the Court issue a criminal complaint and arrest warrant for Taimane Jame TEO.

12.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul T. Maloney, and AUSA Maloney advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/s/ Micah Coring signed by telephone
*In accordance with Fed. R. Crim. P. 4.1*
Micah CORING
Senior Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means at 12:39 x̶x̶ /p.m. in accordance with Fed. R. Crim. P. 4.1 this ___6___ day of July 2020.

_____
HONORABLE JOLIE A. RUSSO

**Page 6 – Affidavit of SA Micah Coring**          **USAO Version Rev. April 2018**

United States Magistrate Judge

# ATTACHMENT 15

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| GRETCHEN MARGARET BLANK | ) | Case No.  3:20-mj-00149 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____July 5, 2020,_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 111(a)(1) | Assaulting, resisting, impeding, and interfeing with a federal officer |

This criminal complaint is based on these facts:

See the attached affidavit of Special Agent Brian Desens, Federal Protective Service.

☑ Continued on the attached sheet.

_____(By telephone)_____
*Complainant's signature*

Brian Desens, Special Agent, FPS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at 3:03.  a̶.̶m̶./p.m.

Date: _____July 6, 2020_____

_____Jolie A. Russo_____
*Judge's signature*

City and state: _____Portland, Oregon_____  Honorable Jolie Russo, U.S. Magistrate Judge
*Printed name and title*

STATE OF OREGON      )
                           )  ss:             AFFIDAVIT OF BRIAN DESENS
County of Multnomah     )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Brian Desens, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am employed as a Special Agent (SA) with the Federal Protective Service (FPS) and have been employed by FPS since October 2017.  I have participated in several investigations relating to the protection of federal facilities and personnel.  I am currently assigned to the FPS Headquarters Rapid Protection Force.  I graduated from the Federal Law Enforcement Training Academy (FLETC) Criminal Investigator Training Program in 2018, and FLETC's Uniformed Police Training Program in 2013.  I received a bachelor's degree in Law and Justice from Central Washington University in 2015.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Gretchen Margaret BLANK.  As set forth below, I have probable cause to believe that BLANK forcibly assaulted, resisted, impeded, and interfered with federal officers, in violation of 18 U.S.C. § 111(a)(1).

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable

**Page 1 – Affidavit of SA Brian Desens**

cause in support of an application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.        18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5.        Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza.  The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O. Hatfield United States Courthouse, are directly across the street from those parks.  The United States of America owns the entire city block (Block #24) occupied by the Hatfield Courthouse, as depicted below.[1]

---

[1]  The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 2 – Affidavit of SA Brian Desens**



6.      Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. Most violent of these impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov Cocktail. The Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the six weeks following that incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Hatfield Courthouse exceeds $50,000, and there has been additional and extensive damage since then. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to

**Page 3 – Affidavit of SA Brian Desens**

threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

7.     On July 5, 2020, at approximately 2:38 a.m., Gretchen BLANK assaulted, obstructed, resisted, impeded, and interfered with FPS and United States Border Patrol (USBP) agents during the performance of their official duties.  BLANK assaulted USBP Agent Christopher Smilo with a shield and obstructed, impeded, and interfered with agents who were trying to arrest another individual suspected of assaulting USBP Agent Michael Marino with a laser.  These actions contributed to USBP Agent Smilo being pushed off balance and diverted USBP Agent Michael Newborn's attention from the arrest of the original suspect.

8.     On July 5, 2020, at approximately 3:00 a.m., Agent Marino told me he was at the corner of SW Third Avenue and SW Salmon Street when he was hit in the chest by a green laser. The laser moved up from his chest into his face, hitting him in the eyes for a moment.  The laser was moved to target other officers and agents in the area.  Agent Marino saw the person who was using the laser to target him and other officials standing across the street at SW Third and SW Salmon, near a parking entrance garage.  Agent Marino saw that person attempting to target other officers with the laser.  Agent Marino said the person was lit up by ambient light from either a street lamp or exterior building lighting.  Agent Marino pointed the subject out to other agents and broadcast information about the suspect over his radio.  Agent Marino saw the suspect tuck back into the parking garage entrance, where he appeared to speak to a woman.  The suspect then came out of the garage entrance and walked north on SW Third Avenue towards SW Taylor St.  The suspect was taken into custody by an arrest team at SW Third Avenue and

**Page 4 – Affidavit of SA Brian Desens**

SW Taylor St. During the arrest, Agent Marino saw a woman carrying a shield attempt to run into the arrest team. Both the man and the woman were taken into custody by the arrest team. Agent Marino said the female who attempted to run into the arrest team may have been the same person the man was with at the parking garage entrance.

9.      FPS Inspector Brad O'Neal told me that he was part of the team that went to arrest the suspect who pointed the laser at Agent Marino. The suspect saw them coming and began walking north on SW Third toward SW Taylor St. The suspect was taken to the ground at Taylor. While they were arresting him, a woman interfered and was taken into custody as well.

10.     USBP Agents Christopher Smilo and Michael Newburn were also part of the team that arrested the suspect. Agent Newburn told me that their team saw the suspect walking north on Third toward SW Taylor St. Agent Smilo attempted to take the suspect into custody. The suspect resisted. Agent Smilo had the suspect's right arm, while Agent Newburn was trying to secure the suspect's left arm, which the suspect tried to keep under his body. While they were trying to secure the suspect, BLANK approached and tried to push Agent Smilo off the suspect using a shield, causing Agent Smilo to lose his balance. BLANK and the suspect were both taken into custody and were taken to the Hatfield Courthouse.

11.     At about 3:48 a.m., Agent Miller and I attempted to interview BLANK in the Marshals Service detention facility in the Hatfield Courthouse. BLANK provided basic biographical information such as her name and date of birth, but, after being of her *Miranda* rights, declined to make a statement.

12.     During a follow-up interview on July 6, 2020, Agent Smilo told me BLANK hit him in the back with some sort of shield while he was trying to arrest the male suspect, causing

**Page 5 – Affidavit of SA Brian Desens**

Agent Smilo to lose his balance and collide with Agent Newborn. Agent Smilo described the shield as white in color, shaped like a stop sign, and possibly made of plastic. Agent Smilo said that the male was actively resisting arrest. He and Agent Newburn eventually secured the male. Agent Smilo was not sure who took BLANK into custody.

13.     During a follow-up interview on July 6, 2020, Agent Newburn told me that the shield BLANK used to push Agent Smilo may have been diamond shaped and appeared "flimsy." BLANK hit Agent Smilo in the back with the shield, causing Agent Smilo to fall into Agent Newburn and knock Agent Newburn backwards. The male suspect continued to resist, and it took about 30 to 45 seconds to take him into custody. Agent Newburn was not injured during the arrest, although the male suspect was bleeding from his left elbow.

14.     On July 6, 2020, I returned to the Hatfield Courthouse and located what I believe was the shield BLANK used to strike Agent Smilo. The shield was in the front lobby area, by the security screening area. The shield is flat, is white on one side with two black nylon straps, and has a mirrored finish on the opposite side. The shield is octagonal and made mostly of a plastic-type material. I texted pictures of the shield to Agents Smilo and Newburn. Agent Newburn was unable to identify the shield. Agent Smilo confirmed the shield was the one BLANK used to strike him. Photos of the shield appear below.

**Page 6 – Affidavit of SA Brian Desens**



**Page 7 – Affidavit of SA Brian Desens**



**Conclusion**

15.     Based on the foregoing, I have probable cause to believe that Gretchen Margaret BLANK forcibly assaulted, impeded, resisted, and interfered with federal law enforcement agents who were performing their official duties, in violation of 18 U.S.C. § 111(a)(1).  I therefore request that the Court issue a criminal complaint and arrest warrant charging BLANK with that offense.

16.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Gary Sussman.  AUSA Sussman advised me that in his opinion, the affidavit and complaint are legally

**Page 8 – Affidavit of SA Brian Desens**

and factually sufficient to establish probable cause to support the issuance of the requested

criminal complaint and arrest warrant.

_(By telephone)_____

Brian Desens
Special Agent
Federal Protective Service

     Sworn to by telephone or other reliable means in accordance with Fed. R. Crim. P. 4.1 at

__3:03.__ ~~am~~/pm on July __6__, 2020.

_____

HONORABLE JOLIE RUSSO
United States Magistrate Judge

**Page 9 – Affidavit of SA Brian Desens**

# ATTACHMENT 16

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br>CHRISTOPHER FELLINI | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 3:20-mj-00150

_Defendant(s)_

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 5, 2020,__ in the county of __Multnomah__ in the

_____ District of __Oregon__ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 111(a)(1) | Assaulting a federal officer |

This criminal complaint is based on these facts:

See the attached affidavit of Senior Special Agent David Miller, Federal Protective Service.

☑ Continued on the attached sheet.

(By telephone)
_____
_Complainant's signature_

David Miller, Senior Special Agent, FPS
_____
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at __3:14pmxxxxxx.__

Date: __July 6, 2020__
_____
_Judge's signature_

City and state: __Portland, Oregon__     Honorable Jolie Russo, U.S. Magistrate Judge
_____
_Printed name and title_

STATE OF OREGON            )
                           )  ss:                    AFFIDAVIT OF DAVID MILLER
County of Multnomah        )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, David Miller, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am employed as a Senior Special Agent (SSA) with the Federal Protective

Service (FPS) and have been employed by FPS since October 2009.  I have participated in

several investigations relating to the protection of federal facilities and personnel.  I am currently

assigned to Region 10 in Portland, Oregon as a general crimes agent.  I am also a Task Force

Officer for the United States Marshals Service (USMS) Pacific Northwest Violent Offender Task

Force, a part time investigator for the FPS Office of Internal Investigations (OII), and a liaison

for the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF).  From April

2006 to October 2009, I was a Special Agent with the Naval Criminal Investigative Service

(NCIS) serving as a member of the Major Crimes Response Team (MCRT) and a Foreign

Counterintelligence agent.  Before that, I was a Special Agent with the Bureau of Alcohol,

Tobacco, Firearms and Explosives (ATF) in Yakima, Washington, a Federal Air Marshal, an

ATF Inspector, and a police officer in several cities.  I started my law enforcement career in

1991.  I graduated from the FPS Advanced Individual Training Program in November 2009.  I

graduated from the NCIS Advanced Individual Academy in 2006.  I graduated from the ATF

National Academy in June of 2003.  I graduated from the Federal Law Enforcement Training

Center Criminal Investigator Course in March of 2003.  I graduated from the Federal Law

Enforcement Training Center Civil Aviation Security Specialist Course in February of 2002 and

 **Page 1 – Affidavit of David Miller**

the ATF Inspector Course in January of 2001. I graduated from the U.S. Army Military Intelligence Officer Basic Course in August of 1996 and the U.S. Army Military Intelligence Enlisted Course in February of 1988. I received a bachelor's degree in Social Sciences at Emporia State University in 1992 and an Associate Degree in Criminal Justice at Barton County Community College in 1995. As a result of my training and experience as an FPS Special Agent, I am familiar with federal criminal laws.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Christopher FELLINI. As set forth below, I have probable cause to believe that FELLINI committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a

Page 2 – Affidavit of David Miller

felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5.     Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse, are directly across the street from those parks. The United States of America owns the entire city block (Block #24) occupied by the Hatfield Courthouse, as depicted below.[1]

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

 **Page 3 – Affidavit of David Miller**



6.　　Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. Most violent of these impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov Cocktail. The Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the six weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since then. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to

**Page 4 – Affidavit of David Miller**

threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

7.      On July 5, 2020, FELLINI assaulted federal law enforcement officers by pointing a laser, a device that generates an intense beam of coherent monochromatic light (or other electromagnetic radiation) by stimulated emission of photons from excited atoms or molecules, towards officers during the performance of their duties at the Hatfield Courthouse.

8.      On July 5, 2020, United States Border Patrol (USBP) Tactical Agent Raymond Kent told me he was in the area of SW Third Avenue and SW Salmon Street with his tactical team providing security outside of the Hatfield Courthouse.  When Agent Kent's team started to move back inside the courthouse, he saw a green laser coming from Lownsdale Park target his upper body and face.  Another agent announced that a laser was being pointed at the team from Lownsdale Park.  The team stopped and repositioned in front of the pillars fronting the courthouse.  Agent Kent saw FELLINI approximately 40 yards away behind some trees in the park.  Agent Kent could also see a green laser FELLINI was holding occasionally hitting the leaves on the tree FELLINI was hiding behind.  Agent Kent told me that Tactical Agent Jesse Serio, who was standing directly next to him, saw Agent Kent get struck by the laser.

9.      Agent Kent's team started toward Lownsdale Park.  As they did so, FELLINI ran off towards SW Third and Salmon.  Agent Kent saw FELLINI throw a black cylindrical laser on the ground.  Agent Kent grabbed FELLINI.  FELLINI pulled away, causing both of them to fall to the ground.  Agent Kent sustained abrasions to his left hand and arm during the fall.  FELLINI was taken into custody and the laser was immediately recovered.  FELLINI also had a small can

**Page 5 – Affidavit of David Miller**

of Mace brand Pepper Gel and a small knife on his person.  FELLINI is a white male in his early 20s, who wore all black clothing with a hoodie and a white colored N95 protective mask.  A photo of Agent Kent's injuries appears below.



*Agent Kent's left hand*

10.    On July 6, 2020, I contacted FELLINI in the United States Marshals Service detention center at the Hatfield Courthouse.  I identified myself with my agency-issued credentials and advised FELLINI of his Miranda Rights.  FELLINI did not wish to make a statement.

11.    On July 6, 2020, FELLINI'S belongings were searched incident to arrest and the following were found:  black clothing, three pairs of gloves, a can of Mace brand Pepper gel, a CRKT two-inch knife, and a green laser emitter that is about six inches long.

**Page 6 – Affidavit of David Miller**


*Fellini's possessions*


*Pepper Gel, Knife, Laser, misc. items*

## Conclusion

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that

Christopher FELLINI assaulted a federal employee or officer, in violation of Title 18 U.S.C

**Page 7 – Affidavit of David Miller**

§ 111. I therefore request that the Court issue a criminal complaint and arrest warrant charging FELLINI with that offense.

12.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Gary Sussman.  AUSA Sussman advised me that in his opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.


_(By telephone)_____
David MILLER
Senior Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at _3:14pm~~xxx/xxx~~_ on July ___6___, 2020.


_____
HONORABLE JOLIE RUSSO
United States Magistrate Judge


**Page 8 – Affidavit of David Miller**

# ATTACHMENT 17

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. **3:20-mj-00166** |
| STEPHEN EDWARD ODONNELL | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/26/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of Federal Protective Service SA Brian Desens attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

|  |
|---|
| via telephone |
| *Complainant's signature* |
| FPS SA Brian Desens |
| *Printed name and title* |

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at ___8:03___ a.m./p.m.

Date: ___July 27, 2020___

|  |
|---|
| *Judge's signature* |

City and state: _____Portland, Oregon_____ | Hon. Jolie A. Russo, U.S. Magistrate Judge |
| | *Printed name and title* |

DISTRICT OF OREGON      )
                              )  ss:  AFFIDAVIT OF SPECIAL AGENT
County of Multnomah      )       BRIAN DESENS


### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Brian Desens, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.     I am employed as a Special Agent (SA) with the Federal Protective Service (FPS) and have been employed by FPS since October 2017.  I have participated in several investigations relating to the protection of federal facilities and personnel.  I am currently assigned to the FPS Headquarters Rapid Protection Force (RPF). Prior to being a Special Agent with FPS, I was employed as a Uniformed Inspector with the FPS since 2013.  I graduated from the Federal Law Enforcement Training Academy (FLETC) Criminal Investigator Training Program in 2018, and FLETC's Uniformed Police Training Program in 2013.  I received a bachelor's degree in Law and Justice from Central Washington University in 2015. I am currently assigned to the Rapid Protection Force out of Auburn, WA, and augment the Region 10 Investigations Branch as a general crime agent.

2.     I submit this affidavit in support of a criminal complaint and arrest warrant for Stephen Edward ODONNELL.  As set forth below, there is probable cause to believe that ODONNELL committed the offense of Assaulting a Federal Officer (Felony), in violation of 18 U.S.C. § 111(a)(1).

3.     The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of

records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.  Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts involve physical contact with the victim, the offense is a felony punishable by imprisonment up to 8 years.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas to protest.  Three of these public areas are Lownsdale Square, Chapman Square and Terry Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the

**Page 2 – Affidavit of Brian Desens**

Mark O. Hatfield United States Federal Courthouse[1].  The United States of America owns the

entire city block (Block #24) occupied by the courthouse building depicted below:



Daily protests have regularly been followed by nightly criminal activity in the form of

vandalism, destruction of property, looting, arson, and assault.  The Mark O. Hatfield

Courthouse has experienced significant damage to the façade, glass, and building fixtures during

the weeks following this incident.  Additionally, mounted building security cameras and access

control devices have been vandalized or stolen.  The most recent repair estimate for the damage

at the Mark O. Hatfield Courthouse is in excess of $50,000.  Other federal properties in the area

routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon

Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.   FPS law enforcement

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Brian Desens**

officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

6.      On July 26, 2020, at approximately 01:02 a.m., protesters attempted to breach into the Mark O. Hatfield Federal United States Courthouse (USCH) by damaging and removing the protective fencing around the west entrances of the USCH. A section of the fence was pushed over and protestors started to make their way onto federal property, U.S. Customs and Border Protection (CBP), U.S. Marshals Service (USMS), and FPS tactical teams deployed outside to prevent further breaches and property damage on the property.

7.      At approximately 01:30 a.m., ODONNELL was taken into custody by CBP on an allegation of violation of 18 U.S.C. § 111(a)(1) and taken to the USCH for processing.

8.      At approximately 01:15 a.m. to 01:20 a.m. CBP agents were moving through the park (Lownsdale Square) to push back protestors after the breach of the fence at the USCH. While pushing through the park CBP Agent 1 (victim) observed ODONNELL by the monument who was shining a flashlight at CBP Agent 1.  CBP Agent 1 did not see any other protestors in the immediate area.  The agent announced himself as a "Border Patrol Agent" and gave verbal commands to have ODONNELL show his hands.  CBP Agent 1 saw the beam of the flashlight in ODONNELL's hand move down and observed ODONNELL throw an object in the agent's direction from approximately 10 feet. The object struck CBP Agent 1 in the face. The object was hard, but the agent was not sure exactly what the object was. CBP Agent 1 was wearing his

 **Page 4 – Affidavit of Brian Desens**

gasmask at the time of the attack and was not injured. After the object struck CBP Agent 1, he

moved in on ODONNELL and arrested him. CBP Agent 1 escorted ODONNELL to the USCH

and transferred him to other officers for further processing.

9.      Law enforcement attempted to interview ODONNELL in the US Marshals'

interview rooms at the USCH.  I read ODONNELL his rights from an FPS Miranda Statement of

Rights form. ODONNELL stated he understood his rights. I asked if he was willing to waive his

rights and speak with me. ODONNELL declined to waive his rights and I ended the interview

with ODONNELL.

### Conclusion

10.      Based on the foregoing, I have probable cause to believe, and I do believe, that

Stephen Edward ODONNELL committed a violation of 18 U.S.C. § 111(a), and in so doing

made physical contact with a federal officer using a hard object from approximately 10 feet.

11.      Prior to being submitted to the Court, this affidavit, the accompanying complaint

and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie

Wight, who advised that in her opinion the affidavit and complaint are legally and factually

sufficient to establish probable cause to support the issuance of the requested criminal complaint

and arrest warrant.

*/s/ Sworn to by telephone*
Brian Desens
Special Agent, Federal Protective Service

Sworn to by telephone or other reliable means at ___8:03___ a.m./p̶m̶. in accordance with

Fed. R. Crim. P. 4.1 this ___27___ day of July 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 5 – Affidavit of Brian Desens**

# ATTACHMENT 18

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   3:20-mj-167 |
| NATHAN ONDERDONK-SNOW | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/26/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Christopher Tomayo attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____
via telephone
_Complainant's signature_

USMS DUSM Christopher Tamayo
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at __8:03__ a.m./p̶.̶m̶.

Date:  __July 27, 2020__

_____
_Judge's signature_

City and state:  _____Portland, Oregon_____      Hon. Jolie A. Russo, U.S. Magistrate Judge
_Printed name and title_

3:20-mj-167

STATE OF OREGON       )
                               )   ss:   AFFIDAVIT OF CHRISTOPHER TAMAYO
County of Multnomah       )


### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Christopher Tamayo, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.       I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since 2013. I am assigned to the Pacific Northwest Violent Offender Task Force where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court. As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of a California Peace Officer Standard Training Academy, the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.       I submit this affidavit in support of a criminal complaint and arrest warrant for Nathan ONDERDONK-SNOW. As set forth below, I have probable cause to believe that ONDERDONK-SNOW committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

**Page 1 – Affidavit of Christopher Tamayo**

3.    The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

### Applicable Law

4.    18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such officer or employee in the performance of official duties.

### Statement of Probable Cause

5.    Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza.  The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Christopher Tamayo**

are directly across the street from those parks. The United States of America owns the entire city

block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.      Daily protests have regularly been followed by nightly criminal activity in the

form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse

has experienced significant damage to the façade and building fixtures during the six weeks

following this incident. Additionally, mounted building security cameras and access control

devices have been vandalized or stolen. The most recent repair estimate for the damage at the

Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since

then. Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the
Portland area. The federal government owns the entire city block occupied by the Mark O.
Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The
property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Christopher Tamayo**

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

7.      Specifically, on July 26, 2020, federal law enforcement officers attempted to disperse a crowd on SW Salmon Street between 4th and 5th streets in Portland, OR.  The crowd was part of a protest that was declared an unlawful assembly by the Federal Protective Service and a riot by the Portland Police Bureau.  This occurred after violent opportunists destroyed the security fence in front of the Mark Hatfield Federal Courthouse, and attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them. During the dispersal Deputy United States Marshal (DUSM) Victim 1, 2, and 3 were all dressed in a clearly marked police tactical uniform and were wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 0135 hours three DUSMs were walking as a group of officers attempting to clear and disperse the street when they were approached by a subject later identified as Nathan ONDERDONK-SNOW.  While DUSMs were giving general orders to clear the area ONDERDONK-SNOW shoved DUSM Victim 1 from behind with a blue shield. At the same time DUSM 2 witnessed the assault and attempted to intervene by grabbing ONDERDONK-SNOW with DUSM Victim 1.  DUSM Victim 1 pulled ONDERDONK-SNOW's head down attempting to bring him to the ground with DUSM 2. In the process of

 **Page 4 – Affidavit of Christopher Tamayo**

trying to bring ONDERDONK-SNOW to the ground DUSM Victim 1's gas mask was knocked loose and he had to adjust the mask while DUSM 2 struggled with ONDERDONK-SNOW alone. ONDERDONK-SNOW continued to lean forward while keeping his arms tight to his waist preventing officers from gaining control. DUSM Victim 1 physically re-engaged the subject to gain control of an arm. A third DUSM witnessed and assisted in the arrest until all three DUSMs were able to gain control and restrain ONDERDONK-SNOW.

9.     On July 26, 2020, I contacted ONDERDONK-SNOW in the United States Marshals Service detention center at the Hatfield Courthouse.  I identified myself as a Deputy with the U.S. Marshals Service wearing my agency issued badge displayed on my duty belt and advised ONDERDONK-SNOW of his Miranda Rights.  ONDERDONK-SNOW stated that he understood his rights but wanted to speak to a lawyer before making a statement.

10.      On July 26, 2020, ONDERDONK-SNOW's belongings were searched incident to arrest and the following were found:  green backpack filled with personal items such as first aid kit, keys, and mask.



*Onderdonk-Snow's possessions*

**Page 5 – Affidavit of Christopher Tamayo**

## Conclusion

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that Nathan ONDERDONK-SNOW assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111.  I therefore request that the Court issue a criminal complaint and arrest warrant charging ONDERDONK-SNOW with that offense.

12.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight.  AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*
_____
Chris Tamayo
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at __8:03__ am/pm on July __27__, 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of Christopher Tamayo**

# ATTACHMENT 19

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   3:20-mj-00173 |
| | ) | |
| Brodie Storey | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/27/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Kyle Cozart attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

via telephone

---
*Complainant's signature*

USMS DUSM Kyle Cozart

---
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at  _12:10_  a.☒m./p.m.

Date:  _____July 27, 2020_____

---
*Judge's signature*

City and state:  _____Portland, Oregon_____         Hon. Jolie A. Russo, U.S. Magistrate Judge

*Printed name and title*

STATE OF OREGON            )
                                     )  ss:   AFFIDAVIT OF KYLE COZART
County of Multnomah        )

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kyle Cozart, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since August of 2017.  I am assigned to the District of Oregon where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court.  As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Brodie STOREY.  As set forth below, I have probable cause to believe that Brodie STOREY committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this

**Page 1 – Affidavit of Kyle Cozart**

investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such officer or employee in the performance of official duties.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza.  The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Kyle Cozart**

are directly across the street from those parks. The United States of America owns the entire city

block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.      Daily protests have regularly been followed by nightly criminal activity in the

form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse

has experienced significant damage to the façade and building fixtures during the six weeks

following this incident. Additionally, mounted building security cameras and access control

devices have been vandalized or stolen. The most recent repair estimate for the damage at the

Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since

then. Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the
Portland area. The federal government owns the entire city block occupied by the Mark O.
Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The
property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Kyle Cozart**

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

7.      Specifically, on July 27, 2020, federal law enforcement officers attempted to disperse a crowd on 3rd Avenue between Main and Salmon streets in Portland, OR after the Federal Protective Service (FPS) declared an unlawful assembly multiple times. This occurred after violent opportunists attempted to destroy the security fence in front of the Mark Hatfield Federal Courthouse with power tools. Additionally, violent opportunists attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them.  During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 01:30 hours, DUSM Victim 1 was walking with a group of officers when a group of subjects formed a line in front of them.  Officers were ordering the subjects to disperse, and they failed to comply with repeated orders.  As the United States Marshals Service (USMS) line approached, individuals holding shields began to group in Lownsdale park. As deputies approached, an individual, later identified as Brodie STOREY lurched forward and attempted to tackle DUSM Victim 1. DUSM Victim 1 struggled and went to the ground. Subsequently, DUSM Victim 1 attempted to place STOREY under arrest, but

**Page 4 – Affidavit of Kyle Cozart**

STOREY was violently resisting. DUSM Victim 1 instructed STOREY to place his hands behind his back. STOREY continued to resist, refused to comply with orders, and squeezed his arms under his chest. During this time, DUSM Victim 1 was being hit with bottles and other projectiles from members of the crowd. As DUSM Victim 1 was attempting to gain control of STOREY's arms, another individual later to be known as Patrick Stafford, assaulted DUSM Victim 1 with a shield. Stafford was restrained by another responding DUSM and placed under arrest. Once on the ground, Stafford was compliant and obeyed all commands. STOREY continued to refuse to comply with orders and fought with officers, resulting in DUSM Victim 1 utilizing his taser.  DUSM Victim 1 was able to gain compliance after the application of the taser and STOREY was placed under arrest.

## Conclusion

9.      Based on the foregoing, I have probable cause to believe, and I do believe, that Brodie STOREY assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111.  I therefore request that the Court issue a criminal complaint and arrest warrant charging Brodie STOREY with that offense.

//

//

//

**Page 5 – Affidavit of Kyle Cozart**

10. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight. AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*_____
Kyle Cozart
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at ___12:10___ am/pm on July ___27___, 2020.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 6 – Affidavit of Kyle Cozart**

# ATTACHMENT 20

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 3:20-mj-00174 |
| | ) | |
| Jeffrie Cary | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _7/27/2020_ in the county of _Multnomah_ in the District of _Oregon_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM Kyle Cozart attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

|  |
|---|
| via telephone |
| _Complainant's signature_ |
| USMS DUSM Kyle Cozart |
| _Printed name and title_ |

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _12:40_ a.m./p.m.

Date: _July 27, 2020_

_Judge's signature_

City and state: _Portland, Oregon_     Hon. Jolie A. Russo, U.S. Magistrate Judge

_Printed name and title_

3:20-mj-00174

STATE OF OREGON        )
                               )   ss:   AFFIDAVIT OF KYLE COZART
County of Multnomah     )

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Kyle Cozart, being duly sworn, do hereby depose and state as follows:

### <u>Introduction and Agent Background</u>

1.      I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since August of 2017.  I am assigned to the District of Oregon where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court.  As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Jeffrie CARY.  As set forth below, I have probable cause to believe that Jeffrie CARY committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this

**Page 1 – Affidavit of Kyle Cozart**

investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such officer or employee in the performance of official duties.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse,

**Page 2 – Affidavit of Kyle Cozart**

are directly across the street from those parks. The United States of America owns the entire city

block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]



6.      Daily protests have regularly been followed by nightly criminal activity in the

form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse

has experienced significant damage to the façade and building fixtures during the six weeks

following this incident. Additionally, mounted building security cameras and access control

devices have been vandalized or stolen. The most recent repair estimate for the damage at the

Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since

then. Other federal properties in the area routinely being vandalized include the historic Pioneer

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the
Portland area. The federal government owns the entire city block occupied by the Mark O.
Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The
property boundary extends past the sidewalks and into the streets surrounding the courthouse.

 **Page 3 – Affidavit of Kyle Cozart**

Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.  FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

7.      Specifically, on July 27, 2020, federal law enforcement officers attempted to disperse a crowd on 3rd Avenue between Main and Salmon streets in Portland, OR after the Federal Protective Service (FPS) declared an unlawful assembly multiple times. This occurred after violent opportunists attempted to destroy the security fence in front of the Mark Hatfield Federal Courthouse with power tools. Additionally, violent opportunists attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them.  During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 01:30 hours, DUSM Victim 1 was walking with a group of officers and a group of subjects formed a line in front of them.  Officers were ordering the subjects to disperse, and they failed to comply with repeated orders.  As the United States Marshals Service (USMS) line approached, individuals holding shields began to group in Lownsdale park. As Deputies approached, an individual later identified as Jeffrie CARY used a shield to make physical contact with DUSM Victim 1. The contact knocked DUSM Victim 1

**Page 4 – Affidavit of Kyle Cozart**

back as he was in the performance of his duties. DUSM Victim 1 was able to detain Jeffrie

CARY and place him under arrest.

**Conclusion**

9.      Based on the foregoing, I have probable cause to believe, and I do believe, that

Jeffrie CARY assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111.  I

therefore request that the Court issue a criminal complaint and arrest warrant charging Jeffrie

CARY with that offense.

10.      Prior to being submitted to the Court, this affidavit, the accompanying complaint,

and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie

Wight.  AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and

factually sufficient to establish probable cause to support the issuance of the requested criminal

complaint and arrest warrant.


_(By telephone)_____

Kyle Cozart
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1

at ___12:40 ___ am/pm on July ___27____, 2020.


_____

HONORABLE JOLIE A. RUSSO
United States Magistrate Judge


**Page 5 – Affidavit of Kyle Cozart**

# ATTACHMENT 21

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )     Case No.    3:20-mj-179 |
| | ) |
| JORDAN MATTHEW JOHNSON | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/30/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of USMS DUSM JONATHAN LOBELL attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____
via telephone
*Complainant's signature*

_____
USMS DUSM JONATHAN LOBELL
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _____10:36_____ a.m./p.m.

Date: _____07/30/2020_____

_____
*Judge's signature*

City and state: _____Portland, Oregon_____      Hon. Jolie A. Russo, U.S. Magistrate Judge
                                                *Printed name and title*

3:20-mj-179

DISTRICT OF OREGON )
) ss: AFFIDAVIT OF DEPUTY MARSHAL
County of Multnomah ) JONATHAN LOBELL

## Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Jonathan Lobell, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Deputy with the United States Marshals Service and have been since 2008. I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service. I am assigned to the Pacific Northwest Violent Offender Task Force where I am responsible for conducting fugitive investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court.  As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience include completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and drug investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Jordan Matthew JOHNSON.  As set forth below, there is probable cause to believe, and I do believe, that JOHNSON committed the offense of Assaulting a Federal Officer (felony), in violation of 18 U.S.C. § 111(a)(1).

**Page 1 – Affidavit of Jonathan Lobell**

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## **Applicable Law**

4.      18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.  Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts involve physical contact with the victim, the offense is a felony punishable by imprisonment up to 8 years.

## **Statement of Probable Cause**

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas to protest.  Three of these public areas are Lownsdale Square, Chapman Square and Terry Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's (PPB) Central

 **Page 2 – Affidavit of Jonathan Lobell**

Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the

Mark O.Hatfield United States Federal Courthouse[1].  The United States of America owns the

entire city block (Block #24) occupied by the courthouse building depicted below:



Daily protests have regularly been followed by nightly criminal activity in the form of

vandalism, destruction of property, looting, arson, assaults, and the use of molotov cocktail

explosives.  The Mark O. Hatfield Courthouse has experienced significant damage to the façade,

glass, and building fixtures during the weeks following this incident.  Additionally, mounted

building security cameras and access control devices have been vandalized or stolen.  The most

recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000.

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Jonathan Lobell**

Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building.   Federal Protective Service (FPS) law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

6.      On July 29, 2020 at approximately 10:45 PM a crowd of approximately 500 protestors were gathered on the 3rd Avenue side of the Hatfield USCH between SW Main and SW Salmon streets. Individuals in the crowd started to tamper with the perimeter fence by attempting to cut it. Officers from FPS deployed inside of the fenced perimeter to deter one of the individuals who was attempting to cut the fence. While FPS officers were successful at deterring breach of the fence, violent offenders (VOs) from within the crowd began throwing glass bottles and other hard objects at FPS officers. At approximately 11:00 PM FPS made announcements over the Long-Range Acoustic Device (LRAD) that if the crowd continued to throw objects at officers, the gathering would be considered an unlawful assembly. At approximately 11:22 the same individual returned to the fence and attempted to cut it open. FPS deployed from the courthouse, inside the fenced perimeter, to deter the individual while VO's continued to throw glass bottles and point lasers at the FPS officers.

7.      At approximately 11:30 PM FPS declared an unlawful assembly and at 11:45 pm federal law enforcement tactical teams deployed from the USCH to disperse the crowd.

**Page 4 – Affidavit of Jonathan Lobell**

8. At approximately 1:30 AM on 07/30/2020 I interviewed DUSM 1, DUSM 2(Victim), DUSM 3(Victim) and DUSM 4 regarding an assault on two DUSMs that occurred during the crowd dispersal at the corner of SW 3rd Avenue and SW Salmon Street. At the time of the assault all the DUSMs involved were in uniform with "POLICE US Marshal" patches on their vests.

9. At approximately 12:34 AM on July 30, 2020 a male in the crowd, later identified as Jordan Matthew JOHNSON, DOB xx/xx/1987 was observed by federal officers attempting to pick up a smoke grenade, deployed by federal law enforcement to assist in dispersing the crowd. Law enforcement attempted to stop JOHNSON with rubber munitions, but he was undeterred. DUSM 2 (Victim 1) ran toward JOHNSON and brought him to the ground to prevent him from grabbing the smoke grenade and placed him under arrest for failing to disperse. JOHNSON struck DUSM 2 in the neck and attempted to get off the ground. DUSM 3(Victim 2) observed JOHNSON strike DUSM 2 and attempted to restrain JOHNSON. While DUSM 2 and DUSM 3 attempted to place JOHNSON under arrest, JOHNSON struck DUSM 3 in the head and continued to resist. DUSM 4 observed the struggle between JOHNSON, DUSM 2 and DUSM 3 and grabbed JOHNSON by the back of his shirt and used force to restrain JOHNSON. Subsequently, DUSM 1 and DUSM 4 were able to place JOHNSON under arrest without further incident. JOHNSON was escorted into the USCH and taken to the U.S. Marshal cell block.

10. At approximately 2:50 AM on 07/30/2020 law enforcement conducted an in-custody recorded interview of JOHNSON. JOHNSON was advised of his Miranda Warnings and voluntarily chose to speak with law enforcement regarding the assault. JOHNSON stated that he has been attending the protest in downtown Portland for two weeks and had learned of the

**Page 5 – Affidavit of Jonathan Lobell**

protests through various news sources. JOHNSON stated his reason for attending the protest was

to make sure his friends get home safe. JOHNSON stated that he did not hear any

announcements made by any law enforcement while he was outside. JOHNSON stated that he

was standing at the corner of SW 3rd Ave and SW Salmon Street and observed a smokey object

on the ground and went to pick it up and then he was tackled by individuals in camouflage

uniforms. I asked JOHNSON if he recalled any police markings and he said no. JOHNSON

stated that he was doing nothing when he was tackled. I explained to JOHNSON that I had

interviewed the DUSM's that were struck by JOHNSON and he stated that he never struck

anyone. JOHNSON stated that once the individuals in camouflage uniforms placed handcuffs on

him, he did not resist. I did not ask JOHNSON any further questions at that time and stopped

recording the interview.

11.     At approximately 3:00AM on July 30, 2020, I began a new recorded interview.

JOHNSON signed a Miranda waiver form and was notified he was being charged with assault.  I

informed JOHNSON of his rights again and he acknowledged them and agreed to waive them to

continue to speak with myself and DUSM Cozart. JOHNSON stated that he was concerned about

the charges and asked why, if he was tackled from behind how he could be charged with assault.

I explained to JOHNSON that four DUSMS were involved in his arrest and all observed

JOHNSON resist and strike DUSM 2 and DUSM 3. No further questions were asked of

JOHNSON regarding the assault at that time and the interview was concluded.

12.     I conducted a criminal history check on JOHNSON after the interview and

learned that JOHNSON has a criminal history in Oregon from 2007 to 2013 to include DUI,

Failure to Appear, Probation violations.

 **Page 6 – Affidavit of Jonathan Lobell**

## Conclusion

13.     Based on the foregoing, I have probable cause to believe, and I do believe, that Jordan Matthew JOHNSON committed a violation of 18 U.S.C. § 111(a), and in so doing made physical contact with DUSM 2 and DUSM 3.

14.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight, who advised that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*/s/ Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*
Jonathan Lobell
Deputy U.S. Marshal
U.S. Marshals Service

Sworn to by telephone or other reliable means at ___10:36___ a.m./p.m. in accordance with Fed. R. Crim. P. 4.1 this ___30___ day of July 2020.

_____
HONORABLE Jolie A. Russo
United States Magistrate Judge

**Page 7 – Affidavit of Jonathan Lobell**

# ATTACHMENT 22

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

**SEALED**

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Jesse Herman Bates | ) Case No. 3:20-mj-215 |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of ___July 13, 2020___ in the county of ___Multnomah___ in the
___ District of ___Oregon___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 231(a)(3) | Civil Disorder |

This criminal complaint is based on these facts:

Please see attached affidavit by FBI Special Agent Kevin Strauss.

☑ Continued on the attached sheet.

| |
|---|
| (By Phone) |
| *Complainant's signature* |
| Kevin Strauss, FBI SA |
| *Printed name and title* |

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at __11:23__ a.m./p.m.

Date: ___08/25/2020___

*Youlee Yim You*
*Judge's signature*

City and state: ___Portland, Oregon___      Youlee Yim You, U.S. Magistrate Judge
*Printed name and title*

SEALED

DISTRICT OF OREGON, ss:                        AFFIDAVIT OF KEVIN STRAUSS

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kevin Strauss, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Federal Bureau of Investigation and have been for

16 years.  I am trained in investigating a wide variety of violations of federal criminal law.  I am

currently assigned to the FBI Portland Division Violent Crimes squad, where I have investigated

Crimes Against Children, Bank Robbery, Kidnapping, Assault on Federal Employees, and Crime

Aboard Aircraft.  I am part of the Human Trafficking Task Force which also includes other FBI

Special Agents and Task Force Officers.  This task force is an intelligence-driven, proactive,

multi-agency investigative initiative to combat the proliferation of various forms of human

trafficking to include child exploitation and trafficking facilitated by an online computer.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for

Jesse Herman BATES, for Civil Disorder in violation of 18 U.S.C. § 231(a)(3).  As set forth

below, there is probable cause to believe, and I do believe, that BATES fired an object from a

slingshot at a firefighter for the intended purpose of obstructing, impeding, or interfering in a

violent manner with such firefighter, that he did so knowingly and willfully, and that he did so

during a civil disorder that adversely affected interstate commerce.

**Applicable Law**

4.      Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to

commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer

lawfully engaged in the lawful performance of his official duties incident to and during the

commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects

**Page 1 – Affidavit of Kevin Strauss**                        **USAO Version Rev. April 2018**

commerce or the movement of any article or commodity in commerce … shall be fined under this title or imprisoned not more than five years, or both." Title 18 U.S.C. § 231 provides that "[t]he term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

### Statement of Probable Cause

5.     At approximately 2:00 a.m. on July 13, 2020, a firefighter medic (FFM) was working with a crew of firefighters to put out a fire burning in the middle of the intersection of SW 3rd Avenue and SW Main Street in downtown Portland, Oregon, which blocked traffic. An estimated crowd of 300 people were in the immediate area, some of whom were assaulting police officers and committing acts of vandalism and property damage. The FFM, who was wearing a grey uniform that clearly displayed a large "medic" patch, was walking across the street to brief his team when he was shot in the chest with a round metal ball bearing. The FFM said the shot came from a protester armed with a "wrist rocket" style slingshot. A Multnomah County Sheriff's Deputy saw the suspect on camera and identified BATES as the slingshot shooter. BATES was also identified by the clothing he wore that early morning: black and white Adidas shoes, a large white logo on his back, and white coloring on the knees of his pants.

6.     At approximately 3:50 a.m., law enforcement officers spotted BATES near a white tent located on Lownsdale Square, between SW 3rd Avenue and 4th Avenue and SW Salmon Street and Main Street. BATES was holding a crowbar, and when officers told him he was under arrest, BATES ran with the crowbar in hand. After receiving a less than lethal munition to his backside, BATES dropped the crowbar and was taken into custody.

## Conclusion

7.     Based on the foregoing, I have probable cause to believe, and I do believe, that Jesse Herman BATES intentionally obstructed, impeded, and interfered with a firefighter who was engaged in the lawful performance of his duties when Bates struck him with a metal ball bearing; moreover, all of these actions took place during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. § 231(a)(3).  I therefore request that the Court issue a criminal complaint and arrest warrant for Jesse Herman BATES.

8.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Kelly A. Zusman, and AUSA Zusman advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

## Request for Sealing

9.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized

/ / /

/ / /

/ / /

**Page 3 – Affidavit of Kevin Strauss**                    **USAO Version Rev. April 2018**

is relevant to an ongoing investigation, and any disclosure of the information at this time is likely

to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the

criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation

_____(By Phone)_____
KEVIN STRAUSS
Special Agent, Federal Bureau of Investigation


     Subscribed and sworn in accordance with the requirements of FED. R. CRIM. P. 4.1 by

telephone at __11:23__ a.m./p.m. on __25th__ day of August 2020.

*Youlee Yim You*
_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

# ATTACHMENT 23

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

|  |  |  |
|---|---|---|
| United States of America | ) | **SEALED** |
| v. | ) |  |
|  | ) | Case No.    3:20-mj-00223 |
|  | ) |  |
|  | ) |  |
| Michelle Peterson O'Connor | ) |  |
|  | ) |  |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____August 24, 2020____ in the county of ____Multnomah____ in the
_____ District of ____Oregon____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 231(a)(3) | Civil Disorder - Intentionally Obstructing, Impeding, Interfering with Law Enforcement Officers Engaged in Official Duties |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Landon Berryman

☑ Continued on the attached sheet.

_____
/s/ Landon Berryman
*Complainant's signature*

FBI Special Agent Landon Berryman
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 11:09 a.m.

Date:    08/30/2020

_____
*Judge's signature*

City and state:    Portland, Oregon        Hon. Youlee Yim You, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:                           AFFIDAVIT OF LANDON BERRYMAN

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Landon Berryman, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September of 2018.  I am currently assigned to the Portland Division Violent Crimes squad, which investigates a variety of violations dealing with the Federal Criminal Code.  Prior to working in the FBI, I was a sworn peace officer in Arizona from 2011 to 2018.  I am a graduate of the FBI Academy in Quantico, Virginia, and have completed extensive training in numerous areas of law enforcement investigations and techniques, including computer-related crimes, search warrant execution, and violent crimes such as bank robberies and kidnappings.  I have been empowered under Title 18, United States Code, Sections 3052 and 3053, and Rule 4 of the Federal Rules of Criminal Procedure, to conduct investigations and make arrests for federal criminal offenses, including violations of 18 U.S.C. § 231(a)(3) (civil disorder – obstruction of law enforcement); 18 U.S.C. § 2101 (riot); and 18 U.S.C. § 371 (conspiracy).

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Michelle Peterson O'Connor, for civil disorder in violation of 18 U.S.C. § 231(a)(3).  As set forth below, there is probable cause to believe, and I do believe, that O'Connor threw a hard object capable of causing injury at a law enforcement officer and assaulted a public safety officer for the purpose of obstructing, impeding, or interfering in a violent manner with such law enforcement officers; that she did so knowingly and willfully; and that she did so during a civil disorder that adversely affected interstate commerce.

## Applicable Law

3.      Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce . . . shall be fined under this title or imprisoned not more than five years or both." The term "civil disorder" means "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

## Statement of Probable Cause

4.      On August 24, 2020, Portland Police Bureau Sergeant Justin Damerville was a member of the Portland Police Bureau (PPB) Rapid Response Team (RRT) conducting crowd control duties in relation to a declared riot at the Portland Police Northeast Precinct located at 449 NE Emerson Street, Portland, Oregon 97211.

5.      An unruly crowd near NE Emerson and NE Martin Luther King Jr. Blvd engaged in criminal activity. The crowd blocked NE Martin Luther King Jr. Blvd to vehicular traffic and set a dumpster on fire in the middle of the street. An unlawful assembly/riot was announced by PPB. The announcements were communicated the sound truck and were made numerous times throughout the night. The lawful orders were not followed. These orders included warnings about the use of force. Still, the unruly crowd did not leave the area.

6.      At approximately 1:00 a.m., all mobile field forces and RRT members were tasked to make arrests on subjects who had not left after an unlawful assembly/riot was announced.  This was the second time Portland Police Officers assigned to those unruly events were tasked to make arrests.

7.      PPB Officer F. Barron observed Sgt. Damerville engaged in an arrest of a male subject on the street.  While Sgt. Damerville was arresting the subject, O'Connor was seen picking up a black helmet from the ground and, from a distance of three to five feet, throwing the helmet at Sgt. Damerville, striking him in the head.  Sgt. Damerville was wearing his PPB helmet when he was struck.  He later said his "bell was rung" from the strike to the head and he had neck pain as a result.

8.      PPB Officers arrested O'Connor after witnessing the assault.  During the interview and processing of O'Connor, PPB Detective B. Declercque overheard O'Connor talking with another arrested subject who was in the same area.  O'Connor said she was attempting to "un-arrest" a friend when she hit the officer, and admitted she made a mistake.

9.      Detective Declercque read O'Conner her *Miranda* warnings at 3:29 a.m. and she agreed to be interviewed and answer his questions.  O'Connor said she attended the protest because she felt that the police needed to be defunded in order to enact criminal justice reform. She said she was about to leave the protest near NE MLK/Killingsworth when officers began arresting her good friend, who was standing next to her.  O'Connor said officers had her friend on the ground and one officer was physically on top of her friend.  O'Connor said she was upset and was worried her friend might be hurt while being arrested.  O'Connor said she observed a

helmet lying on the ground nearby.  O'Connor said she picked up the helmet and intentionally

struck one of the officers in the head with the helmet.  O'Connor said the officer was wearing a

helmet when she struck him.  O'Connor said she intentionally targeted the officer that was on top

of her friend.  O'Connor said she aimed for the officer's head and struck him on the side of his

helmet.

## Conclusion

10.     Based on the foregoing, I have probable cause to believe, and I do believe, that

Michelle Peterson O'Connor intentionally obstructed, impeded, and interfered with a police

officer who was engaged in the lawful performance of his duties; and these actions took place

during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. §

231(a)(3).  I therefore request that the Court issue a criminal complaint and arrest warrant for

Michelle Peterson O'Connor.

11.     Prior to being submitted to the Court, this affidavit, the accompanying complaint

and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Thomas S.

Ratcliffe.  AUSA Ratcliffe advised me that, in his opinion, this affidavit is legally and factually

sufficient to establish probable cause to support the issuance of the requested criminal complaint

and arrest warrant.

## Request for Sealing

12.     I respectfully request that the Court issue an order sealing, until further order of

the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.

I believe that sealing these documents is necessary because any disclosure of the information at

this time may endanger the life or physical safety of an individual, cause flight from prosecution, or otherwise seriously jeopardize an investigation, including the planned arrest of the defendant.

**/s/ Landon Berryman**
Landon Berryman
Special Agent,
Federal Bureau of Investigation

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 11:09 a.m. on August 30, 2020.

_Youlee Yim You_
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

# ATTACHMENT 24

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.  3:20-mj-00232 |
| | ) |
| | ) |
| William Grant Reuland | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 13, 2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 231(a)(3) | Civil Disorder - Intentionally Obstructing, Impeding, Interfering with Law Enforcement Officers Engaged in Official Duties |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Dominic Sanchez

☑ Continued on the attached sheet.

_____
/s/ Dominic Sanchez
*Complainant's signature*

_____
FBI Special Agent Dominic Sanchez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at ___10:40___ a.m./p.m.

Date: _____September 4, 2020_____

_____
*Judge's signature*

City and state: _____Portland, Oregon_____     Hon. Jolie A. Russo, U.S. Magistrate Judge
_____
*Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF DOMINIC SANCHEZ

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Dominic Sanchez, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Federal Bureau of Investigation and have been since November 2018.  My current assignment is on the Violent Crimes Squad which includes conducting robbery and human trafficking investigations, as well as investigations into other violations of federal law.  My training and experience includes over one thousand hours of training and over ten years of federal law enforcement experience.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for William Grant REULAND, for civil disorder in violation of 18 U.S.C. § 231(a)(3).  As set forth below, there is probable cause to believe, and I do believe, that REULAND shined a laser pointer in the faces of multiple law enforcement officers for the intended purpose of obstructing, impeding, or interfering in a violent manner with such law enforcement officers; that REULAND did so knowingly and willfully; and that REULAND did so during a civil disorder that adversely affected interstate commerce.

**Applicable Law**

3.      Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to an during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce . . . shall be fined under this title or imprisoned not more than five years or both."  The term "civil disorder" means "any

public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

## Statement of Probable Cause

4.      The information stated herein is based on my own personal involvement in this investigation, as well as my discussions with other law enforcement officers involved in this investigation, and information I have read that is contained in written reports pertaining to this investigation.  This affidavit does not include all facts known to me regarding this investigation but contains only those facts which I believe are sufficient to establish the requisite probable cause.

5.      On May 25, 2020, George Floyd died during his arrest by law enforcement officers in Minneapolis, Minnesota, sparking nationwide protests that eventually extended to Portland, Oregon.  The protests have, at times, included violence, civil disorder, arson, and looting.

6.      On June 13, 2020, at approximately 10:00 p.m., a group of individuals congregated around the Multnomah County Justice Center (Justice Center) and proceeded to block traffic on SW Main St, outside of Portland Police Bureau's (PPB) Central Precinct. According to a PPB press release, a civil disturbance was declared and the crowd was given the opportunity to disperse and were warned if they did not do so, they were subject to arrest or force.  The same press release stated that demonstrators were throwing projectiles at officers and lasers were being directed at officers as officers began dispersing the crowd just after 10:50 p.m.

**Page 2 – Affidavit of Dominic Sanchez**                    **USAO Version Rev. April 2018**

7.      A PPB officer (Officer 1) was watching the crowd from the roof of the Justice Center and observed two individuals, one later identified as REULAND, standing in the middle of SW Main St, just west of 3rd Ave.  REULAND and the other individual repeatedly hit Officer 1 and four other officers in the face with lasers.  Officer 1 was able to move to a lower floor and use a camera to take photographs of REULAND.  While taking the photographs, Officer 1 again witnessed REULAND and the other individual pointing green lasers toward the other officers on the roof.  Officer 1 sent the photographs to a PPB Sergeant for distribution to other officers.

8.      After the crowd was dispersed from the area of SW 3rd Ave and SE Main St., Officer 1 followed the crowd and kept track of REULAND.  According to a PPB press release, at approximately 12:30 a.m. on June 14, 2020, a group of individuals marched to Mayor Ted Wheeler's residence on SW Jackson St.  This group had blocked streets as part of this movement.  REULAND was part of this group, and Officer 1 observed REULAND shining a laser at the Mayor's residence and at other homes in the neighborhood.  Additionally, Officer 1 witnessed REULAND go to the door of the Mayor's residence. A PPB sound truck also arrived and provided multiple audible warnings to vacate the area.

9.      Another PPB officer (Officer 2) was working in the vicinity of the Mayor's residence and saw REULAND.  Officer 2 had reviewed the photographs that Officer 1 had distributed earlier and confirmed that the photographs were of the same individual that Officer 2 saw.  Officer 2 approached REULAND and took him into custody.  In REULAND's left pants pocket, one laser pointer was located.  In REULAND's fanny pack, another three laser pointers were located.  Officer 2 conducted tests of several of the laser pointers and discovered that one was green in color.  REULAND asked Officer 2 what he was being arrested for and Officer 2

**Page 3 – Affidavit of Dominic Sanchez**                    **USAO Version Rev. April 2018**

stated that REULAND was being arrested for pointing laser pointers at police officers. REULAND responded "that's not against the law."

10.     Officer 1 was able to observe REULAND until he was taken into custody by other PPB officers.  After the arrest, Officer 1 responded to PPB's Detective Division where he was able to confirm that REULAND was one of the individuals who he observed shining green lasers at police officers.

11.     During a post-*Miranda* interview, REULAND told PPB detectives that he had gone to the Justice Center at about 8:30 p.m.  REULAND stated he got out his camera and began to film, and the police began shooting pepper balls toward him.  REULAND stated the police announced it was an unlawful assembly and he left.  When questioned about whether he was at the Mayor's residence, REULAND initially said "no sir," but later stated that he misspoke and confirmed that he went to the Mayor's residence but asserted did not go on the property.

### Conclusion

12.     Based on the foregoing, I have probable cause to believe, and I do believe, that REULAND knowingly, willfully and intentionally obstructed, impeded, and interfered with law enforcement officers who were engaged in the lawful performance of their duties by shining a laser pointer at officers.  All of these actions took place during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. § 231(a)(3).  I therefore request that the Court issue a criminal complaint and arrest warrant for REULAND.

13.     Prior to being submitted to the Court, this affidavit was reviewed by Assistant United States Attorney (AUSA) Thomas S. Ratcliffe.  AUSA Ratcliffe advised me that, in his

**Page 4 – Affidavit of Dominic Sanchez**                    **USAO Version Rev. April 2018**

opinion, the affidavit is legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

14.     I respectfully request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, or otherwise seriously jeopardize an investigation, including the planned arrest of the defendant.

**/s/ Dominic Sanchez**
Dominic Sanchez
Special Agent, Federal Bureau of Investigation

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __10:40am__ on September ___4___, 2020.

THE HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

# ATTACHMENT 25

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  3:20-mj-00230 |
| | ) | |
| | ) | |
| Pedro Aldo Ramos, Jr. | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____August 24, 2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 231(a)(3) | Civil Disorder - Intentionally Obstructing, Impeding, Interfering with Law Enforcement Officers Engaged in Official Duties |

This criminal complaint is based on these facts:

   See attached affidavit of FBI Special Agent Brendan M. Dennard

☑ Continued on the attached sheet.

_____
/s/ Brendan M. Dennard
*Complainant's signature*

_____
FBI Special Agent Brendan M. Dennard
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at ___4:47___ a.m./p.m.

Date:   ___September 3, 2020___

_____
*Judge's signature*

City and state:         ___Portland, Oregon___

_____
Hon. Jolie A. Russo, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF BRENDAN M. DENNARD

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Brendan M. Dennard, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent (SA) with the FBI and have been so employed for nine years.  I am currently assigned to a squad that is responsible for investigating violent crime, fugitive apprehensions, and crimes against children.  In 2011, I successfully completed 21 weeks of training at the FBI Academy located in Quantico, Virginia.  During that time, I was taught the use and practical application of various investigative techniques that Federal law enforcement officers are allowed to employ.

2.      Prior to my current squad assignment, I was tasked with coordinating the FBI-led Safe Streets Metro Gang Task Force (MGTF) and had done so for five plus years.  Prior to that, I was part of the Clackamas County Sheriff's Office Inter-Agency Task Force and had been assigned for approximately a year and a half.  As a member of these task forces, as well as my current assignment, I have been empowered under Title 18, United States Code, Sections 3052 and 3053, and Rule 4 of the Federal Rules of Criminal Procedure, to conduct investigations and make arrests for federal criminal offenses, including violations of 18 U.S.C. § 231(a)(3) (civil disorder – obstruction of law enforcement), 18 U.S.C. § 231(a)(1) (civil disorder - incendiary device),  18 U.S.C. § 844(f)(1)  (arson), 18 U.S.C. § 2101 (riot), and 18 U.S.C. § 371 (conspiracy).  During my employment, I have been involved in the investigation and arrest of individuals charged with the aforementioned crimes and have assisted in the execution of search warrants and court orders based on those statutes.

3.      I submit this affidavit in support of a criminal complaint and arrest warrant for PEDRO

ALDO RAMOS JR., for civil disorder in violation of 18 U.S.C. § 231(a)(3).  As set forth below,

there is probable cause to believe, and I do believe, that RAMOS assaulted a police officer for

the intended purpose of obstructing, impeding, or interfering in a violent manner with such law

enforcement officer; that RAMOS intentionally participated in blocking traffic on a public street;

that RAMOS did so knowingly and willfully, and that RAMOS did so during a civil disorder that

adversely affected interstate commerce.

## Applicable Law

4.      Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to

commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer

lawfully engaged in the lawful performance of his official duties incident to an during the

commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects

commerce or the movement of any article or commodity in commerce . . . shall be fined under

this title or imprisoned not more than five years or both."  The term "civil disorder" means any

public disturbance involving acts of violence by assemblages of three or more persons, which

causes an immediate danger of or results in damage or injury to the property or person of any

other individual."

## Statement of Probable Cause

5.      The information stated herein is based on my own personal involvement in this

investigation, as well as my discussions with other law enforcement officers involved in this

investigation, and information I have read that is contained in written reports pertaining to this

investigation.  This affidavit does not include all facts known to me regarding this investigation

 **Page 2 – Affidavit of BRENDAN M. DENNARD**

but contains only those facts which I believe are sufficient to establish the requisite probable cause.

6.      On May 25, 2020, George Floyd died during his arrest by law enforcement officers in Minneapolis, Minnesota, sparking nationwide protests that extended to Portland, Oregon.  The protests have, at times, included violence, civil disorder, arson, and looting.

7.      On August 23, 2020, a group estimated at more than 200 people, gathered around the Portland Police Bureau (PPB) North Precinct located at 449 NE Emerson Street, Portland, Oregon.  This precinct sits on the southeast corner of NE Martin Luther King Jr (MLK) Boulevard and NE Killingsworth Street.  At this location, MLK Blvd has four lanes of travel while Killingsworth St has two; MLK is a major road in this area that runs north and south. Protestors were present in the streets, effectively blocking traffic in both directions.

8.      Around 10:29 p.m., the gathering was declared an unlawful assembly due to individuals throwing chunks of ceramic, rocks, and glass bottles at officers.  Participants were ordered to leave the area.  Around 11:08 p.m., the event was deemed a riot due to the ongoing criminal behavior.  Officers were struck by bottles, paint bombs, rocks, and heavy metal screws that were deliberately thrown at them.  Participants were once again ordered to disperse.

9.      Around 12:45 a.m. on August 24, 2020, PPB officers assigned to the Mobile Field Force were working the ongoing riot.  An officer, hereafter Victim 1 (V1), was taking a female subject into custody who refused to follow the dispersal orders and subsequently, assaulted the officer.  While V1 was arresting the subject, RAMOS ran up to the arresting officer, grabbed ahold of V1's vest, and attempted to pull V1 off the arrestee.  RAMOS then punched V1 on the side of her face.  The assault was observed by a fellow officer, hereafter, Witness 1 (W1).

 **Page 3 – Affidavit of BRENDAN M. DENNARD**

RAMOS was subsequently arrested by police for Assault on a Public Safety Officer, among other charges.

### Conclusion

10.     Based on the foregoing, I have probable cause to believe, and I do believe, that RAMOS intentionally obstructed, impeded, and interfered with law enforcement officers who were engaged in the lawful performance of their duties when RAMOS assaulted a police officer while participating in the blocking of traffic on a public street.  RAMOS's actions took place during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. § 231(a)(3).  I therefore request that the Court issue a criminal complaint and arrest warrant for RAMOS.

11.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Pamela Paaso, AUSA Paaso advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/     /     /


/     /     /

### Request for Sealing

12.     I respectfully request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because any disclosure of the information at

 **Page 4 – Affidavit of BRENDAN M. DENNARD**

this time may cause flight from prosecution, or otherwise seriously jeopardize an investigation, including the planned arrest of the defendant.

/s/Brendan M. Dennard
Brendan M. Dennard
Special Agent, Federal Bureau of Investigation

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___4:47pm___ on September ___3___, 2020.

THE HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 5 – Affidavit of BRENDAN M. DENNARD**

# ATTACHMENT 26

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

**SEALED**

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | 3:20-mj-00216 |
| | ) | |
| KRISTOPHER MICHAEL DONNELLY | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____August 5th & 8th, 2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 231(a)(3) | Civil Disorder - Intentionally Obstructing, Impeding, Interfering with Law Enforcement Officers Engaged in Official Duties |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Joseph Youngblood

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Joseph O. Youngblood
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone at _____5:35_____ a.m./p.m.

Date: _____08/26/2020_____

*Youlee Yim You*
_____
*Judge's signature*

City and state: _____Portland, Oregon_____    Hon. Youlee Yim You, U.S. Magistrate Judge
_____
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF Joseph O. Youngblood

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Joseph O. Youngblood, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.       I am a Special Agent with the Federal Bureau of Investigation and have been employed as such since July of 2019. I successfully completed 21 weeks of training at the FBI Academy located in Quantico, Virginia. During that time, I was taught the use and practical application of various investigative techniques that federal law enforcement officers are allowed to employ. Since December of 2019, I have been assigned to the Portland Division Violent Crime Squad. My training and experience include my time in the FBI as well as four years of previous federal law enforcement experience as a Military Police Officer in the United States Marine Corps. I have been empowered under Title 18, United States Code, Sections 3052 and 3053, and Rule 4 of the Federal Rules of Criminal Procedure, to conduct investigations and make arrests for federal criminal offenses, including violations of 18 U.S.C. § 231(a)(3) (civil disorder – obstruction of law enforcement), 18 U.S.C. § 231(a)(1) (civil disorder - incendiary device), 18 U.S.C. § 844(f)(1) (arson), 18 U.S.C. § 2101 (riot), and 18 U.S.C. § 371 (conspiracy).

2.       I submit this affidavit in support of a criminal complaint and arrest warrant for Kristopher Michael Donnelly, for civil disorder in violation of 18 U.S.C. § 231(a)(3). As set forth below, there is probable cause to believe, and I do believe, that on two occasions Donnelly has thrown hard objects capable of causing injury at law enforcement officers and has assaulted a public safety officer and resisted arrest for the purpose of obstructing, impeding, or interfering in

a violent manner with such law enforcement officers; that he did so knowingly and willfully, and that he did so during a civil disorder that adversely affected interstate commerce.

## Applicable Law

3.      Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to an during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce . . . shall be fined under this title or imprisoned not more than five years or both."  The term "civil disorder" means "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

## Statement of Probable Cause

4.      On August 5, 2020, Portland Police Bureau Officer Dustin L. Barth was a member of the Portland Police Bureau Riot Response team conducting crowd control duties in relation to a declared riot at the Portland Police East Precinct located at 737 SE 106th Avenue, Portland, Oregon 97216.  At approximately 10:30 p.m. on August 5th, Officer Barth conducted a lawful arrest of subject Kristopher Donnelly.  Donnelly was previously observed by police using a hammer to destroy a window at the Portland Police Bureau East Precinct.  Immediately preceding his arrest, Donnelly was identified by police, due to his distinctive hair, throwing empty teargas grenade canisters, hard objects capable of causing injury, at police while refusing to disperse from SE 106th Avenue and blocking traffic.  Officer Barth informed Donnelly he was

under arrest and attempted to take him into custody. Donnelly then forcefully struck Officer

Barth in the face using his elbow. Donnelly continued to resist arrest, requiring several more

officers to assist Officer Barth, before Donnelly was successfully taken into custody. Donnelly

was charged under Oregon State law with Riot, Disorderly Conduct II, Interfering with a Public

Safety Officer, Assaulting a Public Safety Officer, Vandalism, and Resisting Arrest.

5.      On August 8, 2020, Donnelly was arrested by Portland Police Bureau Officer

Joshua Dyk during a declared riot outside of the Penumbra Kelly Building at 4735 E Burnside

Street, Portland, Oregon 97215. Donnelly was observed by law enforcement blocking the street

and throwing frozen eggs, hard objects capable of causing injury, at officers, which precipitated

his arrest. Donnelly attempted to flee from officers and resisted arrest before successfully being

taken into custody. Donnelly was charged under Oregon State law with Interfering with a Public

Safety Officer, Riot, and Disorderly Conduct II.

## Conclusion

6.      Based on the foregoing, I have probable cause to believe, and I do believe, that

Kristopher Michael Donnelly on the above two occasions intentionally obstructed, impeded, and

interfered with a police officer who was engaged in the lawful performance of his duties;

moreover, all of these actions took place during a civil disorder that adversely affected interstate

commerce in violation of 18 U.S.C. § 231(a)(3). I therefore request that the Court issue a

criminal complaint and arrest warrant for Kristopher Michael Donnelly.

7.      Prior to being submitted to the Court, this affidavit, the accompanying complaint

and the arrest warrant were all reviewed by Assistant United States Attorneys (AUSAs) Kelly A.

Zusman and Thomas S. Ratcliffe. AUSAs Zusman and Ratcliffe advised me that, in their

opinions, the affidavit and complaint are legally and factually sufficient to establish probable

cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

8.     I respectfully request that the Court issue an order sealing, until further order of

the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.

I believe that sealing these documents is necessary because any disclosure of the information at

this time may endanger the life or physical safety of an individual, cause flight from prosecution,

or otherwise seriously jeopardize an investigation, including the planned arrest of the defendant.


_____
Joseph O. Youngblood
Special Agent,
Federal Bureau of Investigation


        Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone  at 5:35 pm
on August 26, 2020.

_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge


**Page 4 – Affidavit of Joseph O. Youngblood                    USAO Version Rev. April 2018**

# ATTACHMENT 27



**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
*www.usdoj.gov/usao/or*

Paul T. Maloney
Assistant U.S. Attorney
Paul.Maloney@usdoj.gov
(503) 727-1000
*Reply to Portland Office*

**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Billy J. Williams, United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

## DEFERRED SENTENCING AGREEMENT

*United States v. Lillith Etienne*
*Grin Case No. 3:20-cr-290-YY*

1.    **Parties/Scope**:  This Deferred Sentencing Agreement ("Agreement") is between this United States Attorney's Office ("USAO") and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority.  This Agreement does not apply to any charges other than those specifically mentioned herein.  The parties agree that defendant's interests and the interests of justice will be served by entering into this Agreement.

2.    **Charge**:  Defendant agrees to plead guilty to Count 1 of the Information, which charges the offense of assault on a federal officer in violation of Title 18, United States Code, Section 111(a)(1).

3.    **Penalties**:  The maximum sentence is 1 year imprisonment, a fine of $100,000, a term of supervised release not to exceed 1 year, and a $25 fee assessment. Defendant agrees to pay the fee assessment by the time of sentencing or explain to the Court why this cannot be done. Defendant further stipulates to abandon the instrumentality of this offense (a laser).

4.    **Dismissal/No Prosecution**:  The USAO will move at the time of sentencing to dismiss any remaining counts against defendant.  The USAO further agrees not to bring additional charges against defendant in the District of Oregon arising out of this investigation, known to the USAO at the time of this agreement.

5.    **Elements and Factual Basis**:  In order for defendant to be found guilty of Count One of the Indictment, the government must prove the following elements beyond a reasonable doubt:

First, the defendant forcibly assaulted Agent Victim 1; and

Second, the defendant did so while Agent Victim 1 was engaged in, or on account of his official duties.

Defendant admits the elements of the offense alleged in Count One of the Information.

The government's investigation can establish the following facts beyond a reasonable doubt. On July 12, 2020 defendant was present at a protest outside the Mark O. Hatfield

Deferred Sentencing Agreement
*United States v. Lillith Etienne Grin*
Page 2

Courthouse. Defendant shined a green laser into the eyes of Agent Victim 1 (AV1), a deputy U.S. Marshal who was in uniform, clearly marking him as a federal police officer. When AV1 and another officer approached defendant, she assaulted AV1 again with the laser, directing the laser into his eyes. AV1 and the other officer attempted to take defendant into custody, but defendant struggled and resisted against the officers efforts. The officer had to use a Taser multiple times to subdue defendant.

During a search incident to this arrest, officers recovered the laser device. The device was labeled with a warning to avoid eye exposure and that the laser from the device could damage an individual's eyes and skin. AV1 was not wearing eye protection when he was assaulted. AV1 complained that his vision was affected by the assault for 30 minutes after the incident, and that he was experiencing blurry vision and "sunspots." Several months after the assault AV1 stated that his vision is fine, and that he has had no long term effects from the assault.

6.   **Sentencing Factors**:  The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a).  Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

7.   **Relevant Conduct**:  The parties agree that defendant's relevant conduct pursuant to USSG § 2A2.4 is a Base Offense Level of 10, prior to adjustments.

8.   **Acceptance of Responsibility**:  Defendant must demonstrate to the Court that defendant fully admits and accepts responsibility under USSG § 3E1.1 for defendant's unlawful conduct in this case.  If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level (two levels if defendant's offense level is less than sixteen).  The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in USSG § 3E1.1.

9.   **Sentencing Recommendation**:  If the matter proceeds to sentencing, the USAO will recommend the low end of the applicable guideline range as long as defendant demonstrates an acceptance of responsibility as explained above. Defendant is free to argue for any lawful sentence.

10.   **Abandonment of Instrumentality**:  By signing this agreement, defendant hereby voluntarily abandons all right, title, and interest to the laser device seized by investigators.

11.   **Waiver of Appeal/Post-Conviction Relief**:  Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline sentencing range as determined by the Court.  Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal.  Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or

Deferred Sentencing Agreement
*United States v. Lillith Etienne Grin*
Page 3

sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as
provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2). In the event that [any of]
defendant's conviction(s) under this agreement are vacated, the government may reinstate and/or
file any other charges, and may take any position at a resentencing hearing, notwithstanding any
other provision in this agreement.

12.     **Court Not Bound**: The Court is not bound by the recommendations of the parties or of
the presentence report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of
the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind
this plea agreement if the Court does not follow the agreements or recommendations of the
parties.

13.     **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and
the Court of the facts and law related to defendant's case. Except as set forth in this agreement,
the parties reserve all other rights to make sentencing recommendations and to respond to
motions and arguments by the opposition.

14.     **Conditions**: From the date of this Agreement, until sentencing, defendant agrees to
fulfill the following conditions:

> A. Comply with all the conditions in the Amended Order Setting Conditions of
> Release (ECF #8);
> B. Take all medications as prescribed;
> C. Complete 30 hours of community service.

15.     **Breach of Agreement**: If defendant breaches the terms of this agreement, or commits
any new criminal offenses between signing this agreement and sentencing, the USAO is relieved
of its obligations under this agreement, but defendant may not withdraw any guilty plea.

        If defendant believes that the government has breached the plea agreement, defendant
must raise any such claim before the district court, either prior to or at sentencing. If defendant
fails to raise a breach claim in district court, defendant has waived any such claim and is
precluded from raising a breach claim for the first time on appeal.

16.     **Verification**: Defendant understands that 30 days prior to sentencing, the USAO will
consult with the U.S. Pretrial Services Office and re-check defendant's criminal history. The
USAO will rely on counsel for defendant to verify by email to the USAO that defendant has
completed the community service.

17.     **Dismissal**: If the USAO determines that defendant has successfully fulfilled the
conditions outlined above, the USAO will join in her motion to withdraw her guilty plea under
Fed. R. Crim. P. 11(d)(2)(B). The USAO agrees to dismiss the criminal charges in this case, with
prejudice. The USAO further agrees not to bring additional criminal charges against defendant
in the District of Oregon arising out of this investigation, known to the USAO at the time of this
agreement.

Deferred Sentencing Agreement
*United States v. Lillith Etienne Grin*
Page 4

18.    **Memorialization of Agreement**:  No promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court.  If defendant agrees to the terms of this deferred sentencing agreement, please sign and attach the original of this letter to the Petition to Enter Plea.

19.    **Deadline**:  This plea offer expires if not accepted within two weeks of the date of this letter.


The parties understand the conditions of this agreement and agree to comply with them.


12·3·2020
_____
Date

_____
Lillith Etienne Grin
Defendant


12·3·2020
_____
Date

_____
Michelle Sweet
Counsel for Defendant


November 24, 2020
_____
Date

/s/ *Paul T. Maloney*
_____
Paul T. Maloney
Assistant United States Attorney

# ATTACHMENT 28

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

**SEALED**

United States of America )
v. )
) Case No.
) 3:20-mj- 00235
)
Charles Randolph Comfort )
)

_Defendant(s)_

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _June 25-26, 2020_ in the county of _Multnomah_ in the
_____ District of _Oregon_ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 231(a)(3) | Civil Disorder - Intentionally Obstructing, Impeding, Interfering with Law Enforcement Officers Engaged in Official Duties |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Dominic Sanchez

☑ Continued on the attached sheet.

/s/ Dominic Sanchez
_Complainant's signature_

FBI Special Agent Dominic Sanchez
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _6:17_ a.m./p.m.

Date: _September 4, 2020_
_Judge's signature_

City and state: _Portland, Oregon_ Hon. Jolie A. Russo, U.S. Magistrate Judge
_Printed name and title_

SEALED

DISTRICT OF OREGON, ss:                      AFFIDAVIT OF DOMINIC SANCHEZ

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Dominic Sanchez, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Federal Bureau of Investigation and have been since November 2018.  My current assignment is on the Violent Crimes Squad which includes conducting robbery and human trafficking investigations, as well as investigations into other violations of federal law.  My training and experience includes over one thousand hours of training and over ten years of federal law enforcement experience.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Charles Randolph COMFORT for civil disorder in violation of 18 U.S.C. § 231(a)(3).  As set forth below, there is probable cause to believe, and I do believe, that COMFORT has assaulted Portland Police Bureau (PPB) officers for the purpose of obstructing, impeding, or interfering in a violent manner with such law enforcement officers; that he did so knowingly and willfully; and that he did so during a civil disorder that adversely affected interstate commerce.

### Applicable Law

3.      Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to an during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce . . . shall be fined under this title or imprisoned not more than five years or both."  The term "civil disorder" means "any public disturbance involving acts of violence by assemblages of three or more persons, which

causes an immediate danger of or results in damage or injury to the property or person of any other individual."

## Statement of Probable Cause

4.      The information stated herein is based on my own personal involvement in this investigation, as well as my discussions with other law enforcement officers involved in this investigation, and information I have read that is contained in written reports pertaining to this investigation.  This affidavit does not include all facts known to me regarding this investigation but contains only those facts which I believe are sufficient to establish the requisite probable cause.

5.      On May 25, 2020, George Floyd died during his arrest by law enforcement officers in Minneapolis, Minnesota, sparking nationwide protests that eventually extended to Portland, Oregon.  The protests have, at times, included violence, civil disorder, arson, and looting.

6.      In the evening on June 25, 2020, a group of individuals blocked traffic on NE Martin Luther King Jr Boulevard and NE Emerson Street, near PPB's North Precinct. Dumpsters were being taken from nearby businesses and rolled into the streets and fireworks were thrown over the barricade on NE Emerson Street at the officers stationed there.  An unlawful assembly was declared at approximately 1:10 a.m. on June 26, 2020, and PPB made repeated public address announcements telling the group to leave the area.

7.      A PPB Rapid Response Team (RRT) officer was assisting with moving the crowd that was in the middle of NE MLK Blvd and witnessed an individual, later identified as COMFORT, carrying a black shield that covered his torso while he blocked the street.  As the

Page 2 – Affidavit of Dominic Sanchez                    USAO Version Rev. April 2018

PPB RRT line moved toward the crowd, the officer witnessed COMFORT charge at another PPB officer while carrying the shield. The PPB officer pushed COMFORT away, but COMFORT immediately charged at the officer again. A second PPB officer also witnessed COMFORT charge at the officer while holding his shield. COMFORT was instructed to leave the area by multiple officers, but instead dropped his shield and refused to leave.

8.      Upon refusing to leave, COMFORT was advised he was being placed under arrest by the PPB officer. When the officer and his partner attempted to restrain him, COMFORT actively tried to pull away and kicked the PPB officer multiple times, resulting in the PPB officer falling to his knee.

9.      COMFORT was ultimately taken to the ground, at which point he no longer resisted and was placed in handcuffs. COMFORT requested to call his lawyer after being advised of his *Miranda* warnings.

## Conclusion

10.      Based on the foregoing, I have probable cause to believe, and I do believe, that COMFORT knowingly, willfully and intentionally obstructed, impeded, and interfered with law enforcement officers who were engaged in the lawful performance of their duties when COMFORT at least twice charged into a PPB officer and kicked another PPB officer. All of these actions took place during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. § 231(a)(3). I therefore request that the Court issue a criminal complaint and arrest warrant for COMFORT.

11.      Prior to being submitted to the Court, this affidavit was reviewed by Assistant United States Attorney (AUSA) Thomas S. Ratcliffe. AUSA Ratcliffe advised me that, in his

opinion, the affidavit is legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

12.     I respectfully request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, or otherwise seriously jeopardize an investigation, including the planned arrest of the defendant.

/s/ Dominic Sanchez
Dominic Sanchez
Special Agent, Federal Bureau of Investigation


Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _6:17pm_ on September ___4___, 2020.


THE HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 4 – Affidavit of Dominic Sanchez**                **USAO Version Rev. April 2018**

# ATTACHMENT 29

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

**SEALED**

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| | ) | 3:20-mj- 00233 |
| Alexandra Eutin | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 16, 2020 _____ in the county of _____ Multnomah _____ in the

_____ District of _____ Oregon _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 231(a)(3) | Civil Disorder - Intentionally Obstructing, Impeding, Interfering with Law Enforcement Officers Engaged in Official Duties |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Brendan Dennard

☑ Continued on the attached sheet.

_____
/s/ Brendan Dennard
*Complainant's signature*

FBI Special Agent Brendan Dennard
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at _7:48_ ☒ a.m./p.m.

Date: _September 4, 2020_

_____
*Judge's signature*

City and state:        Portland, Oregon        Hon. Jolie A. Russo, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF BRENDAN M. DENNARD

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Brendan M. Dennard, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.       I am a Special Agent (SA) with the FBI and have been so employed for nine years. I am currently assigned to a squad that is responsible for investigating violent crime, fugitive apprehensions, and crimes against children. In 2011, I successfully completed 21 weeks of training at the FBI Academy located in Quantico, Virginia. During that time, I was taught the use and practical application of various investigative techniques that Federal law enforcement officers are allowed to employ.

2.       Prior to my current squad assignment, I was tasked with coordinating the FBI-led Safe Streets Metro Gang Task Force (MGTF) and had done so for five plus years. Prior to that, I was part of the Clackamas County Sheriff's Office Inter-Agency Task Force and had been assigned for approximately a year and a half. As a member of these task forces, as well as my current assignment, I have been empowered under Title 18, United States Code, Sections 3052 and 3053, and Rule 4 of the Federal Rules of Criminal Procedure, to conduct investigations and make arrests for federal criminal offenses, including violations of 18 U.S.C. § 231(a)(3) (civil disorder – obstruction of law enforcement); 18 U.S.C. § 231(a)(1) (civil disorder - incendiary device); 18 U.S.C. § 844(f)(1) (arson); 18 U.S.C. § 2101 (riot); and 18 U.S.C. § 371 (conspiracy).

3.       I submit this affidavit in support of a criminal complaint and arrest warrant for ALEXANDRA EUTIN, for civil disorder in violation of 18 U.S.C. § 231(a)(3). As set forth below, there is probable cause to believe, and I do believe, that EUTIN struck a Portland Police

Bureau Officer's head and helmet with a piece of wood for the intended purpose of obstructing, impeding, or interfering in a violent manner with such law enforcement officer; that she did so knowingly and willfully; and that she did so during a civil disorder that adversely affected interstate commerce.

## Applicable Law

4.     Title 18 U.S.C. § 231(a)(3) provides that "whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to an during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce . . . shall be fined under this title or imprisoned not more than five years or both."  The term "civil disorder" means "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

## Statement of Probable Cause

5.     During the evening of July 16, 2020, approximately a couple hundred people gathered in the general vicinity of PPB's Southeast precinct, located on the 4700 block of East Burnside Street in Portland, Oregon.  Once the group arrived at Southeast Precinct, they gathered on East Burnside Street blocking all lanes of traffic.  For about an hour, the group shined flashlights and lasers at officers standing outside the precinct.  The group was asked by the PPB sound truck to remain peaceful.

**Page 2 – Affidavit of BRENDAN M. DENNARD**                    **USAO Version Rev. April 2018**

6.      At approximately 9:52 p.m., the group began making statements about wanting to

enter Southeast Precinct and burn down the property. The group was admonished by the sound

truck and told not to enter the property or they would be subject to arrest or use of force. The

group continued to stand in the street and started a small fire on East Burnside Street. Other

members of the group disregarded the messages given by the sound truck and crossed onto

Southeast Precinct property.

7.      At 11:45 p.m., an unlawful assembly was declared due to several people in the

crowd committing criminal activity.  The criminal activity consisted of throwing rocks, bottles,

and sticks, as well as pointing green lasers at officers.

8.      A PPB Officer (Officer #1) was part of a cadre of officers making arrests at that

time.  He was wearing markings on his clothing that clearly identified him as a police officer.

While attempting to make an arrest, Officer #1 was on the ground only a few feet from where

EUTIN was standing.  EUTIN witnessed Officer #1 attempting to make this arrest.  EUTIN had

a makeshift sign/shield made out of wood and hoses in her hand that she raised up and struck

Officer #1 with on top of his head/helmet.  Another PPB Officer (Officer #2) witnessed EUTIN's

assault on Officer #1, which was also an attempt to obstruct, impede, or interfere with the arrest

Officer #1 was attempting.  Officer #2 arrested EUTIN.

### Conclusion

9.      Based on the foregoing, I have probable cause to believe, and I do believe, that

ALEXANDRA EUTIN knowingly, willfully and intentionally obstructed, impeded, and

interfered with a law enforcement officer who was engaged in the lawful performance of his

duties when EUTIN struck a Portland Police Bureau Officer's head and helmet with a piece of wood; these actions took place during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. § 231(a)(3). I therefore request that the Court issue a criminal complaint and arrest warrant for EUTIN.

10.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Thomas Ratcliffe. AUSA Ratcliffe advised me that, in his opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

11.     I respectfully request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, or otherwise seriously jeopardize an investigation, including the planned arrest of the defendant.

/s/ Brendan Dennard
Brendan Dennard
Special Agent
Federal Bureau of Investigation

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  7:48pm  on September ___4___, 2020.

HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 4 – Affidavit of BRENDAN M. DENNARD**                    **USAO Version Rev. April 2018**

# ATTACHMENT 30

SCOTT ERIK ASPHAUG
Acting United States Attorney
District of Oregon
**THOMAS S. RATCLIFFE, ILSB #6243708**
Assistant United States Attorney
Thomas.Ratcliffe@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:20-cr-00497-BR** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JEFFREY RICHARD SINGER,** | |
| **Defendant.** | |

**Introduction**

The defendant stole the U.S. flag from the Gus J. Solomon federal courthouse in Portland, carried it several blocks while marching in the streets with a crowd, and destroyed it in front of the Portland Police Bureau's Central Precinct building. The government asks the Court to sentence the defendant to time served, plus one year of supervised release, and to order restitution of $218.50.

**Government's Sentencing Memorandum** 　　　　　　　　　　　　　　　　　　　　**Page 1**

Revised Aug. 2019

**Factual Background**

**A.      The Offense Conduct**

The PSR accurately describes the defendant's conduct on September 19, 2020.  (PSR ¶¶ 15-18.)  As part of a protest that night, the defendant stole the U.S. flag from federal property, carried it to the PPB Central Precinct building, and destroyed it by setting it ablaze.  Special agents from Homeland Security Investigations watched him do those things.  Agents also watched him break several Starbucks windows with a baton.

The PSR also accurately recounts the defendant's conduct two weeks later during similar protests that escalated into violence when the defendant charged directly at an officer who was trying to apprehend him, injuring the officer's thumb.  (PSR ¶¶ 19-20.)  That conduct, of course, is not directly related to the defendant's guilty plea, but indicates the defendant's recurring role in the nightly violence in Portland last summer and fall.

**B.      The Charges**

The defendant was indicted on October 20, 2020, for two counts: (1) Civil Disorder, in violation of Title 18 of the United States Code, Section 231(a)(3) (a felony), and (2) Theft of Government Property, in violation of Title 18 of the United States Code, Section 641 (as a misdemeanor).  He pled guilty in late March.

**C.      The Plea Agreement & Guideline Computations**

The government agrees with the following PSR computations:

| Guidelines Provision | Government's Position |
| --- | --- |
| Base - USSG § 2B1.1 | 6 (not contested) |
| Acceptance of Responsibility – USSG § 3E1.1(a) | - 2 (not contested) |
| **Total Offense Level** | **4** |

**Government's Sentencing Memorandum**                                                                          **Page 2**

| Resulting Guideline Range<br>In Criminal History Category III | 0 – 6 months (Zone A) |
| --- | --- |

### Argument

**A.      Contested Guideline Issues**

The government does not contest the guidelines calculations.  The applicable

guideline range is 0 to 6 months of imprisonment in Zone A.

**B.      Government's Recommended Sentence**

The government acknowledges and appreciates the defendant's success during pretrial

supervision, particularly because the defendant avoided becoming involved in further protest-

related violence in Portland.

Stealing government property from outside a federal courthouse in Portland last fall was

not the crime of the century, the decade or even the year.  But it was a crime, and the defendant

deserves to be punished for it.  His misdemeanor conviction and continuing supervision are

adequate to account for the seriousness of his offense.

The government submits that, under the facts of this case, a sentence of time served and

one year of supervised release is sufficient, will promote respect for the law, and will provide

just punishment for this defendant.  Such a sentence will provide adequate deterrence to criminal

conduct and protect the public.

**C.      Forfeiture & Restitution**

Forfeiture is not an issue in this case.

Restitution is appropriate to compensate the federal government for the loss of its

property.  The government recently submitted to defense counsel proof that the type of flag the

defendant destroyed costs $218.50.  The government seeks restitution of $218.50.

**Government's Sentencing Memorandum**                                                                    **Page 3**

**Conclusion**

The government recommends the Court impose a sentence of time served, one year of supervised release, a $100 special assessment, and restitution of $218.50.

Dated: June 16, 2021

Respectfully submitted,

SCOTT ERIK ASPHAUG
Acting United States Attorney

**/s/ Thomas S. Ratcliffe**
THOMAS S. RATCLIFFE, ILSB #6243708
Assistant United States Attorney

# ATTACHMENT 31

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  3:20-mj-00163 |
| | ) | |
| CARLY ANNE BALLARD | ) | |
| | ) | |
| —————————————————— | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____7/24/2020_____ in the county of _____Multnomah_____ in the

_____ District of _____Oregon_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting a Federal Officer |

This criminal complaint is based on these facts:

See Affidavit of FPS Special Agent Steven Bingley, attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

DUSM Jonathan Lobell
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at *2:50* a.m./p.m.

Date: _____July 24, 2020_____

_____
*Judge's signature*

City and state: _____Portland, Oregon_____     Hon. John V. Acosta, U.S. Magistrate Judge
_____
*Printed name and title*

DISTRICT OF OREGON ) 
                               ) ss: AFFIDAVIT OF DEPUTY MARSHAL
County of Multnomah )       JONATHAN LOBELL

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Jonathan Lobell, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Deputy with the United States Marshals Service and have been since 2008. I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service. I am assigned to the Pacific Northwest Violent Offender Task Force where I am responsible for conducting fugitive investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court. As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience include completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and drug investigations.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Carly Anne BALLARD. As set forth below, there is probable cause to believe, and I do believe, that BALLARD committed the offense of Assaulting a Federal Officer (Felony), in violation of 18 U.S.C. § 111(a)(1).

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge; information obtained from other individuals during my participation in this

**Page 1 – Affidavit of Jonathan Lobell**

investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communication with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.      18 U.S.C. § 111(a)(1) makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties.  Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.  Under § 111(a), simple assault is a misdemeanor, but where the assaultive acts involve physical contact with the victim, the offense is a felony punishable by imprisonment up to 8 years.

## Statement of Probable Cause

5.      Since on or about May 26, 2020, protesters have gathered in Portland public areas to protest.  Three of these public areas are Lownsdale Square, Chapman Square and Terry Schrunk Plaza.  The Portland Justice Center, housing Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the

**Page 2 – Affidavit of Jonathan Lobell**

Mark O.Hatfield United States Federal Courthouse[1].  The United States of America owns the

entire city block (Block #24) occupied by the courthouse building depicted below:



Daily protests have regularly been followed by nightly criminal activity in the form of

vandalism, destruction of property, looting, arson, and assault.  One violent event impacting

federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration

and Customs Enforcement (ICE) was targeted by a Molotov Cocktail.  The Mark O. Hatfield

Courthouse has experienced significant damage to the façade, glass, and building fixtures during

the weeks following this incident.  Additionally, mounted building security cameras and access

control devices have been vandalized or stolen.  The most recent repair estimate for the damage

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Jonathan Lobell**

at the Mark O. Hatfield Courthouse is in excess of $50,000. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while preforming their duties.

6.      On multiple occasions during the early morning of July 24, 2020, protesters attempted to set fire to, and breach the exterior perimeter fence surrounding the Mark O. Hatfield Federal United States Courthouse (USCH). Protestors were able to breach the northwest corner of the perimeter fencing, which allowed protestors into the fenced off area surrounding the Federal courthouse. Prior to the protestors breaching the perimeter fence, multiple protestors were observed throwing material into the fenced off area and starting fires on the sidewalk of the USCH. U.S. Customs and Border Protection (CBP), U.S. Marshals Service (USMS), and FPS tactical team deployed to the affected area to prevent further damage and a possible breach into the USCH. Tactical teams verbally and visually identified themselves as "POLICE" and ordered protesters to move away from the USCH.

7.      After tactical teams dispersed the crowd, the CBP tactical team established a perimeter in front of the USCH to maintain security while other officers repaired and secured the fence that had been damaged in the attack.

**Page 4 – Affidavit of Jonathan Lobell**

8. CBP Agent 1[2] was on duty in a fully marked law enforcement uniform at the Mark O. Hatfield Courthouse. AGENT 1 was advised by other federal law enforcement personnel that an individual, later identified as Carly BALLARD was on 3rd Street in front of the Mark O. Hatfield Courthouse. AGENT 1 exited the courthouse onto 3rd Street through a breach in the fence on the northwest corner of the courthouse. AGENT 1 along with multiple agents and officers clearly gave multiple orders to BALLARD to step away from the fence while the officers attempted to fix the breach in the fence. At the time BALLARD was on federal property. BALLARD was not complying and started to approach the officers. BALLARD was told she will be placed under arrest if she did not comply with our orders. BALLARD did not comply. AGENT 1 then detained BALLARD and escorted her into the courthouse for processing.

9. On July 24, 2020, I conducted an interview of USMS LEO 1(victim) regarding BALLARD kicking the back of the victim's leg. USMS LEO 1 was on duty in a fully marked law enforcement uniform that had "U.S. MARSHAL AND POLICE" markings. USMS LEO 1 was assigned to receive custodies from other tactical team when arrests were brought into the USCH. USMS LEO 1 and USMS LEO 2 were taking custody of BALLARD from AGENT 1 inside the lobby of the USCH. USMS LEO1 and USMS LEO 2 observed that BALLARD was yelling profanities and pulling away from AGENT 1. USMS LEO 1 positioned on the right side of BALLARD to gain control of her while USMS LEO 2 positioned on the left side of BALLARD. BALLARD attempted to pull away from USMS LEO 1 and kicked the back of LEO

---

[2] Identification of the CBP Agent(s) and USMS LEO(s) is known to me. For security reasons his/her name(s) will not be included in this affidavit, but are readily available for the court if needed.

**Page 5 – Affidavit of Jonathan Lobell**

1's left leg. USMS LEO 1 and USMS LEO 2 regained control of BALLARD and placed her on the ground. BALLARD continued to yell profanities and physically resist. USMS LEO 1 and USMS LEO 2 gave BALLARD multiple commands to stop resisting and remain calm. USMS LEO 1 and USMS LEO 2 lifted BALLARD off the floor and were able to escort her to the USMS cellblock without further incident.

10.     At approximately 5:40 AM on July 24, 2020 I attempted to conduct an interview of BALLARD regarding the assault on USMS LEO 1. BALLARD stated that she did not want to speak with me and wanted her lawyer present. I terminated contact with BALLARD at that time.

<u>Conclusion</u>

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that Carly ANNE BALLARD committed a violation of 18 U.S.C. § 111(a), and in so doing made physical contact with USMS LEO 1.


//


//


//



**Page 6 – Affidavit of Jonathan Lobell**

12.    Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorneys Parakram Singh and Natalie Wight, who advised that in their opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

_/s/ Sworn to by telephone_
Jonathan Lobell
Deputy U.S. Marshal, U.S. Marshals Service

Sworn to by telephone or other reliable means at 2:56 a.m./p.m. in accordance with Fed. R. Crim. P. 4.1 this 24 day of July 2020.

HONORABLE JOHN V. ACOSTA
United States Magistrate Judge

**Page 7 – Affidavit of Jonathan Lobell**