UNITED STATES DISTRICT **COURT**
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal Case No.** |
| | : | |
| **KENNETH JOSEPH OWEN THOMAS,** | : | **1:21-cr-00552 (CRC)** |
| | : | |
| **Defendant** | : | |
| | : | |

_____

# KENNETH JOSEPH OWEN THOMAS' RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

Defendant KENNETH JOSEPH OWEN THOMAS ("Thomas"), through the undersigned counsel, presents this Response to the Government's Sentencing Memorandum (ECF 203).

The Defense respectfully requests that Thomas be sentenced to a term of home confinement for 12 months, no fine, and three years of supervised release. Such a sentence would be most consistent with the requirements of Federal law, the Sentencing Guidelines, the facts of Thomas' case, and the interests of the Court, the community, and the defendant.

Mr. Thomas is brutally aware of the seriousness of his conduct on January 6, 2021, and that of the larger collective of thousands who gathered at the Capitol on that day. Mr. Thomas protest that day. Mr. Thomas has taken and continues to take full and complete responsibility for his actions, including at trial where Defendant admitted his faults and his problematic conduct.

Nonetheless, a sentence of house arrest or probation is appropriate to address his actions on that day in light of the principles of sentencing and the need to avoid sentencing disparity.

1

The Court should impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a). "The court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates. These include considering the "nature and circumstances of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant.

THE SENTENCING GUIDELINES AND GUIDELINES ANAYLYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. Id. at 49.

The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. Id. at 49.

Mr. Thomas went to trial indicted on twelve counts. The jury fully acquitted him of the most serious charge, obstructing an official proceeding under 18 U.S.C. Sec. 1512(c). The jury also acquitted Thomas of committing an act of violence at the Capitol. However, the jury convicted Thomas of various "impeding, resisting, or opposing"-type offenses including four violations of 18 U.S.C. Section 111(a) and one count of resisting or opposing officers in violation of 18 U.S.C. Sec. 231.

None of the officers contacted by Mr. Thomas on Jan. 6 reported any physical pain or injuries attributed to Mr. Thomas.  In fact at least one of the officers openly admitted under oath in open court that he didn't even remember Mr. Thomas at all.

The Defendant repeatedly shouted to the crowd to be peaceful and nonviolent on January 6.  He also stopped one demonstrator from passing out metal construction materials to demonstrators.  And during the hectic pushing and shoving on the upper west terrace around 4 pm, Mr. Thomas protected an older protestor from baton blows by yelling "Let him up!" "Let him up!" repeatedly.  Mr. Thomas further protected the fallen man by briefly inserting himself between the protestor and a skirmish line.

The jury's verdict plainly found that although Thomas' back, elbow or shoulder had made contact with several officers, all of this contact had been "resisting," "opposing," or "impeding"—NOT "assaulting."  This was clear from the jury's acquittal of Thomas of the allegation of "committing an act of violence" on Capitol grounds.

**The Court Should Avoid Disparate Sentences in January 6 cases, as it fosters and engenders grave political divisions and biases.**

**At present there is an extreme danger in federal sentencing, whereby January 6 protestors are being sentenced two to one hundred times more harshly than others convicted of similar charges in similar contexts.**

A review of the search terms "sentence for "18 U.S.C. § 111(a)" in a database of every federal case in *Fastcase* reveals no 111(a) conviction outside the January 6 context have been met with the severe prison sentences which are routinely recommended in Jan. 6 cases.

Among the most analogous cases to Thomas' facts is *United States v. Washington*, 2023 WL 5440527, No. 21-3299 (3rd Cir. Aug. 24, 2023). The *Washington* case involved facts analogous to Thomas' facts, where a defendant in a restricted area pushed, shoved, grabbed and resisted officers while "forc[ing] his way farther into the building. . . ." "The ensuing scrap lasted

3

more than three minutes." The material difference between Mr. Thomas' case and the Washington case is that Washington's physical contact was much more aggressive than Thomas' contact.

*Washington* involved contentious arguments at a Social Security Administration office. Mr. Washington's sentence for two 111(a) felony convictions was "a few days' time served and twelve months of supervised release."

Outrageously, the Government in Thomas' case is seeking ten years imprisonment in this case, consistent with United States v. Cook, 972 F.2d 218 (8th Cir. 1992) (ten years imprisonment, after upward departure, for two counts of assaulting officers with weapons, including taking aim at an officer with a rifle equipped with a scope and striking an officer with a jackstand causing injuries).

The Government's sentencing memo is filled with exaggerations which propose that January 6 was the most extreme civil disorder in history.  In fact, measured by injuries, casualties, total property damage, or delays in commerce, the January 6 event doesn't even qualify in the top 20 such civil disorders of the past 40 years.  More police officers *were injured in the attack on the White House in May-June 2020.*





In May to June 2020, rioters and insurrectionists attacked the White House from their rallying point at Lafayette Square, **injuring 60 Secret Service agents**,[1] comparable to or worse than January 6, 2021.[2]   At least 155 law enforcement officers were injured by the riot and attack on the White House May to June 2020,[3] contrasted with around 114 at the Capitol on June 6, 2021.[4]

"They were battling over the fences," [Attorney General Bill] Barr said. "They were trying to get entry. They were throwing bricks and inflammable liquid at the police. One fifth of the- there have been 750 officers hurt in the last week. One fifth of those have been in Washington, D.C. Most of those have been federal officers at Lafayette Park."

---

[1] Melissa Barnhart, , "Historic St. John's Church near White House torched by rioters," Christian Post, June 1, 2020, accessible at:  https://www.christianpost.com/news/historic-st-johns-episcopal-church-set-on-fire.html .

Later in the interview, Barr repeated; "All I heard was comments about how peaceful the protesters were," he said on June 7. "I didn't hear about the fact that there were 150 law enforcement officers injured, and many taken to the hospital with concussions. So, it wasn't a peaceful protest. We had to get control over Lafayette Park, and we had to do it as soon as we were able to do that."

More officers were injured in the assault on the White House than were injured on Capitol Hill on January 6, 2021.[2]   The U.S. Sentencing Act of 1984 requires the Judiciary to assure the public that cases are being treated equally including on sentencing.  The June 2020 riots at the White House crippled the world-wide military chain of command of the U.S. Government.[4]

---

[2] Gregory Krieg, "Police injured, more than 200 arrested at Trump inauguration protests in DC," CNN, Updated January 21, 2017, accessible at:  https://www.cnn.com/2017/01/19/politics/trump-inauguration-protests-womens-march  (Emphases added.)







January 6 defendants like Thomas should receive sentences similar to defendants who were charged with interrupting the January 2017 inauguration; which is to say—all charges dropped. The 2017 inauguration disorder involved

9

bursts of chaos, looting, and property destruction on 12th and K streets as black-clad "antifascist" protesters smashed storefronts and bus stops, hammered out the windows of a limousine and eventually launched rocks at a phalanx of police lined up in an eastbound crosswalk. Officers responded by launching smoke and flash-bang devices, which could be heard from blocks away, into the street to disperse the crowds.

Later during the Trump Administration, demonstrators who disrupted the 2018 Kavanaugh hearings—who proudly admitted their conspiracy to obstruct congressional proceedings—were released on a $35 to $50 bail after 5 hours which became their sole punishment in most cases after their cases were dropped.[3]

---

[3] Emily Birnbaum, "Over 200 protesters arrested during Kavanaugh hearings," The Hill, September 6, 2018, accessible at: https://thehill.com/homenews/senate/405500-212-protesters-total-arrested-during-kavanaugh-hearings. Ashraf Khalil, "Protesters continue to interrupt Kavanaugh hearings," Associated Press, 09/06/2018, accessible at: https://apnews.com/article/3f4ddaec0ee946fe817329b065af3408; accessed Nov 6, 2021; emphasis added.  https://twitter.com/womensmarch/status/1047935356673437697 (hear the extreme noise of the alarms and crowd disrupting the Hart Building in the video).  See https://www.facebook.com/watch/?v=2314502548791821
 Erin Franczak and Katherine Tully-McManus,  "'I See You, Senators': Kavanaugh Protesters Pour Into the Capitol: Supporters of Christine Blasey Ford sing, raise fists, invoke regression analysis," Roll Call, September 27, 2018, accessible at:  https://rollcall.com/2018/09/27/i-see-you-senators-kavanaugh-protesters-pour-into-the-capitol/And:  Sophie Tatum, "More than 300 protesters arrested as Kavanaugh demonstrations pack Capitol Hill," October 5, 2018, accessible at:  https://www.cnn.com/2018/10/04/politics/kavanaugh-protests-us-capitol





An organized group shot five congressmen from the balcony of the House Chamber in 1956. Police did not ever return fire but took them into custody where they underwent criminal proceedings. (Several were eventually pardoned.)

And then there were the May Day Riots of 1971, in which thousands of demonstrators attacked the City's infrastructure with "the avowed purpose" to "close down the government".

165 U.S.App.D.C. at 36, 506 F.2d at 97. Protestors published a "May Day Tactical Manual" which (on page 3) stated that the "objective (of the demonstrations) is to close down all Federal government sections of Washington, D.C., by blocking traffic arteries during the early morning rush hours of May 3 and 4."

The climax of this anti-war effort was set for Wednesday, May 5, 1971. The outline called for all the people who had not been arrested on May 3 or 4 to move to the Capitol building to lay a nonviolent siege demanding that Congress ratify the Peoples' Peace Treaty and to remain there until the Treaty was ratified or all were arrested. J.A. 2460, 2464. The Manual made it quite clear that the singular objective of this effort was to close down the federal government. J.A. 2458, 2460. All of this is documented in Dellums v. Powell, 561 F.2d 242 (D.C. Cir. 1977).

Note that the large "First Amendment" sign and plaque in the hallway on the 1st floor of the Courthouse memorializes this case.

The United States' politization and extreme disparate sentencing recommendations are illustrated by the government's recent 39-month sentencing recommendation for Kendrid Khalil Hamlin, in *United States v. Hamlin*, Case No. 23-CR-00105-JEB, before Judge Bates. On Feb. 9, 2023, Mr. Hamlin defecated in the doorway of a D.C. apartment complex, then assaulted and injured a member of Congress (Angie Craig, D-Minn.) in the elevator, punching and restraining her, cutting her lips and bruising her face. Hamlin then assaulted, attacked, and bit officers who arrested him, causing further pain, injuries or tearing of clothing. The government requested a total sentence of 39 months of incarceration to be followed by three years of supervised release. "Specifically, the government recommends a sentence of 27 months for the assault on Representative Craig (Count 1), and 6 months on each of the assaults on the officers (Counts 2 and 3), with all sentences to run consecutively to each other."

"While [Hamlin's] sentence [recommendation] is at the high end of the guidelines range, " wrote the prosecution, "the sentence is justified for numerous reasons, including the nature and circumstances of this offense, the defendant's egregious criminal history, his demonstrated inability to comply with any form of supervised release, and his continued commission of acts of violence while incarcerated." Hamlin had had twelve bench warrants and a 7-page rap sheet.

Thus, in a January 6 case involving a defendant who committed <u>no</u> violence and caused <u>no</u> injuries, while resisting or opposing officers, the government is seeking a sentence more than twice as severe as what it is seeking in the case of an assailant who actually injured a member of Congress and officers and damaged government clothing and property.

**Finally, the Government's efforts to steal and take every last penny donated to Thomas' legal fund would violate the most basic foundations of due process.**

The government, on page 49 of its Memorandum, states "Thomas should not be permitted to keep a single cent of this money because doing so would allow him to "capitalize" on his crime." What did the government refer to? Thomas' GiveSendGo crowdfunding account which is plainly designated for "legal fees." https://www.givesendgo.com/pianonlegalfees (accessed 8/29/2023).

Thomas' legal fee fundraising page states, "Please find it in your heart to give. Every little bit will help him in this fight against the egregious charges put forth by the Department of Justice, keep the Sing4freedom dream alive for all the other Jan 6 defendants & able his family to survive the onslaught of threats & adversity they endure daily."  Nothing in the site suggests Thomas ever "capitalized on his crime."

Dated: November 10, 2023                                              Respectfully Submitted,

                                                                                                  /s/ John M. Pierce

John M. Pierce

21550 Oxnard Street

3rd Floor, PMB #172

Woodland Hills, CA 91367

Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

15

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, November 10, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M. Pierce
John M. Pierce